**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROD BLAGOJEVICH, CHRISTOPHER KELLY, ALONZO MONK, WILLIAM F. CELLINI, SR., JOHN HARRIS, and ROB BLAGOJEVICH,

Defendants.

No. 08 CR 888
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

The Chicago Tribune Company ("Tribune") has sought leave to intervene for the purpose of seeking to unseal the briefs that were filed under seal relating to Defendant Cellini's motion to suppress evidence obtained during the course of court-authorized wiretaps.[1] Cable News

[1] For approximately six weeks in April and May of 2004, the government intercepted certain phone lines used by Stuart Levine pursuant to court orders ("Levine Wiretaps"). The government obtained authorization to conduct the Levine Wiretaps through *ex parte* and sealed filings, and the resulting orders were also sealed. Defendant Cellini was indicted based, in part, upon evidence obtained from the Levine Wiretaps. On March 26, 2009 Cellini filed a motion to suppress evidence obtained from the Levine Wiretaps; (the opinion addressing that motion is being concurrently and publicly released with this opinion). Cellini attached as exhibits to his motion the two applications the government submitted to obtain the Levine Wiretaps, an affidavit attached to one of the applications, two orders authorizing the Levine Wiretaps, certain draft transcripts of calls recorded during the Levine Wiretaps, and copies of instructions that were provided to agents monitoring the Levine Wiretaps ("Minimization Instructions"). Cellini sought and received the agreement of the government and the Court to file the motion and the accompanying exhibits under seal.

On May 7, 2009, the government filed a response brief, attaching two orders authorizing the Levine Wiretaps, two applications for the Levine Wiretaps, two affidavits that were attached to those applications, the Minimization Instructions, five transcripts of calls intercepted over the Levine Wiretaps that involved William Cellini as a speaker, a copy of the superseding indictment in *United States v. Rezko, et al.*, a copy of an order in *United States v. Rezko*, a supplemental

Network, Inc. ("CNN") has filed a similar motion for immediate access to the same materials, which I consider here (the Tribune and CNN, collectively "media intervenors"). Defendant Cellini has not expressed a view on the issue, nor have any of the other defendants. The government concedes that it would be appropriate for the parties to file public versions of the briefs and, in fact, has already filed a proposed redacted version of its brief. However, the government maintains there are sections of the briefs, most notably some of the attached exhibits, which relate to non-public aspects of the Levine Wiretaps that should remain under seal pursuant to the statutory requirements of Title III, 18 U.S.C. §§ 2517, 2518(8)(b). In particular, the government believes the following sections of the filed briefs and exhibits should remain under seal (the "Wiretap Materials"):

> (1) the entirety of the government applications and attached affidavits and any sections in the briefs that refer to facts alleged about the investigation contained in the applications and/or affidavits;
>
> (2) the entirety of the orders authorizing the Levine Wiretaps;
>
> (3) the entirety of the Supplemental Report, the 2517(5) Motion, and the 2517(5) Order;
>
> (4) the sections of the Minimization Instructions that identify the names of the individuals identified as either Interceptees or Violators; and

---

report relating to the Levine Wiretaps filed by the government under seal ("Supplemental Report"), and a motion filed under seal by the government pursuant to 18 U.S.C. § 2517(5) relating to the use of evidence obtained during the Levine Wiretaps ("2517(5) Motion") and resulting sealed order ("2517(5) Order"). The government similarly sought by agreement to file its response and accompanying exhibits under seal, and I granted leave to do so.

On May 21, 2009, Cellini filed a reply brief without any attached exhibits, although it made references to the exhibits attached to the prior two filings. I granted Cellini's agreed motion to file that brief under seal.

(5) the portion of the transcripts where no corresponding recording from the Levine Wiretaps was admitted into evidence during the trial of *United States v. Rezko*.

The government argues that the privacy interests of the people intercepted on the Levine Wiretaps are a significant concern in this case because of the highly publicized nature of the investigation and because some of those people have never been charged or publicly identified as being intercepted in the course of the government's investigation.

As a threshold matter, the Tribune has standing to seek access to court records. *See United States v. Inzunza*, 303 F. Supp. 2d 1041, 1044 (S.D. Ca. 2004). The Tribune asserts legitimate media interests, and I grant the Tribune's motion to intervene such that those interests may be heard. *See Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 609 n.25 (1982); *In re Associated Press*, 162 F.3d 503, 507 (7th Cir. 1998).

