UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 888 |
| | ) | Hon. James B. Zagel |
| ROD BLAGOJEVICH, et al. | ) | |

## GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*

The United States of America, by its attorney, Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, respectfully moves the Court, *in limine*, as follows:

## I.   Motion to Preclude Requests For And Comments Regarding Discovery in Presence of Jury

The government and the defense have had continuing discovery disputes throughout the course of the instant case.  None of these disputes, nor disputes that may arise in the future, have any place in front of the jury.

Accordingly, the government respectfully moves to preclude counsel from requesting discovery from witnesses or government counsel, moving the Court for such discovery, or otherwise commenting on discovery matters, in the presence of the jury.  Such requests from counsel in front of the jury are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage.  In fact, as often

happens, counsel's requests are ill-founded because the discovery has already been tendered or is not subject to disclosure. In any event, these requests, if appropriate, easily may be made to the Court or opposing counsel outside the presence of the jury with no prejudice resulting to either side.

Accordingly, the government moves for an order requiring that requests for discovery or comments relating to discovery be made outside the presence of the jury. This system has been used in other cases and has worked well. The government believes it is a fair and sensible one to employ here. *See generally Thompson v. Glenmede Trust Co.*, 1996 WL 529693 (E.D.Pa. 1996) ("Rather than focus on the issues in the case, the jury may instead be misled by the irrelevant side issues of the discovery process. Therefore, the Court will not permit either party to refer to the discovery process in the presence of the jury at trial."); *United States v. Gray*, 2010 U.S. Dist. Lexis 29567 (N.D. In. 2010)(granting government's motion to preclude defense from requesting or commenting on discovery in the presence of the jury).

## II.   <u>Motion to Preclude Comments Regarding Evidentiary Rulings</u>

If the Court excludes evidence offered by either side, counsel should be barred from referring to this excluded evidence or commenting on the Court's evidentiary rulings in front of the jury. For example, defendant Rod Blagojevich filed a motion seeking permission to play all of the conversations recorded in the

2

government's investigation, and asserted "that a full airing of the recordings will establish his innocence of every count in the indictment." (Dkt. 241 at 3). If the Court determines that certain recordings, or portions of recordings, are inadmissible, the government moves to preclude defense counsel from suggesting to the jury that the recordings the jury did not hear would exonerate the defendant, or commenting in any way about the excluded evidence or the court's evidentiary rulings.[1]

There is no legitimate reason for counsel to comment to the jury about the Court's legal rulings made outside the jury's presence. In addition, it is improper for counsel to comment on evidence the court has excluded, suggest that excluded evidence would have impacted the jury if only the Court had admitted it, or otherwise make statements intended to get evidence before the jury that counsel is not entitled to offer. *See Solles v. Israel*, 868 F.2d 242, 245 (7th Cir. 1989) (criticizing prosecutor's "improper remarks in front of the jury including commenting on excluded evidence" as part of a "litany of errors and improprieties"); *Sanchez. v. Brokop*, 398 F. Supp. 2d 1177, 1188 (D.N.M. 2005);

---

[1]   The Court denied the defendant's motion to play all recordings, indicating it will revisit the issue should the defendant testify.  Of course, even if the defendant testifies, it is likely that certain recordings will still be inadmissible for a variety of evidentiary reasons.  Accordingly, comment by defense counsel to the jury on the scope of the recordings that the jury should hear before the Court makes final rulings on the admissibility of the recordings also risks prejudicing the government and improperly confusing the jury.

75A Am. Jur. 2d Trial § 516 (collecting cases).  If the Court excludes evidence, counsel may not take a second bite at the apple by discussing that evidence in front of the jury, or referring to the Court's evidentiary ruling.  "Counsel have a duty to argue all grounds of relevance during the hearing on the motions in limine.  Once the court has ruled, counsel are not free to decide for themselves that, in context, the evidence is actually admissible." *Rutledge v. Cook County, Illinois*, 2009 WL 3187904, at *6 (N.D. Ill. 2009).

For example, comments by counsel or witnesses along the lines, "If it was up to us, we would play all the tapes" are improper.  First, counsel themselves have already conceded orally to the Court that not every call should be played.  Second, it is not up to defense counsel to determine which tapes are played, it is up to the Court, and the Court has denied the motion to play all the tapes.  Third, this statement, and others like it, is a comment on the Court's legal ruling made outside the jury's presence, and puts the government in the position of having to rebut the mistaken and unfair suggestion that the government is wrongfully withholding evidence from the jury.  Finally, if counsel or a witness makes such a comment, the government should be entitled to an immediate curative instruction informing the jury that the Court and not the parties decide what evidence is admissible and proper, and that the jury has received or will receive all proper evidence.

