IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 08CR888 |
| | ) | |
| ROD BLAGOJEVICH and | ) | Judge James B. Zagel |
| ROBERT BLAGOJEVICH | ) | |

DEFENDANTS' MOTION TO STAY THE PROCEEDINGS PENDING THE
SELECTION OF A PETIT JURY IN ACCORDANCE WITH THE LAW

Now Come Defendants Rod Blagojevich and Robert Blagojevich, by and through undersigned counsel, and hereby move this court to enter an order to stay the proceedings pending the selection of a petit jury in accordance with the law. In support thereof, Defendants state the following:

On March 29, 2010 this court requested a separate jury panel pursuant to Local Rule 47.1(b). Since that time, it is defense counsel's understanding[1] that this court has been engaging in "hardship screening" of potential jurors. Defendants have not been privy to the undertaking of the court in the early stages of selecting a petit jury to hear this cause. Indeed, the early stages of jury selection have been conducted off the record.

On May 17, 2010, this court indicated that the results thus far were that ninety (90) potential jurors had survived the initial hardship screening and that the court was continuing to screen potential members of the jury panel. This court also

---

[1] This entire process is occurring without the defendant or defense counsel's presence or involvement. As such, the defense is interpreting what it understands is occurring behind closed doors and urges the court to conduct a more transparent process.

1

indicated that there were other potential jurors that required further examination of the court. The underlying process continues to occur off the record and counsel for defendants have not been furnished any information regarding these prospective members of the venire (many of whom have apparently been pre-screened and excused, all *ex parte*).

Counsel has a good faith belief that introductory questionnaires were sent to 400 prospective jurors. The questionnaire indicated that the instant trial will take several months. One question asked the prospective juror if serving on the jury for several months would pose a hardship. Out of those 400 prospective jurors, it is the defendant's belief that approximately 75% (close to 300) were summarily excused by the court for hardship based upon the length of the trial. The District Court acted improperly by unilaterally excusing, *ex parte*, over 75% of the jury pool without allowing the parties to examine the prospective jurors in *voir dire* as to whether an undue hardship or extreme inconvenience truly existed.

The instant proceedings should be immediately stayed and the process started anew for the following reasons:

1. <u>Jury selection in this case does not conform with the Jury Selection Act and must be stayed pursuant to 28 U.S.C. § 1867.</u>

In federal court, 28 U.S.C. § 1865(b) sets certain minimum requirements for jury service. The statute provides that any person is qualified to sit as a juror unless: (1) he is not a United States citizen who is at least 18 years of age who has resided in the judicial district for a year; (2) unable to read, write, and understand the English language with sufficient proficiency to satisfactorily fill out a juror

2

questionnaire; (3) he is unable to speak the English language; (4) because of a mental or physical infirmity, he is incapable of rendering satisfactory jury service; or (5) he has a charge pending against him for or has been convicted of (in state or federal court) a crime punishable by imprisonment for more than one year and his civil rights have not been restored.

In addition to the minimum requirements set forth in § 1865(b), 28 U.S.C. § 1866(c), provides in pertinent part that:

> [N]o person or class of persons shall be disqualified, excluded, excused, or exempt from service as jurors: Provided, That any person summoned for jury service may be (1) **excused by the court**, or by the clerk under supervision of the court if the court's jury selection plan so authorizes, **upon a showing of undue hardship or extreme inconvenience**, for such period as the court deems necessary, at the conclusion of which such person either shall be summoned again for jury service under subsections (b) and (c) of this section or, .... 28 U.S.C. § 1866(c)(1).

(Emphasis added).

The Jury Selection and Service Act ("the Act") was enacted to ensure that potential jurors are selected at random from a representative cross-section of the community and that all qualified citizens have an opportunity to be considered for service. *See* H.R.Rep. No. 1076 (1968). The Act provides that each district court devise a "local plan" for the selection of jurors consistent with the objectives of randomness and non-discrimination set forth in §§ 1861 and 1862.

Jury service is a duty as well as a privilege of citizenship. Moreover, jury service is a duty that should be excused only in the most extreme, unavoidable

3

circumstances – for example, where financial embarrassment is such as to impose a real burden and severe hardship validly exists. *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 224, 66 S.Ct. 984 (1946) (reversal where jury commissioner systematically excluded all daily wage earners on the basis of financial hardship belief). *See also United States v. Bonas*, 344 F.3d 945, 950 (9th Cir. 2003) ("Financial hardship is not always an adequate basis for being excused from jury service. Serving is a public duty, and only severe hardship can form the basis for excusing a member of the venire."); and *United States v. Candelaria-Silva*, 166 F.3d 19, 31 (1st Cir. 1999) ("Jury duty works a burden on all called to serve.").

