IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 08CR888 |
| | ) | |
| ROD BLAGOJEVICH and | ) | Judge James B. Zagel |
| ROBERT BLAGOJEVICH | ) | |

DEFENDANTS' *SUPPLEMENT* TO
MOTION TO STAY THE PROCEEDINGS PENDING THE
SELECTION OF A PETIT JURY IN ACCORDANCE WITH THE LAW

Now Come Defendants Rod Blagojevich and Robert Blagojevich, by and through undersigned counsel, and hereby supplement their previously-filed Motion to Stay the Proceedings Pending the Selection of a Petit Jury in Accordance with the Law, and hereby state the following:

Defendants respectfully request that this Court stay the proceedings and begin jury selection anew for the additional, supplemental, reasons as follows:

The selection process underway in this court amounts to *voir dire*, at which the defendants have a right to be present.

There may exist a distinction in some cases between administrative prescreening of jurors and voir dire as a critical stage of proceedings. In this case, the jury selection that has already taken place is not purely administrative or ministerial. In *United States v. Bordallo*, 857 F.2d 519 (9th Cir. 1988), the district court excused prospective jurors while neither the defendant Bordallo, nor his counsel were present (and apparently nor were the prosecutors). *Bordallo*, 857 F.2d at 522. In *Bordallo*, "the prospective jurors knew which case they would hear if

1

chosen as a juror. . ." *Id.* Bordallo objected, and later moved for a mistrial; both were overruled. *Id.* The Court of Appeals ruled that Federal Rule of Criminal Procedure 43 and the defendant's due process rights compelled his presence at the prescreening stage. *Id.*

There is an important distinction between purely administrative prescreening (where prospective jurors are not called in for a particular case, and they do not have an indication of what case they may hear) and the circumstances in this case. In *Bordallo,* the Court of Appeals ruled that the ministerial acts "occur[] before a specific case is called for trial, and thus [do] not involve juror qualifications *as related to a particular criminal case*" (*Bordallo,* 857 F.2d at 522) (emphasis added). The Court of Appeals held:

> This case falls somewhere between the ministerial stage of drawing the prospective juror pool and the formal pretrial narrowing of the pool through voir dire for a particular trial. We conclude the present situation is more appropriately analogized to voir dire, because the prospective jurors knew which specific case they would hear, and some were excused due to factors related to Bordallo's particular cause. Although no particular prejudice is alleged here, circumstances could arise in which a judge, either consciously or inadvertently, excused a disproportionate percentage of a juror population, such as women or minorities or otherwise adversely affected the neutrality of the juror pool. Requiring the defendant's presence before excusing prospective jurors for a specific case protects against such risks. We conclude that either the defendant or his counsel should have been present. Neither was.

*Bordallo,* 857 F.2d at 522.

As in *Bordallo*, the instant case presents a screening process analogous to *voir dire*. Prospective jurors have been informed that they are being asked to sit on a jury that begins June 3, 2010 and will last several months. The prospective jurors either know or have reason to believe that this is jury selection in the Blagojevich case.[1] The defendants have a right to be included in this process – at the very least have input (along with the government) as to the threshold requirements for hardship excusal.

In this case, where hardship inquiries amount to more than ministerial duties (because of the potential for prospective jurors knowledge about this "particular criminal case") the current inquires are a material and critical stage of proceedings.

Additionally because of the circumstances in this case, the pre-screening of jurors amounts to *voir dire* and gives rise to constitutional implications. See, *Snyder v. Louisiana,* 552 U.S. 472, 475 (2008) where in discussing the facts of the case, the Supreme Court considered the hardship screening to be part of *voir dire:*

> *Voir dire* began on Tuesday, August 27, 1996, and proceeded as follows. During the first phase, the trial court screened the panel to identify jurors who did not meet Louisiana's requirements for jury service or claimed that service on the jury or sequestration for the duration of the trial would result in extreme hardship. More than 50 prospective jurors reported that they had work, family, or other commitments that would interfere with jury service. In each of those instances, the nature of the conflicting commitments was explored, and some of these jurors were dismissed.

