IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 08CR888 |
| | ) | |
| ROD BLAGOJEVICH | ) | Judge James B. Zagel |
| | ) | |

MOTION FOR MISTRIAL
BASED ON ERRONEOUS RULINGS LIMITING
DEFENDANT ROD BLAGOJEVICH'S CLOSING ARGUMENT

    Now Comes Defendant Rod Blagojevich, by and through his attorneys, and hereby moves for mistrial. In support thereof, Defendant states the following:

    Determinations of credibility and findings of fact are the province of the jury. Throughout the closing argument of Attorney Sam Adam, Jr., the government objected approximately three dozen times, with improper objections.  The court, in an apparent endorsement of the government in front of the jury, erroneously ruled on the government's improper objections, making findings of credibility and fact. This violated Rod Blagojevich rights to due process, a fair trial, effective assistance of counsel and the right to present a defense case, in contravention of the United States Constitution, Amendments 5 and 6.

    The court engaged in improper credibility rulings and findings of fact during the closing argument and did so in the presence of the jury.  These are issues for the jury to resolve – not the court.  This was a violation of the rights of Rod Blagojevich and a mistrial is warranted.

    One example was the government's objection to Attorney Adam's characterization of Bill Quinlan as legal counsel and chief ethics officer in the governor's office.  The government improperly objected, stating that a witness testified that a different individual was the chief ethics officer, to which Attorney Adam responded 'that's what rebuttal is for.' The court sustained the objection, and defense counsel pointed out for the court that based on the trial testimony of former deputy governor Bradley Tusk, Attorney Adam was correct.  The testimony of Tusk was:

1

> A: I called Bill Quinlan. **Bill at the time was the general counsel and I believe the chief ethics officer for the Governor's Office.**
>
> Q: What did you explain to Mr. Quinlan?
>
> A: It was similar to the conversation with Mr. Wyma. I let him know what had transpired, and said that he needed to make sure it didn't happen, **and that in his capacity as Chief Ethics Officer he needed to know about it**.

The government's *own witness* testified to Quinlan's role as general counsel and chief ethics officer. Whether or not another witness testified that someone besides Quinlan was ethics officer to the governor is a fact for the jury to consider. It was improper for the court to rule on the credibility of witnesses, and at the same time the credibility of counsel. This is one example of a prejudicial ruling (and improper objection) during the defense closing argument.

A similar occurrence happened when the government objected to Attorney Adam's statement that Pat Magoon testified that the reimbursement rate increase was set to be effective in January, and then the rate increase actually went through *in* January. The court sustained the objection and engaged in a back and forth with counsel where Mr. Adam assured the court that the testimony was consistent with the argument he was making. The court sustained the government's objection, ruling in front of the jury that the testimony was not as Attorney Adam said it was – not only ruling on the credibility of the testimony of Magoon, but also on the credibility of counsel. Later, indeed, defense counsel produced transcript testimony of Patrick Magoon where he said:

> Q: **And is it fair to say that the pediatric rate increase did go through?**
>
> A: Yes, Sir.

On re-direct, moments later, Magoon testified as follows:

> Q: You recalled that the rates would go into effect on January 1st of 2009, isn't that right?

> A: Yes, Sir.
>
> Q: They didn't actually go into effect did they?
>
> A: They did not, sir.
>
> **Q: In fact, they weren't officially increased until later in January, were they?**
>
> **A: Correct, sir.**

Attorney Adam's point – that the increase went through in January – is supported by the record. To continuously interrupt defense counsel to argue which inference from the evidence is "correct" was wholly improper. The court should have at the very least simply instructed the jury that they will decide the facts and attorneys' arguments are not evidence. Instead, the court sanctioned the government's obstructionist behavior and endorsed it to the jury.

The government objected to Attorney Adam around three dozen times. The objections were intended only to obstruct and disrupt the closing argument. The government's objections were disingenuous and misleading. One example of the disingenuous nature of the government's arguments is that during the government's opening-closing argument, (aside from making blatant misstatements of law and fact, for example, that Rod Blagojevich had no right to seek a campaign contribution from Pat Magoon), Attorney Niewoehner put edited segments of jury instructions on the projector. Then, the government had the audacity to object to Attorney Adam reading from a jury instruction during his closing arguments. When the government objected, the court instructed Attorney Adam to read the entire instruction. Then, later, during the rebuttal-closing argument, Attorney Schar tried to read a small portion of an instruction. These tactics by the government were meant only to prejudice the jury, to obstruct the defense closing argument, to attempt the defense from making an effective closing argument.

The court's sanctioning of this strategy by the government is evinced by the court's rulings during the rebuttal-closing argument of Attorney Schar. When defense counsel objected to Attorney Schar, on at least two occasions the court ruled, "This one he gets to finish before I make the ruling on it." Then, moments later, Attorney Schar argued that "There were a lot of other victims outside the ones

you heard in this case." Counsel objected and the court told Attorney Schar "Finish this one too." The court overruled the objection despite the fact that this argument goes *against the evidence.* Each alleged [attempt] extortion or bribe resulted in the agency or the program receiving their respective money, grant, or project.

When Attorney Schar argued, 'Take a step back and decide how should this have been done in the office of governor?' Defense counsel objected, yet Attorney Schar continued on for several more sentences or thoughts. Later, Attorney Schar argued, "Can you imagine if he had gotten it wrong, the consequences of that?" Defense counsel objected, and the court overruled that objection.

Contrast these examples with Attorney Adam's closing argument which was halted when Attorney Adam began to reference an inference or apparent speculation with the jury regarding the evidence regarding $400,000 on suits/clothing. The court sustained the government's objection and even when Attorney Adam asked the court to be able to complete his sentence, this was not permitted by the court.

Defense counsel was prevented from going into a number of appropriate areas during closing arguments. Defendant Rod Blagojevich moves for a mistrial based on the reasons contained in the Motion to Reconsider Missing Witness Instruction or in the alternative Allow Defense Counsel to Argue the Government's Failure to Call Relevant Witnesses, within this motion, and within the oral arguments made before the court on these issues.

WHEREFORE, Defendant Rod Blagojevich prays that this Court grant a mistrial.

                                                Respectfully Submitted,
                                                /s/ Sam Adam
                                                Counsel for Rod Blagojevich

**Counsel for Rod Blagojevich**
SHELDON SOROSKY
SAM ADAM
MICHAEL GILLESPIE
SAMUEL E. ADAM
AARON GOLDSTEIN
LAUREN KAESEBERG
6133 S. Ellis

4

Chicago, IL 60637
(773) 752-6950