IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 888 |
| | ) | Hon. James B. Zagel |
| | ) | |
| ROD BLAGOJEVICH | ) | |

## ROD BLAGOJEVICH'S OBJECTIONS
## TO THE GOVERNMENT'S PROPOSED REDACTIONS

NOW COMES Rod Blagojevich, by and through his attorneys, and hereby respectfully submits objections to the government's additional proposed redactions filed April 7, 2011.  The government has provided to the defense additional proposed redactions in six transcripts that were admitted in the June 2010 trial. The defense has objections to proposed redactions in four of the six recordings that the government submitted to this Court as attachments.  The defense objects to these proposed redactions for the following reasons:

Pursuant to Federal Rule of Evidence 106 ("Rule 106") the government's proposed redactions should be denied.  One of the fundamental principles of Rule 106 is that, "When a . . . recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other . . . recorded statement which *ought in fairness to be considered contemporaneously with it.*"  (Fed. R. Evid. 106) (emphasis added).

1

Rule 106 is a procedural device governing the timing of the introduction of (complete) evidence. Although the defense can present evidence in its case-in-chief, as the government states, that 'option' does not sufficiently safeguard against the introduction of misleading, out-of-context evidence. Particularly in a lengthy trial such as this, the government seeks to play parts of conversations (out of context) that then linger in the jury's mind until months later when the defense may be able to admit evidence that completes the conversation and contextual picture. Rule 106 is crafted for situations just like this case – "the Rule is primarily designed to affect the order of proof." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988) (the rule of completeness protects against the "danger that an out-of-context statement may create such prejudice that it is impossible to repair by a subsequent presentation of additional material.")

The proposed redacted portions addressed in this motion are necessary to place portions of recordings the government seeks to admit into context. "Once relevance has been established, the trial court then must address the second half of the test, and should do so by asking (1) does it explain the admitted evidence, (2) does it place the admitted evidence in context, (3) will admitting it avoid misleading the trier of fact, and (4) will admitting it insure a fair and impartial understanding of all the evidence." *United States v. Velasco*, 953 F.2d 1467, 1475 (7th Cir. 1992) (*citing*, *United States v. Sweiss*, 814 F.2d 1208, 1211-12 (7th Cir. 1987).

The government is misplaced in its reliance on Rule 402 and Rule 403. The government chose to introduce these calls at the June 2010 trial and selected which

portions to redact. The indictment has not changed in a manner that would now render *portions of calls already played at the first trial* no longer relevant. Thus, Rule 402 should not prevent the new proposed redactions from being admitted. As far as Rule 403, the probative value versus the prejudicial impact cannot possibly have been altered so significantly between now and then to render these proposed redactions violative of Rule 403. The fact that a portion of a recording may have reflected positively on Blagojevich does not affect its legal merit.

In the Advisory Committee's Notes in Rule 105 and Rule 403, the committee noted "consideration should be given to the probable effectiveness. . . of a limiting instruction." See Fed. R. Evid. 105, 403, Advisory Committee's Notes. If the Court grants the government's proposed redactions, the defense requests a limiting instruction be made contemporaneously pursuant to problems arising under Rule 106. A proposed instruction[1] would be:

> [You are about to hear] [You just heard] portions of recorded conversations that have been redacted by the government. You should not make any determination about the probative value of these conversations until the end of the case, as you may or may not hear additional portions and/or context of this conversation.

---

[1] Drafted based on Fed. R. Evid. 106 (emphasis added) ("When a . . . recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other . . . recorded statement which *ought in fairness to be considered contemporaneously with it.*") and *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988) (the rule of completeness protects against the "danger that an out-of-context statement may create such prejudice that it is impossible to repair by a subsequent presentation of additional material.")

## Specific objections to redactions proposed by the government

## Tab 1, Call 261

In conferring with the government, the defense initially indicated it did not object to redacting page 1 line 1 through page 3 line 23. However, the defense now does object to that portion being redacted. The government's explanation for the redaction is that it dealt with "the issue of Rahm Emanuel becoming the Chief of Staff to then President-elect Barack Obama and what would then happen to Emanuel's congressional seat" which was not necessary "to put in context or explain" the rest of the call offered for admission (Government's Explanation at 2). The defense objects because that discussion does explain Blagojevich's state of mind as well as provide context for the "emissary" strategy. Insofar as Blagojevich allegedly attempted to ask Tom Balanoff for something in exchange for appointing Valerie Jarrett to the Senate Seat, his conversation about Emanuel goes directly to Blagojevich's state of mind to obtain something in exchange for a political appointment. In the call, Blagojevich discusses how Emanuel asked him to appoint a 'seat-warmer' in his congressional seat for the time period that he worked in Washington, D.C. as Chief of Staff to the President to enable Emanuel to re-claim his seat at a later date. Blagojevich perceived Emanuel in the same way he did Balanoff, as a potential emissary to the President-elect to whom he could allegedly ask for something in exchange for a political appointment. Moreover, the government states that its purpose for introducing this call is "to show the strategy for asking Tom Balanoff for something for defendant personally in exchange for

4

appointing Valerie Jarrett to the Senate Seat." (Government's Explanation at 2). The portion that the government seeks to redact goes directly to the "strategy" the government seeks to introduce. Without the earlier portion of the call (regarding the Emanuel issue), the emissary discussion and Blagojevich's state of mind are not introduced in contravention of Rule 106 and 403.

