UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 888 |
| | ) | Hon. James B. Zagel |
| ROD BLAGOJEVICH, et al. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTIONS *IN LIMINE* IN ADVANCE OF RETRIAL**

The United States of America, by its attorney, Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, respectfully submits this response to the defendant's motions *in limine* in advance of retrial.

**INTRODUCTION**

Defendant has filed motions *in limine* to preclude the admission of certain evidence which he claims is irrelevant or overly prejudicial in light of the Supreme Court's decision in *Skilling v. United States*, 561 U.S. –, 130 S. Ct. 2896 (2010) and various other relief. As demonstrated below,*Skilling* had no impact on the relevance of any of the evidence defendant seeks to exclude, and defendant is not entitled to the other relief he seeks. Defendant's motions *in limine* therefore should be denied.

1

**DISCUSSION**

**I.** **None of the Government's Evidence Was Rendered Irrelevant or Unduly Prejudicial by the Supreme Court's Decision in *Skilling v. United States*.**

To simplify matters, we begin by identifying two topics about which the government does not intend present evidence during its case in chief, although such evidence would be relevant and admissible: (1) defendant's interest in serving on the Board of the University of Illinois; (2) defendant's efforts to have members of the Chicago Tribune editorial board fired. If plans change regarding either subject, the government will raise the issue with the Court before offering any evidence; in any event, the government reserves the right to cross-examine defense witnesses, including the defendant should he elect to testify, with respect to either or both of these subjects.

With respect to the other evidence challenged by defendant, as this Court has previously held, the charges in this case fall well within the "core"areas of bribery and kickbacks held by the Supreme Court in *Skilling* to pass Constitutional muster. Thus, the Supreme Court's decision in *Skilling* affected neither the charges nor the relevance or admissibility of evidence to be presented at trial.

**A.** **Evidence Regarding Board Appointments**

Contrary to defendant's contention, evidence related to the potential consolidation of certain boards and commissions, and appointments to such boards and commissions is directly relevant to prove that Rezko, the defendant, and others schemed to use the defendant and Monk's official powers for their personal enrichment. In particular, Rezko paid the defendant by funneling to his wife substantial sums of

money for little or no work. In exchange, defendant and Monk provided Rezko the ability to name individuals to various State boards and other State positions who could, and would, use those positions to be of assistance to Rezko's interests. In addition, and particularly as it relates to Ata, as charged in paragraph 8 of the wire fraud scheme, the defendant appointed Ata to the Board after obtaining two $25,000 contributions from Ata, and after informing Ata, after receiving the second contribution, that Ata needed to get a State job where Ata could make a considerable amount of money.

In addition, the general delegation to Rezko and Kelly of making Board appointments and filling jobs is directly relevant and helps support and explain Monk's testimony that the defendant, Monk, Rezko, and Kelly had agreed to obtain personal benefits in relation to State action. *Cf. United States v. Salameh*, 152 F.3d 88, 122-23 (2d Cir. 1998) (noting that evidence that assists the jury in understanding a witness's testimony is generally admissible, even if disturbing). Specifically, in the first trial, Monk testified that Blagojevich personally made decisions as to who would be on boards and commissions, 6/10/10 Tr. 13-15, and that Rezko and Kelly made recommendations for applicants for board positions which Monk shared with defendant, *id.* at 17-24. Moreover, Monk testified that defendant selected candidates recommended by Rezko and Kelly in filling the Illinois Finance Authority board, *id.* at 29-31, and that Ata, whom defendant selected as executive director after receiving campaign contributions, was a Rezko candidate, *id.* at 32-33. It can hardly be disputed that both Rezko and Kelly were extremely active in State government although neither

3

was actually a State employee and all of the testimony about defendant's delegation of power to Rezko and Kelly supports Monk's testimony about the charged scheme, and was directly relevant to prove that defendant exchanged state actions for campaign contributions and generally used his office for self-enrichment.

## B. Evidence Regarding Personal Expenditures

As the Court has recognized, evidence of the fact that defendant's personal expenditures exceeded his income is relevant to defendant's motive to commit the charged offenses. The government has the right to present its case with "[the] persuasive power of the concrete and particular," *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997), and relevant evidence may not be excluded unless its probative value is outweighed by the potential for unfair prejudice, see Fed. R. Evid. 403. The Supreme Court has held that, in this context, "unfair prejudice" means that the evidence could "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. Evidence concerning the defendant's expenditures is clearly not so inflammatory or prejudicial as to require exclusion. *United States v. Kapp*, 419 F.3d 666, 677 (7th Cir. 2005) (affirming admission of evidence over claim that evidence was disturbing and tended to arouse emotional antipathy against the defendant); *United States v. Lightfoot*, 224 F.3d 586, 588 (7th Cir. 2000) (holding evidence should not be excluded merely because it might be graphic or disturbing). Nevertheless, the government does plan to present less evidence on this topic than it did in the first trial.

