IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 08CR888 |
| | ) | |
| ROD BLAGOJEVICH | ) | Judge James B. Zagel |
| | ) | |

## MOTION FOR MISTRIAL

NOW COMES Rod Blagojevich, by and through his counsel, and hereby moves this Court for a mistrial. In support, Blagojevich states as follows:

## BACKGROUND

The Court indicated to defense counsel that the filing of numerous motions for mistrial was taking up too much of the Court's time and requested that a more expansive mistrial motion be filed. Pursuant to the Court's request, this omnibus motion for mistrial is now filed.

This motion is not an exhaustive list of every error and impropriety, and defense counsel expressly does not waive any issue not specifically raised within this motion.

## OVERVIEW

Factual disputes are what make up a trial. A jury is entitled to hear these factual differences and determine 'which side' it believes. The actions of this Court are depriving the jury from fulfilling its role as fact-finder and Blagojevich is greatly prejudiced.

1

If the government believed that various facts contradicted the testimony of Blagojevich, then it had the weapons of cross-examination and its rebuttal case to expose the purported contradictions. Likewise, both parties have the opportunity to argue its interpretation of the evidence and the jury is supposed to decide which party it believes. However, the Court engaged in fact finding that was in accord with the government's theory of the case. The Court has persistently prohibited defense counsel from eliciting facts from Blagojevich to present to the jury and other witnesses which the Court perceives as contrary to the government's theory of the case.

The rulings of this Court indicate that it has formed a biased opinion regarding Blagojevich and the facts of the case and as a result, Blagojevich has deprived of a fair trial and the right to a trial by jury.

The Court has formed a 'closed mind' on the evidence, and has invaded the province of the jury. The jury should be given the opportunity to hear the facts and decide what facts they find credible. In addition, the jury should be given the opportunity to evaluate the credibility of Blagojevich.

**THE COURT MADE FINDINGS OF FACT THAT CONTRADICT BLAGOJEVICH'S TESTIMONY AND HAS DEMONSTRATED A 'CLOSED MIND' TO THE FACTUAL EVIDENCE THE DEFENDANT HAS PRESENTED**

The Court has not permitted this process to take place. For example, the Court made two findings in court on May 31,2011:

The first finding was:

2

> THE COURT: . . . and he can explain that this was
> his mental state in November, that I was just -- I was really
> upset because I was getting a lot of bad publicity, if that's
> the way you want to go, ***and consequently it was the bad***
> ***publicity that caused me to cut Children's Memorial***, fine.

The Court has not only made findings of fact, but it has effectively ruled that it does not believe certain aspects of the testimony of Blagojevich. It was clear to the Court at the time of the first ruling above that Blagojevich would testify that he did not cut the funding for the pediatric rate increase. This was clear from opening statements and cross-examination by the defense. It was highly improper and prejudicial for the Court to have a pre-formed opinion on this critical issue.

Later that same day, after Blagojevich testified to the fact that he did not have a conversation in which Quinlan or Harris told him 'not to joke' about the senate seat appointment in the context of a 501(c)(4) formation, the Court ruled:

> THE COURT: ***And of course the problem is is that they***
> ***tell him 'don't even joke about it' and he runs rough shod over***
> ***them. Never stops. And I think that that's a problem for***
> ***you, but the truth of the matter is, I'm not going to let that***
> ***sit there.***

With regard to this ruling by the Court (" . . .they tell him don't even joke about it and he runs rough shod over them. Never stops. . ."), Blagojevich had in fact testified, merely an hour prior, as follows:

> Q.     Do you recall at all having a conversation with
>        Mr. Quinlan and Mr. Harris in which there was a discussion
>        about a 501(c)(4) and Mr. Quinlan and/or Mr. Harris

> specifically told you 'don't even joke about' that when it comes
> to the Senate seat?

    A.    <u>**No**</u>, I don't recall anything like that because Quinlan and
> I and Harris talked about 501(c)(4)s long after that a lot.

    Q.    And did they ever say, hey, 'don't even joke about that'
> issue?

    A.    <u>**No**</u>. In fact, to varying degrees, they both encouraged me
> to explore the idea and see whether or not it made sense in
> connection with the Senate appointment.

While Blagojevich was still on the witness stand, the Court made two findings of fact which contradicted his testimony. Not only is the jury the fact-finding party that should make those determinations, but the Court's rulings indicate a closed mind regarding both the merits of the case and the credibility of Blagojevich's testimony. This prevents Blagojevich from receiving a fair trial.

