UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 888-1 |
| | ) | Judge James B. Zagel |
| | ) | |
| ROD BLAGOJEVICH | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully submits the following Government's Sentencing Memorandum, stating as follows:

## INTRODUCTION

The goal of sentencing is to achieve a sentence that is "sufficient but not greater than necessary." 18 U.S.C. § 3553(a). In doing so, the Court must account for a variety of factors specific to the particular defendant and particular case. The framework for determining an appropriate sentence is set forth in § 3553(a). In particular, § 3553(a) requires that the court ensure the sentence imposed properly considers, among other factors: (1) the nature and circumstance of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense; (4) the need to afford adequate deterrence; (5) the need to protect the public from further crimes of the defendant; (6) the properly calculated Sentencing Guideline range along with pertinent policy statements provided by the Sentencing Commission; and (7) the need to avoid unwarranted sentencing disparities.

Over the course of a relatively brief period of time, during his machinations surrounding the appointment of a United States Senator, and the shakedowns of hospital and racetrack executives, the defendant revealed his corrupt, criminal character. But, as the evidence and Blagojevich's conduct at his trials established, these were not isolated incidents. They were part and parcel of an approach to public office that defendant adopted from the moment he became governor in 2002. In light of Blagojevich's extensive corruption of high office, the damage he caused to the integrity of Illinois government, and the need to deter others from similar acts, the government suggests a sentence of 15 to 20 years imprisonment is sufficient but not greater than necessary to comply with § 3553.

## SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

**I.    The Nature and Circumstances of Blagojevich's Crimes (18 U.S.C § 3553(a)(1))**

Blagojevich's criminal activity was serious, extended, and extremely damaging. Blagojevich was the sitting governor of Illinois when he committed his crimes. As the chief executive of the state, Blagojevich was in a special position of responsibility to the public. His abuse of office is particularly grave given the faith put in him by the citizens of Illinois.

As the Court has heard much of the evidence during two trials, the government will not reiterate the details of Blagojevich's criminal conduct.[1] Blagojevich repeatedly

---

[1] A more thorough review of the nature and circumstances of Blagojevich's criminal activity is detailed in the Government Version provided to the Probation

(continued...)

attempted to trade official acts as governor for personal benefits. These criminal efforts included Blagojevich's attempts to trade an appointment to the U.S. Senate in exchange for, among other things, $1.5 million in campaign contributions or a high-paying job. Blagojevich shook down the CEO of a children's hospital for $25,000 in campaign contributions in exchange for implementing an increase to pediatric reimbursement rates. In addition, Blagojevich, the sitting governor, held up the signing of a bill to benefit the Illinois horse industry in an attempt to obtain $100,000 in campaign contributions.

Further, well knowing the government was investigating his activity, Blagojevich purposefully lied to the FBI during an interview to conceal his criminal activity. In doing so, Blagojevich chose to obstruct the government's ongoing investigation into his criminal activity and the criminal activity of others affiliated with his administration.

In addition to the crimes proven beyond a reasonable doubt, the Court has heard considerable evidence regarding Blagojevich's other criminal endeavors, including: (a) holding up grant funding for a not-for-profit school in order to obtain campaign contributions; (b) attempting to obtain campaign contributions in exchange for providing billions of dollars in money in Tollway projects; and (c) demanding the firing

(...continued)
Department and attached to the PSR.

of Chicago Tribune editorial board members in exchange for assistance to the Tribune Company for financing in relation to the sale of Wrigley Field.[2]

Blagojevich agreed to use his official powers for personal benefit from the very moment he became governor. On the heels of one corrupt governor and after running on a campaign to end "pay-to-play," Blagojevich took office and immediately began plotting with others to use the Office of Governor for his personal gain through fraud, bribery, and extortion. Blagojevich and others committed a variety of criminal acts for several years before Blagojevich became aware of the FBI investigation into his actions and the actions of his administration. As the evidence demonstrated, Blagojevich continued his criminal acts through 2008 despite his knowledge of the FBI's investigation. Indeed, the arrest and conviction of various members of Blagojevich's inner circle did nothing to dissuade Blagojevich from continuing his criminal activity until the day of his arrest.[3]

---

[2] Although the jury did not convict the defendant of every episode of criminal conduct, all of Blagojevich's criminal conduct is relevant under the § 3553(a) sentencing factors.

