5219

1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
2                       EASTERN DIVISION

3  UNITED STATES OF AMERICA,        )
                                     )  No. 08 CR 888
4          Government,               )
                                     )
5  vs.                               )  Chicago, Illinois
                                     )
6  ROD BLAGOJEVICH,                  )  July 15, 2010
   ROBERT BLAGOJEVICH,               )
7                                    )
              Defendants.            )  10:28 o'clock a.m.
8

9                         VOLUME 25
                  TRANSCRIPT OF PROCEEDINGS
10        BEFORE THE HONORABLE JAMES B. ZAGEL
                        AND A JURY
11

12  For the Government:

13              THE HONORABLE PATRICK J. FITZGERALD,
                UNITED STATES ATTORNEY
14              BY:  Reid J. Schar
                     Carrie E. Hamilton
15                   Christopher Niewoehner
                Assistant United States Attorneys
16              219 South Dearborn Street
                Suite 500
17              Chicago, Illinois 60604

18

19

20  Court Reporter:

21              Blanca I. Lara, CSR, RPR
                219 South Dearborn Street
22                    Room 2504
                Chicago, Illinois 60604
23                  (312) 435-5895

24

25

5220

APPEARANCES  (continued:)


For Defendant Rod Blagojevich:

          KAPLAN & SOROSKY
          BY:  Sheldon M. Sorosky
          158 West Erie
          Chicago, Illinois 60610
          (312) 640-1776

          LAW OFFICE OF SAMUEL E. ADAM
          BY:  Samuel Forbes Adam
               Samuel Adams, Jr.
          6133 South Ellis Avenue
          Suite 200
          Chicago, Illinois 60637
          312-726-2326


          OFFICES OF AARON B. GOLDSTEIN
          BY: Aaron Benjamin Goldstein
          6133 South Ellis
          Chicago, Illinois 60637
          (773) 752-6950

          OFFICES OF LAUREN FAUST KAESEBERG
          BY:  Lauren Faust Kaeseberg
          2140 N. Lincoln Park West
          Suite 307
          Chicago, Illinois 60614
          (773) 517-0622

          LAW OFFICES of MICHAEL GILLESPIE
          BY:  MICHAEL GILLESPIE
          53 West Jackson Boulevard
          Suite 1420
          Chicago, Illinois 60604
          (312) 726-9015

5221

1  APPEARANCES  (continued:)

2

3  For Defendant Robert Blagojevich:

4          ETTINGER, BESBEKOS, PARISI
           BY:  Michael D. Ettinger
5               Cheryl Ann Schroeder
           12413 South Harlem
6          Suite 203
           Palos Hills, Illinois 60453
7          (708)598-1111

8
           Edelman, Combs, Latturner & Goodwin LLC
9          BY:  Robyn S. Molaro
           120 S. LaSalle
10         Suite 1800
           Chicago, Illinois 60603
11         (708) 598-1111

12

13

14

15

16

17      (The following proceedings were had out of the

18       presence of the jury in open court:)

19          THE CLERK:  2008 CR 888, United States versus

20  Blagojevich.

21          MR. SCHAR:  Good morning, Your Honor.

22          Reid Schar, Chris Niewoehner and Carrie

23  Hamilton on behalf of the United States, joined

24  today by Marc Krickbaum, Bill Ridgway, Laurie

25  Barsella, Stephanie Zimdahl.

5222

1          MR. ETTINGER:  Good morning, Your Honor.

2          Michael Ettinger for Robert Blagojevich.

3          MR. GOLDSTEIN:  Good morning.

4          Aaron Goldstein and Sheldon Sorosky on behalf

:29AM  5  of Rod Blagojevich, also present is Lauren

6  Kaeseberg.

7          THE COURT:  We begin with tab 93, I think.

8          MR. GOLDSTEIN:  Correct, Your Honor.

9          THE COURT:  The government's position?

:30AM  10          MR. SCHAR:  Judge, assuming it's going to be

11  offered for some type of state-of-mind argument, I

12  can see if the defendant testifies, but the first

13  section deals with budget issues, but this turns

14  into another meandering discussion related to a

:30AM  15  rehash of additional conversations that occurred

16  with additional people not part of this.

17          I'm not sure that that would be relevant even

18  if the defendant testifies, to the extent it would

19  be both cumulative and confusing, and certainly it

:30AM  20  wouldn't fall directly under 803(3), not without

21  some delineation of exactly what the 803(3)

22  statements are at this point.

23          MR. GOLDSTEIN:  Your Honor, it is state of

24  mind.  This shows a conversation between

:31AM  25  Mr. Blagojevich and Mr. Greenlee.  They are

5223

1  discussing this deal again, they are discussing what
2  needs to take place for this deal to occur.  This is
3  clearly what is on his mind, Mr. Blagojevich's mind,
4  as he's speaking to Mr. Greenlee discussing this
5  deal.
6          There are, to a lesser extent, there are
7  contradictions between what Mr. Greenlee testified
8  to and to what he's discussing in this conversation,
9  as well, Your Honor.
10          THE COURT:  Well, whatever impeachment there
11  is in Greenlee, as to Greenlee, based on classical
12  impeachment as opposed to contradiction, whatever
13  could have been done or whatever they wanted done,
14  defendants wanted done, is done; he's off the stand.
15          To the extent that you think some things
16  contradict the description given by Greenlee, maybe
17  that's okay, but my main concern is here that we're
18  not so much dealing with state of mind but a
19  situation in which the defendant, Rod Blagojevich,
20  gets on the witness stand and gives his version of
21  what he was doing, what was in his mind.
22          And he could testify, and I assume he would
23  testify, and I assume this with respect to other of
24  these transcripts, that he is going to talk about
25  healthcare, capital budget, lots of things that he

5224

thought were good and that this is what he wanted to
get done.

And he testifies that this is clearly what he
told Greenlee, and that they discussed how this
could be done without raising taxes.  Although,
Greenlee's answer here seems to me to be "well, we
don't actually have to raise taxes, we'll just raise
fees," and usually people who are in elected office
when they say they don't raise taxes, don't like to
be asked questions about raising fees because
they're still paid by the public.  But if what he
wants to say is is that he said these things to
Greenlee, that he had a program, I don't see that
the government is disputing anything, because
they're not disputing any of that, this conversation
with respect to the earlier part of it where he is
talking about the program is extraneous.

If they do dispute it, that's another issue.
And I'm not going to confine the defense to a
situation where it doesn't come in unless the
government stands up and explicitly says he didn't
do it.  There might be stuff in the tenor of the
cross-examination that makes it clear that it's the
government's position, and, if that occurs, some of
this stuff does serve to corroborate his version and

5225

1 would be played.

2         So this has to wait to see what his testimony

3 is.  And I'm not talking about the stuff about

4 closing tax loopholes and commercial fee increases,

5 and a variety of other stuff.

