5836

1          IN THE UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF ILLINOIS
2                  EASTERN DIVISION

3  UNITED STATES OF AMERICA,      )
                                  )  No. 08 CR 888
4          Government,            )
                                  )
5  vs.                            )  Chicago, Illinois
                                  )
6  ROD BLAGOJEVICH,               )  July 22, 2010
   ROBERT BLAGOJEVICH,            )
7                                 )
              Defendants.         )  10:08 o'clock a.m.
8

9                    VOLUME 29
              TRANSCRIPT OF PROCEEDINGS
10      BEFORE THE HONORABLE JAMES B. ZAGEL
                   AND A JURY
11

12  For the Government:

13          THE HONORABLE PATRICK J. FITZGERALD,
            UNITED STATES ATTORNEY
14          BY:  Reid J. Schar
                 Carrie E. Hamilton
15               Christopher Niewoehner
            Assistant United States Attorneys
16          219 South Dearborn Street
            Suite 500
17          Chicago, Illinois 60604

18

19

20  Court Reporter:

21          Blanca I. Lara, CSR, RPR
            219 South Dearborn Street
22               Room 2504
            Chicago, Illinois 60604
23              (312) 435-5895

24

25

5837

APPEARANCES   (continued:)


For Defendant Rod Blagojevich:

        KAPLAN & SOROSKY
        BY:  Sheldon M. Sorosky
        158 West Erie
        Chicago, Illinois 60610
        (312) 640-1776

        LAW OFFICE OF SAMUEL E. ADAM
        BY:  Samuel Forbes Adam
             Samuel Adams, Jr.
        6133 South Ellis Avenue
        Suite 200
        Chicago, Illinois 60637
        312-726-2326


        OFFICES OF AARON B. GOLDSTEIN
        BY: Aaron Benjamin Goldstein
        6133 South Ellis
        Chicago, Illinois 60637
        (773) 752-6950

        OFFICES OF LAUREN FAUST KAESEBERG
        BY:  Lauren Faust Kaeseberg
        2140 N. Lincoln Park West
        Suite 307
        Chicago, Illinois 60614
        (773) 517-0622

        LAW OFFICES of MICHAEL GILLESPIE
        BY:  MICHAEL GILLESPIE
        53 West Jackson Boulevard
        Suite 1420
        Chicago, Illinois 60604
        (312) 726-9015

5838

1  APPEARANCES  (continued:)

2

3  For Defendant Robert Blagojevich:

4          ETTINGER, BESBEKOS, PARISI
           BY:  Michael D. Ettinger
5               Cheryl Ann Schroeder
           12413 South Harlem
6          Suite 203
           Palos Hills, Illinois 60453
7          (708)598-1111

8

           Edelman, Combs, Latturner & Goodwin LLC
9          BY:  Robyn S. Molaro
           120 S. LaSalle
10         Suite 1800
           Chicago, Illinois 60603
11         (708) 598-1111

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5839

1          (The following proceedings were had out of
2           the presence of the jury in open court:)
3              THE CLERK:  08 CR 888, United States versus
4     Blagojevich.
5              MS. HAMILTON:  Good morning, Your Honor.
6              Carrie Hamilton and Reid Schar on behalf of
7     the United States.
8              MR. SCHAR:  Good morning, Judge.
9              MR. SOROSKY:  Good morning, Your Honor.
10             Sheldon Sorosky, Lauren
11    Lauren Kaeseberg, Arron Goldstein on behalf of Rod
12    Blagojevich.
13             MS. SCHROEDER:  Good morning, Your Honor.
14             Cheryl Schroeder on behalf of Robert
15    Blagojevich.
16             THE COURT:  We left off yesterday with
17    discussion of a judgment of acquittal.  I heard
18    argument of counsel and I said certain things.  This
19    is the time for last words.
20             MR. GOLDSTEIN:  Your Honor, if I could just
21    make a couple of points and then I'll let
22    Ms. Kaeseberg talk.
23             THE COURT:  The reason you're here is so you
24    can make a couple of points, you can make three if
25    you wish, and the other lawyers can do so as well.

