1

```
         IN THE UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION

UNITED STATES OF AMERICA,    )
                             )  No. 08 CR 888
         Government,         )
                             )
vs.                          )  Chicago, Illinois
                             )
ROD BLAGOJEVICH,             )  April 18, 2011
                             )
         Defendant.          )  11:31 o'clock a.m.


                 TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JAMES B. ZAGEL


For the Government:

            THE HONORABLE PATRICK J. FITZGERALD,
            UNITED STATES ATTORNEY
            BY:  Reid J. Schar
                 Carrie E. Hamilton
                 Christopher Niewoehner
            Assistant United States Attorneys
            219 South Dearborn Street;
            Suite 500
            Chicago, Illinois 60604


Court Reporter:

            Blanca I. Lara, CSR, RPR
            219 South Dearborn Street
                    Room 2504
              Chicago, Illinois 60604
                  (312) 435-5895
```

```
 1  APPEARANCES  (continued:)

 2

 3  For Defendant Rod Blagojevich:

 4        KAPLAN & SOROSKY
          BY:  Sheldon M. Sorosky
 5        158 West Erie
          Chicago, Illinois 60610
 6        (312) 640-1776

 7
          LAW OFFICE OF Elliott Riebman
 8        BY:  Elliott Riebman
          158 East Erie
 9        Chicago, Illinois 60610
          (847) 814-2900
10

11
          OFFICES OF AARON B. GOLDSTEIN
12        BY:  Aaron Benjamin Goldstein
          6133 South Ellis
13        Chicago, Illinois 60637
          (773) 752-6950
14

15        OFFICES OF LAUREN FAUST KAESEBERG
          BY:  Lauren Faust Kaeseberg
16        2140 N. Lincoln Park West
          Suite 307
17        Chicago, Illinois 60614
          (773) 517-0622
18

19

20

21

22

23

24

25
```

```
                    1       (The following proceedings were had in open
                    2        court:)
                    3          THE CLERK:  2008 CR 888, United States versus
                    4  Rod Blagojevich.
:31AM               5          MR. SCHAR:  Good morning, Judge.
                    6          Reid Schar, Chris Niewoehner and Carrie
                    7  Hamilton on behalf of the United States.
                    8          MR. SOROSKY:  All the attorneys of record are
                    9  present for Mr. Blagojevich.
:32AM              10          Sheldon Sorosky on behalf of Mr. Blagojevich.
                   11          THE COURT:  I see them all, and they're all
                   12  here.
                   13          This was a checkup date see what's new, what
                   14  issues have arisen.
:32AM              15          MR. SCHAR:  Judge, we have a variety of
                   16  different things, mostly for clarification, and then
                   17  one issue to advise Your Honor related to -- these
                   18  are mostly housekeeping matters, but because we have
                   19  only one defendant left, are we going back to the
:32AM              20  typical number of peremptory challenges?
                   21          THE COURT:  Yes; assuming I seat 18, which is
                   22  my current intention, this means the defense has 13
                   23  and the government has 9 peremptories.
                   24          MR. SCHAR:  And, Judge, you indicated that
:33AM              25  there might be a Friday that we might have trial.
```

1  We have some witnesses that are out of town, so just
2  in terms of scheduling, do you a sense of when that
3  might be?
4          THE COURT: I believe I have to be in
5  Washington, D.C. on May 24th and 25th, which means
6  that week there will be trial on May 23rd, 26th and
7  27th.
8          MR. SCHAR: Thank you, Judge.
9          THE COURT: That so far as I know is the only
10 Friday.
11         MR. SCHAR: Judge, you indicated you wanted
12 the defendant present on April 20th which is the
13 Wednesday the jurors are coming in. I wasn't sure
14 if there was a miscommunication regarding the 21st
15 versus the 20th.
16         THE COURT: The answer to that question is is
17 I want the defendant to be ready to come in on the
18 20th, he may in fact be the coming in on the 21st, I
19 won't know.
20         MR. SOROSKY: So we'll have him on standby.
21         THE COURT: You'll have him on standby on
22 April 20th.
23         MR. SOROSKY: Yes.
24         THE COURT: And standby the 21st.
25         MR. SOROSKY: Yes.

