1

1          IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3  UNITED STATES OF AMERICA,        )
                                    ) No. 08 CR 888
4          Government,              )
                                    )
5  vs.                              ) Chicago, Illinois
                                    )
6  ROD BLAGOJEVICH, ROBERT          )
   BLAGOJEVICH, CHRISTOPHER KELLY,) June 25, 2009
7  WILLIAM F. CELLINI, SR.,         )
          Defendants.               ) 11:07 o'clock a.m.

8

9               TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE JAMES B. ZAGEL

10

11  For the Government:

12          THE HONORABLE PATRICK J. FITZGERALD,
            UNITED STATES ATTORNEY
13          BY:  Reid J. Schar
                 Carrie E. Hamilton
14               Christopher Niewoehner
             Assistant United States Attorneys
15          219 South Dearborn Street;
            Suite 500
16          Chicago, Illinois 60604

17
    Court Reporter:
18
                Blanca I. Lara, CSR, RPR
19              219 South Dearborn Street
                     Room 2504
20              Chicago, Illinois 60604
                   (312) 435-5895
21

22

23

24

25

2

APPEARANCES   (continued:)

For Defendant Rod Blagojevich:

        KAPLAN & SOROSKY
        BY:  Sheldon M. Sorosky
        158 West Erie
        Chicago, Illinois 60610
        (312) 640-1776

        LAW OFFICE OF SAMUEL E. ADAM
        BY:  Samuel Forbes Adam
        6133 South Ellis Avenue
        Suite 200
        Chicago, Illinois 60637
        312-726-2326

        STEIN LAW GROUP LLC
        BY: Giel Stein
        P. O. Box 11462
        Chicago, Illinois 60611-0462
        (312) 265-1110

For Defendant Robert Blagojevich:

        ETTINGER, BESBEKOS, PARISI
        BY:  Michael D. Ettinger
            12413 South Harlem
        Suite 203
        Palos Hills, Illinois 60453
        (708)598-1111


For Defendant Christopher Kelly:

        MONICO & SPEVACK
        BY: Michael D. Monico
        20 South Clark Street
        Suite 700
        Chicago, Illinois 60603
        (312) 782-8500

3

Appearances (continued:)

For Defendant William F. Cellini, Sr:

        Genson and Gillespie
        BY: Terence Patrick Gillespie
        53 West Jackson Boulevard
        Suite 1420
        Chicago, Illinois 60604
        (312) 726-9015

1     (The following proceedings were had in open

2      court:)

3          THE CLERK:  08 CR 888, United States versus

4  Blagojevich, et al.

5          MR. SCHAR:  Good morning, Judge.

6          Reid Schar, Chris Niewoehner, Carrie Hamilton

7  on behalf of the United States.

8          MR. ETTINGER:  Good morning, Your Honor.

9          Judge Michael Ettinger on behalf of Rob

10  Blagojevich.

11          MR. MONICO:  Good morning, Your Honor.

12          Michael Monico on behalf of Christopher

13  Kelly.

14          MR. GILLESPIE:  Good morning, Your Honor.

15          Terry Gillespie on behalf of Mr. Cellini.

16          MR. ADAM:  Good morning, Your Honor.

17          Sam Adam on behalf of Rod Blagojevich.

18          MR. SOROSKY:  Sheldon Sorosky, S-o-r-o-s-k-y,

19  on behalf of Rod Blagojevich.

20          MR. STEIN:  Giel Stein, G-i-e-l S-t-e-i-n, on

21  behalf of rod Blagojevich.

22          THE COURT:  We are talking today, I think,

23  about trial dates.

24          MR. SCHAR:  Yes, Judge.

25          THE COURT:  And I think I gave you a window

5

the last time, and the question is, have you
actually reached an agreement or at least narrowed
the disagreement?

MR. SOROSKY:  Well, I would just say, if I
could butt in and go first, I think we would need
the end of that window or as long as possible.

If I could just say this, I think on a prior
court date the government informed the Court that
there were approximately a million documents.  That
statement is correct.  However, the way the
government calculated documents used by each
individual document and some documents are more than
one page, so there are approximately 3 and a half
million pages.  So the government's position that
there are a million documents is not incorrect;
however, I naively just assumed that there were a
million pages.  There are not a million pages, there
are 3 and a half million pages.

And on the last court date, Your Honor
graciously appointed Mr. Stein for 40 hours of work
and he's been a diamond, whatever stone is most
precious, at helping us.  And the first thing we
would ask if the Court would permanently appoint
Mr. Stein to our defense team to fulfill the role of
organizer, I think that was the word Your Honor

1  used.

2  THE COURT:  Anyone else want to address this

3  on the defense side?

4  MR. SOROSKY:  I think I speak for everyone on

5  the defense side.

