1

1           IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3   UNITED STATES OF AMERICA,      )
                                   )  No. 08 CR 888
4          Government,             )
                                   )
5   vs.                            )  Chicago, Illinois
                                   )
6   ROD BLAGOJEVICH,               )  March 21, 2011
                                   )
7          Defendant.              )  10:41 o'clock a.m.

8
                 TRANSCRIPT OF PROCEEDINGS
9          BEFORE THE HONORABLE JAMES B. ZAGEL

10

11  For the Government:

12          THE HONORABLE PATRICK J. FITZGERALD,
            UNITED STATES ATTORNEY
13          BY:  Reid J. Schar
                 Carrie E. Hamilton
14          Assistant United States Attorneys
            219 South Dearborn Street;
15          Suite 500
            Chicago, Illinois 60604
16

17  Court Reporter:

18          Blanca I. Lara, CSR, RPR
            219 South Dearborn Street
19                Room 2504
            Chicago, Illinois 60604
20             (312) 435-5895

21

22

23

24

25

 1  APPEARANCES  (continued:)

 2

 3  For Defendant Rod Blagojevich:

 4          KAPLAN & SOROSKY
            BY:  Sheldon M. Sorosky
 5          158 West Erie
            Chicago, Illinois 60610
 6          (312) 640-1776

 7

            LAW OFFICE OF Elliott Riebman
 8          BY:  Elliott Riebman
            158 East Erie
 9          Chicago, Illinois 60610
            (847) 814-2900
10

11

            OFFICES OF AARON B. GOLDSTEIN
12          BY:  Aaron Benjamin Goldstein
            6133 South Ellis
13          Chicago, Illinois 60637
            (773) 752-6950
14

15          OFFICES OF LAUREN FAUST KAESEBERG
            BY:  Lauren Faust Kaeseberg
16          2140 N. Lincoln Park West
            Suite 307
17          Chicago, Illinois 60614
            (773) 517-0622
18

19

20

21

22

23

24

25

1    (The following proceedings were in open court:)

2        THE CLERK:  2008 CR 888, United States versus

3  Rod Blagojevich.

4        MR. SCHAR:  Good morning, Judge.

5        Reid Schar and Carrie Hamilton on behalf of

6  the United States.

7        MR. SOROSKY:  Your Honor, all counsel of

8  record for Mr. Blagojevich are present.

9        THE COURT:  I have a bunch of motions.

10        Any final words anybody wants to offer?

11        MR. SCHAR:  Judge, I think that we still owe

12  you a response on one of the minimization motions

13  which we intended to file as close as tomorrow, if

14  that's okay?

15        THE COURT:  That's fine.

16        MR. SCHAR:  Otherwise, I think we responded

17  to everything except the cancel the trial motion,

18  which I don't think a response is necessary.

19        THE COURT:  Well, the cancel the trial motion

20  actually has not been presented, and my guess is is

21  it won't be presented, which means that it goes away

22  by itself, vanishes into thin air -- well, that's

23  not true, because it remains in the docket forever.

24        But since it's a motion which asks for

25  something I'm legally not entitled to do, anything

1  else?

2          MR. SCHAR:  Other than that one minimization,

3  Judge, I do not -- I guess there actually was a

4  renewed motion for reconsideration we have not

5  technically responded to.

6          THE COURT:  Right.

7          MR. SCHAR:  On that one motion, obviously I'm

8  trying to be circumspect because the filing is under

9  seal, but on that one motion, Judge, what they asked

10 for is not Giglio or Brady discoverable material.

11         THE COURT:  No, I read that.

12         MR. SCHAR:  Okay.  Nothing else.

13         THE COURT:  Last minute words?

14         MS. KAESEBERG:  There's one motion which the

15 government responded on the medical records that

16 we'd ask to have until the end of the week to file a

17 reply on.

