1

1           IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3   UNITED STATES OF AMERICA,      )
                                   )   No. 08 CR 888
4           Government,            )
                                   )
5   vs.                            )   Chicago, Illinois
                                   )
6   ROD BLAGOJEVICH,               )   May 27, 2010
    ROBERT BLAGOJEVICH,            )
7                                  )
             Defendants.           )   3:20 o'clock p.m.
8

9              TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE JAMES B. ZAGEL
10                   AND A JURY

11
    For the Government:
12

13          THE HONORABLE PATRICK J. FITZGERALD,
            UNITED STATES ATTORNEY
14          BY:  Reid J. Schar
                 Carrie E. Hamilton
15               Christopher Niewoehner
            Assistant United States Attorneys
16          219 South Dearborn Street
            Suite 500
17          Chicago, Illinois 60604

18

19

20  Court Reporter:

21          Blanca I. Lara, CSR, RPR
            219 South Dearborn Street
22               Room 2504
            Chicago, Illinois 60604
23               (312) 435-5895

24

25

APPEARANCES   (continued:)


For Defendant Rod Blagojevich:

        KAPLAN & SOROSKY
        BY:   Sheldon M. Sorosky
        158 West Erie
        Chicago, Illinois 60610
        (312) 640-1776



For Defendant Robert Blagojevich:

        ETTINGER, BESBEKOS, PARISI
        BY:   Michael D. Ettinger
              Cheryl Ann Schroeder
        12413 South Harlem
        Suite 203
        Palos Hills, Illinois 60453
        (708)598-1111

1       (The following proceedings were had in open

2        court:)

3            THE CLERK:  2008 CR 888, United States versus

4   Blagojevich, et al.

5            MR. SCHAR:  Good morning, Judge.

6            Reid Schar, Chris Niewoehner, Carrie Hamilton

7   on behalf of the United States.

8            MR. SOROSKY:  Sheldon Sorosky on behalf of

9   Rod Blagojevich.

10            MR. ETTINGER:  Michael Ettinger and Cheryl

11   Schroeder on behalf of Robert Blagojevich.

12            THE COURT:  What I propose to do is deal with

13   some preliminary matters and then discuss the issue

14   of redactions.  We'll deal with the redactions last.

15            The government has a motion in limine

16   regarding evidence regarding investigation and

17   prosecution of co-conspirators.

18            What my inclination to do is to grant the

19   motion in a general sense, but this is one in which

20   before we get -- actually, before we get to this

21   point I have to have clearly submitted to me, and

22   obviously to defense counsel as well, exactly what

23   it is you want to put in and when you want to put it

24   in.  I understand the general tenor of this, but I

25   need more specifics and so does the defense.

1      MR. SCHAR:  Judge, very late this afternoon
2  you may not have had an opportunity yet, we filed a
3  reply that lays out in much more detail.
4      THE COURT:  Then I'll take a look at it.
5      MR. SCHAR:  That is an issue that we would
6  obviously like to open on as part of our theory and
7  explanation.  So if you think that would be
8  problematic, if you could let us know ahead of time,
9  that would be great.
10      THE COURT:  I'll take a look at it.
11      MR. SOROSKY:  Your Honor, just concerning
12  that one motion.  One of the things we asked for in
13  response to the government's response was should the
14  Court grant the motion in a general sense, as Your
15  Honor did, and if the government wants to introduce
16  this matter or refer to these matters in opening
17  statement, perhaps we need an evidentiary hearing or
18  some type of proffer to see what it is that the
19  government is exactly going to present.
20      MR. SCHAR:  The reply.
21      THE COURT:  He says the reply will cover and
22  if it doesn't, then we'll deal with it.
23      With respect to the comments made about the
24  selection of a petit jury --
25      MR. SCHAR:  We've not actually --

