1

1          IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3  UNITED STATES OF AMERICA,      )
                                  ) No. 08 CR 888
4         Government,             )
                                  )
5  vs.                            ) Chicago, Illinois
                                  )
6  ROD BLAGOJEVICH, ROBERT        )
   BLAGOJEVICH, WILLIAM F. CELLINI) September 22, 2009
7                                 )
          Defendants.             ) 11:06 o'clock a.m.
8

9              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE JAMES B. ZAGEL
10

11  For the Government:

12          THE HONORABLE PATRICK J. FITZGERALD,
            UNITED STATES ATTORNEY
13          BY:  Reid J. Schar
                 Carrie E. Hamilton
14               Christopher Niewoehner
            Assistant United States Attorneys
15          219 South Dearborn Street;
            Suite 500
16          Chicago, Illinois 60604

17

18  Court Reporter:

19          Blanca I. Lara, CSR, RPR
            219 South Dearborn Street
            Room 2504
20          Chicago, Illinois 60604
            (312) 435-5895
21

22

23

24

25

1  APPEARANCES   (continued:)

2

3  For Defendant Rod Blagojevich:

4
        KAPLAN & SOROSKY
5       BY:  Sheldon M. Sorosky
        158 West Erie
6       Chicago, Illinois 60610
        (312) 640-1776
7
        LAW OFFICE OF SAMUEL E. ADAM
8       BY:  Samuel Forbes Adam
             Sam Adam, Jr.
9       6133 South Ellis Avenue
        Suite 200
10      Chicago, Illinois 60637
        312-726-2326
11

12      Allan A. Ackerman, P.C.
        BY:  Allan A. Ackerman
13      2000 North Clifton Avenue
        Chicago, Illinois 60614
14      (312) 332-2891

15
    For Defendant Robert Blagojevich:
16
        ETTINGER, BESBEKOS, PARISI
17      BY:  Michael D. Ettinger
             12413 South Harlem
18      Suite 203
        Palos Hills, Illinois 60453
19      (708)598-1111

20

21

22

23

24

25

1   Appearance (continued:)

2

3

    For Defendant William F. Cellini, Sr:

4

5           Winston & Strawn LLP
             BY:  Dan K. Webb
6           35 West Wacker Drive
            Chicago, Illinois 60601-9703
7           (312) 558-5600

8

            Genson and Gillespie
9           BY: Terence Patrick Gillespie
            53 West Jackson Boulevard
10          Suite 1420
            Chicago, Illinois 60604
11          (312) 726-9015

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     (The following proceedings were had in open
2     court:)
3          THE CLERK:  2008 CR 888, United States versus
4  Blagojevich et al.
5          MR. SCHAR:  Good morning, Judge.
6          Reid Schar, Chris Niewoehner, Carrie Hamilton
7  on behalf of the United States.
8          MR. ETTINGER:  Good morning, Your Honor.
9          Michael Ettinger on behalf of Rob
10 Blagojevich.
11         MR. ACKERMAN:  Allan Ackerman one of the
12 attorneys for Rod Blagojevich.
13         MR. WEBB:  Your Honor, Dan Web on behalf of
14 Mr. Cellini.
15         MR. GILLESPIE:  Terry Gillespie as well on
16 behalf of Mr. Cellini.
17         MR. ADAM, JR.:  Sam Adam, Jr., on behalf of
18 Rod Blagojevich, Your Honor.
19         MR. WEBB:  Sheldon Sorosky, and also Sam
20 Adam, Sr., on behalf Rod Blagojevich.
21         MR. SCHAR:  Judge, the only business that the
22 government has to take care of this morning is move
23 to dismiss Counts 1, 13, 14 and 15 as to defendant
24 Christopher Kelly.
25         THE COURT:  On suggestion of death?

1    MR. SCHAR:  Yes, Judge.

2    THE COURT:  Motion is granted.

3    MR. SCHAR:  Otherwise, Judge, I know that we

4 have filed a jury questionnaire with chambers per

5 your request.  I believe Mr. Cellini's lawyers have

6 as well.  Otherwise, we continue to get ready and

7 look forward to trial in June.

8    MR. SOROSKY:  Your Honor, Sheldon Sorosky on

9 behalf of Rod Blagojevich.

10    We've received a copy of the government's

11 jury questionnaire.  We have reviewed it among our

12 defense team, and shortly we will be prepared to

13 present to the government and Your Honor our

14 inclusion of questions to that questionnaire.

15    Also, Your Honor, the defense did file a

16 motion, our ex parte motion, and I will file it

17 electronically, but we were wondering in order to be

18 ready for trial, and that's our goal, and we are

19 making very good progress, if the Court would

20 indulge us in appointing three less senior lawyers

21 to our team, we have one of them here today.