## I. DISCUSSION

Title III sets forth procedures regarding court authorization of real-time surveillance of all kinds of electronic communications in criminal investigations. Such authorization normally requires, before a wiretap can commence, a court order issued by a judge who must conclude, based on an affidavit submitted by the government, that there is probable cause to believe that a crime has been, is being, or is about to be committed. Once wiretap evidence is obtained, Title III strictly limits the disclosure of such evidence as well as the applications, orders, and related filings associated with wiretaps. With regard to the disclosure of the *contents* of a wiretap, "the question is whether Title III specifically *authorizes* such disclosure, not whether Title III specifically prohibits the disclosure, for Title III prohibits all disclosures not authorized therein." *Smith v. Lipton*, 990 F.2d 1015, 1018 (8th Cir. 1993); *see also United States v. Dorfman*, 690

F.2d 1230, 1232 (7th Cir. 1982) ("by permitting disclosure of lawfully obtained wiretap evidence only under the specific circumstances listed in 18 U.S.C. § 2517, Title III implies that what is not permitted is forbidden). With regard to applications made and orders granted under Title III, a separate section provides that those materials "shall be sealed by the judge." 18 U.S.C. § 2518(8)(b). "Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction." These limitations on disclosure are designed to protect the privacy interests of people intercepted in conversation (to the extent compatible with the law enforcement objectives of Title III), *Gelbard v. United States*, 408 U.S. 41, 47-48 (1972), as well as the confidentiality of the government's investigation and the authenticity of the application and order. *United States v. Florea*, 541 F.2d 568, 575 (6th Cir. 1976).

The common law right of access does not apply to Title III materials, whose disclosure is addressed in a comprehensive statutory scheme. *City of Milwaukee v. Illinois*, 451 U.S. 304, 313-14 (1981) ("[F]ederal common law . . . is resorted to [only] in absence of an applicable Act of Congress."). While the common law right of access creates a strong presumption in favor of public access to materials submitted as evidence in open court, this presumption does not apply to "materials properly submitted to the court under seal." *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989) (citing *The Times Mirror Co. v. The Copley Press, Inc.*, 873 F.2d 1210, 1219) (9th Cir.) ("there is no [common law] right of access to documents which have traditionally been kept secret for important policy reasons.")). The Wiretap Materials at issue here have traditionally been kept secret for important policy reasons, and those materials were properly submitted under seal in conjunction with Defendant Cellini's motion to suppress. *See In re Applications of Kansas City Star*, 666 F.2d 1168, 1175 (8th Cir. 1981). At bottom,

Congress, which deliberately and expressly limited the right of access to Title III materials, trumps the federal common law right of access to the documents at issue here.

Neither does the First Amendment right of access to judicial proceedings provide any broader right to disclosure of the actual wiretap evidence. With regard to such evidence, *Dorfman* makes clear that under Title III I am not authorized to weigh the harm of unsealing to the intercepted individuals' privacy against the newsworthiness of those documents. 690 F.2d at 1233. *Dorfman* further rejected the notion that the First Amendment commanded a different result. *Id.* at 1233-34 (right of privacy held by individuals intercepted over the wiretaps trumped First Amendment right of access to the wiretap evidence).

The release of other parts of the Wiretap Materials, *e.g.*, the applications and orders, is governed by a separate, "and as one would expect more liberal," section of Title III, which authorizes disclosure for "good cause." *Dorfman*, 690 F.2d at 1235; § 2518(8)(b). In *Dorfman*, the Court of Appeals remanded the part of the case that dealt with the applications for the wiretap warrants for the district court to consider whether release of the applications in their entirety would be consistent with Title III.