Therefore, the government moves to exclude any argument or comment by counsel concerning excluded evidence or the Court's evidentiary rulings.

## III. Motion to Exclude References to Penalties Faced by Defendants

The government respectfully moves this Court to exclude any evidence or argument related to the potential penalties faced by the defendants if convicted.

The Seventh Circuit unequivocally has held that "arguing punishment to a jury is taboo." *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997); *see also United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir. 1991)(holding that "the sixth amendment requires that a jury determine questions of guilt or innocence; punishment is the province of the Court").   Such argument or evidence concerning punishment is improper because the law is well-settled that the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence.   *See, e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'")(quoting *United States v. Rogers*, 422 U.S. 35, 40 (1975)); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the

5

consequences of their verdict."); *United States v. McCracken*, 488 F.2d 406, 423 (5th Cir. 1974) ("Except where a special statutory provision mandates a jury role in assessment or determination of penalty, the punishment provided by law for offenses charged is a matter exclusively for the court and should not be considered by the jury in arriving at a verdict as to guilt or innocence."). Mention of the potential penalties faced by the defendants would serve only the improper purpose of jury nullification. *See, e.g., United States v. Reagan*, 694 F.2d 1075, 1080 (7th Cir. 1982) ("'The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial.'") (quoting *United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980)); *United States v. Patterson*, 1996 WL 54237, at *1 (N.D. Ill. Feb. 8, 1996) (prohibiting discussion of potential penalties in order to avoid possible jury nullification).

Proscribed mention of penalties should include not only specific references to years in jail, but also what is becoming a more common theme in defense arguments: arguments to the effect that the defendant is "on trial for his life," that the defendant's "freedom" hangs on the outcome of the jury's decision, and that the defendant should not be separated from his family. Each of these arguments invites the jury to consider the penal consequences of a conviction on a defendant and, therefore, is wholly improper.

Accordingly, the defendants should be precluded from in any way

mentioning potential penalties.

## IV.    Motion to Exclude Evidence and Argument Concerning Lawfulness and Non-Corrupt Conduct

The government respectfully moves the Court to exclude all evidence of defendants' lawfulness and/or non-corrupt conduct, except for reputation or opinion evidence offered by character witnesses strictly in accord with the limitations of Federal Rule of Evidence 405(a).[2]  Other than testimony from character witnesses falling within the narrow strictures of Rule 405(a), no such evidence is admissible.

### A.    "Good Acts" Evidence Is Irrelevant and Inadmissible.

In an effort to distract the jury from the charges for which the defendants are standing trial, the defendants may seek to elicit from government witnesses, or present through their own witnesses, testimony that on prior occasions the defendants were lawfully involved in and around politics or committed good acts, for instance, in properly doing their jobs.  In particular, defendants may attempt to demonstrate that they sometimes interacted with potential political

---

[2]    Even evidence offered under Rule 405(a), of course, cannot include specific instances of good conduct:  it is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct.  *See* Advisory Committee Notes to Rule 405 (The rule "contemplates that testimony of specific instances is not generally permissible on direct examination of an ordinary opinion witness to character . . . .  [O]pinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given *i.e.* be confined to the nature and extent of observation and acquaintance upon which the opinion is based").

contributors and solicited donations without offering anything in return.  Such

evidence is sometimes affirmatively offered, but often takes the form of questions

posed during cross-examination, such as: (a) "Isn't it true the defendant did not

do anything improper on this occasion?"; (b) "Isn't it true that defendant always

treated you with respect?"; (c) "Isn't it true that defendant was a nice person?";

(d) "Isn't it true that defendant always followed through on his promises?";

(e) "Isn't it true defendant sought to help you on other occasions (not relevant to

the charged case)?"; and (f) "Isn't it true defendant helps others whenever he

can?"  Further, the defendants may attempt to turn this trial into a survey of all

of the legislation that defendant Rod Blagojevich sponsored and passed, or

attempted to pass, during his tenure as governor.[3]  The possible means by which

the defendants may seek to offer evidence and arguments concerning good acts,

and thereby distract the jury from the relevant issues, are limitless.