The District Court acted improperly by unilaterally excusing *ex parte* any potential members of the venire (let alone 75%) without allowing the parties to examine the prospective jurors in *voir dire* as to whether an undue hardship or extreme inconvenience truly existed.

In *Candelaria*, *supra,* of the 80 prospective jurors, only 62 appeared for jury orientation. Of the 18 excused by the court, six jurors were excused for undue hardship – one because he was a night shift medical technician at a hospital and three were dismissed because they had various business and personal travel plans that would conflict with the trial. *Candelaria*, 166 F.3d at 30. The Court of Appeals held that the district court abused its discretion when it dismissed these three potential jurors, ruling that excusal was improper without allowing the parties to examine the prospective jurors in *voir dire. Id.* at 31. See also, *United States v. Calabrese*, 942 F.2d 218 (3rd Cir. 1991), where the district court excused 155 jurors

4

based on hardship but the defendant appealed the district court's dismissal of 12 jurors based upon their response that they knew the defendant. The Court of Appeals in *Calabrese* held that the district court erred when it excluded the jurors in violation of the Jury Selection and Service Act, reversed the defendant's narcotics convictions, and remanded the cause for a new trial.

Here, the court's excusal of 75% of the original jury pool, off the record and outside the presence of the defendants and counsel, violated the Jury Selection and Service Act (as well as Rod Blagojevich and Robert Blagojevich's Fifth and Sixth Amendment rights).

Such *ex parte* prescreening and excusal allows for jurors to essentially exclude themselves based on hardship claims made through the Clerk or through the trial judge, without questioning or further examination.

Pursuant to 28 U.S.C. § 1867, defendants (in accordance with the statute) respectfully request that this Court stay the proceedings based upon the substantial failure to comply with the provisions of the Jury Selection Act.

2. <u>Defendants have the right to be present at all stages of trial, including jury selection.</u>

The court's current *ex parte* actions constitute jury selection. The clerk and this court are inquiring of jurors and eliminating them for cause based on their ability to serve. This jury selection is being done without the presence of the defendants or counsel. Since jury selection is part of trial, the defendants and counsel have the right to be present. (*See*, Federal Rule of Criminal Procedure 43 (Defendant's presence required at every trial stage, including jury impanelment.) *See also*,

*United States v. Krout,* 56 F. 3d 643 (5th Cir. 1995) (trial commenced when jury selection process began) and United States v. A-A-A, 788 F.2d 242, 246 (4th Cir. 1986) (trial begins at voir dire under the Federal Speedy Trial Act)).

3. <u>Defendants have the right to a public trial.</u>

The defendants have the right to a public trial. *See*, U.S. Const., Amend. VI. Notably, the public also has the right to a public trial vis a vis the First Amendment. Jury selection constitutes part of the trial and the jury selection process should be made public.

4. <u>Defendants are precluded from participating in the most basic functions of jury selection in violation of their constitutional rights.</u>

The jury selection process, including the defendants' right to a trial by jury comprised of a fair cross-section of the community, is integral to the right of a *fair* trial. *See, In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."). *See also, Castaneda v. Partida*, 430 US 482, 492-93 (1977) (equal protection implications); *Taylor v. Louisiana,* 419 US 522, 528 (1975) (Sixth Amendment grounds); *Batson v. Kentucky*, 476 US 79, 85-87 (1986) (equal protection grounds); *United States v. Williams*, 264 F.3d 561, 567 (5th Cir. 2001) (Sixth and Fifth amendments); *United States v. Grisham,* 63 F.3d 1074, 1077 (11th Cir. 1995) (Sixth and Fifth amendments).

*Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. *Rosales-Lopez v. United States*, 451 U.S. 182, 188, 101 S.Ct. 1629, 1634 (1981).

The defendants have the right to challenge any prospective "strikes" or excusals made for a variety of reasons. By pre-screening and striking potential jurors without the defendants' presence or without any information as to the reasons for the strikes and the demographic background to each potential juror, the defendant is prevented from challenging the dismissal of any potential juror. The defendants have the right to be present to make their objections. At the very least, the defense should be made aware of who has been stricken, the bases for elimination, and all the necessary demographic background of each individual. In order to make the required *prima facie* case for improper exclusions, this information is critical to a potential objection – the intentional nondisclosure unfairly prevents the defendants from his right to a fair trial.