---

[1] Defendants are not privy to the communications between the court and prospective jurors and thus derives this belief from the few facts that are known.

In *Cohen v. Senkowski*, 290 F.3d 485, 489-90 (2d Cir. 2002), the Court of Appeals ultimately ruled that hardship screenings were acceptable in general circumstances where prospective jurors are brought in and may end up serving on a variety of cases via the court's "administrative empanelment process". However, the court's holding regarding pre-screening is instructive:

> We now hold explicitly [] that pre-screening of prospective jurors is a material stage of trial at which the defendant has a constitutional right to be present. Pre-screening of a jury venire is not comparable to the brief conference between judge and juror in [*Gagnon*], nor a procedure at which a defendant's presence would be "useless," as per [*Snyder*]. Rather, the defendant's "life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers, in the selection of jurors." *Lewis v. United States*, 146 U.S. 370, 373 (1892). As the Supreme Court recognized in *Snyder*, it is in the defendant's "power, if present, to give advice or suggestion or even supersede his lawyers altogether" at *voir dire*. We therefore find that [defendant] had a constitutional right to be present during the pre-screening conducted by the court in his case.

(citations omitted).

<u>Defendants are being unconstitutionally prevented from preserving a record of jury selection and formally request access to the underlying documentation of the process thus far.</u>

In order to adequately challenge certain aspects of jury selection (should the need arise), defendants are required to present a sufficient *prima facie* case of discriminatory intent or systematic exclusion. Under the Sixth Amendment, a defendant has standing to object to the exclusion of a distinctive group from jury

4

selection even if the defendant is not a member of that group and cannot demonstrate any actual prejudice resulting from the exclusion. *Holland v. Illinois*, 494 U.S. 1050 (1990); *Duren v. Missouri*, 439 U.S. 357, 359 n.1 (1979); *United States v. Williams*, 264 F.3d 561 (5th Cir. 2001). To establish a prima facie violation, the defendant must show that a "distinctive" community group is not fairly represented and that this underrepresentation is due to systematic exclusion of the group by the jury selection process. *Duren v. Missouri*, 439 U.S. at 364; *United States v. Miller*, 116 F.3d 641 (2d Cir. 1997).

Composition of the jury may also be challenged on Fourteenth Amendment equal protection grounds, by either the defense or the prosecution, when the prospective jurors are selected in an intentionally discriminatory fashion. *Snyder v. Louisiana*, 128 S. Ct. 1203 (2008); *Miller-El v. Dretke*, 545 U.S. 231 (2005); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994); *Georgia v. McCollum*, 505 U.S. 42 (1992); *Hernandez v. New York*, 500 U.S. 352 (1991); *Batson v. Kentucky*, 476 U.S. 79 (1986); *Castaneda v. Partida*, 430 U.S. 482, 492 (1977).

To the extent that objectionable procedures may arise, defendants are prevented from establishing the required standard under the law to obtain review.

As such, defendants request access to the underlying documentation of the jury selection process thus far. Defendants make this request pursuant to 28 U.S.C. 1867(f) which provides:

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection

> process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion under subsection (a), (b), or (c) of this section, until after the master jury wheel has been emptied and refilled pursuant to section 1863(b)(4) of this title [28 USCS § 1863(b)(4), and all persons selected to serve as jurors before the master wheel was emptied have completed such service. The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion.