The defense also objects to the government's proposed redactions on page 4, line 4 through page 5, line 22. This portion contains Blagojevich's initial thought that leads into his subsequent discussion on "the strategy for asking Tom Balanoff for something… personally in exchange for appointing Valerie Jarrett to the Senate seat." (Government's Explanation at 2) This un-redacted portion completes Blagojevich's thought, particularly page 4, line 4, where Blagojevich says, "So, okay. How do we play this? We do our thing today at 1:30, right?" This is the moment that Blagojevich first begins strategizing about how to ask Balanoff for something in exchange for appointing Jarrett. The timing of the press conference that day is then discussed which is critical to strategizing about Balanoff because, as is clear from the call, Blagojevich and Harris are aware that Balanoff will hear about whatever is said at the press conference. Therefore, page 4 lines 14-30 directly relate to the subsequent section proposed for admission. Here, again, is Blagojevich strategizing about whether to have the press conference and, if so, what to say with the knowledge that it will be communicated to Balanoff. Page 5, line 23, where the government now proposes to begin the call, is clearly a continuation of Blagojevich's thoughts which began on page 4, line 4, on the exact topic that the government

5

initially argued to admit that portion of the call in the June 2010 trial. Therefore, pursuant to Rule 106, the proceeding portion of the call, which was admitted in the June 2010 trial, should be admitted again in the retrial.

## Tab 2, Call 281

The defense objects to the portion of the government's proposed redactions on page 9 line 24 through page 10, line 31. This section of the call contains a contiguous portion of a discussion regarding "strategy for asking for something personally in exchange for appointing Valerie Jarrett to the Senate," which is the purpose for which the government offers the call (Government's Explanation of Proposed Redactions, p. 3).

On page 3, line 31-32, Blagojevich states "I've got this thing and it's fucking... golden." After which Scofield changes the topic of the call and asks, "What did Fred say?" at which point the topic changes to the election of Barack Obama and whether Blagojevich could have stopped Obama from becoming president. On page 9 line 24 Blagojevich returns to his previous thought concerning strategy as to how he can benefit from the Senate appointment. On page 10, line 22, Scofield responds by describing the Senate seat as "something that's both important and valuable." Blagojevich and Scofield's thoughts on this issue are contiguous to the portion preceding *and* seceding the proposed redactions. Therefore, this portion of the call, should be admitted pursuant to Rule 106.

## Tab 3, Call 451

The defense objects to redacting page 2, line 41 through page 7, line 22 in the newly proposed redactions by the government. This portion of the call is critical to explaining and clarifying the section that follows as it relates to showing Blagojevich's "personal financial motivation... in relation to the Senate Seat appointment," as the government alleges. Page 2, line 41 begins with a description of why Blagojevich is considering appointing himself in light of the threat of impeachment. Blagojevich's potential impeachment relates directly to his financial situation and his concern with losing his job. Blagojevich's financial situation is explicitly discussed on page 4, line 3. On page 4, lines 7-14 Knapp advises Blagojevich that appointing himself makes him a national joke, which spurs the subsequent section proposed for admission. After Blagojevich is told he should not appoint himself, he begins discussing the potential appointment of Valerie Jarrett, which is at the heart of the portion offered for admission. This segue in the conversation occurs on page 5, lines 17-20, which includes HHS (page 5 lines 2-27), ambassadorships (page 5 lines 28-page 6 line 4), and a job on a corporate board for his wife (page 6, lines 10-page 7 line 22). Each of these issues presents financial opportunities relating directly to his motivation that the government states is their purpose for offering the rest of the call. The discussion concerning a corporate board position for Blagojevich's wife transitions into the section the government proposes to admit and is essential to clarifying and explaining the subsequent

portion, which completes Blagojevich's thought and is a contiguous conversation. This portion should be admitted as it was in the June 2010 trial.

## Tab 4, Call 610

The defense objects to the government's additional proposed redactions on page 4, line 17 through the end of the call. This section concerns a "conversation about fundraising between Blagojevich and Robert Blagojevich" which was the government's explanation to this Court prior to its admission in the June 2010 trial (Government's Explanation at 10). This section should be admitted again pursuant to Rule 106 as it relates directly to the preceding section of the call, which the government proposes to admit. Both parts of the call concern obtaining certain amounts of fundraising "before the end of the year" (page 1, line 23-24, page 2, lines 15-16, page 3, line 9 and page 4, lines 13-16). The subsequent section the government now proposes to redact is necessary to clarify and explain what Blagojevich meant by this. Pages 4-5 concern other potential fundraisers who they are counting on contributions from before the end of the year. Page 6, line 1-24 clarifies Blagojevich and his brother's intent and motivation behind trying to get money before the end of the year and explains why Blagojevich is so frantic about obtaining campaign contributions from John Johnston, Gerald Krozel and Patrick Magoon in the section offered for admission (p. 1-3). Pursuant to Rule 106, this redacted portion should be admitted as it was in the June 2010 trial.

8

For the above reasons, the Court should deny the additional redactions proposed by the government.

Respectfully Submitted,

/s/ Elliott Riebman
One of the Attorneys for Blagojevich

**Counsel for Rod Blagojevich**
SHELDON SOROSKY
AARON GOLDSTEIN
LAUREN KAESEBERG
ELLIOTT RIEBMAN
158 W. Erie
Chicago, IL 60654