### C. Evidence that Defendant Failed to Give His Full Attention To His Job as Governor

Defendant is charged with devising and participating in a scheme to use his office for personal gain by repeatedly exchanging, and attempting to exchange, state action for personal benefit; evidence showing that defendant prioritized his personal interests over those of the state is directly relevant to show the existence of the scheme, as well as the fact that defendant engaged in the charged conduct knowingly and intentionally. Such evidence is as relevant after *Skilling* as it was before, and was not overly inflammatory or unfairly prejudicial. *See Old Chief*, 519 U.S. at 180. "Evidence that is probative of an element of the offense should be admitted in all but the most egregious cases." *United States v. Smith*, 502 F.3d 680, 687-88 (7th Cir. 2007). *See also Lightfoot*, 224 F.3d at 588 ("revolting" evidence held admissible despite risk of prejudice).

### D. Evidence Concerning Defendant's Desire to Deny State Business to Banks in Retaliation for their Failure to Assist his Wife, And Concerning His Wife's Contract with Rezmar

Defendant's statement to John Harris that banks that failed to assist his wife when she was looking for employment after getting her Series 7 license should get no state business is highly probative of defendant's efforts to use his office for personal benefit, and thus, directly relevant to prove the charged scheme to defraud, and defendant's intentional participation in that scheme. Defendant's argument that the statement apparently was merely an expression of frustration, Mot. 11-12, is an argument regarding how defendant's statement should be interpreted and how much

weight the statement should be given. Defendant is of course free to make this argument to the jury; it provides no basis, however, for excluding evidence that is clearly directly relevant to defendant's knowing and intentional participation in the charged scheme. *Cf. United States v. Boone*, 628 F.3d 927, 936 (7th Cir. 2010) (stating that, because "[a] person's state of mind is rarely susceptible of proof by direct evidence, . . . specific intent to defraud may be, and most often is, inferred from the totality of the circumstances, including indirect and circumstantial evidence.") (citations omitted).

As indicated above, evidence concerning defendant's wife's employment contract with Rezmar was directly relevant to show how payments were funneled by Rezko to defendant in exchange for defendant's and Monk's permitting Rezko to name individuals to various state boards and other state positions for the purpose of benefitting Rezko and defendant financially. As such, the evidence was directly relevant to prove the charged scheme to defraud, and nothing in the Supreme Court's opinion in *Skilling* suggests otherwise.

### E. Efforts to Appoint Defendant's Wife to the Pollution Control Board or Get Her Another Job

As is the case with other evidence relating to defendant's efforts to use the power of his office to obtain employment for his wife, and thus enrich himself, evidence concerning defendant's desire to get his wife a highly-paid appointment to the Pollution Control Board is highly probative of the nature of the charged scheme (to use the powers of his office for personal enrichment), and of defendant's knowing and

6

intentional participation in that scheme. The fact that this aspect of the scheme ultimately did not come to fruition did not, as defendant suggests, render this evidence inadmissible. To the contrary, all aspects of scheme to defraud need not be "illegal if considered separately; rather, it is sufficient that the scheme as a whole involves fraudulent conduct." *United States v. Feldman*, 711 F.2d 758, 764 (7th Cir. 1983).

### F. Evidence Regarding Election Night Event at Grant Park

Evidence concerning this incident is directly relevant to show the nature of the defendant's interactions with Bob Greenlee and other employees, to explain the testimony of such employees, and to rebut the defense that defendant merely accepted and relied upon the advice of "advisors." Defendant makes no effort to explain how the probative value of such evidence is outweighed by the risk of unfair prejudice, and no explanation is apparent. In short, the argument lacks any merit.

### G. Additional Allegations

Defendant's arguments regarding additional evidence all rest on the same faulty premise: that every action alleged to be part of the scheme to defraud must constitute a charged crime in and of itself. As indicated above, that is not the case. *See Feldman*, 711 F.2d at 764. Moreover, it is apparent that the evidence challenged in this portion of defendant's motion is highly relevant and probative, and none of it is cumulative or unduly prejudicial.

- The solicitation of Joe Cari is specifically charged as part of the scheme at paragraph 9 of the wire fraud count and is direct evidence that the defendant intended to trade official action for personal benefits in the form of campaign contributions. As was the case with defendant's statements regarding banks that failed

to cooperate in defendant's wife's efforts to find employment, defendant is entitled to dispute the meaning of this conversation, but that dispute goes to weight and not admissibility. The defendant's statement is a party admission directly relevant to his guilt on the charged scheme, and is not cumulative or unfairly prejudicial.