This Court's rulings are so aligned with the government in this case that "fair judgment [is] impossible." *Liteky v. United States*, 510 U.S. at 550. More so, the Court has demonstrated "deep-seated" opinions about the validity of the defense arguments, Blagojevich's testimony and credibility as well as a fundamental mistrust of the defense. Every assumption the Court makes regarding the defense is negative. Indeed, many of the Court's admonishments of the current counsel date back to grievances the Court has from the first trial, having to do with counsel that is no longer part of the defense team. The Court's references to the previous trial and statements made by prior counsel no longer involved demonstrate the Court's strong and deep-seated mistrust and improper conclusions of facts. *Cf.*, *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). (Where the Court found

4

insufficient grounds for recusal where the trial court did not have a closed mind on the merits of the case). In *Grinnell Corp.*, the Court found with regard to the trial court that:

> What he said reflected no more than his view that, if the facts were as the Government alleged, stringent relief was called for. **During the trial he repeatedly stated that he had not made up his mind on the merits.** During the trial he ruled certain evidence to be irrelevant to the issues and when the lawyer persisted in offering it [the Judge] said, "Maybe you will persuade somebody else. And if you think so, all right. I just assure you it is a great ceremonial act, as far as I am concerned." We do not read this statement as manifesting a closed mind on the merits of the case but consider it merely a terse way of repeating the previously stated ruling that this particular evidence was irrelevant.

*Grinnell Corp.*, 384 U.S. at 583.

In the instant case, the Court has made many, many comments similar to those noted above in *Grinnell Corp.* However, here, the Court's bias goes even further – the Court has demonstrated a closed mind on the evidence, the merits of the case and the veracity of Blagojevich's testimony. This not only is improper on its face, but the Court's closed mind has seeped into numerous evidentiary rulings, thus further depriving Blagojevich of the right to a fair trial.

For example, during arguments on the defense's submitted recordings, the Court consistently ruled that a recording was not admissible because it didn't fit within a particular fact pattern that aligns with the government's theory. Take the "Madigan Deal" as an illustration. Blagojevich referred to the "Madigan Deal"

5

colloquially throughout the entire period of wiretaps, indicating that in his mind, he was discussing a potential deal. In court, defense counsel argued for the admission of several tapes where the "Madigan Deal" is discussed (where admission of the recording was sought for various reasons). The Court denied the defense's request ruling that 'there was no deal.' Blagojevich is then put in the impossible position of not having evidence in the record to establish a key aspect of his defense, but then because the evidence is not in the record, the Court finds that there is no support to argue the defense. This is improper. The jury should be the fact finder as to whether there was a proposed deal, along with every other fact at issue.

On the same issue regarding the "Madigan Deal," the government objected during Blagojevich's testimony with a speaking objection of "Objection, to 'the deal.'" This speaking objection echoes the Court's declared findings of fact regarding the "Madigan Deal" during argument on the proposed admission of the defense calls. The objection, in the presence of the jury, contradicted Blagojevich's testimony while he was on the stand. Moreover, it defeats the purpose of cross-examination. The government was certainly free to cross-examine on the "deal" and it did so. The government can also argue its position to the jury. Preventing the defendant from testifying to the proposed deal as he perceived it is improper.


**THE COURT'S TILTED RULINGS**

This Court's rulings are tilted unfairly in favor of the government. This is grounds for a mistrial and in some cases has even been sufficient for recusal. See,

6

e.g., *United States v. Herrera,* No. 10–2766, Slip Opinion, July 30, 2009, where the Seventh Circuit ordered that the Hon. Chief Judge Holderman be recused where "no reasonable person would fail to perceive a significant risk that the judge's rulings in the case might be influenced by his unreasonable fury toward the prosecutors."

The instant request is for mistrial based upon the denial of due process and the violations of Blagojevich's rights to a fair trial which invoke the spirit and principle of *Herrera*. The consideration regarding due process has been characterized as:

> "Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law."

*Tumey v. Ohio,* 273 U.S. 510, 532 (1927) (finding a village mayor biased in his capacity as local adjudicator when the mayor stood to benefit financially from finding defendants guilty). *See also, In Re Murchison*, 349 U.S. 133 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness.") *Id,* at 136.