[3] The defendant's version submitted to the Probation Department goes on at length in an attempt to relitigate the facts of this case, at times even presenting versions of facts that are at odds with Blagojevich's trial testimony. In providing a spin on events thoroughly rejected by the jury, Blagojevich does nothing to shed light on the circumstances of his criminal activity other than demonstrate his refusal to accept responsibility for his crimes. Unless the Court directs otherwise, the government will not rebut all of the misleading facts set forth in the defendant's version, but refers the Court to the evidence presented at trial, the government's version submitted to the Probation Department, and the jury's verdict, to demonstrate that Blagojevich continues to offer rejected arguments and misleading facts contradicted by the evidence.

4

In short, the nature and circumstances of Blagojevich's criminal activity are a significant aggravating factor in determining an appropriate sentence. Recent cases involving public corruption have led to substantial sentences for defendants who, as public officials, engaged in corrupt activity. *See* Documents Attached as Gov. Ex. A (18-year federal sentence for a U.S. immigration lawyer convicted of taking bribes (March 2011); 18-year federal sentence for a mayor convicted of bribery and extortion and who testified falsely at his trial (February 2010); 28-year federal sentence for a judge convicted of taking bribes to send juveniles to certain detention centers (August 2011); 17-year sentence for a city councilman convicted of extortion and wire fraud (August 2010); 15-year sentence for a mayor convicted of bribery scheme (March 2010)).[4]

## II. Blagojevich's History and Characteristics (18 U.S.C. § 3553(a)(1))

Blagojevich's personal history presents both aggravating and mitigating facts. As a successful public official, Blagojevich was uniquely positioned to appreciate the gravity of his crime. Blagojevich knew about the power and trust granted to elected

---

[4] In this district, corruption sentences in well-publicized cases have covered a broad range, in part because the sentences were based on Guideline ranges derived from pre-2004 Guideline Manuals, the use of different Guideline sections, and other various factors. *See United States v. Spano*, 421 F.3d 599 (7th Cir. 2005) (noting sentences for individuals involved in corruption in Cicero, Illinois, as ranging from 41 to 151 months, although such sentences were calculated using § 2F1.1 prior to the 2004 Amendments to the Guidelines and were for conduct that ended in approximately 1998), *sentences affirmed after new sentencing hearing*, 476 F.3d 476 (7th Cir. 2007); *see also United States v. George Ryan*, 02 CR 506 (former Illinois governor sentenced to six and a half years in prison using § 2B1.1 for conduct that occurred prior to 2003).

officials, and knew, from over a decade of experience in Chicago and Illinois, that corruption benefits the few at the expense of the many. In fact, Blagojevich ran for governor in 2002 on a platform to end "pay to play." Blagojevich knew about the crimes of George Ryan, was acutely aware of the damage caused to the public's confidence in government by Ryan's betrayal of Illinois, and made restoring integrity in government one of the cornerstones of his gubernatorial campaign. Indeed, Blagojevich continued to trade on Ryan's betrayal to Illinois even after election, stating after Ryan's 2006 guilty verdict "that no one is above the law . . . [a]nd just as important [the guilty verdict] proves that government is supposed to exist for the good of the people, not the other way around, and certainly not for the personal enrichment of those who hold public office." *Chicago Tribune*, April 18, 2006 (Gov. Ex. Statement 1). Yet, as the evidence shows, while Blagojevich pledged to restore integrity to the governor's office, he was actively scheming to engage in criminal activity and continued to do so through his arrest, further undermining the public's confidence in government and elected leaders.

Moreover, unlike many offenders who appear before the Court, Blagojevich had the benefit of a stable family and higher education. Blagojevich was not forced into a criminal life due to the circumstances of his upbringing or environment. Nor was Blagojevich an unwitting participant in this scheme, or caught up in circumstances beyond his control. Blagojevich is a college-educated individual with a law degree and a former prosecutor. In addition, Blagojevich was a sophisticated political operative and elected official with years of experience in matters of governance. Blagojevich's

choice to lead a criminal scheme provides a telling insight into Blagojevich's character. Blagojevich used his skills and talents to engage in extortion, bribery, and fraud, all for his personal gain.