6         And that also includes the stuff discussing

7 health and health insurance policy.  And I have some

8 additional reluctance with respect to that because

9 of the vagueness of that discussion, but he can

10 testify to all of this stuff and we'll see the

11 extent to which the government disagrees,

12 particularly in light of the fact that, for all

13 practical purposes, a good deal of this came in in

14 Greenlee's testimony, anyway.

15         Now, the rest of this having to do with who

16 sits on the senate seat is a series of things that

17 his recounting, that Defendant Blagojevich is

18 recounting what he said to people, and that has less

19 to do with his state of mind than the way he is, and

20 I'm using his word, he's playing this because he

21 talks about plays, and he can continue to talk about

22 his plays, but none of this shows a state of mind

23 which in any way contradicts or disputes the

24 evidence that's already been in.

25         He was looking about who he should appoint

5226

1   and was considering a bunch of people in turn, and
2   he asked a lot of people about who he should pick.
3   I don't divine state of mind from this, unless the
4   government gets up here and alleges that he had
5   never really cared what people had to say, which I
6   very much doubt that they're going to contend in
7   this case.  I just think it's endlessly repetitive.
8   There's a lot of people mentioned, a lot of
9   candidates, it's just more of the same thing, and
10  deals with issues that I don't think they're going
11  to dispute.  If they do, it could open the door to
12  that.
13          Tab 96.
14          Let's pause for a second here.
15      (Brief pause).
16       THE COURT:  The government's view?
17          MR. SCHAR:  Judge, it's similar, it's kind of
18  a rambling nature.  It's another conversation with a
19  polster which goes through a variety of individuals,
20  obviously it picks out certain sections.  Again, I
21  think based on what Your Honor just said, it's a
22  rehash of the same thing but with a different
23  individual.  So for all the reasons Your Honor has
24  already said, it wouldn't be appropriate.
25          To the extent it is, there has to be a lot

5227

more of this call played so that the proper context
could be put in place as to a whole variety of
different individuals, including the fact that they
cherry picked with one individual when, in fact,
divided the call suggests to Defendant Blagojevich
that he would go with a completely different
individual he was thinking of that day.  Unless
there is some delineation exactly what was his state
of mind, I don't see it at this point.  Obviously,
on cross-examination.

        THE COURT:  The problem I have with this one,
particular with this one is, there seems to be a
complete absence of substance, and there are a
couple on there later on this that you don't even
know what people are referring to.  They're talking
about something in exchange, but nobody says what
it's in exchange for.  Granted, that there may be a
subtext here that we don't know about.  Maybe
Defendant Blagojevich and Yang had so many
conversations over the years that they understand
what the reference is when one asks something, but
there is nothing here that the jury can really
comprehend.

        What you're entitled to do, and basically
it's the same rule, the defendant will testify and

5228

1    we'll see if the government disputes stuff, but the
2    truth is with this one, I don't think there's a lot
3    here for the government to dispute, because there's
4    really nothing there.  It's just a lot of talk that
5    is, even by the standards of this case, notably
6    inconclusive.  There is really no clue here as to
7    what his state of mind is.
8          What he can do is testify what his state of
9    mind is, but this does nothing to corroborate or
10   contradict it.  It's just the same thing that he's
11   gone through again and again, except this one has
12   even fewer details.  I just don't see that this is
13   any help at all to anybody.
14         MR. GOLDSTEIN:  I mean, first, "cherry
15   picking" I find a bit ironic, the word "cherry
16   picking," but nonetheless we are trying to put in
17   certain elements that are relevant to our case.
18   What you have is a state of mind, first, as to Rod
19   Blagojevich's view of Jesse Jackson, Jr.;
20   specifically talks about not wanting to pick him,
21   that's a contradiction to what the government has
22   alleged that he wanted to pick Jesse Jackson, Jr. in
23   exchange for campaign contributions; there's a
24   discussion of the emissary and whether Senator
25   Durbin would be an emissary or not, that goes to the

1  state of mind as to what Rod Blagojevich was

2  thinking as to his strategy on how to pull off a

3  deal like this; and then, generally speaking, about

4  this deal, what his state of mind is as to this deal

5  on this date and time.

6          THE COURT:  I just don't think it illuminates

7  anything, so I'm sustaining the objection.

8          Tab 98, why do you want this?

9          MR. GOLDSTEIN:  Tab 98, the government has

10  given us their positions on each of these tabs, and

11  they did indicate they had no objection, but under

12  the rule of completeness we wanted to add Page 2,

13  line 20, if that's their position today, we're in

14  agreement with that.

15          THE COURT:  That's the government's position?

16          MR. SCHAR:  Judge, we're conferring with

17  that.

18          THE COURT:  What?  You're conferring?

19          MR. SCHAR:  We're conferring.

20      (Brief pause).

21          MR. SCHAR:  Judge, no objection, assuming the

22  totality of the call is played.

23          THE COURT:  Well, it's interesting because,

24  on my little sheet of notes, I said admitted.  So we

25  just had a pointless discussion.

5230

1       Tab 99, the government's position?

2       MR. SCHAR:  Again, it goes to the same

3   reasons, with a polster.

4       THE COURT:  I do have one question because it

5   will illuminate my thinking about this.  Turn to

6   Page 19.

7       (Brief pause).

8       THE COURT:  You got Page 19?

9       MR. GOLDSTEIN:  Yes.

10      THE COURT:  It is a mystery to me, which you

11  may be able to solve, why under any circumstances

12  your client would want this played to the jury.

13      MR. GOLDSTEIN:  Why not?  I mean, Your Honor,

14  he's discussing his state of mind here.

15      THE COURT:  And the state of mind he's

16  discussing is he wants to shut down state government

17  and try to blame it on somebody else?  I just don't

18  understand why.

19      MR. GOLDSTEIN:  It' --

20      THE COURT:  Now, if you tell me that he

21  wasn't serious about that, I believe you, but --

22      MR. GOLDSTEIN:  Well, I don't necessarily see

23  that that's the interpretation that one can garner

24  from this, it's an explanation of what's going on in

25  the state at that time.

5231

1        I don't see it as necessarily him wanting to
2 -- there's further discussion as to his adviser--in
3 the government's view, polster--is giving him
4 suggestions, and him, Harris, talking about this
5 discussion with Mr. Yang about the particular
6 subject.
7        (Brief pause)
8        THE COURT:  You like what's in the note or
9 not?  It's up to you.
10        MS. KAESEBERG:  We're interpreting.
11        MR. GOLDSTEIN:  We need a handwriting class.
12        The point of the matter is, we want it.  It
13 explains what he is going through in the state at
14 that time and it's going to be explained.
15        And my notes, also, is that the government
16 had sort of half and half objection.
17        MR. SCHAR:  I think that while we don't have
18 an objection to the part of shutting down the
19 government, but we would object to the other
20 portions.  We don't think they are any different
21 from the last conversation, it's all out there.
22        MR. GOLDSTEIN:  You won't cherry pick that
23 portion.
24        THE COURT:  I believe it's duplicative, it
25 adds nothing new.  But, again, I reserve what

5232

1  happens during the course of his testimony, either
2  direct or cross, some of it might come in.
3        It's possible, in fact, that the government
4  might want to put some of it in, in which case they
5  will probably have a different edit than you do and
6  I'll consider that as time goes on.
7        Tab 102, the government's position?
8        MR. SCHAR:  Judge, this is the government's
9  read of it:  It's totally irrelevant, hearsay, 403.
10  They want the entirety of the call which deals with
11  so many different topics that have nothing to do
12  with the charges in this case.  It's just not clear
13  to the government at all how this goes to their
14  theory of the case.
15        MR. GOLDSTEIN:  Your Honor, it is a long
16  call, I don't think that is any reason to bar the
17  call.
18        THE COURT:  No, it's not; it's not.  It's
19  just an argument, I guess, based on waste of time,
20  but there is nothing, per se, that's wrong with a
21  long call.
22        MR. GOLDSTEIN:  This is a call between Rod
23  Blagojevich and Chris Kelly, a coconspirator that
24  the government claims, they put his picture up on
25  the wall numerous times.  This is a conversation

1  that has --

2       THE COURT:  But you do realize the only way

3  you can get a coconspirator statement in is to prove

4  that the United States Government was a conspirator.