5840

1    MR. GOLDSTEIN:  Thank you, Your Honor.

2    Your Honor raised yesterday the whole issue

3 of speech and whether this amounted to criminal

4 activity, and I want to point Your Honor's attention

:09AM    5 to Change to Win, specifically that subject.

6    Change to Win, as to that subject, there was

7 absolutely no action whatsoever, no action

8 whatsoever as to that Change to Win subject.  You

9 have discussions.

:09AM    10    And, specifically, if you look at the

11 indictment, Count 23, Page 101, 10(b), and in the

12 indictment it specifically says they had a

13 conversation, Mr. Blagojevich and others, where they

14 were discussing attempting to look into Change to

:10AM    15 Win.  This is so far afield from criminal conduct

16 that it should not stand whatsoever.

17    Now, I think there's a lot of other issues

18 that are similar to that, but Change to Win is the

19 perfect example.  No action whatsoever was taken.

:10AM    20 There was a discussion and that's all it was.

21    The other issue I'd like to address with Your

22 Honor is the issue as to Mrs. Blagojevich's fees.

23 And Your Honor made a very good point and asked the

24 question of:  Well, even if she worked, were these

:10AM    25 fees possibly more than what she was entitled to.

5841

1 And Your Honor's question is exactly the concern we
2 have why that issue should go back to the jury.
3      There's been no expert testimony, no
4 testimony whatsoever, that the amount of money she
5 received was somehow not commensurate with the work
6 that she performed.  The only evidence we have is
7 that there was work performed and she received fees.
8 The jury now is going to basically have to make a
9 calculation without any testimony whatsoever,
10 without any evidence to guide them to say:  Well,
11 are these fees appropriate for the work she did.
12 That completely is not the calculation.
13      She worked, she received fees, that's a clear
14 indication there was no bribery whatsoever.  Even if
15 we take a more liberal interpretation of bribery,
16 that somehow there was no specific act that Tony
17 Rezko paid these fees to Mrs. Blagojevich that she
18 was trying to get, she was just somehow trying to
19 get good will and that potentially can be bribery.
20 The jury is going to make a calculation or is forced
21 to make a calculation that those fees that she
22 worked for, were they appropriate fees in the world
23 of real estate.  They have no guidance whatsoever
24 when they deliberate whether that's the question or
25 not.

5842

1      The government has put on no evidence that
2 these were somehow unfair amounts of fees, but they
3 have provided evidence that she worked and she
4 received money in exchange for that work, Your
5 Honor.
6      With that, I'll turn to Ms. Kaeseberg to
7 finish up.
8      MS. KAESEBERG:  With respect to the rest of
9 the counts in the indictment outside of the
10 conspiracy allegations themselves, our memorandum is
11 pretty detailed to as the counts, so we rest on the
12 arguments made in our memorandum with respect to
13 those counts.
14      We have previously filed with Your Honor a
15 motion to dismiss Count 24, the false statements
16 count, and I believe you reserved ruling on that and
17 so we would ask to renew that motion or ask for
18 ruling on that motion.  I have a few things I would
19 like to just highlight from that motion.
20      There's a significant problem with this
21 count, which is that there's no transcript of what
22 was said.  Agent Murphy testified to an interview
23 where he took notes and then took from his notes and
24 transcribed a report, an FBI 302, from his
25 recollection of what was said at the interview.