1  MR. SCHAR: Judge, in terms of access to the
2  questionnaires, we could coordinate with Mr. Walker,
3  obviously it would be our preference to have an
4  opportunity to review them sometime in the evening
5  of the 20th which seems like probably the quickest
6  we can get access to them ahead of selection on the
7  21st.
8  THE COURT: I have made inquiries with
9  respect to this from procurement who has to make the
10 copies, it is my belief that we can have them the
11 evening of the 20th, worse comes to worst, it'll be
12 in the early morning on the 21st. It's not quite I
13 think as urgent as normally would be because I don't
14 think there's any chance that we will have jury
15 selection completed on the 21st, so you'll have a
16 chance to read them at your leisure, but it
17 sometimes is helpful if they come in early.
18 And there will also be an early chance to
19 examine the questionnaires I think, although you
20 have to do that in the jury room, of those jurors
21 who made what might be deemed to be requests for
22 excuse that were denied by the jury office, because
23 whether they're denied, they're called in. I have
24 those questionnaires in my chambers now, I have not
25 read them, and that will I think give me an idea and

1  you, in turn, an idea of how many circumstances
2  these requests will be denied.  In some cases, in
3  cases like these, it's quite obvious that the juror
4  believes that because, for example, he or she has
5  heard of this case, they can't sit as a juror, which
6  is not the law.  In some cases the concerns about
7  having a juror sit are patent, but they're not
8  entirely patent because if they were then the jury
9  office would excuse them.  So you'll have a chance
10 to look at them because you may want to have a say
11 in that one as well.
12         What's next?
13         MR. SCHAR:  Judge, the first one is a defense
14 motion that we're going to get to, I know there are
15 several motions still pending.
16         MR. SOROSKY:  We would just inform the Court
17 that the defense will be filing our own motion in
18 limine concerning certain matters.  We hope to have
19 that before the Court within a day or two, and I
20 don't think the Court is going to be confronted with
21 anything the Court is not familiar with, the topic
22 the Court has not previously examined in one way or
23 another.
24         THE COURT:  Okay.
25         MR. SOROSKY:  Now, I think we have to present

our response to the government's motion in limine. We plan to have that in by the end of the day. So would the Court perhaps hold up on its final, final, final ruling until we have that response?

THE COURT: Sure.

MR. SOROSKY: Thank you.

MR. SCHAR: Judge, another issue of redactions, I believe that is now fully briefed.

THE COURT: I'll give you a ruling by the end of the day or early tomorrow.

MR. SCHAR: Thank you, Judge.

THE COURT: Anything else?

MR. GOLDSTEIN: Your Honor, two more housekeeping matters. As far as the jury questionnaires and our access to look at them, would you make Friday available for to us come in?

THE COURT: You mean this Friday?

MR. GOLDSTEIN: Yes.

THE COURT: Sure.

MR. GOLDSTEIN: Okay. And then I don't know if you want to discuss this at a later time, but I remember, Your Honor, at the last trial you had sort of questioned whether you were going to do the alternates in chronological order. I was wondering if you made a plan as to how you were going to do it

1 this time.  Remember, it was the 13 through 18 were
2 the alternatives, I thought you suggested that
3 possibly you were going to do it a different way.
4     THE COURT:  What I suggested, and I suggested
5 this several times, there's more than one way to
6 decide who the alternates are.  The one way which is
7 most commonly used is the 13th selected jury is the
8 first alternate.  Another way to do it, I don't
9 think has been used in this building but used in
10 other places, which is random draw so nobody knows
11 who the alternate is.  And then one judge I know
12 from a far off jurisdiction picks them in reverse
13 order, the last jury selected, which creates
14 interesting dilemmas for lawyers because they know
15 that the first person in the box is likely the last.
16 My personal view is the two choices, only reasonable
17 two choices are the order selection and random
18 selection, and you can feel free to suggest whatever
19 you wish, and you don't have to do it now because we
20 haven't gotten to the point of peremptory challenges
21 yet.
22     MR. SOROSKY:  If there was random selection,
23 would the attorneys know the order?  I mean, whoever
24 was 1, 2, 3, 4, 5, and 6, whoever was chosen by the
25 random selection?