6  THE COURT:  As soon as you said 3 million

7  pages, I think you were speaking for everyone.

8  MR. SCHAR:  Judge, we will make ourselves

9  available for trial whenever Your Honor pleases.

10  MR. SOROSKY:  Could I suggest holding off a

11  trial date or setting an exact date but we as

12  offense attorneys are well aware that Your Honor has

13  set the timetable of between April and June --

14  MR. SCHAR:  That we would object to, Judge.

15  We would like a trial date to set some things in

16  stone and get moving.

17  MR. GILLESPIE:  You said July?

18  THE COURT:  I said April 1st to July 1st.

19  MR. SOROSKY:  Oh, July 1st.

20  THE COURT:  That's what I said.

21  (Brief pause.)

22  THE COURT:  I am going to set a date and the

23  date I'm setting is June 3rd.  There are a variety

24  of things that have to be done, some of them I don't

25  think we have to talk about because now that there's

a date people can do some organization and we're
going to have relatively frequent statuses, but I do
want various drafts of the jury questionnaire.  It's
been done before, it's been done in cases that I've
had before.  It's useful because it shortcuts the
amount of time we have to spend in oral dialogue
with the jurors, and for purposes of both the
prosecution and defense there's much more
information in those questionnaires than you would
get in an ordinary examination.  And the last time I
used it, I had a fairly prominent defense lawyer
urge that it be done in all cases.  It's just a
little too expensive for a 3-day jury trial, but it
just makes sense in the context of a long trial.

That date will necessitate in addition to
customary the Friday breaks, it will necessitate
perhaps some possibly longer days off because of the
Independence Day holiday, but maybe not.  So I took
a look at the calendar and the 4th is on a Sunday,
the 5th will be the holiday, and we would be taking
off the 2nd, in any event, because it's a Friday.
So we may not actually be impacted much by
Independence Day.  So basically that's that.  My
preference would have been for May, but at least we
avoid Memorial Day in period of time, which I find,

1  for many, is more difficult.

2        Having said that, I'm granting the motion

3  with respect to Mr. Stein.

4        Is there anything else?

5        MR. SCHAR:  Judge, could we also prescreen

6  the panel for the length of trial?

7        THE COURT:  Yes, the questionnaire will tell

8  people, as we did in the Family Secrets case, that

9  this is going to be a trial of certain duration.

10 It's my practice to overstate the duration by 2 or

11 3 weeks.  Then the jury office will look at them,

12 because there will be a bunch of people who will say

13 honestly they'd be happy to serve but it's too long

14 and they'll give us reasons.  In the vast majority

15 of cases, they're perfectly legitimate and I just

16 excuse them.  Others, have come or some further

17 investigation is done.  And we tell me what the

18 terms a conditions are, we tell them there will be

19 Fridays off.

20       But more importantly than that is the

21 questions you want to put on the questionnaires, and

22 with few exceptions I follow the lawyers' lead,

23 because you are the ones who are going to have to

24 make a determination of peremptory challenges, and

25 that's basically why you need the data for.

1    I will also address at a later date the
2  question of how many peremptory challenges there
3  will be, but we'll deal with that in due course.
4    Do we have another general status set for us?
5    MR. SCHAR:  We do not, Judge.
6    THE COURT:  I'm thinking July 16th -- well, I
7  don't want to really do that --
8    MR. SCHAR:  Judge, we could go a week after
9  that.
10   THE COURT:  July 23rd?
11   MR. SCHAR:  Very good, Judge.
12   THE COURT:  Fine.
13   MR. SOROSKY:  Could we make that the 22nd?
14  Is that possible?
15   THE COURT:  Absolutely.  22nd is fine.
16   Time will be excluded in the interest of
17  justice for the obvious purpose of allowing the
18  defense to prepare.
19   MR. ETTINGER:  At 11:00, Judge?
20   THE COURT:  What was the question?
21   MR. ETTINGER:  At 11:00 o'clock, Judge?
22   THE COURT:  11:00 o'clock.
23   MR. SCHAR:  Judge, one final issue from the
24  government.  We have continued to work through the
25  issue of the Friends of Blagojevich money.  I think

1   a significant sum has actually been provided to the

2   Clerk's Office.  The Clerk's Office had asked at

3   some point, and not asking leave now, for Your Honor

4   to amend the order specifically to allow for

5   interest bearing accounts for this money to be put

6   in.  I believe, if I have not already submitted one,

7   I will submit just a change to the order that allows

8   that.  The Clerk's Office has asked that we provide

9   that to them.

10          THE COURT:  Yeah, that is right.  That is

11  right, interest bearing accounts.