18         THE COURT:  Sure.

19         And one of the reasons I'm permitting that is

20 it will be at least a little while before we get to

21 the witnesses the subject of that motion, so we'll

22 have time to deal with that.

23         The motions, two of them I have, with respect

24 to the protective order by the defendant are denied.

25 I entered the protective order because I wanted the

1  case tried in the courtroom and not anywhere else,

2  and the materials covered by the protective order

3  are, with very few exceptions, likely to be released

4  subsequently, so we're not talking about the

5  permanency here.

6         I'll leave the minimization aside.

7         There is a motion which basically I have

8  dealt with before and I've ruled on before.  The

9  title offered by the defense is a very long one, on

10  my notes I refer to it as a motion to admit

11  inadmissible hearsay, and the motion is denied.

12         There's one thing that's left with this

13  motion that's not asked for but I'm sure defense

14  counsel is aware of it, and that is in the event

15  that appropriate foundation testimony is laid in

16  this case, probably, but not certainly, the only

17  person who can do that is the defendant, then the

18  ruling might change with respect to some items

19  simply because the standard objection to hearsay is

20  that there is no opportunity to cross-examine, there

21  would be an opportunity to cross-examine with

22  respect to some of it.  So with that possible

23  exception, the motion is denied.

24         The honest services motion I'm also denying.

25  I'm assuming this is done simply because you don't

:45AM

:45AM

:46AM

:46AM

:47AM

1 want the point waived because I basically ruled on
2 this previously.  It is true that there have been
3 cases since my previous ruling, and I'm assuming
4 defense counsel wanted to make the record with
5 respect to citing additional authority and they've
6 accomplished that purpose.  I've read it and I
7 remain unpersuaded that these charges are affected
8 by Skilling.

9          MR. SOROSKY:  Your Honor, if I could
10 interrupt for one minute on the honest services
11 point?

12          THE COURT:  Sure.

13          MR. SOROSKY:  I don't think anyone would
14 question that based on the Skilling case, United
15 States Supreme Court limited and narrowed honest
16 services.

17          THE COURT:  No question about that.

18          MR. SOROSKY:  And I'm the last person to
19 speak to the government, but I think, as is Your
20 Honor, but I think you and I can say as lawyers,
21 when the government first hatched this case, the
22 government hatched this case under the old honest
23 services law.  So, therefore, I think the government
24 found themselves in a peculiar position of having
25 prepared a case where they had, let's say, 50 pieces

1  of evidence, if you will, and perhaps some of those

2  pieces of evidence were no longer admissible under

3  the new Supreme Court interpretation of the honest

4  services law.  And we just would be alerting Your

5  Honor that perhaps shortly before trial, we will be

6  going over certain topics that the government

7  presented in the first trial that the defense would

8  feel may have been fair game for the government to

9  present under the old law that may very well be

10  beyond the scope of the law as it stands today based

11  on the Supreme Court's interpretation.

12          Now, so we're not talking about per se

13  dismissing any charges, we're speaking of this more

14  in terms of some evidence that may not be admissible

15  under the Court's interpretation.