1    MR. SOROSKY:  That was not the defendant
2  attempting to --
3    THE COURT:  Please let me make some opening
4  comments.  The original motion I think was filed in
5  haste because it cited inappropriate law and they
6  filed a supplement.  I can see why perhaps the
7  defendants may have been misled by my comments into
8  believing that there was some form of examination of
9  jurors involved.  There is no examination of jurors.
10  I simply looked at the applications and performed
11  the function that usually the jury room clerks do,
12  which is determine hardship.  I did refer to some
13  jurors with a hardship issue was not very clear and
14  I said I needed clarification.  Clarification
15  usually comes in the form, and I'm not the only
16  judge in this building that does this, I have a list
17  of people who said yes and we deal with people who
18  said yes first on the proposition that people
19  willing to do it are more likely to be fair and
20  open-minded jurors and least likely to decide the
21  case on the basis of who they blame most for being
22  stuck in a jury for a very long period of time.
23    In addition, there's a third category, and
24  those are the jurors where we need clarification,
25  and some judges call them the Maybe File, and if you

:23PM

:24PM

:24PM

:24PM

:25PM

don't get enough out of the Yes File, you go to the
Maybe File.

The Maybe File consists of people whose
reasons for seeking not to be selected for the jury
may be based on some misconception of what's being
demanded of them. And in some cases, for example,
you'll have somebody who raises what appears to be a
financial hardship claim--and we've had I think a
very large number of those, much larger than we
usually have--and ones in which today's economy seem
to be fairly compelling. But, for example, there is
one in the Maybe File that indicated that both the
summoned juror and the spouse were unemployed and
actively looking for work and they specified that
they were living on benefits with a certain figure
or amount, I forget what it was. These are
individuals who might alter their views if they were
told that you actually get paid for jury service,
and in their case the pay they would receive for
sitting four weeks would just about double, that's
what that group consists of. But I generally start
with the yeses.

The law from my perspective seems pretty
clear that determination of hardships on the paper
alone, ordinarily performed by the clerk in the jury

1  office, does not constitute voir dire, does not
2  constitute the beginning of the trial.  The law
3  usually is the right to participate in jury
4  selection exists when the case is announced, jurors
5  are called for that purpose, and they are questioned
6  in open court, and in some cases in the jury room,
7  depending on a variety of things, but that is the
8  full panoply of rights that apply.
9       The case that I think deals with this to some
10 extent is United States versus Greer 285 F.3d out of
11 the Second Circuit, and the Greer case I looked up,
12 I have another place where I collected a lot of
13 stuff and so I don't actually remember these cases,
14 but I do have a note on United States versus
15 Contreras, 108 F.3d from the Tenth Circuit and
16 United States versus Barnett, 800 F.2d from the
17 Eleventh Circuit.  And I notice that in the original
18 motion there is a citation to the proposition that
19 trial begins with voir dire, which is true, but
20 we're not at voir dire yet.  So you can look at that
21 if you wish, but I am preliminarily denying the
22 motion.
23      MR. SCHAR:  Judge, we would like the
24 opportunity to file something with a variety of
25 other arguments as well, but make the motion

8

1 unsustainable, from the government's perspective,
2 though --
3          THE COURT:  Oh, also--sorry to interrupt--one
4 other thing.  We might actually have been able to
5 resolve this with less effort if all that had been
6 requested by the party was to look at the papers.
7 When I read the motion and I saw that, I ordered
8 that those papers be available to counsel today and
9 I think they have been examined.
10          MR. SCHAR:  Judge, I can say I believe both
11 parties examined them, and we don't believe any
12 issues with --
13          THE COURT:  Any individuals with issues?
14          MR. SCHAR:  Correct, Judge.
15          THE COURT:  But if the defendant has issues
16 with the original ones, they can raise it.
17          MR. SCHAR:  I'm sorry?
18          THE COURT:  If the defendants have seen those
19 papers, have some concerns, they can raise them with
20 me.
21          MR. SCHAR:  I guess, Judge, again, so the
22 record is complete, I read one of the motions the
23 issue was whether or not even if the defendants had
24 a right, I assume we would certainly have no
25 objection if the defendants want to come in

:29PM
:29PM
:29PM
:30PM
:30PM

1  themselves and actually look at these papers, and it

2  clearly is a procedure that sounds like what you're

3  offering their particular right of objection to one

4  or more, I'm sure the judge can address that.