22    THE COURT:  I'm actually perfectly inclined

23 to do that and I appreciate that you said "less

24 senior" rather than "younger" --

25    MR. SOROSKY:  Thank you.

1      THE COURT: Because I don't really care how
2 old the lawyer is, I do care about how experienced
3 they are and the costs involved. So that motion
4 will be granted.
5      MR. WEBB: Thank you, Judge.
6      THE COURT: With respect to the
7 questionnaire, have you seen the defense's proposed
8 questionnaire?
9      MR. NIEWOEHNER: We have received
10 Mr. Cellini's, Your Honor, yes.
11      THE COURT: I'm obviously willing to allow
12 many more questions in the questionnaire that I
13 would orally. I believe the questionnaire should
14 also inform that the questionnaires themselves,
15 their specific answers to questionnaires will be
16 destroyed at the end of the case so that they
17 understand that.
18      Secondly, there's a form of question that I
19 sometimes find troubling, not in the sense that
20 there's anything inherently improper about it, but
21 they tend to serve as kind of back-door substitutes
22 for other questions that might be asked and more
23 systematic testing. I once read a very long
24 questionnaire that a lawyer submitted, which had I
25 been in his shoes I would have been happy to have,

1 but what it was, in essence, was trying to get the
2 kind of data you would get with a full set of
3 psychological testing without the validity component
4 of psychological testing, and there may come a day
5 when we give the MMPI, and the Wexler, and perhaps
6 the TAT to prospective jurors, but that day has yet
7 to come.
8         And then there are some questions that
9 probably call for answers which would increase the
10 prospective juror's unease about the possibility of
11 jury service.  In the two I take from the
12 government's proposal at 37 and 46, these are
13 examples only, from the defense 38 and 39, which are
14 addressed not so much to prospective juror's
15 attitude toward the case as a whole, but toward
16 their capacity to deliberate as a juror.  I think a
17 single question more neutrally phrased would be
18 permissible.
19         MR. SOROSKY:  Just so we're clear --
20         THE COURT:  What I'm asking you to do is to
21 consider and to confer with each other.
22         MR. SOROSKY:  Sure.
23         THE COURT:  Because, by and large, it's the
24 one area of the case where both sides have precisely
25 the same kinds of questions they want answered, some

:11AM

:12AM

:12AM

:13AM

:13AM

1  like some answers better than others, but the
2  questions and the information tends to be equally
3  important to both sides.
4  　　　　An example of what I regard as kind of
5  invalid psychological inquiry are the defense
6  questions 51, 52, 53, I'm concerned about those
7  questions not because information of this sort would
8  not be valuable, it would be valuable the answers to
9  these questions, I'm concerned that the questions
10 are unduly intrusive and might be felt by a
11 prospective juror to be manipulative and conceivably
12 affect their confidence in the process.  You might
13 find another avenue to get to this.
14 　　　　So it's not the subject matter that bothers
15 me, I think it could be done in a more graceful and
16 more diplomatic form.  And because I believe
17 everybody has precisely the same interest in the
18 questions, you can probably get together and do a
19 decent job and minimize or eliminate whatever
20 disagreement there is, so that's where I stand on
21 that one.
22 　　　　MR. SOROSKY:  Well, if I could ask one
23 question.  Would the Court want, perhaps this is bad
24 English, but better questions on those topics in the
25 specific questions you refer to or no questions on

1 that topic?

2    THE COURT:  I think what you have to do is

3 pay attention to the tone of the questions.  Some of

4 them, the subject matter, as for example somebody's

5 overall opinion of a process or performance, it's

6 difficult to see the value of asking a question in

7 that format, and the results that you would like to

8 to get from that are unlikely to be reliable for

9 your own purposes.

10    So I don't mind the probing that's being done

11 in this, I am concerned about, one, how effective it

12 will be, and two, whether it creates barriers,

13 unjustifiable barriers to jury service by citizens.

14 So that's where I am on that.  And I do not

15 anticipate you'll wind up with much disagreement.

16    I'm thinking we'll have a longer status this

17 next time.  What about November 16th?  Is that okay

18 with everybody?

19    MR. SCHAR:  Yes, sir.

20    MR. WEBB:  Yes, your Honor.

21    MR. SOROSKY:  That's fine.

22    THE COURT:  Time will continue to be excluded

23 to allow the defendants to prepare for the case.

24    MR. SOROSKY:  Is that 11:00 o'clock?

25    THE COURT:  11:00 o'clock.

1    MR. SOROSKY:  November 16th.

2    MR. ACKERMAN:  There is one matter if we

3 could take it up at sidebar with the court reporter,

4 please?

5    THE COURT:  That would be fine, but is there

6 anything that is not at sidebar?

7    MR. SCHAR:  The only other question, Judge, I

8 had, when you say a longer status is there anything

9 the government should be prepared to address at that

10 time?

11    THE COURT:  No, I just think that obviously,

12 as usually happens in these cases, some internal

13 ground rules have been worked out amongst the

14 parties and that's fine with me.

15    MR. SCHAR:  Very good, Judge.

16    THE COURT:  Sidebar.

17   (Proceedings heard at sidebar on the record.)