The Tribune and CNN contend that for purposes of Title III Congress intended "good cause" to be the equivalent of the "balancing dictated by [First Amendment] and common law principles." Tribune Reply Br. at 8 (citing *In re Application of New York Times Co. to Unseal Wiretap and Search Warrant Materials*, 600 F. Supp. 2d 504, 507-08 (S.D.N.Y. 2009)). More recently however, the Second Circuit, under reasoning that I find persuasive here, has reversed that district court ruling and held that in order to satisfy the good cause requirement for disclosure under Title III, a newspaper intervenor is required to establish that it was an

"aggrieved person." *In re New York Times Co. to Unseal Wiretap and Search Warrant Materials*, No. 09-0854-CV, 2009 WL 2411768, at *4-6 (2d. Cir. Aug. 7, 2009) ("*New York Times*"). In so holding, the Second Circuit adhered to its earlier conclusion that, just like the fruits of wiretap surveillance, 18 U.S.C. § 2518(8)(b) reflected the same presumption against disclosure. *Id.* at *5 & n.3 (referring to *Nat'l Broadcasting Co. v. U.S. Dept of Justice*, 735 F.2d 51, 54 (2d Cir. 1984) and noting the plain language of the statute suggests that there is a categorical presumption *against* disclosure of sealed wiretap applications).

Neither the Tribune nor CNN is an "aggrieved person" because, according to the express terms of Title III, neither is "a party to any intercepted wire or oral communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11) (defining "aggrieved person."). As in *New York Times*, it is irrelevant that the media intervenors here are investigating a criminal case involving high-profile public corruption charges. 2009 WL 2411768, at *5.

Lastly, the media intervenors insist on a First Amendment right of access to the Wiretap Materials in spite of Title III's strict disclosure regime. I have already addressed that argument as it applies to the actual wiretap evidence; I now turn to the First Amendment assertion as it applies to the remaining documents (*i.e.*, the applications, orders, reports, and instructions submitted and issued pursuant to Title III).

The First Amendment recognizes "a general right to inspect and copy public records and documents, including judicial documents and records." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978). The First Amendment right covers access to criminal trials, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980), including the voir dire of potential jurors, *Press-Enterprise Co. v. Superior Court of Ca., Riverside County*, 464 U.S. 501, 509-10

(1984) ("*Press-Enterprise I*"), and trial-like preliminary hearings in criminal cases, *El Vocero v. Puerto Rico*, 508 U.S. 147 (1993); *Press-Enterprise Co. v. Superior Court of Ca. for Riverside County*, 478 U.S. 1, 10 (1986) ("*Press-Enterprise II*"). It also extends to documents submitted in connection with a judicial proceeding. *See, e.g., United States v. Peters*, 754 F.2d 753, 763 (7th Cir. 1985); *In re Continental Ill. Sec. Litig.*, 732 F.2d 1302, 1308-09 (7th Cir. 1984). However, such right of access does not attach to all aspects of a criminal trial, including, for example, presentence reports, withdrawn plea agreements, or affidavits supporting search warrants. *See United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989)*; United States v. El-Sayegh*, 131 F.3d 158, 161 (D.C.Cir. 1997); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64-65 (4th Cir. 1989).

*Press-Enterprise II* sets forth the two-pronged inquiry that determines first, whether a qualified First Amendment right of access attaches to the documents at issue (experience and logic test), and if so, whether disclosure of those documents serves a compelling interest. 478 U.S. 1; *Corbitt*, 879 F.2d at 228; *Inzuna*, 303 F. Supp. 2d at 1044. Under the first prong, I consider "whether the place and process have historically been open to the press and general public," and ask "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8. If I determine that the First Amendment right of access does attach to the documents at issue, or to some of the documents at least, then those documents cannot be closed to the public absent a specific finding "that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise I*, 464 U.S. at 510.

Applying the experience factor, I find no historical tradition of open public access to Title III materials. Disclosure of Title III materials is permissible only under limited circumstances and the authority to disclose extends only to materials obtained in accordance with Title III's provisions. 18 U.S.C. § 2517(3). "Accordingly, the only lawful way that the materials presently under seal can be made public under Title III is by being admitted into evidence at a criminal trial or at a suppression hearing, events which have yet to occur." *Inzuna*, 303 F. Supp. 2d at 1046 (citing *Dorfman*, 690 F.2d at 1233).