        Any evidence or argument of this sort is inadmissible, and the Court

should exclude it.  The law is clear: "A defendant may not seek to establish his

innocence . . . through proof of the absence of criminal acts on [other] specific

occasions."  *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) (excluding

taped proof that defendants met regularly and did not discuss criminal activity);

---

[3] Defendant Rod Blagojevich's post-arrest talking points during his regular
public appearances typically include a litany of the legislation he sponsored and
was passed during this tenure as governor.

*see also United States v. Heideke*, 900 F.2d 1155, 1162 (7th Cir. 1990) ("Proof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion alleged in the indictment."); *United States v. Burke*, 781 F.2d 1234, 1243 (7th Cir. 1985) (where private investigator on trial for extorting clients argued that he intended to report clients to FBI, court sustained decision excluding evidence that, in earlier years, he provided information to FBI, stating "[e]vidence that the defendant frequently performs lawful or laudable acts does not often establish that some subsequent act is also lawful or laudable").  Evidence of other lawful behavior is irrelevant because acts of honesty or good deeds do not prove an absence of dishonest acts.  *See, e.g., United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978)("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."); *United States v. D'Arco*, 1991 WL 264504, at *1 (N.D. Ill. 1991) (where government contended that defendant legislator would attempt to focus on occasions where he performed his job lawfully in order to distract jury from charges in indictment, court granted government's motion in limine, ruling that "[e]vidence that defendant acted lawfully on other occasions is inadmissible to prove that he acted lawfully on the occasions alleged in the indictment").

Courts have consistently excluded evidence of specific acts of noncorrupt conduct by charged defendants.  *See, e.g., United States v. Finley*, 708 F. Supp.

906, 914 (N.D. Ill. 1989) (in bribery trial, evidence of noncorrupt transactions excluded); *United States v. Davis*, 673 F. Supp. 252, 261 (N.D. Ill. 1987) (precluding evidence "that the defendant in uncharged transactions discharged his function as alderman in a non-corrupt fashion");  *see also United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) ("evidence of good conduct is not admissible to negate criminal intent"; proffered testimony that was merely an attempt to portray defendant as a good person through the use of prior 'good acts' was properly excluded); *United States v. Marrero*, 904 F.2d 251, 259-60 (5th Cir. 1990) (in false claims prosecution, evidence that defendant did not overcharge in every instance where she had opportunity to do so was irrelevant to whether she overcharged on occasions alleged in indictment); *United States v. Troutman*, 814 F.2d 1428, 1454 (10th Cir. 1987) (where defendant was charged with soliciting political contributions from a specific financial institution in exchange for state business, trial court did not abuse discretion in excluding as irrelevant evidence of defendant's conduct toward other firms from whom he did not solicit contributions in exchange for business); *United States v. Benedetto*, 571 F.2d 1246, 1250 & n.5 (2nd. Cir. 1978), citing *United States v. Kahan*, 479 F.2d 290, 293 (2d Cir. 1973) ("Evidence of prior performance of official duty without bribe-taking [is] inadmissible in [a] bribery prosecution."); *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978) (in bribery case,

inappropriate to permit testimony that charged inspector honestly performed his duties in specific instances); *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955) ("A defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions.").

To hold otherwise would be to eviscerate the carefully drafted limitations of Rule 405, which forbids proof of good character through evidence of specific acts where character is not an element of the charge or defense. *See United States v. Beno*, 324 F.2d 582, 584, 587. Like Rule 403, Rule 405 is intended to prevent the series of wasteful "mini-trials" which would inevitably ensue if the defendants were allowed to pursue this irrelevant line of inquiry. The Advisory Committee Notes for Rule 405 conclude that proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." *See e.g., Grimm*, 568 F.2d at 1136 (evidence of lawful transactions "could have complicated the case and confused the jury").

To the extent the defendants intend to offer evidence regarding their character, they should be permitted to do so only in accordance with the limitations of Federal Rule of Evidence 405(a). The defendants should not be allowed to introduce evidence that they engaged in legitimate activity on other occasions or otherwise did good deeds – under settled law, this evidence is not relevant to show that they acted lawfully in relation to the charged crimes.

11

### B.     The Defendants Should Be Required to Provide Advance Notice of Any "Good Acts" Evidence They Intend to Offer.

Only under certain circumstances must a defendant give advance notice of evidence, such as when he intends to offer alibi or expert evidence. *See* Fed. R. Crim. P. 12.1, 16(b)(1)(C). Although "good acts" evidence does not fall in these categories, any evidence or argument concerning "good acts" almost certainly will be inadmissible.  Accordingly, and in order to avoid surprise and possible error, it would be proper for the Court to require that the defense disclose any such evidence or argument in advance, in order to provide the government an opportunity to object. *See Shields*, 1991 WL 236492, at *2 (N.D. Ill. 1991)(where defendant state judge sought to introduce evidence that he acted in a given way in certain cases, and court questioned  relevance of evidence and cautioned that Fed. R. Evid. 403 "might counsel against conducting mini-trials on events which are remote from the occurrences at issue here," court required defendant to make detailed offer of proof at least four business days prior to the introduction of proffered evidence).