The jury selection process should be transparent – at the very least, the defendants should be involved in the process. Efficiency should not overtake constitutionality. The defendants have fundamental rights under the Sixth Amendment of the constitution to be tried by a jury consisting of a fair and random cross-section of the community. *Duren v. Missouri*, 439 US 357, 363-64 (1979), *Taylor v. Louisiana*, 419 US 522, 538 (1975); *United States v. Raszkiewicz*, 169 F.3d 459, 462 (7th Cir. 1999) ("[t]he Constitution requires that . . . the venire of petit jurors be chosen from a fair cross-section of the community.")

The defendants understand the potential concern for ensuring that the jury is impaneled with twelve citizens who are committed to keeping an open mind and engaging in a full deliberation that will take place after many months of testimony.

7

In fact, it is safe to say that no one's interest in an attentive and fair jury is more significant than the defendants' themselves. The court's concerns for expediency could surely be satisfied by open process by which defendants are able to participate in the selection process – at the very least, defendants are entitled to be made aware the details of the process thus far, as well as the identifying information of those members of the venire who have already been *ex parte* excused.

5. <u>This court should stay jury selection pending resolution of the matter currently pending before Justice John Paul Stevens, Seventh Circuit Justice of the Supreme Court.</u>

On May 18, 2010, defendants' "Emergency Application for Stay of Trial Proceedings" was docketed in the Supreme Court (Docket No. 09A1121) and served on this Court and on the government.

Justice Stevens ordered the government to file a response by May 28, 2010. As of the time of this filing, the Government has not responded. The issue of whether the instant trial should proceed (prior to the High Court's honest services ruling) is squarely before Justice Stevens. It would be improper and an abuse of discretion to proceed with its present jury selection while the matter is before Justice Stevens.

There exists a reasonable possibility that Justice Stevens will rule that this court's jurisdiction to proceed to trial (and thus conduct jury selection) has been divested. Even assuming *arguendo* that this court has jurisdiction to move forward to trial, defendants urge the court to exercise its discretion and halt jury selection, pending Justice Stevens' ruling on the defendants' Emergency Application.

8

Conclusion

To continue to evaluate claims of undue hardship of potential jurors in this case, without disclosing the details of the process nor including the defendants in the process in any sufficient manner is fundamentally unfair. The Supreme Court has ruled that "our system of law has always endeavored to prevent even the probability of unfairness." *In re Murchison*, 349 US at 136. The current scheme of jury pre-screening and off-record, *ex parte* proceedings violates the constitutional rights of the defendants as well as the Jury Selection Act.

The cautionary language in *Taylor v. Louisiana*, 419 US 522, 530 (1975) is instructive:

> The purpose of a jury is to guard against the exercise of arbitrary power - - to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge. This prophylactic vehicle is not provided if the jury pool is made up of only special segments of the populace or if large, distinctive groups are excluded from the pool.

Certainly, the current *ex parte* pre-screening of jurors does not comport with the Fifth or Sixth Amendments, the Jury Selection Act nor well-settled federal jurisprudence. A fair, properly-selected jury is an essential right of the defendants. The only way to rectify the foundational problems already present by nature of the *ex parte* pre-selection process is to stay the proceedings, provide disclosure as to the off-the-record proceedings to date, and begin jury selection anew.

WHEREFORE, Defendants Rod Blagojevich and Robert Blagojevich pray that this Honorable Court disclose the details of jury selection thus far, issue an order staying the proceedings and begin jury selection anew and in accordance with the U.S. Constitution and the Jury Selection Act.

Respectfully Submitted,

/s/ Sam Adam                                        /s/ Cheryl A. Schroeder

Counsel for Rod Blagojevich          Counsel for Robert Blagojevich

**Counsel for Rod Blagojevich**
SHELDON SOROSKY
SAM ADAM
MICHAEL GILLESPIE
SAMUEL E. ADAM
AARON GOLDSTEIN
LAUREN KAESEBERG
6133 S. Ellis
Chicago, IL 60637
(773) 752-6950


**Counsel for Robert Blagojevich**
MICHAEL D. ETTINGER
CHERYL A. SCHROEDER
ETTINGER, BESBEKOS AND SCHROEDER, PC
12413 S. Harlem Avenue, Suite 203
Palos Heights, IL 60463
(708) 923-0368