In making this request, defendants also assert their rights to be present at this critical stage of the proceeding and the right to a fair and public trial, pursuant to Federal Rule of Criminal Procedure 43, and the Fifth and Sixth Amendments to the United States. See, U.S. Const. Amend. VI, ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ."); *Gannett Co. v. DePasquale*, 443 U.S. 368 (Defendant has a right to a public trial pursuant to the 6th amendment); *Presley v. Georgia*, 130 S. Ct. 721 (2010) ("The Sixth Amendment right extends to a public trial extends to the *voir dire* of prospective jurors. . . The right to an open trial may give way in certain cases . . . such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. Such circumstances will be are rare and the balance of interests must be struck with special care. . . The court must consider reasonable alternatives to closing the proceedings and it must make findings adequate to support the closure." citations omitted); *United States v. Rolle*, 204 F.3d 133 (4th Cir. 2000) (The Sixth Amendment and Fed. R. Crim. P. 43(a) grants the right of the defendant to be

6

present at the *voir dire* of prospective jurors. "A defendant's presence at voir dire is of the utmost importance.")

Numerous constitutional rights attach *before* a jury is sworn, see, *e. g.*, *Brewer* v. *Williams*, 430 U.S. 387, 398 (1977) (assistance of counsel). "Thus in affirming *voir dire* as a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present, the Court wrote: "where the indictment is for a felony, the trial commences at least from the time when the work of empanelling the jury begins." *Lewis* v. *United States*, 146 U.S. 370, 374 (1892). See also, *Swain* v. *Alabama*, 380 U.S. 202, 219 (1965) (*voir dire* "a necessary part of trial by jury"). Jury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice, *Rosales-Lopez* v. *United States*, 451 U.S. 182, 188 (1981); *Ham* v. *South Carolina*, 409 U.S. 524 (1973); *Dennis* v. *United States*, 339 U.S. 162 (1950); *Irvin* v. *Dowd*, 366 U.S. 717 (1961) [(predisposition about the defendant's culpability)]". *Gomez v. United States*, 490 U.S. (1989).

Indications that Congress likewise considers jury selection part of a felony trial may be gleaned, *inter alia*, from its passage in 1975 of the Speedy Trial Act, 18 U. S. C. § 3161 *et seq.* (1982 ed. and Supp. V), and its placement of rules pertaining to criminal petit juries in a chapter entitled "Trial." See Fed. Rules Crim. Proc. 23, 24; cf. *id.*, Rule 43(a) (requiring defendant's presence "at every stage of the trial including the impaneling of the jury").

WHEREFORE, Defendants Rod Blagojevich and Robert Blagojevich pray that this Honorable Court permit the defendants access to the underlying documentation of the selection process thus far, issue an order staying the proceedings and begin jury selection anew and in accordance with the U.S. Constitution and the Jury Selection Act.

Respectfully Submitted,

/s/ Sam Adam                              /s/ Cheryl A. Schroeder

Counsel for Rod Blagojevich      Counsel for Robert Blagojevich

**Counsel for Rod Blagojevich**
SHELDON SOROSKY
SAM ADAM
MICHAEL GILLESPIE
SAMUEL E. ADAM
AARON GOLDSTEIN
LAUREN KAESEBERG
6133 S. Ellis
Chicago, IL 60637
(773) 752-6950

**Counsel for Robert Blagojevich**
MICHAEL D. ETTINGER
CHERYL A. SCHROEDER
ETTINGER, BESBEKOS AND SCHROEDER, PC
12413 S. Harlem Avenue, Suite 203
Palos Heights, IL 60463
(708) 923-0368

## AFFIDAVIT OF ATTORNEY SAM ADAM

I, SAM ADAM, an attorney, being sworn and deposed, state the following:

1. I am an attorney licensed to practice law in the State of Illinois.
2. The initial motion and attached supplement are true and correct in substance and form.
3. Further affiant sayeth not.

/s/ Sam Adam

Counsel for Rod Blagojevich

May 27, 2010

---

## AFFIDAVIT OF ATTORNEY MICHAEL ETTINGER

I, MICHAEL ETTINGER, an attorney, being sworn and deposed, state the following:

1. I am an attorney licensed to practice law in the State of Illinois.
2. The initial motion and attached supplement are true and correct in substance and form.
3. Further affiant sayeth not.

/s/ Michael Ettinger

Counsel for Robert Blagojevich

May 27, 2010