- Likewise, evidence relating to the Pension Obligation Bond is charged at Paragraph 6 of the wire fraud scheme, and evidence concerning that deal, and other bond deals, is directly relevant to the scheme to defraud.

- Defendant fails to identify what is meant by "potential job swap." If that term is meant to refer to the aspect of the charged scheme related to the Senate seat, evidence concerning defendant's efforts to obtain a high-paying and prestigious job in exchange for the appointment is directly relevant, as the charged scheme specifically included defendant's repeated efforts in a variety of settings to obtain personal benefits in exchange for the Senate seat appointment.

- Likewise, the potential appointment of Blair Hull and Emil Jones in exchange for campaign contributions and the transfer of a campaign war chest, respectively, is directly relevant to the charged scheme to defraud, and the fact that defendant may not have intended to follow-through on all of these plans is legally irrelevant.

- Evidence relating to defendant's need for, and efforts to obtain, campaign contributions is relevant to show that defendant was desperate to increase his contributions in the fall of 2008, and thus had a strong motive to commit the charged offenses. In order for the jury to understand why the defendant was desperate it is important to demonstrate that the defendant was well behind in terms of the amount of money raised in relation to where he was in the last election cycle (*i.e.*, fall 2004), and that the amount of money in his campaign fund in the fall of 2008 (about $3 million) was actually a very small number compared to prior years.

## II.     Defendant's Motion Regarding Evidence Admitted Pursuant to Fed. R. Evid. 404(b) Should Be Denied.

Without challenging any particular evidence, or citing relevant legal authority, defendant requests that the government be ordered to establish a basis for admitting any evidence under Fed. R. Crim. P. 404(b), and requests an instruction to be given contemporaneously with the admission of such evidence. The lack of specificity in defendant's argument not only prevents the government from fully responding, it precludes relief. To the extent that defendant is suggesting that evidence relevant to the charged scheme that was introduced in the first trial, and will be introduced in the retrial, is admissible only pursuant to Fed. R. Evid. 404(b), he is mistaken. *See Boone*, 628 F.3d at 934 (holding that evidence that is relevant to show the nature and scope of the charged scheme but is not directly tied to specific counts is admissible, "not under Rule 404(b) as other acts evidence, but as direct proof of the overall scheme itself") (citing *United States v. Lanas*, 324 F.3d 894 (7th Cir. 2003) (rejecting claim that evidence of unsuccessful attempts to obtain kickbacks from other victims, and evidence of conduct involving other scheme participants, was relevant to prove the overarching scheme).

## III.     The Instructions Proposed by the Defendant Are Unnecessary And/or Incorrect Statements of the Law.

### A.     Requested Instruction Regarding Testimony of Cooperators.

Defendant has requested that, with respect to each witness who testifies pursuant to a plea or immunity agreement, a contemporaneous instruction be given upon the placement of the plea or immunity agreement before the jury. The

government has two objections to defendant's proposal.

First, the language of the instruction proposed by defendant improperly incorporates two distinct concepts. First, the instructions states:

> The fact that this witness has [pleaded guilty to a criminal charge] [received a grant of immunity from the government] should not be considered by you as evidence of innocence or guilt of Mr. Blagojevich.

The proper point to be made where a witness has pleaded guilty to an offense arising out of the same occurrence for which the defendant is now on trial, is that the guilty plea of the cooperating co-defendant may not be used as substantive evidence of the guilt of the defendant on trial. Thus, in such cases, the Court should normally instruct the jury that the evidence may not be used as substantive evidence of the defendant's guilt, and may only be used for limited purposes. *United States v. Alex Janows & Co.*, 2 F.3d 716, 719 (7th Cir. 1993); *United States v. Davis*, 838 F.2d 909, 917 (7th Cir. 1988). There is no comparable point to be made whether the witness is given immunity.

Accordingly, with respect to witnesses testifying pursuant to plea agreements, the government proposes that the jury be instructed, after evidence concerning the plea agreement has been presented, that:

> Where a witness has pleaded guilty to an offense arising out of the same occurrence for which the defendant is now on trial, the witness's guilty plea is not to be considered as evidence against the defendant.

The second part of the defendant's proposed instruction is a variation on a "mere association" instruction:

> At the end of this case, you are to decide whether Mr. Blagojevich is not

10

guilty or guilty of the charged offenses based only on the evidence presented to you, not by his associations with others who may or may not have been engaged in criminal acts.