This Court's closed mind towards Blagojevich and the defense rises above mere comments and disapproval. Blagojevich's instant mistrial request is based not only upon the findings of fact by the Court, but also the Court's apparent mistrust of the defense and the cumulative effect of the Court's rulings and comments. The Court's findings and rulings go beyond comments which are "critical or disapproving

7

of, or even hostile to, counsel, the parties, or their cases, [which] ordinarily do not support a bias or partiality challenge." *Tezak v. United States*, 256 F.3d 702 (7th Cir. 2001), citing *United States v. Liteky*, 510 U.S. 540, 550-51 (1994).


## THE COURT'S PREJUDICIAL COMMENTS

The comments made by the Court have prejudiced Blagojevich. For example, in open court on May 31, 2011, the Court reprimanded defense counsel in front of the jury, invoking the jury's inconvenience which the Court attributed to defense counsel. This was wholly inappropriate and prejudiced the defendant. This admonishment in open court in the jury's presence came after a sidebar after which counsel reasonably believed that the questions were proper.

The sidebar occurred after the defense attempted to elicit background testimony regarding Blagojevich's experiences with health care and Children's Memorial Hospital – all which go directly to Blagojevich's lack of motive and to his credibility as a witness. The Court ruled that defense counsel could not go so far back into Blagojevich's history to his youth, but should focus on the October 17, 2008 call between Blagojevich and Magoon. When counsel attempted to ask questions to lay the foundation for that October 17th call, this was not permitted and counsel was harshly criticized in front of the jury. This was gratuitous and highly inflammatory. The jury should not be implicitly instructed that it is to blame defense counsel for waiting during arguments at sidebar – particularly not in a complex, protracted case such as this.

When counsel addressed the Court's concerns, the court immediately – as is often the case here – presumed the worst motive of the defense to violate the Court's order (when that was never the intention of defense counsel). That is plainly not what occurred. Defense counsel ultimately complied with the Court's narrow order, but in doing so, was forced to elicit facts and testimony out of order. Blagojevich has the right to introduce evidence in a manner the defense deems appropriate and compelling. This right has been denied. U.S. Const. Amends. V, VI.

## BIASING INFLUENCES

There is a general presumption that judges rise above any potential biasing influences. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Let it be clear that Blagojevich does not allege that this Court has made a conscious decision to act with bias toward Blagojevich. It may be simply that the Court, after presiding over two trials, has heard the evidence and has unwittingly formed an opinion. Either way, a mistrial is warranted.

It is possible that over the course of time, the Court has lost its impartiality. In the Second Circuit there exists a long-standing practice in the Southern District of New York "to have the second trial of a criminal case of any length and complexity tried before a judge other than the judge who presided at the first trial." See *United States v. Bryan,* 393 F.2d 90 (2nd Cir. 1968). In the *Bryan* case, the Court ruled:

> the practice of retrial before a different judge is salutary
> and in the public interest, especially as it minimizes even

9

a suspicion of partiality. Because we believe this outweighs any considerations of judicial economy and convenience, we hold that it is the wiser practice, wherever possible, that a lengthy criminal case be retried before a different judge unless all parties request that the same judge retry the case.

Likewise, in Illinois, cases remanded for new trial *after appeal* are retried by a different judge. *See*, Northern District of Illinois Local Rule 40.5, "Remands, Procedures for Following Appeals" requires in section (a) that "[w]henever a mandate from the Court of Appeals for the Federal Circuit or the Seventh Circuit is filed with the clerk indicating that the case appealed is remanded for a new trial, the case shall be assigned to the Executive Committee. . . [for reassignment to a new judge]." Section (b) also notes that "unless a stipulation is filed by all parties . . . indicating that all parties wish the case returned to the prior judge, the case will be reassigned to another judge" and Section (c) states that when the case is "reassigned", it "shall be treated for assignment purposes as a new case."

Concomitantly, Seventh Circuit Rule 36 addresses the "Reassignment of Remanded Cases" and requires that "[w]henever a case tried in a district court is remanded by this court for a new trial, it shall be reassigned by the district court for trial before a judge other than the judge who heard the prior trial unless the remand order directs or all parties request that the same judge retry the case. In appeals which are not subject to this rule by its terms, *this court may nevertheless direct in its opinion or order that this rule shall apply on remand.* (Emphasis added).

10

**IMPROPER ASSIGNMENT**

One further issue that defense counsel would be remiss not to mention is that the government's tactical strategy of bringing this prosecution before this Court was an improper manipulation of the system and that action exacerbates the concerns about the Court's bias against Blagojevich.