There is, of course, more to Blagojevich's history and characteristics. The defendant appears to be committed to his wife and daughters. There is no doubt that whatever sentence he receives will have consequences for his family. However, the sad fact is that this is true for many defendants and is the unfortunate result of the choices Blagojevich made.

In his role as governor, Blagojevich, at times, attended to his official duties in a way that was not corrupt. Of course, Blagojevich's efforts as governor were the requirements of his job.[5] His job gave him the opportunity to improve people's lives.[6]

---

[5] While there was testimony and other evidence that showed Blagojevich was largely disengaged from his official duties and worked from home, we do not view that fact as relevant to sentencing. The remedy for a disengaged governor is action by the voters. Blagojevich was tried for crimes he committed and should be sentenced accordingly. We simply note that to the extent Blagojevich seeks leniency for doing his job, the energy he put into his efforts were not above and beyond what one would expect.

[6] On any given action Blagojevich took, there are some who praise that action and others who condemn it. *See e.g.* Free Rides for Seniors Program (Compare http://bgathinktank.wordpress.com/2010/11/24/free-rides-for-seniors-should-not-be-state-lawmakers%E2%80%99-third-rail/; and http://archive.chicagobreakingnews.com/2009/10/rta-repeal-budget-busting-free-rides-for-seniors.html; versus http://www.chicagonow.com/blogs/godless-in-chicago/2009/10/keep-free-rides-for-seniors.html). Such a debate, however, could never be conclusive and would not advance the issues relevant at sentencing, which should not be a litmus test of policy decisions made by the Blagojevich administration. Given the controversy surrounding many of those policy decisions, simply listing legislative

(continued...)

7

But this does not set Blagojevich apart from the average criminal. Many criminals are productive members of society, holding down jobs that they ably accomplish when they are not otherwise engaged in criminal activity. Blagojevich did the same, but on a more high-profile stage. Indeed, it would be strange if Blagojevich had not helped people, given that he had significant authority over how the state spent billions of dollars on all manner of social services and programs. Thus, to the extent Blagojevich helped people while he was governor, that should be commended, but it should be noted Blagojevich was doing the job for which he was elected and well-compensated. *See United States v. Serafini*, 233 F.3d 758, 773 (3rd Cir. 2000) ("[I]f a public servant performs civic and charitable work as part of his daily functions, these should not be considered in his sentencing because we expect such work from our public servants."); *see also United States v. Vrdolayk*, 593 F.3d 676 (7th Cir. 2010) (noting that defendants who commit good deeds because they are in a position to do so should not gain advantage over those who do not because they cannot).

Blagojevich campaigned on a platform of restoring integrity to elected office and was elected to reform both the perception and reality that state government was fueled by corrupt, pay-to-play, inside deals at the expense of the public trust and fisc. His

---

[6](...continued)
accomplishments, as Blagojevich does in his version of the offense (Def. Version at 48-50, including reference to the Free Rides for Seniors program), does nothing to establish whether Blagojevich's acts as governor were ultimately a net benefit or net ill to the people of Illinois.

accomplishments as governor are far outweighed by the personal greed that infected his acts and his administration.

### III. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense (18 U.S.C. § 3553(a)(2)(A))

Blagojevich's extortion, bribery, and fraud was extremely serious by any standard. Blagojevich held up money for children's hospitals in order to extort campaign contributions. Blagojevich attempted, repeatedly, to trade the position of United States Senator for bribes. A very substantial sentence is necessary to reflect the seriousness of Blagojevich's offense, justly punish the offenses, and promote respect for the law.

In the defendant's version, Blagojevich, in belittling the seriousness of his offenses, incredibly states "*Illinois suffered not at all from his conduct*." (Def. Ver. at 2, emphasis in original). Defendant's perception of his crimes remains as skewed as it was at trial. Blagojevich held up funding to every children's hospital in the State of Illinois. Blagojevich sat on legislation that would have aided the entire Illinois horse racing industry. Blagojevich, instead of choosing a United States Senator for the people of Illinois on the merits of the candidates, used criteria that revolved around how each candidate could personally benefit him.