5       MR. GOLDSTEIN:  That the United States

6  Government was a conspirator?

7       THE COURT:  Yeah, that's basically the rule

8  but often forgotten by counsel for defense in

9  federal criminal cases.

10      MR. GOLDSTEIN:  Fair enough, Your Honor.

11  Nonetheless, what we have, just on the two

12  individuals on the call itself, creates a lot of

13  relevancy.

14      As to the substance of the call, what you

15  have is, there's a lot of discussion, particularly

16  on Page 55 there's a mention of Bernie Kozar who is

17  mentioned in the trial, and this explains why the

18  governor's state of mind as to this horse racing

19  bill and explains his concern as to moving forward

20  at a certain time with the bill.

21      He gets a call from Chris Kelly, completely

22  out of the blue, hadn't spoken to him for sometime,

23  and then Chris Kelly is mentioning this, and you'll

24  see in these other calls some discussion of it, and

25  that explains his concern as to why he was not

:49AM

:49AM

:50AM

:50AM

:50AM

5234

1 signing the bill.

2        Now, there are, I must acknowledge, on
3 Page 46, line 13, through Page 48, line 10, there
4 are mentions of subjects that is in Your Honor's
5 order as far as motion in limine.  So we understand
6 that, we have no problem omitting that, but besides
7 that, Your Honor, this is a very relevant call and
8 explains the state of mind of Rod Blagojevich of why
9 he moved forward or didn't move forward on the horse
10 racing.

11        THE COURT:  But you've offered the entirety,
12 the entire conversation.

13        MR. GOLDSTEIN:  I understand that, Your
14 Honor.

15        THE COURT:  I reject the offer of the entire
16 conversation.  And, again, there's something in here
17 that I don't understand why you would think it would
18 benefit your client, and that's Page 41, lines 28
19 through line 38, but if you want to submit an edited
20 version of this, I will give you leave to do that.

21        MR. GOLDSTEIN:  Will do.

22        THE COURT:  Tab 121, what's this being
23 offered for?

24        MR. GOLDSTEIN:  Your Honor, there's two
25 issues; one is state of mind as to, in particular, a

5235

1  call between Harris and Emanuel.  The state of mind

2  of Mr. Emanuel, but even if it's not as to state of

3  mind, it explains the actions that Mr. Emanuel took

4  after this call.

5          This is a call in which Harris -- there's a

6  discussion between Harris and Emanuel talking about

7  the senate seat.  Mr. Emanuel then contacted

8  Mr. Durbin, Mr. Axelrod, as to the subject, and

9  explains, this call explains why he then went

10  forward and made that contact with those individuals

11  about the senate seat in particular.

12          THE COURT:  Right.  And this is relevant to

13  your case because?

14          MR. GOLDSTEIN:  Well, it explains why or how

15  the process was to get to Lisa Madigan done.

16          MR. SCHAR:  It clearly doesn't go to anyone's

17  state of mind that is relevant to this case.

18          THE COURT:  It's hearsay, does not fall under

19  any hearsay exception.  And if you think that this

20  is significant, there are other ways to prove this.

21  The objection is sustained.

22          127.

23          Incidentally, we will be taking a break to do

24  a telephone conference at 11:00, but it's likely to

25  be a very short break.

5236

1          MR. GOLDSTEIN:  And I do believe, Your Honor,

2     we have agreement on the next amount of calls coming

3     up.

4          THE COURT:  Okay.

5          127, is there an objection to 127?

6          MR. SCHAR:  Yes, Judge.  It's not relevant to

7     anything.  Reporting back from another conversation

8     to the defendant about legal issues that have

9     nothing to do with the specific charges in this

10    case.  So it's 403 at a variety of different levels,

11    and there's no hearsay exception that could possibly

12    lead to the admissibility.

13         MR. GOLDSTEIN:  Your Honor, this goes to

14    state of mind.  The government put in a call

15    discussing the factors at one point that the

16    Governor's decision-making as to the senate seat a

17    legal, personal, political.  This call explains the

18    Governor's thinking as to why he came up with those

19    rankings at that time, Your Honor.  So this explains

20    state of mind, it explains why he said some of the

21    things he did on prior conversations.

22         THE COURT:  That explanation, one, has to

23    come from his mouth; the second thing is, as I read

24    this, what you have is a conversation in which the

25    Governor and Mr. Quinlan are trying to guess what

:54AM

:54AM

:55AM

:55AM

:56AM

5237

1 the meaning of still a third lawyer told them about
2 what a witness may or may not have said, when it is
3 quite clear from Quinlan's initial comment that the
4 lawyer didn't actually tell them what his client
5 said.  This is just a bunch of guys and people
6 involved speculating on what somebody might have
7 said.

8        If your proposition that you intend to prove
9 is that at one point in time the Defendant Rod
10 Blagojevich was extremely curious about what
11 witnesses were saying about him, I think the
12 government would likely be willing to stipulate to
13 that being his state of mind.

14        There's nothing of substance here, just a
15 bunch of people guessing at what somebody said.  And
16 the only state of mind that I see revealed by this
17 is the one I just stated, that they would like to
18 know, as would 99 percent of sane people in his
19 position.  You want to know what people are saying
20 about you, you want to know what they're saying
21 about you and they haven't been told, they're trying
22 to guess, like overhearing a session of people
23 trying to read the rooms, which is not very popular
24 now and hasn't been since the middle ages, but it
25 was justified as informative.  So I'm sustaining the

5238

1 objection.

2     142.

3     MR. SCHAR:  142 and 143 the government is not

4 going to object if the defendant testifies.

5     THE COURT:  That's what I wrote.  I wrote,

6 "if testify" on it.

7     Do you have a problem with that one?

8     MR. GOLDSTEIN:  No.

9     THE COURT:  Okay.

10     MR. GOLDSTEIN:  Your Honor, as to 146, the

11 next one, the government indicated to us that

12 certain sections appear to be admissible as to state

13 of mind and then gave other lines that should be

14 added, I believe, for completeness.  If that is the

15 case, we have no objection to the suggested lines

16 being admitted.

17     THE COURT:  You'll be hearing from the

18 government shortly.  They're conferring.

19   (Brief pause).

20     MR. GOLDSTEIN:  They have specific portions

21 of the call they wanted admitted, narrowing what we

22 wanted, just so it's clear.