:12AM

:12AM

:12AM

:13AM

:13AM

5843

1        To proceed on a prosecution for false
2  statements, which is akin to perjury, and not know
3  exactly what was said and what the verbatim words
4  were is improper.  It doesn't give the defendant
5  proper notice.  So there's problems there.
6        In addition, the words that are alleged to
7  have been made false, to be knowingly false when
8  they were made, are ambiguous words.
9        In our motion, we cited a case that says
10 that:
11     "...  a fundamental ambiguity is not a
12       phrase of the meaning about which an
13       ordinary intellect would agree nor one
14       which would reach a mutual understanding
15       by a questioner and answerer unless it
16       were defined at the time it was sought and
17       offered as testimony ..."
18        The words that are alleged to have been made
19 or are knowingly false were "had tried to maintain a
20 firewall, "track."  It's not up to the jury to
21 determine what Rod Blagojevich meant by those words
22 or what the definition of the words are.
23        In order for these statements to have been
24 false, falsely made, it goes to how Rod Blagojevich
25 defined those words at the time they were said, and

:13AM
:13AM
:14AM
:19AM
:14AM

5844

1  it's up to the questioner at the time that those

2  statements were made to get to the bottom of what

3  those words mean.

4        So for this count to go back to the jury is

5  improper because it will be the jury deciding what

6  he meant by those words, and that's up to the

7  interviewer, the questioner, to make that

8  determination that those statements actually were

9  false.  They weren't false and for it to go back to

10  the jury would be improper.

11        Additionally, we detailed in the motion the

12  materiality element.  We don't believe that the

13  government has proven that the evidence -- excuse

14  me, that the statements were material to the

15  investigation when taken in the context of the

16  entire interview.

17        And we rest on our motion with respect to the

18  rest of the arguments.  Those are highlighted points

19  that I wanted to make with regard to that.

20        The only other outstanding issue is that we

21  previously filed a motion to dismiss on First

22  Amendment in that the defendant has a First

23  Amendment right to engage in political speech,

24  political expression --

25    (Cellular phone interruption.)

:14AM

:15AM

:15AM

:15AM

:15AM

 1          THE COURT:  Stop for a second.
 2          (Brief pause).
 3          MS. KAESEBERG:  The defendant has the right
 4     to engage in political speech, political expression,
 5     campaigning, fundraising for campaigns.  We believe
 6     that all the government has shown is attempt to
 7     criminalize that process.  Based on what we have on
 8     our previously filed motion, we would move to
 9     dismiss based on violation of the First Amendment.
10          THE COURT:  Free speech, Change to Win, the
11     fees, and Count 24.
12          MS. HAMILTON:  Just addressing those points,
13     Your Honor?
14          THE COURT:  Sure.
15          MS. HAMILTON:  First with respect to Change
16     to Win, the idea that there was no action taken
17     whatsoever is not true.
18          There is testimony and also tapes that
19     reflect that John Harris at Defendant Blagojevich's
20     direction had a conversation with Doug Scofield
21     about how much money Rod Blagojevich could possibly
22     make from Change to Win.  That was action taken to
23     further the Change to Win plan.
24          In addition to that, the jury heard a tape
25     between Defendant Rod Blagojevich and his wife in

5846

1  which she is researching on the Internet how much a
2  director at Change to Win currently make so that the
3  two of them could inform themselves as to how much
4  money they could possibly ask for.

5       In that recording, Defendant Blagojevich
6  makes clear that his intent is to ask for more than
7  what is reflected in the research that she found.

8       So those are just two examples of actions
9  that were actually taken to support the Change to
10 Win plan.

11      With respect to the fees to Mrs. Blagojevich,
12 what the evidence actually is is that she received
13 two commissions for doing absolutely nothing.  There
14 is nothing in the record to support her receiving
15 two of those commissions.

16      With respect to the $12,000 she received
17 monthly, what is in the record is that she actually
18 did very little to no work to earn those $12,000 a
19 month.

20      In addition, the circumstantial evidence of
21 the timing of those payments is very important and
22 very strong.  What it shows is that the $12,000
23 payments start within days, within days of Tony
24 Rezko's receipt of the funds from Bob Kjellander,
25 and they end, again, within days of Mr. Levine being

5847

approached by the FBI in connection with his
criminal activities.

So to say that these somehow cannot be proof
of a means and method of the charged enterprise is
not consistent with the evidence that is being
presented to this jury.

With respect to Count 24, the false
statements count, the government does not need a
transcript of the precise words that Defendant Rod
Blagojevich made.  The agent's testimony is more
than sufficient for the jury to rely upon.