1 THE COURT: In other words, when they're
2 sitting in the box you would like to know which ones
3 are the chosen?
4 MR. SOROSKY: Right. Which ones would be 1,
5 2, 3, 4.
6 THE COURT: Sure. We'll draw it out of a hat
7 before.
8 MR. SOROSKY: We're not going to bring David
9 Stern in as the commissioner?
10 THE COURT: No, no. There will be no
11 ceremony at all and no confetti.
12 Anybody else have anything?
13 MS. KAESEBERG: One additional thing on the
14 ruling on the redactions --
15 THE COURT: Did you give me two housekeeping
16 issues or did you only give me one?
17 MR. GOLDSTEIN: Two, the other one was the
18 Friday which you quickly allowed me to do.
19 MS. KAESEBERG: With regard to the
20 redactions, the defense filed two separate filings
21 last week, one was an objection to the new
22 redactions proposed by the government.
23 THE COURT: And one was a continuing
24 objection to the old redactions.
25 MS. KAESEBERG: It was, to an extent,

:40AM
:40AM
:41AM
:41AM
:41AM

although it makes new arguments to the old
redactions, so if you would consider that in your
rulings?

        THE COURT:  Right.

        Okay?

        MR. SCHAR:  Judge, there is one other issue.

        THE COURT:  There is always one other issue.

        MR. SCHAR:  There always is.

        It is not lost on the government that suddenly the defendant starts showing up the last couple of days on television shows during the week of jury selection, and this morning he was on a particular show.

        And the government is not at a point where we are necessarily asking for an order, but the circumstances have obviously changed between this trial and the last.  This morning's episode was kind of phenomenal in just the out and out fabrications that are being made by the defendant, including two which are relevant to Your Honor, the first being suggesting that somehow it was the government that had discretion to determine which calls get played in this courtroom, which not only did you directly address with him at one point as he stood here, as I remember it, but we've gone through this entire

1 trial. He then went on to talk about how you had no
2 discretion to change the protective order, that it
3 was entirely up to the government, again a complete
4 fabrication.
5     And, obviously, going back to some comments
6 you made the last time we were here, part of my
7 understanding as to why some of this was potentially
8 put out the last time was the hope, at least from
9 the government's perspective, that if he would be on
10 that witness stand and we have an opportunity to
11 confront him with these lies that he continues to
12 perpetrate, again the very week the selection is
13 occurring, it now looks more and more that that is a
14 questionable opportunity the government will ever
15 have.
16     And to the extent that this is going to
17 continue, at some point the government may well be
18 back, if Your Honor doesn't want to address it now,
19 asking for some remedy to address what are clearly
20 fabrications that he is not being called on.
21     THE COURT: You want to say something or you
22 want to wait for me to say something?
23     MR. SOROSKY: Well, it appears that my first
24 thought is perhaps say nothing, but I can't help but
25 comment on the fact that the -- and I did not see

the interview, however the supposed fabrications
that Mr. Schar refers to are Governor Blagojevich's
knowledge or understanding of what the rules of law
are, it's not concerning the facts of the case.  I
believe Mr. Schar was complaining about the
governor's assessment of whether this Court could
change the order entered to not disclose certain
material and perhaps he misspoke when he said that
the government decides as opposed to the court
decides, I think that is far short of fabrications.
          MR. SCHAR:  Judge, objection --
          MR. SOROSKY:  And that was never --
          MR. SCHAR:  Shelly, not to interrupt ....
          Judge, these are his talking points, this was
not a mistake.  He has repeatedly since the
beginning of this trial suggested somehow in the
context of government cover-up or government somehow
abusing justice that are the ones stopping him from
doing certain things.  I'm shocked, at some level,
that Mr. Sorosky suggests that somehow there is a
misunderstanding from the defendant as to what
exactly the law is from someone who has been both a
prosecutor and a criminal defense attorney and who
was told, point blank, how the rules were in this
courtroom and has sat through episodes in this

Case: 1:08-cr-00888 Document #: 1033 Filed: 09/11/12 Page 13 of 18 PageID #:16610

13

courtroom where it's clear who rules the courtroom and who runs the courtroom and rules of evidence.

This is just part of an attempt by him to poison what's going on. And there's no misunderstanding, it's a purposeful attempt. And it's fine, Judge, to the extent that we get an opportunity to put him on the witness stand and point out that it's absurd and he's a liar, but we're not, and this continues, and it's not justifiable particularly the week of jury selection.