12          Anything else?

13          MR. SOROSKY:  There are a few other remedial

14  matters -- or four other.  First, if the Court would

15  consider adopting some regular schedule so that all

16  of the attorneys could be paid with some

17  consistency.  We'll file an ex parte motion

18  requesting that, but we just wanted to let Your

19  Honor know, that's one thing.

20          THE COURT:  I'd be happy to establish a

21  regular schedule.  And obviously the persons who

22  have the principal interest in that are the defense

23  lawyers, the government is much more likely to be

24  available at specified time.  So you can submit

25  something to me and if the intervals are not too

1 long, I'll give it to you.

2     MR. SOROSKY: Thank you.

3     Another motion we will be filing ex parte is,

4 there are certain sophisticated forms of equipment

5 that the defense is going to need to adequately

6 prepare for trial. I mean, generically, it probably

7 would be considered computer equipment, if I could

8 use that phrase, and we just want to inform the

9 court and the government we will be filing that ex

10 parte.

11     MR. SCHAR: Judge, just on that issue,

12 obviously, if Your Honor grants the order, we're not

13 going to object, but it's my understanding that the

14 CJA money, which would be the FOB money as the

15 equivalent, should not to be used as simply outfit

16 defendants with new computers and everything else,

17 or at least if that's going to be provided, I assume

18 on an interim basis with the equipment to be

19 returned so that we're not actually using money so

20 they can update their offices.

21     MR. SOROSKY: Absolutely. We have no problem

22 with that.

23     THE COURT: If you're dealing with

24 particularly sophisticated equipment, usually you

25 can lease it because people don't use it that often

12

1    and it's usually leased.  And if it's not leased, we
2    can do something else.
3            MR. SCHAR:  All right.
4            THE COURT:  I don't think you're going to get
5    a quarrel over that one.
6            MR. SOROSKY:  Third thing is, there is
7    certain equipment presently in the Friends of
8    Blagojevich office, and I don't think it's
9    supersophisticated equipment but it is equipment,
10   such as some photocopy machines and that type of
11   thing.  I was wondering if the defense could avail
12   itself of that equipment, since it's already there,
13   if necessary, and of course --
14           THE COURT:  I would be unlikely to frown on
15   that one.
16           MR. SOROSKY:  You would be?
17           THE COURT:  Unlikely to frown.
18           MR. SOROSKY:  Okay.  Very good.  Very good.
19           MR. ADAM:  He said yes.
20           THE COURT:  Well, double negative is a
21   positive, is that correct, Mr. Adam?
22           MR. ADAM:  That's correct.
23           MR. SOROSKY:  And the fourth thing is, on the
24   last court date Your Honor wanted all, I think the
25   term you used, is younger lawyers, and they are all

1   here if the Court wants to meet them.

2       THE COURT:  Why don't you have them come up

3   and state their names for the record.

4       MR. SOROSKY:  Okay.

5       MR. SCHAR:  Judge, when they do that, they

6   we're here, can they represent to the Court that

7   they've been provided a copy of the protective order

8   and they read it and they understand the terms of

9   the protective order?

10      THE COURT:  Sure.

11      MR. SOROSKY:  Everyone step up and state your

12  names to the Judge.

13      MR. SAULTER:  Good morning, Your Honor.

14      Keenan Saulter, I have read and analyzed the

15  protective order.

16      THE COURT:  Would you spell your name?

17      MR. SAULTER:  Yes, S as in Sam a-u-l-t-e-r.

18      MS. MOLARO:  Robyn Molaro, M-o-l-a-r-o, and I

19  have read and I understand the protective order.

20      MR. GOLDSTEIN:  Good morning, Your Honor.

21      Aaron Goldstein, G-o-l-d-s-t-e-i-n, I've read

22  the protective order and I understand it.

23      MR. DI NATALE:  Good morning, Your Honor.

24      Michael DiNatale, DiNatale, and I have read

25  and do understand the protective order.

14

1    MR. RIEBMAN:  Good morning, Your Honor.

2    Elliott Riebman, R-i-e-b-m-a-n, and I've read

3 and I understand the protective order.

4    MR. WALKER:  Good morning, Your Honor.

5 Robert Walker, W-a-l-k-e-r, I have read and do

6 understand the protective order.

7    THE COURT:  You can come back, Mr. Sorosky.

8    (Brief pause.)

9    MR. SOROSKY:  Mr. Gillespie has told me he

10 would up give all his fame and fortune to be able to

11 be able to be one of those younger lawyers.

12    MR. GILLESPIE:  I sure would.

13    THE COURT:  Anything else?

14    MR. SOROSKY:  That's it, Your Honor.

15    MR. SCHAR:  No, Judge.

16    THE COURT:  Thank you, counsel.

17

18    (Which concluded the proceedings had on this

19     date in the above entitled cause.)

20

21

22

23

24

25

15

\* \* \* \* \* \* \* \*

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED
MATTER


  /s/Blanca I. Lara                                date




_____        _____

      Blanca I. Lara                           Date