16          THE COURT:  Which is all right for you to

17  raise that.  As you know, we begin the first phase

18  of this which has to do with getting a jury on

19  April 20th.  I intend to take some time on at least

20  the 14th and 15th of April, and possibly the 13th as

21  well, to deal with things that we ought to discuss

22  before that time.  I think we did in the first trial

23  get a lot of the preliminaries out of the way so

24  that we can proceed smoothly.  The only thing, and

25  I'm sure you're aware of this, what the government

1  is going to say with respect to some of this
2  evidence that I think you're referring to is that
3  the language itself does not constitute an offense,
4  or technically speaking, evidence of an evidence
5  that you regard all the elements together, but I
6  believe they will defend some of it on the grounds
7  that if the defendant could not be convicted based
8  on some piece of evidence or something that was said
9  or something that is said that was done, it
10 nonetheless shows intent and the offenses all
11 require proof of an intent, there might be other
12 collateral purposes for which it's offered.
13        So since you probably have already seen that
14 train coming down the tracks, you might want to
15 sculpt your motions to deal with that response, plus
16 whatever else the prosecutor is thinking.
17        MS. KAESEBERG:  Your Honor, while we're still
18 talking about the honest services motion, one of the
19 request of the motion is for pretrial jury
20 instructions conference on the honest services jury
21 instructions, would you be open doing something of
22 that nature?
23        THE COURT:  I think we'll have time.  If
24 there is anything that's really pressing, I think we
25 can deal with it.

1      The request to produce two witnesses, I

2 thought I dealt with this one.

3      MR. SCHAR:  You did.

4      THE COURT:  With respect to medical records,

5 I am unpersuaded that this has any value to the

6 defense at all.  I am not, however, ruling that the

7 defense is unable to raise the issue of a particular

8 witness's ability to perceive based on consumption

9 of a prescribed medication, but to do that you don't

10 need the medical records.  And, in any event, the

11 medical records are likely themselves to create

12 difficulties for you because it's really, in many

13 cases, another form of hearsay.  But the leaving

14 that point aside, generally speaking, we have strong

15 protections against medical records and there is

16 nothing about the proposed testimony of an expert

17 that persuades me that the case cannot be made, if

18 you choose to make it, without the medical records.

19 And I accept the government's representation that

20 they do not have the medical records, nor do they

21 have the identify of the physician.  It is possible

22 that the witness might be willing to tell you this,

23 but I doubt it.  And --

24      MS. KAESEBERG:  Your Honor, sorry to

25 interrupt you.  The medical records motion is one

1   that we're asking to reply to by the end of the
2   week --
3           THE COURT:  Okay.  Well, right, then it's
4   probably useful that you know what I'm thinking
5   about, because you will have to make something,
6   particularly reading what the expert said.  And you
7   haven't gone through the first recourse, which is to
8   ask the witness.
9           The original disks, the government's response
10  is -- I'm not looking for the response, I'm looking
11  to keep my papers in order because it's a huge pile.
12          The government's response is, you have an
13  original, there is an original, the machine creates
14  two originals.  If you wish to challenge the
15  proposition that the machine creates two originals,
16  I'm sure the government will tell you where to look
17  to find that out.  But since we are dealing with
18  duplicative originals, there is no reason to unseal
19  the original wiretap records because the two disks
20  were created at the same time.
21          And the other thing I don't understand about
22  is why you would need an expert were I to release
23  them.  It seems that anyone who could hear and
24  understand English could tell you whether there are
25  any differences between the two.

1          With respect to the motion to reconsider
2    contents of some phone calls that are alleged to be
3    missing, I gather from the tenor of the motion that
4    there's no dispute that we're dealing with calls
5    that were not recorded.  What the defendant asks for
6    in this case, assuming non-recordation, is notes and
7    memos from telephone conversations.  I have no idea
8    whether such memos exists.  If they do exist, then
9    we'll have them produced to me under seal.  My guess
10   is is these phone calls were fairly typical of
11   prosecutor's calling people, informing them of
12   something, an event that is likely to happen, a
13   courtesy call without discussion.  If there's any
14   memos of this or any notes, I will order the
15   government to produce them to me under seal.
16          With respect to the motion to suppress the
17   recorded conversations, I do deem the matter to be
18   waived.  The waiver was made clearly.  It is
19   possible that one could revoke a waiver, but I would
20   be unlikely to accept such a revocation considering
21   the timing of this motion which is not quite on the
22   eve of trial but close enough to fall into that
23   category.  Moreover, I believe that the motion is
24   going to be fruitless and I believe this was one of
25   the reasons it was waived to begin with.