5          THE COURT:  It is also designed for one other

6  purpose, and that is if you can infer looking from

7  the mass there was some systematic error in terms of

8  race, gender, and everything else, so you can look

9  at them, that way and the defendants can look at

10 them, too.  From my perspective, it's just in my

11 exercise of discretion, and I think it's best to let

12 them look at it.

13         MR. SCHAR:  Exactly, Judge.

14         MR. ETTINGER:  We would like, if possible,

15 the copies that can be under seal.

16         THE COURT:  No, I'm not having those copies

17 out.  The ordinary citizen's privacy has to be

18 protected.

19         MR. SOROSKY:  Your Honor, would the Court

20 consider--I recognize this is a difficult task in

21 the selection of the jury--would the Court consider

22 returning to what an old-timer like me called it the

23 "old fashion way" and have all the jurors come

24 before the Court and be questioned in the

25 old-fashioned traditional way and then the Court in

1  person in open court could determine who should be
2  excused for cause versus not to be discussed for
3  cause?  Because, I mean, I've read the jurors
4  responses and they're vague, they're general, they
5  relay hardships, but every person, even the person
6  who is most suitable to serve on a jury, could
7  honestly say well, I don't want to serve on a jury
8  for a week or two weeks or a month, I want to do
9  whatever I'm doing.  So jury duty is a hardship and
10  a disadvantage, and perhaps an economic disadvantage
11  for every person, even if someone were a
12  multimillion and say I can't go to the stock
13  exchange and make more money.
14          THE COURT:  Let me ask you this one question,
15  what good is going to be achieved by dragging down
16  to the courthouse this 28--and I don't think I'm
17  sure I remember this correctly, but I think I
18  do--some 28-year old woman who has three children of
19  a very young age with a husband who's got a blue
20  collar job and no ability to provide care for these
21  children?  The truth is is there are many, many in
22  that pile who quite clearly would not justify the
23  imposition of this burden on them.  And this is why
24  Clerk's Offices have hardship excuses for this very
25  reason, because you're imposing an undue burden to

1   some who cannot possibly serve.  So if you're saying
2   call them all in, the answer is no.
3          MR. SCHAR:  Let me add, having reviewed them,
4   many of them are not vague at all, they're very
5   concrete, many with significant medical issues and
6   things of that sort, and it seems to me that there
7   is a particularized object to a particularize
8   person, they now have, I believe, four hours today
9   to review them.  I assume they would be available
10  tomorrow to both defendants as well as defense
11  counsel, there are particular objections to be dealt
12  with.  Again, your Honor made the jury selection
13  process that typically everything gets through Your
14  Honor, the Clerk of Court deals with hardship
15  challenges, has been endorsed by the Seventh Circuit
16  panel which actually adopted that procedure.
17         THE COURT:  So basically I'm not returning it
18  to the old-fashioned way, and to tell you the truth
19  I don't think that in state courts the Clerk
20  exercised the same authority not to impose hardship,
21  but the truth is I'm not going to do it and you made
22  whatever record you want to make.
23         MR. SOROSKY:  Well, we have no quarrel with
24  individuals such as you described being excused, we
25  have no quarrel if an individual fits the

circumstances you described being excused if this
person cannot possibly serve as jurors because of
her young children, and so forth and so on, and we
recognized that.  However, however, having read and
gone over the responses of whatever it was of
approximately 300 or so veniremen, if not all were
quite as --

     THE COURT:  Which is why you have the right
to make particular objections.

     MR. SOROSKY:  Well, this is why we're asking
for it, if possible, if possible, in the interest of
fairness that with the exception of those people
that the Clerk very readily or Your Honor very
readily excused for very overt and obvious reasons,
that every one do come in so a more accurate
determination can be made.

     THE COURT:  It is not my belief that it would
be difficult for you in good faith to take any but a
relatively small number of people and based on what
I've read.  So make your selection, I'll look at
them, and if I think any purpose would be served,
any legitimate purpose would be served by calling
them in, I will call them in.