18    MR. ACKERMAN:  If the Court please, Friday we

19 caused to be electronically filed based on

20 conversations with the government's tape filter team

21 a position paper by the former governor.  His

22 position, and I believe it's sealed under 182, his

23 position is without waiving the presentation of a

24 subsequent data of privileges if they are

25 appropriate, or challenges to 2518, et cetera, he

1  has no objection to having the filter team convey a

2  series of tapes to the trial team.  His pleading

3  includes a requested court defer the providing from

4  the filter to the trial team so that others who

5  might be impacted by those tapes may have the

6  opportunity to challenge our position or take

7  whatever position they want to take.

8        The government filter team was going to

9  provide the trial team with those tapes by the end

10 of this week.

11       THE COURT:  If I had not been in this

12 business for a while, I would never have understood

13 the particularly opaque comment, but I do understand

14 it.

15       MR. ACKERMAN:  Yes.  Thank you.

16       MR. SCHAR:  Judge, I'll try to be less

17 opaque.  If Mr. Blagojevich doesn't have an

18 objection, and as we understand the Bigelow ruling,

19 I'm not sure what objection he would necessarily

20 have with the exception of private attorney-client

21 conversations, then there's really nothing to

22 litigate.  I don't know if someone would try to

23 intervene the privilege to the extent it ever

24 existed under Bigelow, which is the long Seventh

25 Circuit, then the only person who arguably could

1  ever have the privilege would be Mr. Blagojevich.

2  Since he is not objecting, then I'm not sure how

3  anyone else is even going to know to intervene or

4  what it is they would intervene on or they don't

5  have access to any of the conversations to

6  intervene, nor would they have a right I think.

7      So it seems as if the objection that would be

8  lodged, we understood the filing to be exactly that,

9  there was no objection as to the conversations

10  specifically related to conversations between

11  Mr. Blagojevich and general counsel A, I don't think

12  there's anything else Your Honor would actually have

13  to rule on at this point or opine on.

14      THE COURT:  I think what Mr. Ackerman is

15  doing is attempting to limit whatever waiver

16  argument --

17      MR. ACKERMAN:  That is a fair assessment,

18  Your Honor.

19      THE COURT:  -- that you want to make.  And to

20  the extent that you can preserve that, he is

21  preserving it.  It is possible that you are dealing

22  with an objection that cannot under law be

23  preserved, and if that's the case then that's the

24  case.  But he's preserving his right to object, if

25  it is possible to do so, to any argument against

13

1  waiver that is not inconsistent with the basic act
2  of not objecting, which is what he's doing.
3          MR. ACKERMAN:  The non-objection is from
4  filter to trial team, not beyond that.
5          THE COURT:  Yeah.  And which is what I
6  understood.
7          MR. ACKERMAN:  Yes.
8          THE COURT:  And if he is able to do that,
9  legally able to do that, then he's preserving it.
10 It's possible that he's not legally able to do that,
11 but probably he wants to save himself and you and I
12 an exercise in going through precisely what the
13 limits of waiver are unless we have to, and that's
14 reasonable.
15         MR. SCHAR:  Judge, we understand that the
16 filter team, based on his position, may pass the
17 conversations to the trial team.  To the extent that
18 there are evidentiary arguments to be made down the
19 road if at any point the government, you know,
20 chooses to attempt to use any of those
21 conversations, then I understand we can address the
22 issue of whether or not this waiver is a waiver that
23 dooms any further argument in that regard.
24         THE COURT:  Precisely.  Precisely.
25         Okay?  Thanks.

14

1      MR. NIEWOEHNER:  But I think to the second
2 point, I don't think there is any need to delay to
3 let any other impacted party to intervene because
4 other than the only two individuals that the
5 government is aware of not present at the table over
6 a situation, I mean, one, Mr. Sorosky personally, I
7 suppose, and two, general counsel A, two lawyers who
8 were intercepted, and I don't think at this point
9 other than have standing, they don't have standing
10 to object to what the client who holds the privilege
11 can do.
12      THE COURT:  Which is your way of telling me
13 that if there is a problem, it's a very small one.
14      MR. NIEWOEHNER:  I think so.  I don't think
15 there is any reason to delay the disclosure.
16      MR. ACKERMAN:  When the trial team gets the
17 tapes, I think they will find that other individuals
18 may well have standing to make similar or another
19 challenge.
20      THE COURT:  Which is fine.  Which is fine.
21 If they have standing, they have standing.
22      MR. ACKERMAN:  Thank you, Judge.
23    (Proceedings resumed within the hearing of the
24    jury.)
25      THE COURT:  Counsel, anything further?

1          MR. SCHAR:  No, Your Honor.

2          MR. SOROSKY:  No, Your Honor.

3          THE COURT:  See you in November.

4

5      (Which concluded the proceedings had on this

6       date in the above entitled cause.)

16

*     *     *     *     *     *     *     *

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED
MATTER


/s/Blanca I. Lara                   date


_____       _____

      Blanca I. Lara                   Date