Under the logic consideration, I readily acknowledge and support public scrutiny of criminal proceedings, which provides a check on possible governmental abuses, enhances the quality and integrity of the fact-finding process, and offers "community therapeutic value." *See Press Enterprise II*, 478 U.S. at 12-13. Openness "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Inzuna*, 303 F. Supp. 2d at 1049. However, neither CNN nor the Tribune offer good reasons why public policy related to accountability, the fair administration of justice, or the dissemination of news about high-profile public corruption charges "is more compelling than Congress' apparent concern for confidentiality and privacy, which are reflected in the text of Title III and in its legislative history." *In re New York Times*, 2009 WL 2411768, at *7. Accordingly, and as a general matter, history and logic weigh in favor of not recognizing a First Amendment right of access to the remaining wiretap documents. *Id.*

However, in light of the specific circumstances presented here, I am willing to recognize limited public access to certain documents for the following reasons. First, the posture of this

case differs from *Inzuna* in that there is a pending substantive challenge to the Title III materials.[2] In this case, there was not and will not be a suppression hearing regarding Defendant Cellini's pending motion to suppress evidence; the issues raised by the motion have been appropriately and adequately addressed by the sealed briefs filed by Defendant Cellini and the government. Despite the fact that there will be no hearing, I recognize a public access interest in the materials which provide the basis for my ruling on the motion. *Inzuna*, 303 F. Supp. 2d at 1049 (suppression challenge provides public with "indispensable context required to assess potential Government abuses and overreaching"). In addition, the specific privacy concerns raised by the government at this juncture in the case can, in some instances, be easily mitigated through redactions. Accordingly, I find it appropriate to provide limited access to the basis of my decision. *See In re Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992) ("Information that is used at trial or otherwise become the basis of decision enters the public record." ) (citation omitted).

I grant access to redacted versions of the briefs filed by both Defendant Cellini and the government in support of and in opposition to Defendant Cellini's motion to suppress. The redactions shall serve to protect the identity of innocent third parties who participated in various intercepted conversations.

With regard to the portion of Defendant Cellini's motion directed to the manner in which the statutory requirement of minimization was met, my decision in that regard rests solely on the Minimization Instructions and compliance therewith. Therefore, I am in agreement with the government that those instructions ought to be made publicly available, with the exception of

---

[2] At the time of decision in *Inzuna* there were no pending discovery disputes; the defendants' discovery requests regarding government misconduct had been withdrawn. 303 F. Supp. 2d at 1047 n. 4.

those portions that identify individuals who have either never been charged or publicly identified as being intercepted in the course of the government's investigation.[3]

With regard to the portion of Cellini's motion directed at the extended period of overhear permitted after the expiration of the initial warrant, the basis for my decision is fully explained in the ruling. Nothing in the warrants themselves provided the basis nor had any bearing on my decision. Instead, the result was based on the substance of the circumstances encountered by those who were overhearing the recorded conversations. Heavily redacted versions of the documents on which I relied to glean the basic facts surrounding the Edward Hospital deal and the government's application for the extension would, at best, create confusion and, at worst, mislead the public. Unlike ordinary search warrants, Title III overhears intercept enormous pieces of people's lives, giving reason for the significant restraints imposed by the statute. For the law in this area to be effective, a certain number of innocent conversations must be protected.

I note that in reaching the decisions here with the alacrity that these circumstances require, I have made no attempt to be exhaustive in my review of the law and legal precedent. The Tribune and CNN have styled their motions as ones for "immediate" access, presumably because the newsworthiness of a particular story is often fleeting and delay or postponement of access could undermine whatever benefit public scrutiny may provide. *See In re Associated Press*, 162 F.3d 503, 506-07 (7th Cir. 1998) (citing *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976)).

---

[3] I have quoted the relevant portions of the instructions in the suppression ruling, but the Tribune and CNN may have access to the full text of the redacted document.

## II. CONCLUSION

I grant the Tribune leave to intervene. In light of manifest congressional intent that the Wiretap Materials be treated confidentially, I grant in part and deny in part both the Tribune's and CNN's motions for immediate access to those documents. I grant both the Tribune and CNN immediate access to redacted versions of the Minimization Instructions and the briefs in support and in opposition of Defendant Cellini's motion to suppress evidence (with the identifying information about uncharged or not already publicly identified individuals redacted). For now, immediate access to any of the other documents is denied.

ENTER:

James B. Zagel

James B. Zagel
United States District Judge

DATE: August 21, 2009