Absent such notice, the defense should be barred from referring to specific "good acts" in opening statements.  In *United States v. Kemp*, 362 F. Supp. 2d 591 (E.D. Penn. 2005), the defendants did not seek a pretrial ruling regarding their intent to offer certain evidence, including evidence of "consciousness of

innocence" and evidence that certain unspecified improper motives had influenced the government and/or the grand jury.  The defense raised these purported defenses in the opening statement, after which the government moved *in limine* to preclude these defenses.  In response, the defendants argued that, not only was the evidence admissible, but also that the fact that the defenses already had been argued to the jury in the opening statement was reason enough to allow the evidence to go forward.  The district court, however, ruled that the evidence was not admissible and rejected "as an extreme form of 'bootstrapping' the Defendants' argument that because this purported defense was raised in their counsel's opening argument to the jury without an objection by the government being upheld by the Court, it has necessarily been approved."  *Id*. at 593.

The court likewise rejected the defendants' claim that if the evidence were excluded, a reviewing court would find defense counsel ineffective for arguing a defense they could not support with evidence.  The court noted that, "[c]arried to its logical extreme, [this position] would encourage defense counsel to include clearly inadmissible evidence in their opening arguments because their failure to follow through with supporting evidence would automatically entitle their clients to a new trial and/or post-conviction remedy.  This argument would also force trial judges to determine admissibility as of the time of the opening

argument – a novel concept." *Id.* at 593-94.  The Court observed that the defense gave neither the government nor the court advance notice of its intent to argue to the jury about evidence that experienced defense counsel had reason to know was of doubtful admissibility, and, rather than admitting the evidence, it ruled that it may instruct the jury to ignore counsel's argument.  *Id.* at 594.

The *Kemp* decision illustrates the difficulties that occur when parties do not give pretrial notice of their intention to introduce evidence of doubtful relevance and admissibility.  To avoid such difficulties, the government respectfully requests that the defendants provide advance notice of their intent to offer evidence of other "good acts." Absent such notice, the government respectfully requests that the defense be barred from referring to specific "good acts" in opening statements, and from introducing such evidence.

## V.     Motion to Exclude Evidence and Argument Concerning Christopher Kelly's Death and Suicide

Christopher Kelly, formerly a defendant in this case, died of an apparent suicide on September 12, 2009. Public comments made by defendant Rod Blagojevich and his counsel at the time of Mr. Kelly's death indicate that defendants may attempt to insert Mr. Kelly's death or suicide into the case through evidence or argument.

Neither Mr. Kelly's death, nor the fact that it resulted from an apparent

suicide, has any bearing on any matter at issue in this case. Accordingly, the government moves this Court to exclude any evidence or argument concerning death or suicide of former defendant Christopher Kelly.

## VI.   Motion to Exclude Evidence and Argument Concerning Defendant Rod Blagojevich's Impeachment and Removal From Office

The government moves to bar defense counsel and the defendant from introducing testimony, evidence, or argument regarding defendant Rod Blagojevich's impeachment and removal from office, which occurred after the time frame of the alleged criminal conduct in the instant case.

Defendant Rod Blagojevich's impeachment and removal from office has no relevance to this case. The jury must judge the evidence presented in this forum, not evidence or argument previously presented in a different forum. *Cf. United States v. Jones*, 808 F.2d 561, 566 (7th Cir. 1986) (upholding exclusion of evidence of acquittal on same charge in previous state proceeding). "The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." *Shannon v. United States*, 512 U.S. 573, 579 (1994). Defendant Rod Blagojevich's impeachment occurred after the alleged criminal activity at issue in the instant case and, therefore, can have no relevance to the issues the jury must determine. Not only irrelevant, testimony about the impeachment hearings would confuse the jury as it involves a

15

completely different fact-finding proceeding that operates under different procedures and burden of proof.