Where a "mere association" instruction is appropriate, it should contain the following language, rather than that proposed by the defense:

A defendant's association with conspirators or persons involved in a criminal enterprise is not by itself sufficient to prove his participation or membership in a conspiracy or criminal enterprise.

Seventh Circuit Committee (1999) 5.11. However, such an instruction is not properly given unless the evidence supports it, nor should such an instruction be given at any time other than at the end of the case, as it has nothing to do with testimony of any individual witness. Accordingly, the government objects to any instruction on "mere association" until the end of the case, and then only if in light of all the evidence, the Court deems it appropriate.

## B.    Instruction Regarding Evidence Not Offered for its Truth.

Defendant requests that the Court provide the following instruction to the jury each time the government introduces in evidence any out-of-court statement not offered for its truth:

Members of the jury: You [just heard] [are going to hear] this witness testify to a statement which was made out of court. You are not to consider this statement for its truth, but rather to show only [fill in the purpose].

Such an instruction such as that proposed by defendant may or not be warranted depending on the particular circumstances; thus, a blanket order requiring such instructions would be inappropriate. Accordingly, the Court should determine any

11

requests for such instructions if and when they are requested at trial.

**C.     Requested Rule 106 Instruction**.

Defendant requests that the Court give the following instruction contemporaneously with the admission of each of the government's recordings to which the defendant has objected to redactions:

> Members of the jury: [You are about to hear] [You just heard] portions of recorded conversations that have been redacted by the government. You should not make any determination about the probative value of these conversations until the end of the case, as you may or may not hear additional portions and/or context of this conversation.

This instruction is inappropriate for several reasons.  First, although the redactions may have been proposed by the government, they have been approved by the Court. The proposed instruction is nothing more than a thinly veiled effort to once again improperly interject the claim, addressed in the government's pending motions *in limine*, that the government is withholding exculpatory evidence from the jury. Moreover, in each case, this Court has approved the government's proposed redactions based on a determination that the redacted material is not needed to explain, qualify, or clarify, and thus there is no need to consider the redacted material together with the portions offered by the government.  If some or all of the redacted portions of recordings are later introduced by defendant, the admission will not be pursuant to Fed. R. Evid. 106 but, rather, pursuant to some other evidentiary rule, and no instruction based on Fed. R. Evid. 106 will be appropriate.

**IV.    The Government Objections Challenged by Defendant
Were Not Improper.**

Defendant complains about objections made by the government on the ground
that defense counsel's question misstated the evidence. All three objections cited by
defendant were sustained by the Court; thus, in truth, defendant's complaint is with
the Court's ruling, rather than with the objection or its form.

In any event, contrary to defendant's contention, the challenged objections were
made in an appropriate manner, on proper grounds. It is improper for a party to
misstate the evidence. *See, e.g., United States v. Carter*, 236 F.3d 777, 784 (6th Cir.
2001) (noting that, although counsel has the freedom to argue reasonable inferences
from the evidence, counsel is not permitted to misstate the evidence) (citation omitted).
Misstatement of the evidence in argument poses the risk of misleading and confusing
the jury. Misstatement of the evidence in questioning poses the risk of misleading and
confusing not only the jury, but also the witness. The problem is not cured simply by
the questioner's tacking on the end of the question the words "correct?" or "right?" or
"true?" Therefore, when an opponent's question or argument contains a misstatement,
it is incumbent upon the opposing party to object in order to prevent the jury and the
witness from being misled.

Moreover, an objecting party must also apprise the Court of the specific legal
and factual bases for an objection in order to obtain a proper ruling and preserve an
issue for appellate review. See *United States v. Turner*, 203 F.3d 1010, 1018 (7th Cir.
2000) (citing *United States v. Barker*, 27 F.3d 1287, 1292 (7th Cir. 1994)). Use of the

phrase "misstates the evidence" is the recognized way to state the objection that counsel's question contains a misstatement that may be misleading or confusing; such language does not constitute a "speaking objection" unless the objector continues by substantively correcting the misstatement before the jury, or by making some other form of argument. Quite simply, the challenged government objections were not "speaking" objections. Examples of speaking objections may be found in the cross-examination of John Wyma. For example:

> DEFENSE COUNSEL: Objection to that. There's no basis for saying this. This is just a self-serving statement by this witness pursuant to the government's direction that it's unrelated to the actual statement.
>
> COURT: That's really a determination that has to be made by the jury and the evidence can come in.
>
> DEFENSE COUNSEL: I move that that be stricken and ask the jury to disregard it.
>
> COURT: Denied.

7/13/10 Tr. 93.