Local Rule 40.1 of the Northern Illinois District Court establishes a random assignment of cases to judges. The committee comment notes that:

> An equally important goal is implicit in the sanctions found in section (c). This is that no one should be able to manipulate the assignment system in order to determine in advance which judge will get a case where the assignment is by lot.

In this case, the system was manipulated by the government to have Blagojevich tried before this particular Court. At the time of indictment, Blagojevich was joined as a co-defendant with William Cellini, whose case was already before this Court. Then, when Cellini's lawyers filed a motion to sever, the government *agreed* to the severance. This rare concession by the government demonstrates the strategy and manipulation by the government.

The defense seeks to make it clear that it does not aver that the Court had anything to do with this strategy. However, the in light of the other plaints in this motion, the appearance of unfairness mandates that this Court grant a mistrial. This appearance is heightened by the Court's willingness to extend and continue Cellini's trial indefinitely, while holding Blagojevich to trial when compelling

11

reasons existed for a continuance (including the then-anticipated Honest Services jurisprudence from the Supreme Court prior to the first trial and the reduced resources in the second trial). In fact, the Cellini trial was just continued on June 6, 2011, moving the trial date from August 22, 2011 to October 3, 2011.

The code of judicial conduct for United States judges requires judges to remain impartial and to avoid even the appearance of bias. Canon 2 states "A judge should avoid impropriety and the appearance of impropriety in all activities." The commentary to Canon 2 states that an "appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety."

Canon 3 of the code requires a judge to "perform the duties of the office fairly, impartially, and diligently." Within a judge's duty to remain impartial is a provision on disqualification, which states that "a judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned" (Canon 3.C).

Perhaps due to the nature of these proceedings, this Court has demonstrated a bias against the defense that cannot be cured. For the reasons stated above, a mistrial should be granted.

\*     \*     \*

12

## DENIAL OF REQUESTS TO PLAY RELEVANT RECORDINGS WHICH GO TO MATERIAL ISSUES IN THE CASE AND AGAINST WHICH BLAGOJEVICH HAS THE RIGHT TO DEFEND

The realities of this case are that the jury will ultimately have to make credibility findings that will hinge on Blagojevich's word against the tapes *and* the government's witnesses. Because of the manner in which the government elicited testimony from its cooperating witnesses – playing the tape then having the witness recite back his purported 'understandings' – the tapes corroborate the government's witnesses.

Blagojevich was greatly prejudiced by the inability to play recordings in his defense and during his testimony. Take for example, a rare instance where Blagojevich's testimony was supported by a recording: Regarding the race track allegations, Blagojevich testified that one of the concerns he had regarding signing the bill was a Thanksgiving Day conversation with Chris Kelly. Blagojevich also testified to a plane ride conversation with Quinlan which buttressed Blagojevich's fears. This testimony of Blagojevich's was corroborated by a call admitted by the defense where Blagojevich talked to Quinlan (and they discussed the very fears to which Blagojevich testified).

The recording corroborates and establishes that these fears were in his head *at the time*. The testimony of Blagojevich is not *as* 'believable' on its face without the introduction of recordings. Blagojevich is prejudiced on all of his testimony which has support in the tapes (which applies to every count but the Chicago Academy which pre-dates the tapes) but is not being admitted. These concerns are

13

heightened by the government's use of additional recorded conversations on cross-examination as purported "impeachment." It gives an improper appearance to the jury that only "bad" recordings exist – that is simply not the case.

Moreover, it gives a false impression that there is no corroboration for Blagojevich's testimony, as there was with nearly every government witness. This is particularly true in light of the government's "streamlined" case which is extremely tape-heavy. To illustrate, the government presented 10 days of witness testimony, and 72 recordings in its case. The recordings are woven throughout the government's case-in-chief. Moreover, the government's case was designed to have the tapes bolster the testimony of the government's cooperating witnesses and their purported 'understandings.'

The Court's findings of facts and closed mind to the merits affects the Court's evidentiary rulings which prejudices Blagojevich. With regard to the state of mind exception to the hearsay rule, the Court has denied defense requests to admit recordings that clearly show Blagojevich's state of mind on the recording itself. Fed. R. Evid. 803(3) (the statement is one of the declarant's then existing state of mind).

Blagojevich understands there is a relevance requirement, but there can be no question about relevancy. Not only is there a state of mind exception to the hearsay rule but there is a relevancy to the state of mind of Blagojevich as he testified.