Blagojevich completely ignores the fact that his criminal activity corrupted the decision-making process of Illinois government. That Blagojevich attempted to undo his criminal acts after his arrest (taking the hold off the hospital money and signing the racetrack legislation) does not negate the harm or seriousness of Blagojevich's

9

criminal activity. Blagojevich's statement also fails to account for the fact that his criminal activity further eroded the public's confidence in government and government officials. *See United States v. Ganim*, 2006 WL 1210984, at *5 (D. Conn. May 5, 2006) ("Government corruption breeds cynicism and mistrust of elected officials. It causes the public to disengage from the democratic process because. . .the public begins to think of politics as 'only for the insiders.' Thus corruption has the potential to shred the delicate fabric of democracy by making the average citizen lose respect and trust in elected officials and give up any hope of participating in government though legitimate channels.").[7]

In addition, since his arrest, Blagojevich has done his best to undermine the legitimacy of the proceedings against him in this case, further demonstrating that he does not respect the rule of law. To that end, Blagojevich has engaged in a vast media campaign of disinformation without concern for the truth. For instance, on April 21, 2010, in response to public statements Blagojevich made, falsely claiming that prosecutors were barring him from presenting evidence, the Court spoke directly to Blagojevich, and informed Blagojevich that the Court decides what evidence will be

---

[7] In addition, despite Blagojevich's arguments to the contrary, there was a monetary harm to the victims of Blagojevich's criminal activity. The Medicaid reimbursement increase was held up for 30 days due to Blagojevich's criminal activity, costing CMH and every other hospital money. The signing of the racetrack legislation was delayed for several weeks, costing the horse racing industry tens of thousands of dollars each day — money they may never get back depending on the outcome of certain gambling legislation currently at issue in Illinois. Finally, the delay in naming a senator while Blagojevich sought personal benefits cost the people of Illinois a vote in the United States Senate on important legislation, including legislation directed to the financial crisis in 2008.

admitted at trial. *See* 4/21/10 Tr. at 10 -11 (noting, among other things, that regarding issues of admission of evidence, the "Court decides all these questions, not the defendant, his lawyers, nor the prosecutor").

Despite the Court's clear admonition that Blagojevich should stop making false statements, he continued to do so.[8] In the lead-up to the second trial, Blagojevich continued to try to publicly delegitimize the legal proceedings against him. *See* April 19, 2011, WLS Radio Interview ("Play the tapes. . . .[The prosecutors are] the ones who are blocking it.").[9]

Blagojevich was not able to thwart his jury trial through his false statements to the public, but his efforts likely influenced the views of many of his supporters, and certain members of the public generally, towards the government, the criminal justice system, and the law.[10]

Blagojevich has repeatedly belittled the seriousness of his offenses, attempted to delegitimize the legal proceedings against him, and has not accepted any

---

[8]   *See* April 25, 2010, WLS Radio Interview (Blagojevich stated that the prosecutor was limiting what tapes could be played at trial);  August 20, 2010, Today Show (same); August 23, 2010, The Daily Show (same).

[9]  This radio appearance occurred two days before jury selection in the second trial and a day after the Court informed defense counsel that the Court was raising a "red flag" regarding Blagojevich's public statements being inconsistent with the Court's direct admonition to Blagojevich.

[10]  The government does not take issue with Blagojevich's repeated public statements proclaiming his innocence and does not seek to punish Blagojevich's exercise of his First Amendment rights.  Blagojevich, however, went well beyond publicly declaring his innocence and repeatedly made knowingly false statements meant to undermine the legal process in his case.

responsibility for his criminal conduct. Accordingly, the need for the sentence to reflect the seriousness of Blagojevich's offense, justly punish the offenses, and promote respect for the law, warrant a substantial sentence in this case.