23   (Brief pause).

24     MR. SCHAR:  Judge, I think there were three

25 specific sections we didn't have objections to.  You

1 have those pages and line numbers?

2     THE COURT:  Yeah.

3     MR. SCHAR:  This is Page 8, line 18.

4     THE COURT:  Hold it.

5   (Brief pause).    :59AM

6     THE COURT:  To?

7     MR. SCHAR:  To Page 9, line 4.

8     THE COURT:  Okay.

9     MR. SCHAR:  Picking it up again on Page 14,

10 line 1.    :00AM

11     THE COURT:  14, line what?

12     MR. SCHAR:  Yes, sir.

13     THE COURT:  What line?

14     MR. SCHAR:  Through line 30 of that page.

15     THE COURT:  The entire Page?    :00AM

16     MR. SCHAR:  The entire --

17     No, line 30, Judge.  Sorry.  Not the entire

18 page.

19     THE COURT:  I think maybe you mean line 29.

20     MR. SCHAR:  I probably do.    :00AM

21   (Brief pause).

22     MR. SCHAR:  I'm sorry, beginning on line 1

23 and ending line 30.

24     THE COURT:  Okay.

25   (Brief pause).    :01AM

5240

1       THE COURT:  Okay, what's the next passage?

2       MR. SCHAR:  Page 19.

3       THE COURT:  Okay.

4       MR. SCHAR:  Line 2 through line 17.

5       THE COURT:  Okay.

6       Now your position.

7       MR. GOLDSTEIN:  We agree with that.

8       THE COURT:  You agree to what would be read

9  and no more?

10       MR. GOLDSTEIN:  Correct.

11       I thought there was one more exception.

12       THE COURT:  There was one more.

13       MR. SCHAR:  Page 21, line 38.

14       THE COURT:  Say it again.

15       MR. SCHAR:  Page 21, Judge, line 38.

16       THE COURT:  Ending at?

17       MR. SCHAR:  Page 22, line 8.

18       THE COURT:  Are you satisfied with that?

19       MR. GOLDSTEIN:  Yes.

20       THE COURT:  Okay.  That will be played.

21       MR. GOLDSTEIN:  Thank you.

22       THE COURT:  I'm going to stop now.

23       The next one is tab 158.

24       15, 20 minutes, tops.

25     (Recess.)

5241

1          THE MARSHAL:  Ladies and gentlemen, please
2  remain seated.
3          THE COURT:  The government's position with
4  respect to 158?
5          MR. SCHAR:  No objection, Judge.
6          THE COURT:  I have one more that's not
7  tabbed.
8          MR. GOLDSTEIN:  Correct; Section 117.
9          Does your Honor have a copy?
10          THE COURT:  I got a couple of --
11      (Brief pause).
12          THE COURT:  Yeah, I have it.  It's in here.
13  The tab has no number.
14          MR. GOLDSTEIN:  Yes.
15      (Brief pause).
16          THE COURT:  The government's position?
17          MR. SCHAR:  Judge, we're objecting as
18  irrelevant, hearsay.  I don't see anything in here
19  that goes to state of mind.
20          THE COURT:  This is the one that I was
21  referring to when I said you don't know what the
22  reference are.
23          And this actually sounds like the
24  conversation somebody would have if they thought
25  that they were being recorded.  To give you an

5242

```
 1   example:
 2       "I called you as soon as I got the e-mail."
 3       "What?  You talking about now?  I just went to
 4       the restroom."
 5       "I am talking about the other one."
 6       Then... "I got to put this on hold."
 7       And then your client:
 8       "It's for, like, yeah, he is making it sound
 9       like it is urgent or something, you know
10       anything about this?"
11       "No, but I suspect it's what I mentioned to you
12       on the plane.  I don't know anything about it,
13       but I suspect it's that."
14       "What's that?"
15       "Remember I mentioned to you about, you know,
16       what he thinks, a bill may help him with his."
17       "I know, that's what I think, too.  I don't
18       want, I don't want -- that's what I, I mean
19       candidly, that's what I think it is, I don't
20       know."
21       "That's what I think it is, too.  And, you know
22       what?  That offends me, that offends me.
23       "I don't know, I don't know if that's it, I
24       haven't spoken to him at all, I'm just
25       guessing."
```

5243

1      What does this tell us?

2          MR. GOLDSTEIN:  This is a conversation about

3  Chris Kelly.

4          THE COURT:  Okay.

5          MR. GOLDSTEIN:  And it explains the state of

6  mind of Governor Blagojevich when Chris Kelly called

7  in his concerns because of the previous tab that we

8  discussed, his concerns that Chris Kelly was trying

9  to have some type of advocacy as this bill because

10  he thought it somehow helped him.

11          So Governor Blagojevich is reporting to his

12  lawyer his state of mind as to his concerns

13  referencing a plane ride which was discussed in the

14  Government's case-in-chief at least at the aftermath

15  of that, the conversation between Harris and

16  Quinlan.

17          THE COURT:  It's too opaque for me.

18          MR. GOLDSTEIN:  But he can certainly explain

19  -- I mean, the call can be played, he can explain

20  what he meant by all these things and what his

21  understanding of Mr. Quinlan.

22          THE COURT:  He can testify to this stuff, but

23  this doesn't aid him in any way.  It doesn't aid the

24  prosecution either.  It's the problem with talking

25  about stuff and you maybe think you are being

5244

overheard, you don't say anything.

And what the jury can derive from this about his state of mind is absolutely nothing more than what he testifies to.  When I started to read this, I thought there's something there because this does have the kind of urgency that often justifies the admission of something that's 803(3), some reaction to something, but it's just not clear from this what it is, and it's not clear what he wants to do.  It's just too opaque.

Now we're on to 167.

The government's position?

MR. SCHAR:  The same position as to the last call, Judge, for the same reasons; and, in addition, there is all types of sections here in the phone call that are getting into potential sentencing date of a potential coconspirator and it has nothing to do with state of mind, and for all of the same reasons, as well as 403 we object to it.

MR. GOLDSTEIN:  Your Honor, to make things a little bit easier, we indicated we want the entire call, we would only request Page 1 starting at line 42 to the end of Page 6.

And, again, this is --

THE COURT:  Yeah, let me read it again.

5245

1          MR. GOLDSTEIN:  Okay.

2       (Brief pause).

3          THE COURT:  Page 6 through?

4          MR. GOLDSTEIN:  The end of Page 6.

5          THE COURT:  I'll ask this question just in

6    passing, do you regard the last exchange, Page 6,

7    line 41 to line 46 as particularly important or not?

8          MR. GOLDSTEIN:  Yes.

9          THE COURT:  Now, suppose this comes in,

10   assuming it's in, assuming there's a closing

11   argument in this case, what is the argument going to

12   be about why this helps the defendant?

13         MR. GOLDSTEIN:  The reason why this call is

14   relevant is it explains Mr. Blagojevich's state of

15   mind as to this bill, this horse racing bill.  He

16   specifically says he's inclined for the bill, but

17   he's talking to his lawyer, he's concerned about the

18   fact that Chris Kelly has now, in essence,

19   contaminated the process, and that explains his

20   concern as to why he moved forward or didn't move

21   forward to this bill.