And, in fact, he wasn't actually challenged
even on cross-examination as to the precise words
that the defendant used and that he somehow got the
words wrong.

The idea that defendant's words were
ambiguous, also the jury can find there was nothing
ambiguous about the defendant saying he tried to
maintain a firewall, that was his words, a firewall
between politics and government.

And, actually, the testimony from the agent
was that there was follow-up with respect to what he
meant with respect to politics and government.  So
the idea that the agent just didn't follow up and
was ambiguous with respect to that statement is not

5848

1 supported by the evidence in the record.

2      In addition, the second statement that he

3 does not track or want to know who contributes to

4 him or how much they're contributing, there's

5 nothing ambiguous about that statement by the

6 Defendant.

7      And the idea that these statements somehow

8 have not been proven to be material as to the

9 investigation, again the jury has Agent Murphy's

10 testimony as to what the stage of the investigation

11 was at that time.  And what he testified about is

12 that just before this, the FBI had received

13 information they believed to be credible from Joseph

14 Cari about conversations he had with Defendant

15 Blagojevich himself and a series of conversations he

16 had with Mr. Rezko, Mr. Kelly, and Mr. Levine, all

17 of which supported the statement from Defendant

18 Blagojevich and his interpretation of that statement

19 with respect to the fact that there was actually a

20 mixing going on of fundraising and government.

21      So the agent's testimony alone is sufficient

22 for the jury to find that the materiality portion

23 has been proven.

24      Finally, with respect to the fact that

25 somehow defendant's statements are entirely

5849

1 protected as political speech is really without
2 merit.
3      Clearly, he can say whatever it is he wants
4 to say whenever he wants to say it; that does not
5 make it protected.  The fact that he is a politician
6 does not somehow excuse the fact that he did say
7 things, he did direct people to do things, and he
8 was conspiring, scheming, and attempting to
9 personally benefit from his office.  Simply because
10 he talks a lot doesn't excuse that, it doesn't
11 protect his words.  So the First Amendment provides
12 no defense for these charges.
13      THE COURT:  Anybody have anything else?
14      MS. KAESEBERG:  If I could just briefly
15 address just to clarify what Agent Murphy's
16 testimony was regarding followup.
17      THE COURT:  Sure.
18      MS. KAESEBERG:  He did not testify that he
19 followed up what Rod Blagojevich meant by politics.
20 What he testified to was that previously in the
21 interview, that Rod Blagojevich had made a comment
22 about Lon Monk attending a fundraiser and so that
23 was political and that the agent marked his notes
24 politics, equal sign, fundraising.  So the agent,
25 then, interpreted politics to mean fundraising, that

5850

was the testimony of Agent Murphy.  There was no
followup and there was no attempt to clarify what
was meant by firewall.  And, you know, the jurors
take into deliberations their common sense.  The
word "firewall" could mean different things to
different people.  What matters is what it meant to
Rod Blagojevich on March 15, 2005, when he said it,
and there's no evidence as to what he meant by that
phrase.  The FBI certainly could've clarified that
at the interview and he didn't.

THE COURT:  What I'm going to do now is, let
me start with Count 24.  Arguably, you could make a
case with ambiguity with respect to the first
statement, although it's not the argument you're
actually making.  The argument you're making is is
that firewall is an ambiguous word and I don't think
that carries the day.

I know there was an attempt here to inject a
dictionary into trial.  A lot of reasons why we
don't allow that, not the least of which is is the
authority of the dictionary is subject to some
question.  I don't think there's anything
particularly ambiguous about "firewall."  In fact, I
think there's nothing ambiguous about "firewall."

I thought the ambiguity argument was going to

be he's tried to maintain a firewall between
politics and government, and that could be true if
you add to that "but he failed miserably at doing
it," that possibly could be an ambiguity.

But I do not think there's anything ambiguous
about the second one, particularly the references to
"does not track," "does not want to know."

What I am willing to do so that we don't run
into a particular problem here is the verdict form
on Count 24, we'll ask the jury which, if either of
those two clauses, or both, they found to be false.