MR. SOROSKY: Well, Ms. Kaeseberg, I think, sought the interview and perhaps she can comment on it, Your Honor, I did not.

MS. KAESEBERG: Just for the factual matters, I mean, my understanding of what he was saying in the interview and my understanding of the protective order, frankly, is that the government classifies material that it deems confidential and then Your Honor enforces the protective order pursuant to the classifications made by the government, that's, I think, the factual issues.

MR. SCHAR: Judge, they were up here a week ago seeking to modify the protective order and it was denied by Your Honor. So there can't be any misunderstanding as to somehow that you have no

1 discretion to do that. And that's, you know,
2 secondary to the larger point of this continued drum
3 beat of phone calls that somehow we're hiding the
4 ball. At a certain point enough is enough. If he
5 wants to continue to lie, he ought to be called on
6 it.
7      THE COURT: Let me tell you what could be
8 done in this case if I'm satisfied that there is
9 some deliberate effort to subvert the jury. And I
10 want to say at the beginning, I will not hold it
11 against the defendant the exceptional incident that
12 occurred after the first trial, one of the few
13 things I saw, I try to avoid seeing this stuff, but
14 the trial was over and I saw one of his lawyers, who
15 I guess some day may have to answer for this, stand
16 up and say that he was saying something with the
17 deliberate intent to influence whatever jury was
18 selected for another retrial, that was a pretty
19 appalling statement by someone who did know better.
20      The first issue is that, and this has been
21 done before, if the defendant has made many
22 statements in public and he doesn't take the witness
23 stand, the government is free to use, if it chooses,
24 statements made by the defendant in public,
25 particularly statements made to the press because

there can be no expectation of confidentiality in statements made to the press.  And it may very well be that the prosecution could construct a rationale for the admission of these.  And one of the difficulties is is that while I think the defendant has made every possible effort to be as unspecific as possible, the defendant has made public statements which, arguably, may be inconsistent with the defense presented in court, positions taken by lawyers in opening statement, and some of that may very well be admissible.

Moreover, some of what the defendant says in public may, in fact, limit what defense counsel can say and argued.  And finally, some of what the defendant says in public might prompt instructions by the Court as to what the jury might and might not consider.

I think under the circumstances, it will be wise for the defendant to restrain himself for a couple of reasons, the first is is that he could, if he has not already done so, step over the line. It's one of the reasons why most defense counsel don't like it when their clients stand up in front of press and say something.  I've known few defense counsel who have encouraged this in their clients.

1  In many cases they don't have to deal with it, and
2  the reason they don't have to deal with it is
3  because they know if their client stands up and
4  calls a press conference, nobody in the press will
5  show up.  This is not the case with this particular
6  defendant.
7            And the other question that's raised is
8  whether the defendant does or does not respond to
9  questions.  I've noted in the first case that I was
10 not terribly concerned about what defendant had to
11 say because what it amounted to is "I'm innocent and
12 I won't answer a single question" then he'd walk
13 back into his house or walk back into his car.  If
14 what Mr. Schar has just said correctly represents
15 the statements, this is a little newer than it was
16 before.  It happened one time and I recall
17 addressing the defendant specifically and telling
18 him it is not the government that decides what is
19 admitted and not admitted, it is I, and I think that
20 might be what Mr. Schar is referring to.
21            And it would be distressing if the defendant
22 was making statements about legal process that he
23 knows not to be the case, because he's been
24 specifically advised by the Court.  I don't know,
25 and I'm not entitled to know, the nature of the

1 conversations between defense counsel and defendant,
2 but you can consider my remarks today as a red flag,
3 then maybe we'll have to deal with it again and
4 maybe we won't.
5     So that's that. Anything else anybody has?
6     MR. SCHAR: Judge, you want to see us prior
7 to Wednesday?
8     THE COURT: I think not, but if I do, I'm
9 sure somebody will be available on both sides and
10 we'll call.
11     MR. SCHAR: Thank you, Judge.
12     THE COURT: Thanks.
13
14   (Which concluded the proceedings had on this
15    date in the above entitled cause.)

1
2              *     *     *     *     *     *     *     *
3
4
5 I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
6 FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED
7                            MATTER
8
9
10   /s/Blanca I. Lara                         date
11
12
13
14
15  _____      _____
16         Blanca I. Lara                       Date
17
18
19
20
21
22
23
24
25