12

1    There is something that I guess is worth a
2 comment, and that is is that whether a disclosure
3 made to the Chief Judge who issued the warrant, that
4 Title 3 order, whether that judge was somehow not
5 fully informed of the nature of the individual on
6 whom some degree of probable cause rested.  This is
7 a motion that depends on the premise that a judge
8 who has a Title 3 order of this sort is a pure
9 innocent in the world knowing nothing of the way
10 things work.  I have not yet seen it myself any case
11 in which the affiant on which probable cause is
12 based could be characterized as a sterling
13 individual, Mother Francis of the Sisters of Mercy
14 rarely provides probable cause in cases of this
15 sort.  In this case, the issuing judge would
16 understand, from the context of this, that there is
17 some element of benefit that the informant expects
18 to get, and should the judge be naive enough not to
19 think that the government told him that he was
20 hoping for this.  Could more have been said about
21 the arrangement between the two?  Sure.  But the
22 fact remains is is the self-interest, reading the
23 affidavit itself, the self-interest of the informant
24 is patent and adding a word or two is, in my view,
25 immaterial to the decision whether to issue the

1  Title 3 order.  This, of course, is dictum because I

2  regard the issue as waived.  It is simply an

3  observation.

4          MR. SOROSKY:  Your Honor, if I could

5  interrupt for a minute, just so we're clear.  We're

6  not saying that the affiant is necessarily not a

7  sterling individual.  We don't have any question

8  concerning the affiant's fundamental credibility.

9  We feel the affiant is a little biased against

10 Blagojevich, but we're not questioning his

11 fundamental credibility.

12         THE COURT:  You're questioning the adequacy

13 of the data before the judge --

14         MR. SOROSKY:  Right.

15         THE COURT:  -- and I think the data was quite

16 adequate.

17         MR. SOROSKY:  Right.  We just feel that the

18 informant is not sterling as distinguished from the

19 affiant.

20         THE COURT:  Yes.  And now you have managed to

21 remove from the record any offense given to the law

22 enforcement officer who is the affiant --

23         MR. SOROSKY:  No, no, no.

24         THE COURT:  And I'm sure whoever that special

25 agent was, he's very grateful.

:01AM
:01AM
:01AM
:02AM
:02AM

1    And I'm still getting something on

2 minimization?

3    MR. SCHAR:  Yes, Judge.  I think we owe you a

4 response to minimization.

5    THE COURT:  And you have something coming in,

6 too?

7    MS. KAESEBERG:  The reply of the medical

8 records and --

9    THE COURT:  Then we're fine.

10    The questionnaire.  Do we have a revised

11 version, proposed revised version.

12    MS. HAMILTON:  Judge, I sent to your chambers

13 in February a revised questionnaire that highlights

14 for you the questions that we have agreed to change

15 between the parties and the questions where there

16 are still some objection by one party or another.

17    THE COURT:  When did you send it?

18    MS. HAMILTON:  On February the 8th.  Do you

19 want me to send up a copy?

20    THE COURT:  No, I think I have that here.  It

21 says received February 8th.  But we discussed one

22 thing --

23    MS. HAMILTON:  Regarding questions on the

24 first trial?

25    THE COURT:  Right.

:02AM

:02AM

:03AM

:03AM

:03AM

1    MS. HAMILTON:  I communicated with defense
2  counsel, there are questions at the very end of that
3  juror questionnaire that are highlighted in blue,
4  those are the questions that the defense is
5  proposing be asked to deal with the issue of the
6  first trial.
7    THE COURT:  Right.
8    MS. HAMILTON:  The government has a different
9  question that we would be proposing, and we were
10  trying to come to some agreement with the defense
11  and I think we don't have an agreement on that.  So
12  we have an additional question that we would be
13  proposing but I have not given that to you.
14    THE COURT:  Okay.  Just e-mail it to me.
15    MS. HAMILTON:  I'll e-mail it, Your Honor.
16    THE COURT:  My initial inclination, if I have
17  not given this to you before --
18    Page 11 is highlighted in yellow.  I forgot
19  what yellow meant.
20    MS. HAMILTON:  These were all one question,
21  they were subparts of one question, and we've broken
22  them out into separate questions.
23    THE COURT:  Okay.  And I don't think there
24  was an issue with this.
25    MS. HAMILTON:  Between the parties?  No.