     MR. SOROSKY:  Thank you.  Thank you.  We
will.

1          MR. ETTINGER:  Judge, will they be available
2    tomorrow?  We couldn't get here today.
3          THE COURT:  Yes, they are.  They're available
4    to you.
5          MR. ETTINGER:  What time?
6          THE COURT:  I gave 10:00 to 2:00 today.  Same
7    time.
8          The other aspect of this motion, there was a
9    second request attached to this motion, which was
10   the third or fourth request to stay the beginning of
11   the trial, and just for the record, I'm denying it.
12         Are we ready for redactions?
13         MR. SCHAR:  Judge, there are a couple of
14   quick issues from the government.  Are we having
15   jury selection next Friday?
16         THE COURT:  Yes.
17         MR. SCHAR:  We have gotten notice from the
18   defense of several individuals who may be called as
19   experts.  We've gotten a name, even an address, and
20   just topic area, such as accounting or law.  At this
21   point we would ask a date certain with compliance
22   with Rule 16, which we have not gotten through this
23   date, of any reports or what the content of the
24   testimony would be.
25         THE COURT:  Well, I will order that to be

:36PM

:37PM

:37PM

:38PM

:38PM

1  done.  You can negotiate the date, and if he

2  decides, I'm satisfied with the date.

3  MR. SOROSKY:  Thank you.  We'll work with the

4  government and I'm sure we'll reach some amenable

5  result.

6  MR. SCHAR:  Some other names that the

7  government proposes to add to the jury inquiry, we

8  will e-mail those, if it's okay, to the courtroom

9  deputy and copy to the defense counsel as well.

10  THE COURT:  Swell.

11  I don't really think I have to deal with Lay

12  Witnesses' Conclusions of Law except in this sense:

13  If either side believes that a witness is likely to

14  express a conclusion of law, you will raise it with

15  me and then I'll decide on those basis.

16  I've read the government's explanation with

17  proposed redactions, I have read, by both the

18  lawyers, lawyers of both defendants, I've read the

19  government's response, I read the supplemental

20  objections, which on the face they talk about Tab 1,

21  under 102, but I don't think they meant 102, it's

22  101 that they're talking about.  I also believe that

23  there are significant number of issues that were

24  raised by the defendants that are not actually

25  issues.  The defendants seem to say that -- they say

1  they thought perhaps it might have been marked as a

2  redaction but in fact it was not a redaction and the

3  government said they weren't redactions and I think

4  that's Tab 6, Tab 37, Tab 42, and I think that's

5  that.

6  The general objection to all redactions is

7  overruled because it's too general in nature.  I

8  assume it was done to preserve the record, and

9  that's fine.

10  With respect to Tab 1, the problem I find --

11  and this is a redaction that I'm sustaining over

12  objection, but it's illustrative of the issue that I

13  have to consider, and that is this is unlike the

14  general objection more specific, not a lot more

15  specific, but specific enough that I understood what

16  the objection was, this has to do with issues about

17  the raising of funds.

18  And the government's redactions are

19  substantial in volume and the objection was you

20  needed the rest of them for contribution.  There are

21  two ways you can deal with this particular

22  objection, one of the ways is is that you really

23  don't understand what in this case Robert

24  Blagojevich is doing with the conversation unless

25  you read the rest of it and that's just not true.

1  It's quite clear.  The fact that in addition to
2  raising funds with this particular person he was
3  raising funds with other persons, so it's not adding
4  anything for the contribution.  If the point of the
5  contribution is that it appears, the government will
6  argue, that that's being played, one of the
7  defendants is offering a quid pro quo, which I think
8  is what the government is going to argue, the rest
9  of it might, I guess in theory, be offered for the
10 proposition that sometimes the fund-raising did not
11 involve a quid pro quo.  The difficulty with that is
12 the one that I mentioned once before, and that is
13 what's at issue here is a particular moment in time
14 when the prosecution alleges that a defendant did
15 something that violates the law and it is not
16 particularly relevant, in fact perhaps not relevant
17 at all, that on other occasions he took a more
18 restrained perspective, restrained set of actions to
19 achieve his goal, the matter is the contribution,
20 the rest of it does not improve the contribution and
21 for that reason I sustain the redactions.
22        There's another aspect of some of these in
23 which was raised that certain information explain
24 state of mind.  This state of mind hearsay exception
25 is related a little different than the excited