Moreover, whether defendant Rod Blagojevich should have been impeached and how the impeachment hearings should have been or were conducted are not issues the jury needs to decide or consider. Such testimony would simply constitute an improper attempt to shift the focus from defendant Rod Blagojevich's criminal conduct to allegations about the consequences of the government's charges, which are not pertinent. *See generally United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"). Just as the jury may not consider the consequences of a guilty verdict, *Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000), so too it should not consider any alleged consequences of the government's decision to bring criminal charges. Whether criminal charges in this case contributed to defendant Rod Blagojevich's impeachment – or to any other professional or personal problems – has no bearing on whether he committed the crimes with which he is charged. Accordingly, testimony about defendant Rod Blagojevich's impeachment should be barred.

## VII.  **Motion to Recall Certain Government Witnesses**

The defendants are charged with being members of a lengthy criminal conspiracy. The presentation of evidence in the instant case necessarily will involve numerous witnesses, numerous recordings, and numerous documents, including bank and phone records. Many of the financial and telecommunication records in the instant case will only make sense in the context of testimony from other witnesses.  In order to provide the most effective presentation for the ascertainment of truth, the government moves for permission to recall certain government witnesses, particularly, government analysts and agents.  These analysts and agents will testify, in large part, about a variety of business records, often in summary form.

Permitting recall of witnesses will allow the jury to hear about a particular series of transactions at a time when the records are most germane to the other government witnesses being presented.  If bifurcation does not occur, the government will be forced to call a witness either very early or very late in the case to discuss a variety of records related to events that either the jury has not heard about yet (and therefore has no context for) or may have heard in testimony that occurred months earlier (and hope that the jury remembers the event in detail).  This is not a fair or effective way for the jury to ascertain the truth.  Given that this case deals with many events involving a variety of

transactions with multiple companies and multiple State of Illinois entities, the jury will be best positioned to understand the case through the bifurcation of certain government witnesses.

The mode and order of interrogation of witnesses and the presentation of evidence is governed by Fed. R. Evid. 611(a) which states that "[t]he court shall exercise reasonable control . . .so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."  "Permitting the recall of a witness is within the sound discretion of the district court." *United States v Dent*, 984 F.2d 1453, 1463 (7th Cir. 1993); *see also United States v Brown*, 954 F.2d 1563, (11th Cir. 1992) (holding that the district court did not abuse its discretion in allowing the government to recall a witness where it was material to the ascertainment of the truth and helpful to the jury).  Moreover, "witnesses can testify in multiple capacities." *United States v Bankston*, 182 F.3d 296, 312 (5th Cir. 1999).

In *United States v Messino*, 843 F. Supp. 1177 (N.D. Ill. 1995), the government was permitted to recall certain witnesses during its case in chief "in order to present its case in a chronological, coherent matter," particularly as it would be beneficial to the jury's following of the case.  *Id.* at 1182 (citations omitted); *see also United States v Puckett*, 147 F.3d 765, 770 (8th Cir. 1998)

18

(holding that the district court's decision allowing the government to recall law enforcement witnesses so the evidence could be presented in chronological order did not lend undue credibility to their testimony or interfere with effective cross examination). Further, the D.C. Circuit approved the government presenting its evidence count by count, such that two of its central witnesses testified five and seven times. *United States v Graham*, 83 F.3d 1466, 1475 (D.C. Cir. 1996).

In the instant case, it would be extremely beneficial to the jury and would promote the ascertainment of truth if the government were permitted to recall certain of its witnesses. These witnesses will discuss a variety of business records relevant to the charges. They likewise will publish a variety of exhibits to the jury. Permitting the government to recall the witnesses will allow for the presentation of this evidence in a coherent manner, and will thus assist the jury in understanding the complex weave of names and events concerning which the witnesses will testify. Requiring the government to call these witnesses only once will result in the jury being presented with a variety of unrelated records and testimony at one time, and being left to discern for themselves the relevance of evidence they might hear months later. In short, it would impede the truth-seeking function of the jury.

## VIII.  <u>Conclusion</u>

For the aforementioned reasons, the government respectfully requests that

its motions *in limine* be granted.

<div style="margin-left:40%">

Respectfully submitted,
PATRICK J. FITZGERALD
United States Attorney


BY:    <u>/s/ Reid Schar            </u>
REID SCHAR
CHRISTOPHER NIEWOEHNER
CARRIE HAMILTON
Assistant United States Attorney
United States Attorney's Office
219 S. Dearborn St., 3rd Floor
Chicago, Illinois  60604

</div>

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following documents:

## GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*

were served on April 19, 2010, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

s/Reid Schar
REID SCHAR
Assistant United States Attorney
219 S. Dearborn Street
Chicago, IL 60604
(312) 353-8897