> DEFENSE COUNSEL: Objection. Objection to that. She's merely asking him to say something, give an understanding 100 percent different than what Mr. Scofield said. And there's no basis -- it's just an opinion.
>
> COURT: I don't think there's a rule that one witness can't contradict another. We do a lot of that here. The objection is overruled.

7/13/10 Tr. 131.

Of course, factual precision is the best way to avoid objections to misstatements of the evidence. *See* 7/27/10 Tr. 44-53. Where objections are necessary, however, the general instruction provided to the jury regarding what is and what is not evidence is sufficient

to prevent potential prejudice, if any:

> [Q]uestions and objections by the lawyers are not evidence. Attorneys have a duty to object when they believe a question is improper. You should not be influenced by any objection or by my ruling on it.

## V. Neither Fed. R. Evid. 807, Nor Defendant's "Fundamental Constitutional Rights" Provide a Basis for Admission of Defendant's Out-of-Court Statements.

Neither Fed. R. Evid. 807 nor any Constitutional principle permits a defendant to put before the jury his own out-of-court statements in lieu of testimony subject to cross examination. Defendant cites, and research reveals, no authority that would support the introduction by defendant of his own out-of-court statements simply because the statements were recorded pursuant to court-authorized wiretaps. Defendant argues that, since other statements recorded pursuant to the wiretaps were found to be sufficiently reliable to be admitted, admission of the statements offered by defendant qualify for admission under Fed. R. Evid. 807. However, defendant does not even attempt to argue that the proffered statements meet the other requirements of Rule 807, that is, that (1) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (2) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence, much less other requirements for admissibility. This motion should be rejected out of hand.

## VI. The Government's Allegations Are Not Misleading.

Defendant challenges the government's characterization of defendant's attempt to obtain a substantial campaign contribution from Patrick Magoon, the President and

CEO of Children's Memorial Hospital ("CHM"), in exchange for an increase in the pediatric medical reimbursement rate as a shakedown of CHM, arguing that the government has "conflate[d] its allegation of solicitation of Magoon with Childrens." Mot. 29. Contrary to defendant's contention, neither the allegations of the second superseding indictment nor the government's arguments are unclear or misleading: the allegation is simply that defendant attempted to exchange the rate increase for a contribution from Patrick Magoon, knowing that Magoon had a strong interest in obtaining the rate increase for the sake of the hospital he managed and the children it served. Defendant's motion lacks any merit and should be rejected out of hand.

## VII. The Government's Questions Regarding Certain Recorded Conversations Were Proper.

Defendant complains, without citation to particular questions or to relevant authority, that the government's presentation of testimony concerning the understanding defendant's employees and others had of recorded statements made to them during the course of the charged scheme was impermissible. As was the case with respect to defendant's challenge to certain objections made by the government to questioning by defense counsel, the Court overruled defense objections to many of such questions, and this fact establishes that defendant's complaint is directed to the Court's rulings, rather than to the government's questioning.

In any event, the understanding of one participant to a conversation of the other participant's meaning is relevant and admissible. Where both participants in a conversation have detailed personal knowledge of the topic being discussed, the

16

participants often talk in "shorthand," omitting details and refraining from providing explanations of every detail of their thinking. In such cases, it is often helpful to the jury, and sometimes necessary, for witnesses to provide background and details concerning their own statements, as well as concerning their understanding of the statements made by other participants, during the course of conversations in which they have participated. Questions designed to elicit such details are proper. "Lay opinion testimony regarding a defendant's knowledge will, in most cases, only satisfy the rationally-based requirement if the witness has personal knowledge of one or more objective factual bases from which it is possible to infer with some confidence that a person knows a given fact ... includ[ing] what the person was told directly, what he was in a position to see or hear, what statements he himself made to others, conduct in which he engaged, and what his background and experience were." *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992) (internal quotations omitted).

## CONCLUSION

For all of the foregoing reasons, the government respectfully requests that defendant's motions *in limine* be denied.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

BY:    /s/ Debra Riggs Bonamici
REID SCHAR
CHRISTOPHER NIEWOEHNER
CARRIE HAMILTON
DEBRA RIGGS BONAMICI
Assistant United States Attorney
United States Attorney's Office
219 S. Dearborn St., 3rd Floor
Chicago, Illinois 60604

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE IN ADVANCE OF RETRIAL

was served on April 25, 2011, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

BY:    /s/ Debra Riggs Bonamici
DEBRA RIGGS BONAMICI
Assistant United States Attorneys
United States Attorney's Office
219 S. Dearborn St., 3rd Floor
Chicago, Illinois  60604
(312) 353-3741