Previously, the Court ruled that if Blagojevich testified, a number of calls could be admitted because his state of mind would become relevant. Now that

14

Blagojevich testified, however, the Court resoundingly ruled that he could testify to his state of mind, which, according to the Court, obviated the need for the recording. On one occasion, the Court even ruled that essentially, 'the state of mind is so clear on this recording that he can certainly testify to it.'

This is improper and it prevented Blagojevich from presenting a case in chief, and properly defending himself in violation of the Sixth Amendment. It also deprives him of effective counsel, a fair trial and a trial by jury. U.S. Const. Amend. V, VI.

One example of this, among many, is the use of the government of the portion of the transcript not introduced by the defense on the 12-8-08 call between Blagojevich and Bob Greenlee in which Blagojevich references not making a Senate appointment until January 6th, the reported date of the sentencing of Tony Rezko. The government attempted to make much out of this issue – even playing the audio of the recording – but when the defense attempted to ask Blagojevich what he meant by his words on that call, the defense was largely prohibited. This was an improper and prejudicial set of rulings by the Court. Blagojevich's testimony, if fully allowed, would have established his innocent intent and the reasoning behind these statements.

The Court's denial of defense counsel's request for some leeway on the hearsay exceptions, throughout the trial, was erroneous. Federal Rule of Evidence 807 expressly permits the Court to use its discretion to admit defendant's recordings. There are no issues regarding trustworthiness of the recordings.

15

Rule 807 provides:

> A statement not specifically covered by [an exception or exclusion to the hearsay rule] but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Rule 807 is intended to be used "for treating new and presently unanticipated situations which demonstrate a trustworthiness within the spirit of the specifically stated exceptions." *See*, Advisory Committee's Note to Rules 803(24) and 804(b)(5) (predecessors to Rule 804).

The calls demonstrate stream-of-consciousness thinking on the part of Blagojevich and in many instances clearly establish his state of mind. The recordings are the 'best' evidence available – they are more probative than any other evidence. The fact that Blagojevich made certain statements *at the time of the recordings*, and not just merely from the witness box, would likely have been more probative and relevant to the jury than his testimony. Also, the recordings sought for admission by the defense are evidence of material facts – Blagojevich's intent, for example.

This is a highly unique case where the interests of justice would be well-served by allowing Blagojevich to admit recordings in his case-in-chief. The ongoing denial deprives Blagojevich of his constitutional rights and a mistrial is warranted.

16

## BLAGOJEVICH WAS IMPROPERLY DRIVEN TO TESTIFY BY THE COURT

As the Court is well aware, Blagojevich did not testify in his defense in the first trial in this case. When the government rested its case-in-chief, defense counsel advised Blagojevich to testify based on the significant issues that: (1) the defense had been severely and improperly limited on cross-examination during the government's case and (2) the defense had been consistently told by the Court that the only way to get a majority of evidence in (particularly evidence of Blagojevich's state of mind and lack of intent) was in the defense case in chief and only if Blagojevich testified. There was also reliance on the Court's comments from May 20, 2011 at sidebar.

In the interim between the government's case and the defense case, (on May 20, 2011), defense counsel appeared in court to deal with legal issues with the Court. On that day, at sidebar, the Court instructed the defense as to the manner in which Blagojevich could testify in accord with the principles of the *Cheek* case. The Court specifically told the defense that Blagojevich could testify that he 'honestly believed what he was doing was legal.' Along these lines, the Court went through numerous lines of questioning and provided the defense with a roadmap of sorts as to what would be permissible for Blagojevich to testify to on direct.

Blagojevich was compelled to testify based largely on the Court's rulings. Yet, this was misleading. After Blagojevich was on the witness stand for 2 ½ days, had already testified to a number of the allegations and was on the cusp of

beginning testimony on the Senate seat, the Court pulled the rug out from under

Blagojevich.  The Court changed course without warning and ruled, *inter alia*, that:

> THE COURT: . . .What we are dealing with here
> and what your client clearly understood,
> because it's evident from the tape that he clearly
> understood it, was you can't exchange one for the
> other. He said that, and he said that repeatedly.
> He said it like really quickly, not one for the
> other, not connected, things of this sort, that he
> clearly understood he couldn't do that.
> And he is perfectly entitled to say, as he
> said many times on the tape, not one for the other;
> good faith. Not honest belief that it was legal.
> His belief was, quite clearly, at least as expressed
> on the tape, that one for the other was illegal. He
> is not claiming that he thought that that was okay.
>
> DEFENSE: When he is saying those
> things on the tape is to other individuals who also
> had the same understanding of that legal definition.
>
> DEFENSE: Your Honor, the campaign
> contributions, the whole subjects before this
> testimony had to do with campaign contributions
> which he will absolutely say you cannot exchange
> campaign contributions for state action. This is a
> different context. These are jobs, these are
> appointments, this is different in his mind, which
> is the only reason we're here is what is in his
> mind.
>
> And these were questions, to my
> understanding, were presented by Your Honor to
> present in our case. So we actually followed Your
> Honor's advise, put these questions together --

THE COURT: You think I misled you by citing *Cheek*? Down the garden path --

DEFENSE: It wasn't just *Cheek*, it was --

DEFENSE: We asked the question you told us to ask a couple of days ago --

THE COURT: The only thing that was left to you was *Cheek*, and the problem with *Cheek* for you is is, and the reason *Cheek* is a tax law case is, the tax laws are very complicated, extremely complicated, you can step over the line in an instant. The line is not very clear. So Cheek is broad in its application.

In this case, I don't think you and the government are disagreeing about what the line is. The line is one for the other. And your client says one for the other is not legal, the government says one for the other is not legal --

DEFENSE: In one context.

DEFENSE: But there are other context where an exchange one for the other is perfectly legal.

The Court's retraction of its prior guidance, without notice in advance of Blagojevich's testimony, was improper and erroneous. The Court's May 20, 2011 rulings contributed significantly to Blagojevich's decision to testify and the retraction by the Court – 2 ½ days into his testimony – effectively violated Blagojevich's right not to testify under the Fifth Amendment. Moreover, the Court's May 20th ruling was not in accord with the principle of *Cheek v. United States*, 498

U.S. 192, 111 S. Ct. 604 (1991). In *Cheek*, the Court explained that because forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment right to trial by jury, it was error to instruct the jury to disregard evidence of the defendant's understanding that, within the meaning of the tax laws, he was not required to file a return or to pay income taxes and that wages are not taxable income, as incredible as those misunderstandings of the tax law might be. The Court reasoned that a good-faith misunderstanding of the law or a good-faith belief that one is not violating the law negates willfulness, whether or not the claimed belief or misunderstanding is objectively reasonable. The Court explained that knowledge and belief are characteristically questions for the fact finder, in this case the jury, and to characterize a particular belief as objectively unreasonable changes the inquiry into a legal one and would prevent the jury from considering it. The Court did note, however, that it would, of course, be permissible to exclude evidence that has no relevance or probative value on the issues of willfulness.

This Court's ruling on June 1st included:

> I don't see the admissibility of his general
> proposition that it was legal. I see the
> admissibility of his basic belief that he was acting
> in good faith, but his legal opinion doesn't count,
> so it's out.

Blagojevich's "basic belief that he was acting in good faith" requires support in order to be found credible by the jury. Blagojevich was entitled to testify to the basis for his good faith belief. The offer of proof should have been before the jury.

20

At the very least, Blagojevich should have been permitted to testify to the unembellished three points he testified to in the offer of proof – that his good faith was based on his "honest belief that these things were legal" because of (1) conversations he had with others; (2) his personal experience in government and politics; and (3) his knowledge of history.

Without providing the basis for the "good faith" belief, the jury is prevented from making a finding as to Blagojevich's credibility as well as ruling on willfulness or intent to defraud. This was improper. A mistrial should be granted.

## BLAGOJEVICH WAS IMPROPERLY PREVENTED FROM TESTIFYING TO HIS BACKGROUND REGARDING HIS PASSION FOR HEALTH CARE POLICIES

Blagojevich was improperly barred from testifying to his background and experiences related to health care and/or Children's Memorial Hospital. That Blagojevich sincerely cares about the issues of health care contradicts the government's allegations and any alleged motive to shake down Children's or anyone for that matter in exchange for a health care initiative. It also provides important background and context for Blagojevich's interest in being appointed to HHS.

The Court's ruling that the general background of Blagojevich is relevant because of the issue of credibility is contrary to the Court's ruling that his background on this particular issue is not admissible. Blagojevich's background regarding his passion for health care and Children's Memorial Hospital and what shaped his mind regarding a desire to help Children's Memorial and health care in

21

general goes directly to the finding of credibility for these charges and negates motive.