## IV. The Need to Afford Adequate Deterrence to Criminal Conduct (18 U.S.C. § 3553(a)(2)(B))

Sadly, Illinois has a history of corruption in government. The sentences imposed on previous criminals for public corruption crimes were not sufficient to dissuade Blagojevich from engaging in a myriad of criminal acts. Indeed, the governor prior to Blagojevich was sentenced to approximately six and a half years in prison. The six and a half year sentence did nothing to stop Blagojevich, as the very next governor, from engaging in significant and ongoing bribery, extortion, and fraud.

A significant sentence is necessary to deter current and future public officials from engaging in Blagojevich-like criminal activity. As one court in this district noted:

> We need not resign ourselves to the fact that corruption exists in government. Unlike some criminal justice issues, the crime of public corruption can be deterred by significant penalties that hold all offenders properly accountable. The only way to protect the public from the ongoing problem of public corruption and to promote respect for the rule of law is to impose strict penalties on all defendants who engage in such conduct, many of whom have specialized legal training or experiences. Public corruption demoralizes and unfairly stigmatizes the dedicated work of honest public servants. It undermines the essential confidence in our democracy and must be deterred if our country and district is ever to achieve the point where the rule of law applies to all-not only to the average citizen, but to all elected and appointed officials.

*United States v. Spano*, 411 F.Supp.2d 923, 940 (N.D. Ill. 2006), *affirmed,* 477 F.3d 517 (7th Cir. 2006).

A very substantial sentence would also demonstrate to the public that corruption will be seriously addressed and deterred when discovered. To the extent the public suffers from corruption "fatigue" — that is, the refrain sometimes heard that "all Illinois politicians are corrupt" — a lengthy sentence would help promote the view that a day of reckoning exists for public officials who commit corrupt acts and that the public can and should expect more from its elected officials. *See Ganim*, 2006 WL 1210984, at *5.

As noted above, recently, courts have been imposing substantial sentences in corruption cases to help deter future criminal conduct. *See* Documents Attached as Gov. Ex. A.

Accordingly, the need to properly deter current and future public officials supports a sentence comparable to the substantial terms of imprisonment imposed in other recent cases throughout the country.

## V. The Need to Protect the Public from Future Crimes by Blagojevich (18 U.S.C. §3553(a)(2)(C))

It is unlikely that Blagojevich will ever hold elected office again. In addition, it is unlikely that Blagojevich will ever hold a position of trust in which he has significant decision-making authority. Since it is unlikely Blagojevich will be given the opportunity to commit additional cirmes, there is little need to protect the public from future crimes by Blagojevich.

## VI.    The Properly Calculated Sentencing Guideline Range and Pertinent Policy Statements Provided by the Sentencing Commission (18 U.S.C. § 3553(a)(4) & 3553(a)(5))

In the instant case, the properly-calculated Sentencing Guidelines recommend a sentencing range of 360 months to life.  *See* Government's Objections to the Presentence Report (filed simultaneously with the instant filing).  The Guideline range is significant in this case, in part, based on the $1,625,000 attributable to Blagojevich's crimes, which add 16 levels to the base offense level.[11]  Although the value of the benefit to be obtained is one factor in determining harm, another aspect of harm is consideration of the type of corrupt acts perpetrated by Blagojevich.  Here, Blagojevich, among other crimes, attempted to sell a U.S. Senate seat and held up funding to a children's hospital to extort campaign contributions.  These are significant acts of corruption that adequately capture the degree and magnitude of Blagojevich's criminal acts.  Blagojevich's criminal acts are very serious regardless of whether he tried the sell the Senate seat for $1,000 or $1.5 million.  Accordingly, while the Guideline range is 360 months to life, under § 3553(a) the Court should strive to find a sentence that appropriately accounts for the degree of Blagojevich's culpability based on a holistic review of all the statutory factors.  *See United States v. Reyes-Herndandez*, 624 F.3d 405, 421 (7th Cir. 2010).

---

[11]  For perspective and to further signify the importance the Guidelines place on properly punishing public corruption crimes, even if the benefit to be obtained by Blagojevich were only the $125,000 attributed by the Probation Department, his Guideline range would be 188 months to 235 months.