22         The government has presented the theory that

23   the reason why he's holding it up is to get campaign

24   contributions, this completely contradicts that

25   theory and explains why this bill --

5246

1          THE COURT:  Well, wait, wait, wait.  Why
2    don't you drop the "completely" because you can't
3    really sustain that one.
4          MR. GOLDSTEIN:  That's for the jury to
5    decide.
6          THE COURT:  Well, what you've got is is you
7    got evidence that whatever had to do with money for
8    racetracks, there was at least one other reason, and
9    that's what, I think, you want to prove here, that
10   there was one other reason, and the jury can make up
11   its mind as to which reason might be controlling.
12         Even he does not appear, your client does not
13   appear to rely completely on this conversation, but
14   I can understand why it might conceivably support
15   some testimony to that evidence.  But that's
16   basically what your argument is going to be.
17         MR. GOLDSTEIN:  Yes.
18         THE COURT:  Now the government can respond.
19         MR. SCHAR:  Judge, we'll withdraw the
20   objection.
21         THE COURT:  Okay.
22         MR. SCHAR:  I'm sorry, Judge --
23         THE COURT:  Only to the part they're
24   offering, which is Page 1, line 42, through Page 6,
25   line 47.

5247

1        MR. GOLDSTEIN:  That's fine, Your Honor.

2        MR. SCHAR:  Just one moment, Judge?

3        THE COURT:  Sure.

4      (Brief pause).

5        MR. SCHAR:  That's right, Judge.

6        THE COURT:  All right.

7        172, Page 3, line 14 to the end of the call.

8        Now, when was the date of the story that

9    precipitated this conversation?

10        MR. SCHAR:  The story came out the following

11    day.  I believe, as the government indicates, they

12    were alerted to that.

13        THE COURT:  So the newspaper article appears

14    the rough equivalent of some guy walking on the

15    street with a sign saying "the end is near" and this

16    is the discussion of it.

17        The government's objection?

18        MR. SCHAR:  Judge, we object, obviously.

19    It's not 803(3), it's historical looking, it's

20    confusing because Mr. Quinlan is on the line this

21    time and opines after the motive is fabricated,

22    which he knows that there were potentially

23    recordings against him, for all those reasons we

24    would object.

25        MR. GOLDSTEIN:  Your Honor, this is actually,

:36AM

:37AM

:37AM

:38AM

:38AM

5248

1    I think, an excited utterance argument and I'll let

2    Mr. Riebman explain to Your Honor.

3           MR. RIEBMAN:  Your Honor, Elliott Riebman on

4    behalf of Rod Blagojevich.

5           This conversation was not the conversation

6    the government just pointed to, that was a

7    conversation on the following morning.

8           This conversation occurred barely ten minutes

9    after Rod Blagojevich learned that he might be being

10   recorded and that John Wyma was potentially

11   cooperating with the federal government.

12          So this small lapse in time, from 10:29 p.m.,

13   which is government tab 97, to 10:42 p.m., is not

14   sufficient to destroy the distress of the excitement

15   that Rod Blagojevich is under in this conversation.

16   He has no time to fabricate and --

17          THE COURT:  Okay, but which one is the

18   excited utterance?

19          Because I'll give you an example:

20      "Blagojevich" I talked to Doug like an hour and

21       a half ago, he didn't tell me any of this."

22           this I do not think is an excited utterance.

23   I mean, he may be excited about it, but the content

24   is not an excited utterance.  So something here you

25   want to identify as the excited utterance or

5249

utterances?

    MR. RIEBMAN:  Yes, Your Honor, Page 4, line 6.

    THE COURT:  Right.  I'm there.

    MR. RIEBMAN:  This is the first moment that Rod Blagojevich reacts to recollecting anything that he might have said, and he's telling his lawyer, without any time to fabricate, what he might have said that could have been recorded.

    Additionally, the tone of the defendant Rod Blagojevich's voice is clearly in distress --

    THE COURT:  So talking about line 6 through line 15?

    MR. RIEBMAN:  Yes.

    THE COURT:  Okay.  Is there anything else?

    MR. RIEBMAN:  Additionally to line 38, the statement --

    THE COURT:  Yeah.  I see it.

   (Brief pause).

    THE COURT:  So you're offering as excited utterance--assuming the premise is laid, which actually has to sort of be laid in his testimony--he just learned about this and he said so-and-so, and then he winds up talking to people about this, in the course of talking to people about this he says:

5250

1     "... was in my office, wanting to seem weird,
2      you know, and I told them that we'd gotten
3      Dusty Baker called me, you know, I was pressing
4      him on a fundraiser for Vondra, you know, I
5      said Vondra wants something, I may have said
6      that, I don't know..."
7          then Quinlan responds, and my assumption is
8  you're not going to attempt to say that this is
9  an opinion of counsel?
10          MR. GOLDSTEIN:  No.
11          MR. RIEBMAN:  No.
12          THE COURT:  No.
13          Then his next thing is:
14     "Okay, and then I'm thinking Magoon, call Magoon
15      to see if he can do a fundraiser because, I'm,
16      you know, one was not for the other, but Dusty
17      Baker called me and said that they're behind
18      payments on Children with pediatric factors so
19      that Greenlee could find the money and I called
20      Magoon and told him Dusty Baker called, okay,
21      and after the fact I told Wyma, look, we just
22      did something for Children's Memorial Hospital,
23      see if you can, they can do something for me,
24      that's not a problem, here's the bill, stop
25      there."

5251

1        That's what you're offering?

2        MR. RIEBMAN:  We're offering to stop at line

3   39, Quinlan's response.

4        THE COURT:  Okay.  And are you going to argue

5   that that's an opinion?

6        MR. GOLDSTEIN:  Opinion of counsel?

7        THE COURT:  Yes.

8        MR. GOLDSTEIN:  As to the advice of counsel

9   on intent, no.

10        THE COURT:  Right.  Because it's a little

11   late in the game.

12        MR. GOLDSTEIN:  Yeah, it's after the fact.

13   We're not saying that.

14        THE COURT:  Okay.

15        So leaving out line 39 through 40, which is

16   Quinlan's response, this is what's on offer.  Does

17   somebody actually have this?

18        MR. SCHAR:  The recording?

19        THE COURT:  Yeah.

20        MR. RIEBMAN:  Yes, Your Honor.

21        THE COURT:  What?

22        MR. SCHAR:  I said we have the recording, we

23   don't have it upstairs.

24        MR. GOLDSTEIN:  We have it.

25        THE COURT:  You have it here?  Can you play

5252

1  it?

2         MR. GOLDSTEIN:  Would you like it in

3  chambers?

4         THE COURT:  I've already read it out loud.

5         MR. GOLDSTEIN:  Okay.

6         MR. SCHAR:  I believe it's faster if you

7  listen to the phone call -- if you listen to the

8  whole phone call.

9         THE COURT:  Yeah, I do want to listen to all

10  of it.

11         MR. GOLDSTEIN:  Just waiting for the

12  speakers.

13         THE COURT:  Sure.

14      (Brief pause).