With respect to the rest of the motion, I am
unpersuaded by the Change to Win argument.

With respect to the fees, there is
circumstantial evidence that the fees were
disproportionate to any work that was done.  And I'm
not too sure there's much evidence that any work was
actually done.  So I am unpersuaded by this motion.
But what I am going to do what I customarily do with
respect to motions of this sort, and that is I'm
entering and continuing it.

Sometimes my mind with respect to these
motions has been changed by what happens in closing
argument.  And there's some cases in which the
nature of the verdict a jury returns indicates that

5852

perhaps there was something that I did not perceive
at first that would possibly affect my ruling.  So
it is entered and continued.

But I currently, with one exception with
respect to the verdict form, am unpersuaded by the
motion.

Anything further we have to do other than the
instruction conference which we begin tomorrow?

MR. SCHAR:  Judge, there were three tabs in
the binder which were not published to the jury.

THE COURT:  Right.

MR. SCHAR:  So what we would ask is to go in
and whatever Your Honor's preference is but to
remove those calls that were never actually
published.  Obviously, we'll do it in the defense
presence.

MR. GOLDSTEIN:  Your Honor, we do object to
removing those three tabs, specifically one of the
tabs the government is proposing is tab 20.

THE COURT:  That's in book 1?

MR. SCHAR:  Yes.

MR. GOLDSTEIN:  It is.  And that is a
November 5th call and that's between Rod Blagojevich
and Mr. Greenlee.  While it was not published as far
as the audio was played, Mr. Greenlee was

5853

1 cross-examined on that conversation with the jurors

2 as we read through the transcript as Mr. Greenlee

3 was cross-examined on that, that conversation.

4 My understanding is that there's no issue as

5 to the foundational questions as far as being

6 admitted into evidence as the agent certainly laid

7 foundation as to the calls, the issue is whether it

8 was published or not as to the audio. The

9 transcript was certainly published in

10 cross-examination with Mr. Greenlee. So we believe

11 it should go back to the jury.

12 THE COURT: Published for what purpose in

13 cross-examining Mr. Greenlee?

14 MR. GOLDSTEIN: Well, there was impeachment

15 because Mr. Greenlee was questioned about the advice

16 he gave and his opinions as to whether this can be

17 done and then there was the whole situation of the

18 legitimate ask discussion. There was also

19 cross-examination about Mr. Greenlee's suggestions

20 and involvement in this, and he was the one who

21 suggested, for example I believe it was the energy

22 secretary position, as well as other things. So

23 there was impeachment, as well as the

24 cross-examination of exactly Greenlee's involvement

25 in this.

5854

1    THE COURT:  The impeachment is actually the
2 only thing I'm interested in.
3    MR. GOLDSTEIN:  I understand.
4    THE COURT:  And the question is, what parts
5 of this did you front Mr. Greenlee on.
6    MR. GOLDSTEIN:  On the legitimate ask.
7    THE COURT:  No, what I mean is page and line
8 numbers.
9    MR. GOLDSTEIN:  I apologize.
10    It is Page 6, and it starts right around line
11 10, and then it ends about line 20.
12    THE COURT:  Okay.  So, for the record,
13 Greenlee says:
14    "... so I think, you know, Health and Human
15     Services is really the one you want, you
16     know that is."
17    "Blagojevich:  Yeah."
18    "Greenlee:  And that is the position."
19     "Blagojevich:  They think I want, huh?"
20    "Greenlee:  And I thing it's a totally
21     legitimate ask."
22    "Blagojevich:  What's that?"
23    "Greenlee:  I said I think it's a totally
24     legitimate ask."
25    That's the passage we're talking about?