1        THE COURT:  Okay.

2        And then I have question 39 which is,

3   according to this, given in the previous one and the

4   government is objecting.

5        MS. HAMILTON:  That's right, Your Honor.

6        MS. KAESEBERG:  We actually don't have a copy

7   of the question.

8        THE COURT:  It's a simple question, I'll read

9   it to:

10       "... how many attorneys, if any, have you known

11       fairly well?"

12       MR. GOLDSTEIN:  We still propose that

13   question, Your Honor, and ask that it be asked.

14       THE COURT:  I'll put it in the questionnaire.

15       Then I have another one which I don't know if

16   this is yellow or orange.

17       MS. HAMILTON:  On Page 17, Your Honor?

18       THE COURT:  Right.

19       MS. HAMILTON:  Question 48, it's orange.

20   It's a new question that was proposed by the defense

21   and the government does not object to it.

22       THE COURT:  Okay.

23       Then the next one is 19, Page 19, question 55

24   and 56.  The reason for this question is fairly

25   patent.  Your views?

1    MR. GOLDSTEIN:  We object, Your Honor.

2    THE COURT:  I don't know why you're

3  objecting.  I mean, basically this looks to me like

4  maybe it's partly your question.

5    MR. GOLDSTEIN:  It actually is not.  The

6  question is more of a systemic question, I think the

7  government has said we don't want to discuss, so

8  it's entering into the issue of their views on the

9  system and I don't think it's appropriate, Your

10  Honor.

11    MR. SCHAR:  Judge, I would just add, the

12  genesis of this came actually in talking to various

13  of the jurors afterwards, in part.

14    THE COURT:  That's the patent part.

15    MR. SCHAR:  Yes.

16    MS. HAMILTON:  Yes.

17    MR. SCHAR:  And it's clear that there may

18  have things that got through last time that these

19  questions hopefully will address.

20    THE COURT:  I will permit the question to be

21  asked with one addition, you have a yes and a no, I

22  want a no opinion line as well.

23    MS. HAMILTON:  If no?

24    THE COURT:  You have a yes, no, and it's a

25  question on which somebody may not have an opinion.

1　The "if yes" part is fine, because that is

2　somebody -- which somebody will not answer that if

3　they have no opinion.

4　　　　There's no objection to question 71, it's

5　yellow.

6　　　　MS. HAMILTON:  That's right.

7　　　　THE COURT:  The next one is orange and that's

8　81.

9　　　　MS. HAMILTON:  That's just an addition that

10　the parties agree to.

11　　　　THE COURT:  Good.

12　　　　Question 83?

13　　　　MR. GOLDSTEIN:  Yes, Your Honor, at the last

14　trial we did object to it, it was admitted over

15　objection.  We still object and if we can give one

16　recommendation.  There is a line beginning on the

17　third line, it starts with the sentence before

18　"received" if Your Honor does allow the question we

19　would at least ask that that sentence be stricken.

20　　　　THE COURT:  No, I'm not striking it.  This is

21　actually an instruction that I routinely give, and

22　there's good reason to give it.

23　　　　So now we are down to 92 through 99, which

24　are the defense questions.

25　　　　MR. SCHAR:  And, Judge, we have, I think as

1 Ms. Hamilton said, we have a proposed single

2 question to address the issue of the first trial,

3 we'll e-mail that to Your Honor.

4   THE COURT:  Is it a very long question, short

5 question?  One you could read to me now?

6   MR. SCHAR:  We could read it.

7   MS. HAMILTON:  Sure:

8  ".... have you read, heard, or seen anything

9  about a trial in the summer of 2010 involving

10  Rod Blagojevich either at the time of trial or

11  since that time?"