1  utterance, and in fact most cases that state-of-mind
2  exceptions to the hearsay rule you will find, if you
3  read them carefully, also involve excited utterance,
4  something which has been noted by almost every
5  scholar who deals with this stuff.  And in that
6  respect, I do note with one exception, which I'm
7  going to address at some length, what the objection
8  to redactions is that it explains state of mind in
9  the sense that you can deduce from what someone said
10 something about their state of mind which they don't
11 actually say.  The big dividing line in
12 state-of-mind cases is state of mind in the sense
13 that somebody actually says I was sad, I was
14 terribly upset when I saw this certain thing and
15 validates the witness's later testimony, and in some
16 cases if the witness is unavailable, allows that
17 evidence to come in.
18        That's not what I have here, what I have here
19 is a series of statements a defendant made from
20 which one could deduce state of mind, but I don't
21 think that they actually do that.  I think somebody
22 says a variety of things, somebody in some cases
23 that was available as a witness, not the defendant,
24 and it's simply a variety of statements from which
25 you cannot derive inference from a particular state

1  of mind that is anymore plausible than any other

2  inferences.  In other words, it doesn't establish

3  anything, and for that reason, with respect to

4  Tab 12, I approve the redactions.

5  The bigger issue that I see that are still

6  alive I'm going to address all of them except

7  Tab 56, because I made a notation to myself which I

8  somehow skipped, which is to read that particular

9  transcript, and since I won't know what I'm the

10  talking about, I won't rule on it.

11  Tab 93 a conversation between the two

12  defendants in this case.  There's more that's asked

13  for, and part of this is to explain contribution,

14  and you really don't need to explain, the

15  contribution is perfectly clear.  What I think the

16  defendants want in this case is material in which

17  the defendants say things that are vaguely

18  exculpatory.  I don't think excited utterance works

19  here.  There is an argument that defendants made

20  that rules out excited utterance is a passage of

21  time, a long time between this and the utterance,

22  and I'm satisfied that the problem is not passage of

23  time, there wasn't much time that passed.  The

24  difficulty is is if you read it as a whole, it

25  basically is not excited utterance, it is the one

:47PM

:48PM

:48PM

:49PM

:49PM

thing, were it to be admitted, probably the single longest excited utterance in history.  Excited utterance is usually a 911 phone call in which somebody says something like mommy shot daddy, not a very long statement, this is a speech and maybe a rant as well, depending on how you read it, it doesn't clarify contribution, it doesn't add any new data.  It's, generally speaking, the reason it's sought to be admitted, except for contribution, is an exception to the hearsay rule and the proponent has to show acceptability and I think it's fair to do so in this case.

The only way it could come in is if the defendant, for example, testifies some other witness gets this in and has an explanation for a series of actions and the prosecution says it's a recent fabrication.  In theory, that could come in, but I doubt that would occur either, and the reason I doubt that would occur is because at the time they uttered it, although I make no final ruling on this--I could be persuaded to the contrary--at the time of this utterance they had a pretty good idea at the time the jeopardy they might be facing.  So, basically, I believe the redactions in Tab 93 are valid.