## IMPROPER RULINGS ON OBJECTIONS AND THE GOVERNMENT'S ASKING OF IMPERMISSIBLE QUESTIONS

The Government began cross-examination of Blagojevich by stating, "You are a convicted liar, right?" and then continued, over objection, with multiple questions of this sort including an improper question inferring that all politicians are liars. Had the defense even come close to questions of this nature, the Court certainly would have sustained government objections and most likely the Court would have harshly criticized and reprimanded the defense. There appears to be a double standard with regard to the leeway given to the government throughout the case versus the defense.

Taking this example, juxtapose the government's "liar" questions to a defense-posed question to Raginder Bedi on Bedi's cross-examination. After eliciting from Mr. Bedi that he was convicted of Retail Theft, defense counsel's question, "so, you're a thief?" resulted in a sustained objection. The contrast here is striking. Bedi was convicted of theft, and a question regarding whether he was a "thief" was not permitted. Blagojevich was convicted of making a false statement to an F.B.I. agent and an inflammatory, improper question was permitted. Blagojevich was not convicted of "lying" and he is not "a convicted liar."

Another example of an improper ruling regarding objections is regarding the Court's prohibition on the defense from following up on the government's questions

22

of Blagojevich on cross-examination regarding Blagojevich's testimony that expressly exchanging the Senate seat for campaign contributions would be illegal. The government was allowed to cross-examine on Blagojevich's opinion that the Jesse Jackson Jr. offer was illegal. The government asked numerous times over objection if this was "a bribe." The defense was not permitted to go into this on re-direct and clarify nor elicit testimony from Blagojevich regarding his opinion as to the legality of the other alleged "exchanges" in the context of Blagojevich's good faith regarding political negotiations.

In fact, the Court displays significant mistrust for the defense and there exists a double standard. The Court almost always presumes the worst intentions when it comes to the defense – accusing the defense of 'running out the clock' on direct examination, for example. Yet, the government asks a series of questions of Blagojevich – improper questions at that – about his alleged willingness to 'break' or violate the Constitution by appointing Rahm Emanuel's choice to Mr. Emanuel's Congressional seat, and when later asked about the issue, the government did not articulate *how* this potential Congressional appointment would be a constitutional violation to begin with. It was defense counsel that articulated and explained to the Court what exactly the Constitutional issue was with regard to appointment versus special election. The government did not provide a good faith basis for its improper questions. Yet, the Court did not bat an eye at this. Had the defense done such a thing, more than an eyebrow certainly would have been raised.

With regard to the mistrust of the defense, the Court threatened defense counsel with providing the government with the ability to do an "interlocutory cross-examination" – a concept virtually unheard of. (Indeed, a brief legal search provided zero results of this term used in the context of any federal case). The Court's exasperation with the defense has become more than evident to the parties and the jury. Yet, the defense, during the direct testimony of Blagojevich was merely seeking to confront the government's evidence – the recordings. At that, counsel made every attempt to keep the questioning on each all as minimal as possible to comply with the Court's requests. Counsel did not go line-by-line, as did the government, but rather, addressed only the critical portions.

The government has also been permitted by the Court to ask questions which have objectionable form. For example, questions of the following nature had objections overruled: "In any conceivable way at all . . . ?"; "Is it your testimony that . . . ?"; "And I assume, therefore, . . . ?". The government also interjected inappropriate commentary, for example: "Actually, it was your characterization."; and "It appeared to have some consequence." Yet, when Blagojevich tried to answer the questions, the government moved to strike answers that were relevant but which did not suit the government. Had this occurred with the defense, the Court likely would have told defense counsel that it was not properly asking the questions. Also, defense counsel does not deem its objections waived during the cross-examination of Blagojevich.

24

Another example of improper rulings occurred when the government was permitted to introduce irrelevant issues that were not impeaching including, but not limited to the Tribune allegations, and a newly-requested portion of the Rachel Maddow interview.  These requests by the government should have been denied.

\*       \*       \*

WHEREFORE, Rod Blagojevich's motion for mistrial should be granted.

Respectfully Submitted,

/s/ Lauren Kaeseberg
One of the Attorneys for
Rod Blagojevich

**Attorneys for Rod Blagojevich**
SHELDON SOROSKY
AARON GOLDSTEIN
LAUREN KAESEBERG
ELLIOTT RIEBMAN
158 W. Erie
Chicago, IL 60654