In amending the corruption Guidelines in 2004 to increase punishment for public officials who corrupt their office, the Sentencing Commission made several statements that make clear that substantial sentences are appropriate for the types of crimes Blagojevich committed. In particular, the Sentencing Commission attempted to increase corruption sentences based on "the [Sentencing] Commission's conclusion that, in general, public corruption offenses previously did not receive punishment commensurate with the gravity of such offenses." *See* U.S. Sentencing Guidelines Manual, Supplement to Appendix C, Amendment 666, pg. 82. The Sentencing Commission also determined higher base offense levels for public officials are appropriate because "offenders who abuse their positions of public trust are inherently more culpable than those who seek to corrupt them, and their offenses present a somewhat greater threat to the integrity of governmental process." *Id*.

The government agrees with the Commission's assessment of the gravity of public corruption, and the weight given defendant's status as a high-level decisionmaker and organizer of criminal activity. The guidelines also correctly sanction Blagojevich's obstruction of justice and refusal to accept responsibility. Some weight should be given to the pecuniary magnitude of defendant's corruption, but an individualized assessment is paramount. In the government's view, a sentence of 30 years would be greater than necessary in this case. As noted above, other public corruption defendants have recently received sentences in the range of 15 to 20 years.

## VII.   The Need to Avoid Sentencing Disparities (18 U.S.C. § 3553(a)(6)) and Blagojevich's Request for a Sentence of Probation

The government has identified ranges of imprisonment imposed in other cases involving corruption.  *See* Gov. Ex. A.  There are no easy comparisons, of course, but § 3553(a)(6) encourages the sentencing court to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct.  As the Seventh Circuit has noted, "the kind of disparity with which § 3553(a)(6) is concerned is an unjustified difference across judges (or districts) rather than among defendants to a single case."  *United States v. Boscarino*, 437 F.3d 634, 636 (7th Cir. 2006).  A sentence in the range of 15 to 20 years' imprisonment would be consistent with sentences imposed in broadly similar cases.

Blagojevich cites to a variety of individuals who he suggests have records similar to his.  Def. Version at 52-55.[12]  In this prosecution, as well as other cases cited by Blagojevich, there are no other defendants who committed a similar scope and degree of criminal conduct as Blagojevich.  In addition, Blagojevich, unlike other defendants in this case, has been found guilty of multiple criminal acts of extortion, bribery, and fraud, covering multiple episodes, as well as lying to government agents in an effort to obstruct an ongoing criminal investigation.  Only Blagojevich, among the defendants

---

[12]  Blagojevich's factual statements in this section are, at times, inaccurate. For instance, former Congressman Dan Rostenkowski pled guilty to certain crimes. He was not, as Blagojevich alleges, convicted after trial.  Def. Version at 54.  In addition, comparing Congressman Rostenkowski, who was convicted of crimes related to misuse of franking privileges, and Blagojevich, whose crimes were of a much more serious and egregious nature, is inapt.

in this case, abused the significant public trust that comes with the highest elected office in Illinois. Further, Blagojevich was not dissuaded from engaging in continued criminal conduct despite witnessing Rezko, Kelly, and Levine all be arrested and convicted. And, no other defendant, in any case cited by Blagojevich, perjured himself at trial. *See United States v. Dunnigan*, 507 U.S. 87, 97-98 (1993) ("The perjuring defendant's willingness to frustrate judicial proceedings to avoid criminal liability suggests that the need for incapacitation and retribution is heightened as compared with the defendant charged with the same crime who allows judicial proceedings to progress without resorting to perjury.").

Further deprecating Blagojevich's appreciation for his criminal conduct is his request for a probationary sentence. *See* Statement of Aaron Goldstein on Chicago Tonight, 9/28/11. By way of comparison, Antoin Rezko, who voluntarily surrendered immediately after conviction to start serving what he knew would be a prison sentence, recently received a sentence of 126 months' imprisonment for corrupt activity that he engaged in directly with Blagojevich or with Blagojevich's tacit approval. Yet, Rezko: (a) held no elected office of trust; (b) was not involved in any of Blagojevich's 2008 criminal activity; (c) provided some cooperation to the government that proved valuable; (d) endured harsh conditions of confinement; and (e) ultimately accepted full responsibility for all of his criminal conduct. Blagojevich engaged in extensive criminal conduct with and without Rezko, provided no cooperation, perjured himself for seven days on the witness stand, and has accepted no responsibility for his criminal conduct. A probationary sentence would be entirely inconsistent with promoting respect for the

law, and the request in itself demonstrates Blagojevich's continuing refusal to recognize the seriousness of his criminal conduct.[13]