15         MR. GOLDSTEIN:  Where would you like it to

16  start?

17         THE COURT:  The call you're offering -- well,

18  actually --

19         MR. GOLDSTEIN:  You want it to start on Page

20  3?

21         THE COURT:  Yeah, start on Page 3.

22         MR. GOLDSTEIN:  Okay.

23      (Tape played.)

24         THE COURT:  Mr. Schar --

25         MR. SCHAR:  We still have an objection,

:43AM

:44AM

:46AM

:46AM

:49AM

5253

1 Judge.

2　　　THE COURT:  Well, actually, that wasn't the
3 question I was going to ask.

4　　　I would say that he's excited, and I would
5 say that this is an excited utterance, the question
6 is, once being an excited utterance, does this
7 necessarily mean it comes in, because the defense
8 will argue that this excited utterance was perfectly
9 truthful.

10　　　And, of course, I don't think I'm going to
11 allow them to play it unless this is actually the
12 testimony of the defendant, he has to testify to it.

13　　　The problem with this particular excited
14 utterance is to determine what he's excited about.
15 Is he excited about the fact that there's this
16 charge and there's this completely innocent
17 explanation or is he excited because he's trying to
18 figure out some way to explain what he's already
19 done.  And, frankly, I think this is fair to give
20 this to the jury and let them consider this.  So
21 what was played to me can be played to the jury.

22　　　But the issue is whether we care much about
23 the preface.  And I think the preface, which means
24 Page 3, line 14, if the rest of it is played, it's
25 something that I believe both sides would want in

5254

1 because otherwise you don't have context.

2          MR. SCHAR:  The only line that we'd ask to

3 take out is the question at the end.

4          THE COURT:  You mean "that's not the problem

5 is it?"  Yeah, I'll strike that.  It's also

6 something that cuts both ways, but it's unanswered.

7          Okay, so that's 172, our next is 189.

8          Since I anticipate that there will be an

9 objection to this, you can tell me what your theory

10 is.

11          MR. GOLDSTEIN:  Your Honor, this is a call

12 between Harris and Emanuel, they're discussing the

13 senate seat, and they are discussing possible

14 individuals and the name Jesse Jackson comes up, and

15 it's our contention, Your Honor, that this explains

16 why Rahm Emanuel did what he did in going forward to

17 eventually make himself the emissary for this deal,

18 Your Honor.

19          MR. SCHAR:  Judge, we would object to this.

20 This is not for the mind of the defendant; it's not

21 relevant.  The defendant understands and knows he's

22 going to get on the stand and testify as to what he

23 believes was occurring, what the basis was, and it's

24 not going to be this phone call.

25          THE COURT:  The objection is sustained.

:52AM

:53AM

:53AM

:53AM

:53AM

5255

1              196.

2              MR. GOLDSTEIN:  Your Honor, as to 196, I do

3    believe we have agreement.  I think the government

4    wants the entire call come in under completeness.

5              MR. SCHAR:  Yes.

6              MR. GOLDSTEIN:  We have no objection to that.

7              THE COURT:  Okay.

8              MR. GOLDSTEIN:  Same with 199, I believe.

9              MR. SCHAR:  We don't object to 199.

10             THE COURT:  Tab 209, it's short.

11             MR. GOLDSTEIN:  It is a short one.  I believe

12   we have an agreement on that, as well.

13             MR. SCHAR:  There's two parts.  The first

14   part we would object to, I think the second part

15   that begins at --

16             THE COURT:  Except what I have listed as

17   offered here is this Page 8, line 41, that's what's

18   on the sheet.

19             MR. GOLDSTEIN:  It's actually Page 4,

20   starting at the top, line 1.

21             THE COURT:  Okay, so the sheet is in error.

22   That's fine.

23             MR. GOLDSTEIN:  Correct.

24             MR. SCHAR:  What the sheet has we wouldn't

25   object to, everything else we would.

5256

1          THE COURT:  Okay.  So we got Page 8, line 41.
2     So I'm talking now about what's not objected to.
3          MR. GOLDSTEIN:  Okay.
4          THE COURT:  Page 8, line 41 can't quite be
5     right because it begins with Greenlee saying "that's
6     good."
7          MR. GOLDSTEIN:  I believe that it's Page 7
8     that we're requesting.  Page 7, line 44.
9          THE COURT:  Line 44?
10         MR. GOLDSTEIN:  Yes.
11         THE COURT:  And that ends with Page 9, line
12    18?
13         MR. GOLDSTEIN:  Correct.
14         THE COURT:  The government's position?
15         MR. SCHAR:  I just have to check real quick.
16         THE COURT:  Yes.
17      (Brief pause).
18         MR. SCHAR:  Judge, we wouldn't object if it's
19    Page 8, line 36.
20         THE COURT:  Say that to me again.
21         MR. SCHAR:  Page 8, line 36, through the
22    following section, I think everything that is on the
23    bottom of Page 7 through Page 8 to 36, we wouldn't
24    object.
25         THE COURT:  So you're not objecting to that

:55AM
:55AM
:56AM
:56AM
:56AM

5257

1 which begins with Page 8, line 36?

2        MR. SCHAR:  Correct.

3        THE COURT:  Through Page 9 through the first
4 word of line 20?

5        MR. SCHAR:  Yes.

6        THE COURT:  Okay, so that we're agreed on.

7        MR. GOLDSTEIN:  We're agreed with that.

8        THE COURT:  Okay, now let's deal with the
9 rest of it, now that I understand what's agreed to.

10        MR. GOLDSTEIN:  As far as the earlier stuff,
11 Your Honor --

12        THE COURT:  That's what we're dealing with
13 next.

14        MR. GOLDSTEIN:  We're actually withdrawing
15 it.

16        THE COURT:  You are withdrawing it?

17        MR. GOLDSTEIN:  The first portion.  The only
18 argument we would have is to the second portion, we
19 are, as far as completeness, at Page 7, line 44
20 through the point at, which the government suggests,
21 which is Page 8, line 36, we have requested that
22 that come in under completeness.

23        THE COURT:  Okay, now say that again because
24 I was making notes.

25        MR. GOLDSTEIN:  I apologize.

1          THE COURT:  That's okay.

2          MR. GOLDSTEIN:  The first part, as we said,

3     we will withdraw.

4          THE COURT:  Okay.

5          MR. GOLDSTEIN:  The second part we're

6     requesting begin at Page 7, line 44.

7          THE COURT:  Okay, let me read this.

8          (Brief pause).

9          THE COURT:  These seem to me to be different

10    subjects.  The subject to the first part is media

11    coverage.  In fact, the first line of this section

12    begins with "we're going to be able to get coverage"

13    and then he mentions the subject, and Greenlee

14    responds about "it's gonna be harder because there

15    is so much other good stuff out there," which,

16    according to Greenlee, must have been said tongue in

17    cheek.