5855

 1          MR. GOLDSTEIN:  Correct, Your Honor.
 2          THE COURT:  And refresh my recollection as to
 3    how you used this with Greenlee?
 4          Anyone can step in on this.
 5          MR. GOLDSTEIN:  Mr. Greenlee was asked that
 6    he told whether or not he told Mr. Blagojevich
 7    whether this was legal to do, whether he could do
 8    this.  My understanding is he denied that, and then
 9    he was impeached with this statement which was "I
10    think it's a totally legitimate ask" and we
11    obviously went through some discussion with what
12    "legitimate" means.  But "legitimate" is certainly
13    impeaching of him telling him this is doable, wrong,
14    right, or legal.
15          So he was specifically impeached on to
16    whether he, Mr. Greenlee, told Governor Blagojevich
17    that this was doable, legal, whatever term you want
18    to use, by saying twice, "I think it's a totally
19    legitimate ask."
20          THE COURT:  Okay, what's the other passage?
21          MR. GOLDSTEIN:  As far as impeachment, there
22    are no other passages that are specifically
23    impeachment on this tab.
24          Quickly, the other two tabs we are requesting
25    to come in.  It's not necessarily impeachment, Your

5856

1 Honor, it would be more as far as completeness.

2     MR. SCHAR: Judge, the call was played and

3 the whole transcript was actually never published.

4 What Mr. Goldstein did is, as he did with a variety

5 of other conversations, I think some of which were

6 not in evidence, he confronted or asked Mr. Greenlee

7 about it. This would have to be in the binder

8 books. And Mr. Greenlee answered the questions.

9     If he wants to prove-up impeachment through

10 the use of this phone call, they had their

11 opportunity in their case-in-chief to prove up

12 impeachment. So this was really nothing more than a

13 demonstrative, and it was not published in any

14 particular way to the jury in whole.

15     And so it would be very misleading to send it

16 back where only a certain portion of it was asked

17 about, the call wasn't played and the entire

18 transcript was not published.

19     Besides that, "legitimate ask" I don't think

20 was impeachment, but that issue aside, I don't think

21 it proves the point. But, nonetheless, it's

22 misleading as to how the jurors would have it back

23 there with them.

24     MR. GOLDSTEIN: Your Honor, as to proving up

25 the impeachment, the impeachment was proved up

:31AM

:31AM

:31AM

:32AM

:32AM

5857

1  because Mr. Greenlee acknowledged that he said those
2  things.
3       THE COURT:  Right.  Which is what the
4  government's argument is.
5       MR. GOLDSTEIN:  But it's therefore in
6  evidence based on his proving it up --
7       THE COURT:  No, what's in evidence is his
8  statement that this is what he said, that is it's a
9  totally legitimate ask.  He said it.
10       MR. GOLDSTEIN:  No, I understand that.  And
11  given the fact that the jurors had that binder, they
12  read that portion of it, I mean, in essence while it
13  wasn't published as far as an audio, it was
14  published to the jurors that they were reading along
15  the binder, which there was no objection to.
16       THE COURT:  We're counting on the jury's
17  memory for this one, not this.  And, in all honesty,
18  you're probably better off without it because it's
19  quite clear the whole thing is this is political and
20  not legal advice.  I don't think you're harm.
21       What are the other tabs?
22       MR. SCHAR:  52 and 53.
23       THE COURT:  Which ones?
24       MR. SCHAR:  53 and 53.
25       THE COURT:  I need another book for it.

:32AM
:32AM
:32AM
:33AM
:33AM

5858

1          (Brief pause).

2          THE COURT:  52 is the November 12th, 2008,

3     Rod Blagojevich and Bill Quinlan.

4          MR. SCHAR:  Right.

5          MR. GOLDSTEIN:  Correct, Your Honor.

6          MR. SCHAR:  Never played, Judge, never

7     published.  No testimony about the call.

8          MR. GOLDSTEIN:  Your Honor, the reason why we

9     requested this tab go back with the jury is more of

10    a completeness argument.  This is a conversation in

11    which the legal, personal, political discussion

12    originates.  It is tab 54 which was published to the

13    jury that that was then recited to Mr. Harris.

14          So for completeness reasons, we ask again

15    there is no issue as to foundation, that this tab

16    come in.