12  "If yes, please explain what you have read,

13  heard or seen."

14   THE COURT:  I will take that question and

15 strike 93, 94, 95, I'm striking 98, I'm striking 99.

16 This leaves some we have to talk about.

17   Did I say strike 97?

18   MS. HAMILTON:  No.

19   THE COURT:  Good, because I didn't want to

20 strike that.

21   We're discussing 92, 96 and 97.  92 is:

22  "... public or peer pressure interfere with your

23  ability to render a fair verdict in this case."

24   MS. HAMILTON:  And, Judge, it's the

25 government's position that that question is actually

1   redundant to a series of questions that the jurors

2   we asked before.

3          THE COURT:  Which are those?

4          MS. HAMILTON:  It starts at question 75.  I

5   mean, it's really --

6          THE COURT:  Okay, let me look first.  That

7   was on the discuss list.

8       (Brief pause.

9          MR. GOLDSTEIN:  It is not redundant, Your

10  Honor.  Proposed question 92 is also from our

11  speaking with jurors.  That was pretty obvious what

12  was going on in the deliberation room, there was a

13  lot of peer pressure that was occurring during

14  deliberations.  It didn't have anything necessarily

15  to do with evidence or information that they

16  received about the defendant before the trial, it

17  had to do with their ability to render a fair

18  verdict not based on peer pressure, which based on

19  our communications with the jurors happened quite

20  frequently.

21         THE COURT:  I'm striking the question and let

22  me tell you why.  The nature of jury deliberations

23  clearly involves and invites, not just involves it

24  invites, spirited debate.  One juror can tell

25  another juror if he thinks that the other juror's

21

opinion is wrong, and actually sometimes language
goes beyond wrong, jurors in fact on occasion insult
each other.  This is the process that we have.  And
to say well, there's no peer pressure, is basically
to say that a juror should not be influenced by the
opinion strongly invoiced or even mildly invoiced by
another juror.  And that's the basic flaw with this.
What you're looking for in jurors is not that they
won't yield to a strongly voiced opinion of another
juror because it's changed their mind, when we talk
about peer pressure it's family and a variety of
other things, and that is what is covered from the
previous questions, so I'm striking this question.

     Moving on to 96, this is basically how
intensely did you follow prior media coverage of
this, and I'm inclined to ask this one.

     MS. HAMILTON:  Judge, could we simply ask
that you strike, with respect to 96 and 97, "first
trial" and just have it say "of the trial"?

     THE COURT:  Fine with you?

     MR. GOLDSTEIN:  We have no objection to that,
Your Honor.

     THE COURT:  So then we're okay with 96 and
97.

     Then I think we're set.

1          MS. HAMILTON:  Judge, I'll revise that and
2     e-mail that to your chambers.
3          THE COURT:  Right.
4          Anything else we have to deal with?
5          MR. SCHAR:  Judge --
6          MR. SOROSKY:  And --
7          Go ahead.
8          MR. SCHAR:  Sorry.  Just to make sure we're
9     working on your schedule, the government has a
10    couple of motions in limine that we'll file probably
11    not -- sometime in the first week of April to make
12    sure that it's -- hopefully if it needs to be
13    responded to, can be responded to by the 13th, 14th,
14    or 15th that we can address at that time.  If
15    you want it done earlier than that, we could try to
16    work at it and do it earlier than that.
17         THE COURT:  No, it doesn't have to be done
18    earlier than that.  And a lot of this stuff really
19    doesn't make sense without a lawyer standing in
20    front of you.  The written word is not telling you
21    what you need to hear.
22         Mr. Walker will send out a notice scheduling
23    you for probably, depending on how things go the
24    first day, probably two days in that week, which may
25    very well take us to rulings which are issued at