:50PM

:50PM

:51PM

:51PM

:52PM

1       With respect to Tab 95, which I believe is
2   defendant Robert Blagojevich, I don't think the
3   other defendant was involved in this but I may be
4   wrong, the fact is is that the question of why a
5   defendant will do something like cancel a meeting,
6   which was the subject of that one, isn't really
7   elucidated by the entire call at all, and that's the
8   reason it's offered, it will show the reason.  It
9   doesn't show the reason, it shows some things from
10  which someone could infer a reason, but again, the
11  inference is not clear.  And by "the inference is
12  not clear" I don't mean you couldn't make the
13  inference.  I mean, there is nothing about the those
14  words that makes one thing more plausible than
15  another, and under those circumstances, it doesn't
16  work.  So I'm sustaining those.
17      I should go back Tab 50.  This has to do with
18  conversation in which a potential witness, probably
19  the witness Alonzo Monk, makes certain statements to
20  Robert Blagojevich, I believe, and he says something
21  about where he is and things that aren't true, I
22  believe the government cuts short which is
23  essentially relevant to the defense.
24      So I would add page 1, Line 13 to page 2,
25  Line 12.  The reason I'm adding those is while it is

1  true that Monk falsely stated something to Robert

2  Blagojevich about where he was, the rest of that

3  passage that I've cited shows that not only the

4  basic request about whether he's visiting his sick

5  father, but there's a lot of other things that he

6  says, well contrived, lots of details, and in a case

7  in which I believe the defense will attack his

8  credibility, the manner in which he told that

9  falsehood is relevant.  So that redaction is

10 overruled.

11       Tab 100 --

12       MR. SCHAR:  Just so I'm clear so we don't

13 mess this up, you said that redaction, other than

14 page 1, Line 13 through page 2?

15       THE COURT:  Is the same.

16       MR. SCHAR:  Thank you.

17       THE COURT:  Tab 100, this one I understand,

18 the only problem is is that what the defense wants

19 in, they want in not for itself but they want to

20 draw inferences about it based on things that aren't

21 contained in the call.  For example, there are

22 arguments about the jury should know that the real

23 reason for this or the real reason for that was,

24 which is quite true, the only thing is where they

25 get the information from what they believe is the

real reason from Harris' 302, it's not something
contained in the call, and because it's not
contained in the call it's not helpful to the
defense.  And there are other things viewed in terms
of the whole evidence in the case, there are
arguments that can be made about what somebody did
or did not do, but the call doesn't help to
establish that.  It is possible that some of this
and 100 might be independently admissible in the
defense case, but as far as a jury understanding
Tab 100, the redactions are appropriate.

I would not predict what would be allowed to
come in if Harris is on the witness stand, but
that's my view respect to that and my ruling.  And I
have to say in reading this, that not only is much
of the contribution implied by evidence and facts
that are not in the transcript, they weren't alluded
to in the call, and the testimony really has to come
from witnesses.  There is, in addition, the
difficulty that the stuff that's wanted on page 5
and several other pages are really not for
contribution at all.  They're nothing to do with
contribution, they are designed to offer for the
truth other facts whose relevance I doubt, and if
relevant to its admissibility under 403 I doubt, so

I'm approving those redactions.

On 101, this raises the same issue as raised in Tab 1. What the defendants want is to show that contributions which the government claims were made improperly or with an improper purpose, solicitation for an improper purpose, there was at the time of this, at the time that these activities were taking place, another potential contributor, and the position that this defendant is that you should show that while the government can argue that attempting to get a contribution from one of them it cannot argue on the basis of the evidence that that individual was improper in any way, it's the same issue they dealt with in Tab 1. It's not relevant to the defense if the claim is that sometimes the contributions were done in an entirely proper way, the accusation is that on specific occasions it wasn't, and the fact that on other occasions it was okay doesn't help.

I do believe that the reference to the fact that there were a series of calls being made, first you call this guy and then that guy or they divide it up, they ought to be permitted and you can figure out what the lines are. I think we're talking maybe about page 2, Line 16, to page 3, Line 4. I may be

wrong about that but those were the notes I made.
And I think this one I wondered whether it was
tongue in cheek, actually.  This is the statement,
the first portion of redactions in page 1 through 5
should be admitted.  It's hard for me having read
this, to think the defense actually wants this in,
but it's not my judgment to make, it's the defense
judgment to make.  But it's just not at all
relevant.  And it's also clear that what is wanted
about most of this, the portion of the conversation
that illustrates how one defendant intended to
obtain campaign contributions in the same way as one
opposed to the other of the two proposed
contributors is basically offered for its truth, not
state of mind.  As long as the jury understands that
there were two on the list, I think that's enough.