Even in Blagojevich's version submitted to the Probation Department, Blagojevich continues to portray himself as the *victim* of those around him who, apparently, were all taking advantage of Blagojevich in an effort to obtain personal benefits for Blagojevich. *See* Def. Version at 21 ("Mr. Blagojevich was taking direction from his advisors on the issue of how to approach the senate seat appointment"); Def. Version at 43 ("Mr. Blagojevich was clearly not leading or organizing, but was being taken advantage of by his own staff who were actually taking direction not from Mr. Blagojevich, but from their lobbying clients"); PSR at 14, line 408 (In his interview with the Probation Department after conviction, "[Blagojevich] stated he relied on his advisors to determine his actions."). Indeed, as Blagojevich's version makes clear, he will not even accept responsibility for lying to the FBI. Def. Version at 30-31. Rather, Blagojevich has repeatedly belittled his false statements conviction as being unfair and the product of FBI malfeasance. *See* 8/20/2010 WLS Radio Interview (Blagojevich: "And they've got this flimsy false statement from five years ago where I voluntarily cooperated with them and went in there in good faith to talk to them. They refused a court reporter. And so they can say whatever they want."). Blagojevich's statements

---

[13] In fact, Blagojevich refused to voluntarily remove himself from the roll of attorneys admitted to practice law in Illinois, and the Illinois Attorney Registration and Disciplinary Commission was forced to go to court to seek an order to suspend Blagojevich's law license. *See In the Matter of Rod R. Blagojevich*, 2011PR00103, file August 25, 2011 (a copy of the filing available upon request).

are not only misleading because, in fact, he was offered the opportunity to tape record the entire interview and refused, but they also demonstrate a continued failure to acknowledge his own criminal conduct.

In short, Blagojevich's request for probation fails to account for: (a) the extent of his criminal activity and the harm it has done to both its specific victims and the public in general; (b) his efforts at obstruction both during the investigation and by perjuring himself at trial; (c) his complete lack of acceptance of responsibility for his criminal activity; and (d) his efforts to delegitimize the legal proceedings through repeated knowingly false public statements.

All of the § 3553 factors, including § 3553(a)(6), counsel toward a substantial sentence of imprisonment.

## **CONCLUSION**

The goal of sentencing is to achieve a sentence that is "sufficient but not greater than necessary." In the instant case, the Sentencing Guidelines alone provide for an extremely lengthy sentence. The goal of sentencing, however, is not simply to achieve the greatest possible sentence, but a sentence that accounts for a variety of factors specific to the particular defendant and particular case.

Blagojevich repeatedly committed serious criminal acts that have done enormous damage to public confidence in Illinois government. He has refused to accept any responsibility for his criminal conduct and, rather, has repeatedly obstructed justice and taken action to further erode respect for the law. While the government is not unsympathetic to the plight that Blagojevich, like many criminals, has inflicted

upon his family through his criminal acts, Blagojevich has nobody to blame but himself for the criminal conduct in which he engaged.

Because that criminal conduct was extreme, and based on the other § 3553(a) factors addressed above, Blagojevich should be sentenced to 15 to 20 years in prison, as such a sentence would be sufficient but not greater than necessary in the instant case.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:    s/Reid Schar
       REID J. SCHAR
       CHRISTOPHER S. NIEWOEHNER
       CARRIE E. HAMILTON
       Assistant United States Attorneys
       219 South Dearborn Street
       Chicago, Illinois 60604
       (312) 353-3500

## <u>CERTIFICATE OF SERVICE</u>

The undersigned Assistant United States Attorney hereby certifies that the following documents:

### <u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

were served on November 30, 2011, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

s/Reid Schar
REID SCHAR
Assistant United States Attorney
219 S. Dearborn Street
Chicago, IL 60604
(312) 353-8897