18          And then the Governor says some more about

19    poverty, and then Greenlee talks about getting a

20    second story out of something, and then there's

21    discussion which I think has to do with some kind of

22    appearance somewhere because he's asked about "are

23    you going to be at poverty" which is the shorthand

24    for something.  And he said "yes," and then there's

25    a reference to a possible Senate candidate who will

5259

1  also be there, and then the Governor says something
2  about "we'll get press."
3           What I'm willing to do, and I think he's
4  going to have to testify to explain, I'm willing to
5  let you start at line 22, because that is, at least,
6  -- he's talking about something else but at least
7  it's relevant to the stuff that's agreed to, because
8  he's going to appear -- I mean, obviously, it means
9  he's going to appear at the place where the Senate
10  candidate is there, and then they go into the Senate
11  stuff again, and then the rest of the stuff comes
12  in, so that makes sense to me; so that's my ruling.
13           I think that's it.
14           MR. SCHAR:  I think that's it, Your Honor.
15           THE COURT:  Who are your witnesses on Monday?
16           MR. GOLDSTEIN:  We're just working on
17  scheduling.  We will have them in the afternoon and
18  we will notify Mr. Schar as soon as we have them.
19           THE COURT:  Right.  Notify me, too.
20           MR. GOLDSTEIN:  Will do.
21           THE COURT:  But this leads to another
22  question I have, any of the witnesses that you're
23  going to have on Monday going to be lengthy
24  witnesses?
25           MR. GOLDSTEIN:  I believe Mr. Ettinger is

:01PM

:01PM

:01PM

:01PM

:02PM

5260

1 going forward with his case-in-chief first.

2      THE COURT:  Mr. Ettinger, are any of your

3 witnesses going to be lengthy?

4      MR. ETTINGER:  Yes.

5      THE COURT:  Okay.

6      MR. ETTINGER:  Judge, we don't know if we're

7 going to be --

8      MR. GOLDSTEIN:  I apologize, I didn't want

9 to --

10      MR. ETTINGER:  No, that's all right.

11      We're still in discussions with our

12 codefendant as to if they have any witnesses to put

13 on before we put on our case.

14      Assuming we're going ahead first, Judge, it

15 will be Julie Blagojevich first and then Robert.  I

16 expect Robert to be lengthy, Julie won't be.

17      THE COURT:  Okay.

18      MR. SCHAR:  Judge, a couple of things just to

19 be prepared for Monday.  First of all, at least as

20 of today, I think, we have no discovery on any

21 potential witnesses.  I don't know if they don't

22 have any in terms of reports, statements, documents

23 they're going to be using.

24      I also don't know if they plan on calling

25 experts still.  We've gotten cursory -- or a letter

5261

1  that is generally explaining the topic.  I think
2  Your Honor had indicated that if they were going to
3  call experts, we'd be entitled to get that.  We
4  haven't gotten anything.  Maybe they don't intend
5  to, but I'll flag that.
6        And then, you know, obviously, we'll address
7  it witness-by-witness basis, but particularly with
8  Julie Blagojevich, you know, we're going to have
9  some concerns about the extent of her testimony and
10 the relevance at this point if it's going to be
11 anything like the opening statement which was a long
12 discussion of their history and everything that
13 they've done, which we don't think it's particularly
14 relevant.
15       Maybe Mr. Ettinger is not going to get into
16 that, but it would be the same if defendant Robert
17 Blagojevich testifies, and Rod Blagojevich, for that
18 matter.
19       I guess we'll take it on a witness-by-witness
20 basis to see whether or not any witnesses, obviously
21 including Robert, but whether any of the witnesses
22 are going to testify prior to; for instance,
23 defendant Rod Blagojevich testifying as to
24 conversations which the defendant participated in
25 which obviously would be hearsay.  I just don't want

5262

to waste the jury's time and we're going to stop and
go, stop and go.

          THE COURT:  We have two issues here.
Experts?

          MR. ETTINGER:  No.

          MR. GOLDSTEIN:  Judge, we have notified -- we
notified originally potential expert witnesses, the
government asked for more clarification, we did
provide more clarification as to what these expert
witnesses would testify to.

          Basically, we have two potential expert
witnesses, one is an individual that would testify
about what can be done with campaign funds.  It may
even be an area of stipulation, I'm not sure, but
it's a fairly minor point.

          The other is an individual who is a former
Internation Revenue Service agent who's evaluated a
lot of financial documents that the government has
provided to us in terms of Mr. And Mrs. Blagojevich.
This individual would give his opinion as to the
evaluation of the financial statements and how the
Blagojeviches kept up with their finances and their
taxes.

          THE COURT:  Did this expert give you a
report?

5263

1        MR. GOLDSTEIN:  We do not have a written
2   report yet from this expert.
3        THE COURT:  Generally speaking, I require
4   written reports, and this is not for discovery
5   purposes; whatever the obligations of discovery may
6   or may not be with respect to this, I require it
7   because otherwise I cannot make pretrial
8   rulings--well, we're well past that point--I cannot
9   make rulings on admissibility before the witness
10  takes the stand and we get a lot of delay.
11        But, basically, I need to have a written
12  report at least 48 hours before the witness takes
13  the stand, and that's an absurdly short period of
14  time but it's usually enough for me.  So, basically,
15  you sort of have to get cracking on that.
16        The second issue -- it's always good to
17  actually look at the ruling.
18     (Brief pause).
19        THE COURT:  Is there anything I should know
20  from the lawyers?
21        MR. ETTINGER:  Judge, I was going to confer
22  with Mr. Schar and try to find out what his concerns
23  were about my client.
24        THE COURT:  Oh, okay.  All right, you don't
25  have to tell me now.

5264

1      MR. ETTINGER:  Well, what I would say to the

2 jury, I mean, I want to go into his background, not

3 for hours, just so the jury knows who he is, his

4 military history.  I'm not going to spend an hour on

5 it, but --

6      THE COURT:  But from whom are you getting

7 this?

8      MR. ETTINGER:  Robert.

9      THE COURT:  Okay.  What about the other ones?

10      MR. ETTINGER:  Judge, she's 20 minutes or

11 15 minutes, I don't expect it to be much longer.

12      MR. SCHAR:  I probably have an hour on cross

13 or so.

14    (Laughter.)

15      THE COURT:  Okay.

16      MR. NIEWOEHNER:  Your Honor, I think it's

17 just a matter of, we understand that with Robert

18 Blagojevich some amount of background would be

19 appropriate.  In opening, however, as an example,

20 Mr. Ettinger described background check on him, how

21 they gave him a top secret clearance, that seems to

22 be outside the scope of sort of the biographical --

23      MR. ETTINGER:  We're going into his

24 background.

25      MR. NIEWOEHNER:  Well, we understand that

5265

he's going to give military history and positions
and responsibilities, all that's fine, but detailed
descriptions of the Persian missile, et cetera,
answers like that seems to be outside of what we
need.

MR. ETTINGER:  Judge, I had a chart with
pictures of each of the generals and I'm going to
e-mail that to them today.

THE COURT:  I believe that that statement was
not made entirely in earnest.

MR. NIEWOEHNER:  I think that's right, Judge.

THE COURT:  I'll let you proceed in a
reasonable way.  I think you're aware of the risk
that inheres in any defendant getting on the witness
stand and telling the jury how wonderful their past
life has been and doesn't pay a lot of attention to
the charges in question.