17          THE COURT:  What does it complete?

18          MR. GOLDSTEIN:  Well, it explains the -- it

19    completes the thought as well as explains where the

20    legal, personal, political comes from.

21          THE COURT:  Usually when you say

22    "completeness" it means that somebody played part of

23    this particular conversation, eliminated this, and

24    you want it for completeness.

25          The completeness doctrine doesn't usually

5859

1  apply to a situation in which somebody said
2  something on another day at another time and you
3  want to complete the thought with something on a
4  different day.
5          MR. GOLDSTEIN:  Well, it is the same day.
6          THE COURT:  Same time, same conversation?
7          MR. GOLDSTEIN:  Not same time and not same
8  conversation.
9          THE COURT:  Then I don't think the
10  completeness doctrine applies.  What I think you
11  want to do here is you want to get in the direct
12  testimony of your client that what was in his mind
13  was, and I quote:
14      "... my family, so the, when you put the
15       level of the order priority the decision
16       should be legal, what's in our best legal
17       position to protect, to protect us."
18      "Right."
19      "Personal second, third political.  You
20       like that, ah, order of priorities."
21          And this goes in and he's not cross-examined
22  on it?  No.
23          What's next?
24          MR. SCHAR:  The next tab 53.
25          THE COURT:  Okay, what part of this one?

5860

1        MR. SCHAR:  That wasn't played.

2        THE COURT:  Anymore part that he's interested

3   in?

4        Is this Johnston, Niranjan Shah, Krozel.

5        MR. GOLDSTEIN:  Correct.  Your Honor, this

6   was not played, this was not published, and was not

7   impeached on; nonetheless, it is again as to the

8   state of mind and the completeness as to the issue

9   of Johnston, as well as Krozel, if there is a

10  discussion between Robert and Rod discussing

11  fundraising, this completes the thought as to the

12  Johnston issue.  And I agree, it is not the same

13  conversation, but it completes the constant thought,

14  as Your Honor knows, of Rod Blagojevich from

15  day-to-day and from time to time.

16       THE COURT:  Okay.  This is the same ruling.

17  This is basically trying to get the direct testimony

18  of a witness in without confrontation and I don't

19  think state of mind applies to this for reasons for

20  which I've gone into exhaustively on other

21  occasions.

22       Anything else?

23       MS. SCHROEDER:  Judge, I believe Mr. Ettinger

24  made an oral motion for Rule 29 motion in reference

25  to Robert Blagojevich.

5861

1        THE COURT:  Entered and continued.

2        MS. SCHROEDER:  Thank you, Judge.

3        THE COURT:  Anything else to do today?

4        You had something?

5        MR. GOLDSTEIN:  There is one very brief as

6    far as scheduling and timing of closing.