1    least a week and maybe ten days before an opening
2    statement is given, which ought to be enough time
3    particularly since this is the second time around.
4         Anything else?
5         MR. SOROSKY:  Two things.  One, the Court had
6    mentioned earlier one of the motions that the
7    defense filed is a motion to dismiss the second
8    trial and proceed to sentencing and so forth.  Since
9    everyone knows about the motion, we'd ask if the
10   Court would indulge all the parties and perhaps rule
11   on the motion now.  I don't know if the Court needs
12   the --
13        THE COURT:  Well, interesting enough, under
14   our rules --
15        MR. SOROSKY:  Unless the Court needs more
16   time --
17        THE COURT:  Under our rules, you're supposed
18   to present the motion before I can rule on it and
19   you actually have until March 23rd I think, either
20   tomorrow or the 23rd to present the motion.
21        MR. SOROSKY:  Would the Court indulge us as
22   having been presented now and perhaps the Court can
23   rule?
24        THE COURT:  You know, it's difficult for me
25   to rule because I don't actually think it's a

:18AM

:19AM

:19AM

:19AM

:19AM

1  motion.  It looks like something else intended for
2  an audience different than the Court.
3       MR. SOROSKY:  No, no, no, it was intended for
4  Your Honor.
5       THE COURT:  Well, except for the fact that
6  you're asking me to do something which I have
7  absolutely no legal right to do, and I would rather
8  not express my view on the wisdom and equity of the
9  motion in the first place.
10       MR. SOROSKY:  Well, that could be an
11  interesting legal debate as to whether a court,
12  whether it's Your Honor or anyone else, has the
13  power to do what it's suggested in the motion.
14       THE COURT:  Well, we have this structure in
15  our government which we have a legislative branch
16  and an executive branch and a judicial branch, and
17  the judicial branch is not supposed to exercise
18  powers that belong to the executive branch, which
19  you know very well, and that's what the motion asks
20  me to do, to exercise the powers of the executive
21  branch and we don't do that here.  So my response is
22  is to borrow something from legislative procedure,
23  this particular motion is going to die for want of a
24  second, so we're done with it.
25       MR. SOROSKY:  Now, when the Court, in 2010,

:19AM
:20AM
:20AM
:20AM
:21AM

set an April 20th date, it turns out to be a
Wednesday with the following Friday Good Friday, in
light of that would the Court want to begin instead
of the 20th maybe Monday, April 25th?

THE COURT:  No, I want to begin on the 20th
because, if you recall, the 20th is a screening day
and I'd like to get at least that paperwork out of
the way, and it's possible that if all goes well, we
might have some jury selection process on the
Thursday, we will probably not sit on Good Friday.

I also need to inform you that there will be
one day during the course of the scheduled trial,
one week in which we will have hearings on Friday
because I'm absolutely required to be in Washington
on another date that week and I will tell the jury
and we'll issue the date.

MR. SCHAR:  Judge, just so I understand, the
20th, we don't have to be in court, that is when the
jurors come in and fill out the questionnaire?

THE COURT:  The issue is you have to be
available.

MR. SCHAR:  Sure.  Right.  But there's no
anticipation of selection.

THE COURT:  Right.

MR. SCHAR:  Thank you, Judge.

26

1          THE COURT:  Okay?

2          MR. SCHAR:  Yes, Judge.

3          MR. SOROSKY:  Does the Court want to set any

4  dates between now and the 20th?

5          THE COURT:  Mr. Walker will do that.

6          MR. SCHAR:  Thanks, Judge.

7          MS. HAMILTON:  Thank you, Judge.

8          MR. SOROSKY:  Thank you.

9          MS. KAESEBERG:  Thank you, Your Honor.

10       (Which concluded the proceedings had on this

11        date in the above entitled cause.)

:22AM

```
    *      *      *      *      *      *      *      *
```

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED
MATTER


/s/Blanca I. Lara                          date


_____              _____
      Blanca I. Lara                           Date