MS. HAMILTON:  I'm sorry to interrupt.  Could
I ask you to repeat the section you thought might
take care of the inference to the fact that there is
a series of calls, you believe page 2, Line 16?

THE COURT:  Page 2, Line 16, through page --
16 I'm sorry, 16 through 33.

MS. HAMILTON:  Thank you.

THE COURT:  And then page 3, Line 4.  It's
the end of page 2 and the four lines on top of

 1  page 3.

 2       MS. HAMILTON:  Thank you.

 3       THE COURT:  I will deal with Tab 56 after

 4  I've read it.

 5       And I think that takes care of everything.

 6  One observation I want to make with respect to

 7  defense case, if one is presented, is that much of

 8  what the defense wants to play -- let me correct

 9  that.  The defense submitted a very large book of

10  possible things that they want to play, and I'm not

11  inferring from that that they want to play all of

12  them, it's just this is the universe for which they

13  are going to pick and choose.  Much of what is in

14  there is going to wind up being hearsay even if the

15  person who utters it is on the witness stand, and

16  much of it will be admissible only under the rule

17  which allows a defendant to introduce prior

18  statement to rebut an argument that there's a recent

19  fabrication, and obviously since I don't know what

20  the defense is going to be, I don't know whether

21  that will come up.  There have been a couple of

22  suggestions of some things in which the government

23  may very well suggest that it's recent fabrication,

24  if that occurs then some of the stuff will come in,

25  but my caution is, I don't want this case tried on

26

1  the basis that the thing we have to figure out is
2  whose version of what happened and what is portrayed
3  on the recordings is correct.  What we have to
4  decide, what the jury will have to decide is whether
5  the charges have been proved beyond a reasonable
6  doubt or not.  And I see on these competing versions
7  and some of the requests for recordings a tendency
8  to kind of try to shift the issue, and maybe even
9  this is true for the government as well, it's an
10 argument that our versions of what happened in the
11 recordings is correct.
12         There, I believe, will be evidence offered by
13 the government that there's nothing to the
14 recordings, the witnesses will say I was there, this
15 happened.  So I don't want us to get to the point
16 where we're arguing about exclusively about what is
17 meant on the recordings.  It will not help either
18 side to lose sight of what the core issue is, which
19 is not exactly what somebody meant on this or that
20 recording but whether there's proof.  And the
21 recordings, while in some respects the most florid
22 part of this case, are likely to be not necessarily
23 the center piece of a rationale decision as to
24 whether guilt has been proved beyond a reasonable
25 doubt.  That's just an observation.  You can bear it

1  in mind as you prepare.

2         Is there anything else I have to do today?

3         MR. SCHAR:  Judge, I think that resolves

4  defendant Robert Blagojevich's objections, but I

5  know there have been a variety of objections by

6  defendant Rod Blagojevich to different tab

7  redactions that you haven't addressed.

8         THE COURT:  Different what?

9         MR. SCHAR:  Tab.

10        THE COURT:  The last two I dealt with, 100

11  and 101 are Robert Blagojevich's objections.  The

12  other thing I have showing for him are I thought not

13  terribly significant things with the exception of

14  56, and I have 32, 33, 37, 42, 51 and 53.  I am

15  probably going to address those in short order.

16        MR. SCHAR:  Okay.  That's fine.  The only

17  other one, Judge, the government provided redactions

18  on a different binder the Levine phone calls.  We

19  haven't -- I think that was provided a week ago,

20  same time as everything else.  We haven't gotten any

21  responses other than that tone which indicates some

22  later objections.  These issues, from the

23  government's perspective, do need to be resolved.