MR. ETTINGER:  We're going to pay attention
to the charges in question.

THE COURT:  Now, I believe the second thing
that was raised by Mr. Schar was, the order of
witnesses in the defendant Rod Blagojevich's case,
and I believe Mr. Schar was waving a flag at
you--the "you," the record should show, is that I'm
looking at defense counsel--the flag that he was

5266

waving at you was is that the defendant himself is
for much of what I anticipate will be going to be
coming in as a foundation witness.  So instead of
calling the defendant last, as I believe I once said
at sidebar, maybe if at the end you may be calling
him first.

The only reason I say this is because if you
plan to call any number of witnesses who are going
to testify as to what the defendant said to them and
you're going to make any use of the truth of it,
then he's pretty much got to get on first, because I
don't want the jury to hear something, think that
it's being offered for its truth, and then the
requisites are not fulfilled for its offering for
its truth.

And, on top of that, some of the standard
exceptions to the hearsay rule, which we've seen a
lot of here, is statements made to explain action,
explain somebody's conduct.  If you have witnesses
testifying about what the defendant Rod Blagojevich
said to them, it's hard to see how this is going to
be used on the theory that it explains the conduct
of the witness unless the acts of the witness are
themselves material to the charge and relevant to
the charge; and, in many cases, they won't be.

:11PM

:12PM

:12PM

:12PM

:13PM

5267

1          So the difficult choice for the defense here
2    would be do you put the defendant on first or near
3    to first and then follow with a bunch of
4    corroborating witnesses who could discuss some of
5    the statements of the defendant made to them because
6    he's testified to them and have been confronted by
7    the prosecution or whether you'll try some other
8    course of conduct.
9          So it's a live issue.  And it's precise
10   application to any particular witness you're going
11   to offer, I don't know, but it's fair notice to you
12   that you're going to have to deal with this
13   question.
14         The advantage that you have, and this is a
15   significant advantage, to putting the defendant on
16   first is that you might possibly glean some idea of
17   how the jury receives that testimony which might
18   influence the choice of subsequent witnesses.
19         It is also possible that, in some
20   circumstances, I might allow you to bifurcate the
21   defense testimony, get some of the foundation stuff
22   laid first that it can be neatly severed from the
23   rest of it, have that cross-examined, and then put
24   him on afterwards.  But the difficulty with that for
25   you is is that unlike almost any other witness, once

5268

1    the defendant gets on the witness stand, lots of
2    limitations about scope are gone because we apply
3    the scope rule in cases in which one side calls a
4    witness, the other side cross examines and goes
5    outside the scope and I sustained the objection, and
6    one of the reasons you sustain the objection is the
7    other side can call that witness.  This is a case
8    where in the case of a defendant in a criminal case,
9    they can't be called.
10          So I don't want you to think that my possible
11   agreement that you can bifurcate his testimony means
12   that you can limit his testimony once he gets on the
13   witness stand.  There are, of course, limitations
14   with respect to scope that apply even to those in
15   criminal cases, but they're much narrower than the
16   ones that typically apply.  This is just so you know
17   how I'm thinking.
18          Anything else we have to deal with?
19          MR. ETTINGER:  Rule 29, Judge.
20          THE COURT:  There's a Rule 29 motion that you
21   want to make?
22          MR. ETTINGER:  Yes, Your Honor.
23          THE COURT:  Do you want to make that motion
24   now?
25          MR. ETTINGER:  Yes, Judge; you heard the

5269

1  evidence.
2      THE COURT:  Assuming, as I must, that the
3  evidence must be taken in the strongest light of the
4  prosecution's case, the motion is denied.
5      You can make yours orally or in writing, as
6  you see fit.
7      MS. KAESEBERG:  We filed a motion, but by
8  leave of Court I think we're going to file a
9  memorandum by Monday morning.
10      THE COURT:  Swell.
11      Anything else?
12      MR. GOLDSTEIN:  Your Honor, just a couple of
13  things.  We understand what you're saying as far as
14  the defendant testifying and we're and we certainly
15  have those types of plans.  There's one witness, as
16  far as scheduling, that we're looking into, we're
17  just trying to get confirmation as to his
18  availability, it's Mr. John Filan.  He is more of an
19  individual from pre-tapes, okay, that we --
20      THE COURT:  I remember.  That's the BOP guy.
21      MR. GOLDSTEIN:  Correct.
22      THE COURT:  Okay.
23      MR. GOLDSTEIN:  As far as documents, we have,
24  as of today, no documents in addition to what the
25  government has provided to us.  Any documents we may

:16PM

:16PM

:17PM

:17PM

:17PM

5270

1  use are, at this point, what the government has
2  provided to us.
3        And then as to the expert witness, the former
4  IRS agent, that's Mr. Lee Williams that Mr. Adam
5  spoke about in opening.
6        It isn't even completely his expert
7  testimony, but what we anticipate him doing is
8  similar to what Agent Schindler did as far as
9  evaluating documents, bank accounts, and that.
10        THE COURT:  Right.  But as I understand the
11  rules, he's got to write it down.
12        MR. GOLDSTEIN:  Some of it is not all expert
13  testimony, it's just compiling and creating charts
14  and publishing those charts.
15        THE COURT:  All right.  What you can do,
16  because the government -- since I presume you asked
17  for the government's expert report and got them --
18        MR. SCHAR:  We didn't offer an expert.
19        THE COURT:  Well, you offered --
20        MR. SCHAR:  A summary witness.
21        THE COURT:  That's right, you offered a
22  summary witness.
23        MR. SCHAR:  And, obviously, if they are
24  offering a summary witness, you know, as long as we
25  get the chart in enough time, at least to see if the

5271

charts are accurate, then, obviously, that's fine,
but if they're offering to try to qualify somebody
as an expert to offer opinions, that's a different
situation.  Agent Schindler did not do that.

        THE COURT:  Okay, you can give them a report.
And if it is, it's partly summary, and I suspect
that that's correct, I think what you're telling me
makes sense to me.  You just can give them the
exhibits and that's all you need.

        But if you have opinions, then he or she has
got to put them in writing and 48 hours is fairly
short notice, but they ought to be able to deal with
that.

        Anything else?

        MR. SCHAR:  No.

        MR. GOLDSTEIN:  Sorry, one other thing.  As
far as the tapes, the tapes that have already been
played by the government, do we have permission to
play those in our case-in-chief, if need be?

        THE COURT:  Generally speaking, you do,
subject to the government's objection that you're
checking something in the way that makes it
misleading, which is a little different from the
usual completeness objection.

        But if you've played this part, particularly

5272

if it's been played four weeks since the jury's
heard it, you may have to play some more parts of
it.  But I, obviously, have an interest in having as
little replay as possible in the interest of time,
but we'll see.

Thanks.  See you Monday.

THE MARSHAL:  All rise.

(Adjournment taken from 12:20 o'clock p.m. to
July 19, 2010, at 10:00 a.m.)

5273

1            *      *      *      *      *      *      *      *

2

3

4  I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

5  FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED

6                        MATTER

7

8    /s/Blanca I. Lara                    date

9  _____        _____

10        Blanca I. Lara                  Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25