7        THE COURT:  I actually do.

8        If all goes well, we will be ready to have

9    closing argument on Monday.  And I think given the

10   fact that we have enough time for an instruction

11   conference tomorrow, although there is some aspect

12   of that that we might have to move it a little, I'm

13   talking now during the day, but I don't know yet and

14   I'll tell you when we do if we have to.

15       My major concern is time and the issue is is

16   how much time each side wants.  And, ordinarily, I

17   start with the prosecution and then I ask the

18   defense, but in this particular case I think I would

19   start with the defense.  And I'm starting by asking

20   first who is going to close for the defendant Rod

21   Blagojevich.

22       MR. GOLDSTEIN:  That would be Sam Adam, Jr.

23       THE COURT:  Okay.  And I note from my

24   experience in the opening statement and perhaps even

25   from some of the examination, that Sam Adam, Jr., is

5862

1 a big believer in the force of repetition.  And
2 while I can stop to some extent repetitious
3 questioning, I do appreciate that one of the
4 principle techniques a lawyer has in closing
5 argument is repetition.  So there's obviously going
6 to be more repetition allowed in the closing than
7 would be allowed in other phases of the trial.
8         MR. SOROSKY:  Thank you.
9         THE COURT:  And since I know that Sam Adam,
10 Jr., is a practitioner of the repetition style, I'd
11 like to have some idea of how much time he thinks he
12 would like to take.
13         MR. GOLDSTEIN:  We're looking at the ballpark
14 of two and a half hours, Your Honor.
15         THE COURT:  You're sure it's that small a
16 period of time?
17         MR. GOLDSTEIN:  Well, if Your Honor would
18 like more, we certainly can accommodate.
19         THE COURT:  No, no.
20         MR. GOLDSTEIN:  I will remind Your Honor that
21 Mr. Adam's opening was an hour and fifteen minutes.
22         THE COURT:  Right.  Which was fine.  But two
23 and a half hours is within the realm of reasoning.
24         MS. SCHROEDER:  Michael Ettinger would be
25 doing the closing argument for Robert Blagojevich

:39AM

:39AM

:39AM

:40AM

:40AM

5863

1  and my guess would be an hour but I would like to
2  defer to him before I give the Court a specific
3  time.
4          THE COURT:  Okay.  Is he going to argue
5  before or after the codefendant?
6          MS. SCHROEDER:  Before.
7          THE COURT:  Now the government.
8          MR. SCHAR:  Judge, Mr. Niewoehner would be
9  giving the opening close for the government, which
10 he is working on as we speak.  I would estimate it
11 would be in the two hour range, but perhaps a little
12 bit longer.  He is still in the process of putting
13 it together and certainly would be refined over the
14 weekend.  But that would be the estimate, probably
15 between two, two and a half hours.  I will be
16 providing the final argument and I would estimate it
17 between an hour to an hour and a half.
18         THE COURT:  My belief is we can accomplish
19 this in one day, which is my principal concern.
20 We'll start in the morning.  It is possible people
21 run over, and maybe they won't because these are
22 fairly long periods of time and lawyers do
23 occasional get weary and don't use all of their
24 time.
25         The only issue for me is, when I will begin

5864

1  instructions.  But as long as I get the argument in

2  in one day, I'm fine, because I can give the

3  instructions the next day if people look like

4  they're dragging.

5          So I think we're okay, and we can maybe

6  finalize some of this stuff tomorrow and we'll see

7  where we are.  But we're okay.  This is not going to

8  be a problem for anybody.

9          Anything else?

10          MR. SCHAR:  Judge, just in planning ahead.

11  And we'll talk about it again tomorrow, but for some

12  reason if we get to 4:15, 4:30, it might be

13  difficult for me to finish in that period of time

14  with the jury staying later, perhaps I want to start

15  in the morning.  I guess we'll play that by ear.

16          THE COURT:  Yeah, we'll see.  We'll see.

17          MR. SOROSKY:  Well, I think we'll cross that

18  bridge when we come to it.

19          THE COURT:  The one thing about jury

20  arguments is that even if a jury sits there for a

21  few hours and they would rather not sit there for a

22  few hours, they want to hear the whole argument.

23  It's one of those few times in a trial where the

24  jury, if given their druthers, would stay longer

25  than they would ordinarily in any other case.  It's

:42AM
:42AM
:42AM
:42AM
:43AM
:43AM

5865

1  the final act.  So I'm not too concerned about that.

2  And the instructions which might take some time to

3  read, my guess is, I would likely do that on the

4  following day.  And I would like to do that the

5  following day even if people went through this more

6  quickly and we wound up with closing arguments being

7  over, say, at 4:15, I still probably would put

8  instructions over to the next day partly because I

9  generally don't think it's a good idea everything is

10  concluded on day one and the jury goes home and not

11  have something in court the next day.  So I think

12  we're okay.

13          And if we're not okay, I'll think of

14  something.  Anything else?

15          MS. SCHROEDER:  What time tomorrow, Judge?

16          THE COURT:  I think I said 9:00 but I think

17  we're going to start at 9:30 instead.

18

19      (Which concluded the proceedings had on

20       this date in the above entitled cause.)

21

22

23

24

25

5866

*     *     *     *     *     *     *     *

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED
MATTER


/s/Blanca I. Lara                          date


_____          _____
        Blanca I. Lara                         Date