24        THE COURT:  I just have a feeling, given

25  what's happened in prior cases, that redaction

1  issues are not the center of the defense concern or
2  the center of the defense strategy.
3       MR. SCHAR:  Judge, early witnesses, I
4  obviously would --
5       MR. ETTINGER:  Which ones?
6       MR. SCHAR:  In term of the Levine wiretaps.
7       MR. ETTINGER:  That's good enough.  Thank
8  you.
9       THE COURT:  I also have the government's
10 standard motion to use a summary witness for data.
11      MR. ETTINGER:  No objection.
12      THE COURT:  I assume there's not going to be
13 an objection for that.
14      MR. ETTINGER:  No.
15      THE COURT:  Okay.  Mr. Walker will inform you
16 of the next time you have to be here.
17      MR. SCHAR:  Mr. Sorosky is also amenable to
18 the summary witness without objection.
19      THE COURT:  He is nodding.
20      MR. SOROSKY:  Right.
21      We'll try to work with the government on the
22 Levine redactions.
23      THE COURT:  Yes.
24      MR. ETTINGER:  Judge, at some point,
25 certainly doesn't have to be right now, I'd like to

:09PM
:09PM
:10PM
:10PM
:10PM

1  address again, go over with you our tapes regarding
2  what are coming in so we can give opening statement
3  that's going to comply with your order.
4          THE COURT:  If you're asking me to rule now
5  on the recordings that you want to introduce, I
6  can't do that, and the reason I can't do that is
7  because there seems to me to be an extraordinarily
8  large number of barriers to your introducing them at
9  all.  So I'm unwilling to give you a ruling on that.
10         Let me express two reasons for this.  The
11  first is that if you're going to offer a tape
12  recording of something your client said, you got a
13  very heavy hearsay barrier to doing that, so the
14  probability of its coming in is low.
15         If the defendant takes the witness stand and
16  you want to base your opening statement on the
17  assumption that he's going to take the witness
18  stand, then you can say whatever it is you think
19  he's going to say, and even then the question of
20  bolstering with something on the tapes remains an
21  iffy proposition.
22         Now, because the government and I have not
23  been informed--and you have no duty to do
24  so--informed us of precisely what direction defense
25  is going to take, it's just impossible to make an

1  effective ruling on what part of the tapes come in.
2  If your plan is to put the defendant on, then all
3  you have to do is say this is what the evidence is
4  going to show and my client isn't guilty or the
5  government can't prove its case, but I don't see an
6  advance ruling on what portions of the tapes you
7  want to play to be feasible in this circumstance
8  because the standard is basically it's hearsay.

9        The government can use it because you're on
10 the opposite side, and you can't use it because
11 you're not on the opposite side, they're using it
12 against a opposing party, which is permitted, and
13 you want to use it in your own favor, it's a very
14 old rule.

15       MR. ETTINGER:  I think I got some exceptions
16 but you may not agree with me.

17       THE COURT:  The truth is, almost all of those
18 exceptions are going to depend in the context of the
19 evidence, and I can't give you an advance ruling.

20       MR. SCHAR:  And, again, we just request at
21 some point to find out what the calls are so we
22 could address it as well.

23       THE COURT:  The one thing you might consider
24 doing is giving them the tabs without actually
25 having to give them the part, that way you can

1  conceal your surprise weaponry.

2      MR. ETTINGER:  I'll give them the tabs.

3      THE COURT:  Okay?  Thanks.

4      MR. SOROSKY:  One last issue, Your Honor.

5      THE COURT:  You actually shouldn't do after I

6  said "thanks."

7      MR. SOROSKY:  No, this doesn't concern any of

8  the topics you ruled on.  What about the possibility

9  of daily copy for the defendant Rod Blagojevich?

10  And we don't necessarily need an answer today this

11  second.

12      THE COURT:  I think that's one very expensive

13  proposition, and, two, maybe for some parts but not

14  for others.

15      MR. SOROSKY:  Thank you.

16      MR. SCHAR:  Thank you.

17      THE CLERK:  All rise.

18

19     (Which concluded the proceedings had on

20      this date in the above entitled cause.)

21

22

23

24

25

\*      \*      \*      \*      \*      \*      \*      \*

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED
                        MATTER


  /s/Blanca I. Lara                        date



_____          _____
        Blanca I. Lara                              Date