1

1           IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3   UNITED STATES OF AMERICA,      )
                                   )  No. 08 CR 888
4           Government,            )
                                   )
5   vs.                            )  Chicago, Illinois
                                   )
6   ROD BLAGOJEVICH,               )  April 14, 2011
                                   )
7           Defendant.             )  11:42 o'clock a.m.

8
                 TRANSCRIPT OF PROCEEDINGS
9        BEFORE THE HONORABLE JAMES B. ZAGEL

10

11  For the Government:

12          THE HONORABLE PATRICK J. FITZGERALD,
            UNITED STATES ATTORNEY
13          BY:  Reid J. Schar
                 Carrie E. Hamilton
14               Christopher Niewoehner
                 Debra Bonamici
15           Assistant United States Attorneys
            219 South Dearborn Street;
16          Suite 500
            Chicago, Illinois 60604
17

18  Court Reporter:

19          Blanca I. Lara, CSR, RPR
            219 South Dearborn Street
20                 Room 2504
            Chicago, Illinois 60604
21             (312) 435-5895

22

23

24

25

2

APPEARANCES   (continued:)


For Defendant Rod Blagojevich:

        KAPLAN & SOROSKY
        BY:  Sheldon M. Sorosky
        158 West Erie
        Chicago, Illinois 60610
        (312) 640-1776


        LAW OFFICE OF Elliott Riebman
        BY:  Elliott Riebman
        158 East Erie
        Chicago, Illinois 60610
        (847) 814-2900


        OFFICES OF AARON B. GOLDSTEIN
        BY:  Aaron Benjamin Goldstein
        6133 South Ellis
        Chicago, Illinois 60637
        (773) 752-6950

        OFFICES OF LAUREN FAUST KAESEBERG
        BY:  Lauren Faust Kaeseberg
        2140 N. Lincoln Park West
        Suite 307
        Chicago, Illinois 60614
        (773) 517-0622


Also present:

For the Associated Press:

        Sonnenschein, Nath & Rosenthal, LLP
        By:  Natalie J. Spears
        233 South Wacker Drive
        Suite 7800
        Chicago, Illinois 60606
        (312) 876-8000

1      (The following proceedings were had in open
2       court:)
3           THE CLERK:  2008 CR 888, United States versus
4  Blagojevich.
5           MR. SCHAR:  Good morning, Judge.
6           Reid Schar, Chris Niewoehner, Carrie Hamilton
7  and Debra Bonamici on behalf of the United States.
8           MR. SOROSKY:  Sheldon Sorosky, S-o-r-o-s-k-y,
9  and Aaron Goldstein, G-o-l-d-s-t-e-i-n, and Elliott
10 Riebman, and Lauren Kaeseberg on behalf of
11 Mr. Blagojevich.
12          MS. SPEARS:  Good morning, Your Honor.
13          Natalie Spears, S-p-e-a-r-s, on behalf of
14 Chicago Tribune.
15          THE COURT:  I think maybe I'll deal with your
16 matter first.
17          I have before me, and I'm sure other counsel
18 do, a motion by a media representative to intervene
19 expressing a concern about the filing under seal of
20 entire motions.  I obviously have read the motions.
21 My assumption is that they were filed under seal
22 because everybody wants to get their motions on file
23 in time.  I agree with you, that large portions of
24 the motions can be unsealed and they can prepare
25 redacted versions of it, but in an excess of

1  caution, particularly on the eve of the beginning of
2  proceedings, I think that's what happened.  So what
3  I'm going to do is I'm going to ask the parties to
4  prepare the various motions, probably with
5  relatively minor redactions and get them on file as
6  soon as possible.  I don't think that this is a
7  matter that's going to be much in dispute, because
8  some of them should not have been filed entirely
9  under seal.
10         MS. SPEARS:  Thank you, Your Honor.  And in
11  fact the parties prior to coming here while we were
12  outside the hall had indicated that they were going
13  to do that as well.
14         THE COURT:  Yeah.  This is not a difficult
15  issue, because as soon as I saw your motion, having
16  read the motions myself, I realized they probably
17  shouldn't have been filed that way.
18         MS. SPEARS:  If I could just make a request,
19  Your Honor?  One is that going forward, it would be
20  helpful, obviously if Your Honor could direct that
21  wholesale sealing of pleadings in the first
22  instances not happen, and to the extent that the
23  parties need to file something under seal, as the
24  Seventh Circuit has directed, the majority of
25  argument and whatever can be made public should be

1  made public in the first instance, and also that
2  just that Your Honor would stay involved in the
3  process which is important to the media and the
4  public, obviously, so that the parties don't have
5  carte blanche to seal whatever they feel to seal and
6  with Your Honor having the last word, if you will,
7  to be a check in the process.
8       THE COURT:  I actually think that this is
9  what I told them.  I also don't think it's going to
10 be a problem in the future, and the reason I don't
11 think it's going to be a problem in the future is I
12 think this process existed because of the number of
13 motions that were filed and because of the necessity
14 to resolve these things relatively soon.  I think
15 under ordinary circumstances would it not happen,
16 and I believe what I've said now is sufficient
17 caution to the parties.  And if it turns out to be
18 not sufficient, I can address it in a more concrete
19 way.
20      MS. SPEARS:  Thank you.
21      Would there be a date certain?  I think
22 Ms. Bonamici had indicated by the end of the week
23 next week would be doable.
24      MS. BONAMICI:  We've spoken, we think that
25 would be reasonable.

1          THE COURT:  All right.  And if this turns out

2    to be a persistent problem, we'll set up a procedure

3    to address it, but I don't think it's necessary

4    since I believe, basically, the, lawyers had the

5    same reaction to the motion I did, which is is that

6    the motion had merit, your motion had merit.

7          Okay?

8          MS. SPEARS:  Thank you, Your Honor.

9          THE COURT:  Sure.

10         Now we can deal with the various motions.

11         MR. SCHAR:  Yes, Judge.

12         THE COURT:  How about motion for a

13   continuance, we can deal with that one first.

14         MR. SCHAR:  I believe it's fully briefed with

15   both a response, reply, and a surreply.

16         THE COURT:  It has pretty much everything in

17   it that it could possibly have.

18         Any further comments anybody wants to add?

19         MR. SCHAR:  No, Judge.

20         MR. SOROSKY:  Well, we would just state, Your

21   Honor, the motion for a continuance is based on the

22   fact that usually two to three weeks before trial,

23   even in a complex trial like this, the defense

24   attorneys can primarily just concentrate on the

25   actual trial.  Because of a flurry of pretrial

motions, perhaps somewhat unanticipated by anyone
but nevertheless around, defense counsel have
been required to divide their time between actual
trial preparation and spending time responding to
these motions, and that is the only reason why we've
asked for a short brief continuance for that narrow
reason, and that's all.

THE COURT:  You move to respond to this?

MR. SCHAR:  No, Judge.

THE COURT:  Motion for a continuance is
denied, and my reasons are that there is nothing in
what was disclosed, particularly with respect to the
minimization issue, that would significantly alter
the preparation of either side with this case.

I also consider the fact that we're not
dealing with an ordinary case, we're dealing with a
retrial on a fairly large number of counts that have
already been tried.  So the level of understanding
of the defense of what they're going to be facing is
quite high, extraordinarily high, because they've
seen most of it already.

Moreover, because of the government's action
with respect to certain counts, the legal issues are
less complex than they were before.  The
instructions will be simpler, the presentation of

1 the government's case will be shorter and more
2 streamlined than it was before, so there's virtually
3 nothing new and there's been plenty of time to deal
4 with whatever might possibly be new.  There is, in
5 this case, more than adequate time to prepare and I
6 see no reason to grant the motion for a continuance,
7 the motion is denied.
8            The next issue, the medical records of the
9 witness Cari.  Any final words from anybody?
10            MR. SCHAR:  No, Judge.
11            THE COURT:  What?
12            MR. SCHAR:  No, Your Honor.
13            MS. KAESEBERG:  Your Honor, it's fully
14 briefed before you, so the our arguments made in our
15 reply is that this is such a unique circumstance,
16 this isn't just a fishing expedition as the
17 government contends to gain medical records of a
18 witness.  This is a witness who displayed behavior
19 after testifying that indicates that his
20 self-reporting as to his medical condition and
21 medications may not be accurate.  It may be
22 accurate, we believe that we're entitled to discover
23 what medical conditions and medications he may be
24 on, and that's contained in our reply.
25            THE COURT:  What I have in this motion is, at

least from the defense side, is a series of medical
opinions voiced by lawyers.  The single most
striking thing I found is the idea that because of
what happened outside the courthouse when what I
derived from the photographs, the still photographs
that were given to me, is a witness who bumps into
someone or is bumped by someone and falls to the
ground.  I suppose there might be some expert
somewhere who studies the nature of implications
that can be drawn from the witness's response in
that particular instance, but I don't see any
support for any expert opinion on that.  And what I
saw was this, I saw an individual testifying about
an issue in which no one disputes is well within his
area of legal expertise.  The man was involved in
this because he knows the law of fundraising, and
his perceptions on that, his testimony and the
evidence that's offered with respect to that, to his
mental state with respect to that, give no reason to
make further inquiry into his medical history.

         And I think defense knows this, because
that's why they made a big point of his falling down
to the ground after being bumped or bumping into
some media person and says, well, this shows some
difficulty in perception.  I don't get the point,

1  and the reason I don't get the point is you're

2  dealing with a an individual on the witness stand

3  talking about a field in which he is an expert and

4  quite familiar with and then you have a reaction of

5  something in which I suspect he is not an expert,

6  and that is being confronted by a large number of

7  media people and television cameras walking out of

8  courtroom.

9         I am unwilling to assume and there is no

10  basis given for me to assume even the possibility

11  that what happened to him outside the courthouse has

12  any relevance to his ability to perceive the events

13  that happened involving his own specialties.

14  Lawyers like Mr. -- in fact, lawyers, in general,

15  don't spend a lot of time dealing with media scrums.

16  And the fact that he went to the ground strikes me

17  as telling me nothing about his mental state or his

18  ability to perceive.  The motion struck me as having

19  a certain desperation hinge to it, but maybe it

20  didn't, maybe it was a heartfelt view by persons

21  untrained and who offered me no supporting

22  affidavit.  So with respect to the disclosure of

23  medical records, which the government I accept does

24  not have --

25         MR. SCHAR:  Correct, Judge.

1      THE COURT:  -- is denied.

2      Next is the motion to reconsider with respect

3 to probable cause.  Any final words with respect to

4 this one from anybody?

5      MR. SCHAR:  No, Judge.

6      MR. SOROSKY:  No; none.

7      THE COURT:  Part of the briefing offered by

8 the defendant in this case is that their waiver of

9 these claims, which was made before the first trial,

10 without any attempt until very recently to withdraw

11 or revoke that waiver, that the reason that I upheld

12 the waiver is that I thought it was somehow the law

13 of the case.  This is not true.  I didn't think it

14 was the law of the case, I recognize I do have the

15 power to excuse the waiver.  My decision was not

16 made on the theory that I was bound to decide it as

17 I did.  I believe that the waiver is binding and

18 should be binding.  There is nothing that would

19 persuade me that the interest of justice require

20 that the waiver be revoked.  There is no sufficient

21 basis to make me feel that there is strong

22 justification for reopening an issue that had been

23 closed on the grounds of the merits expressed for

24 granting the motion.

25      More importantly, I believe that the

1  government was entitled to rely on the waiver, that

2  the government would be prejudiced if the waiver was

3  revoked, and that even in the event that the waiver

4  were revoked, the result would be exactly the same.

5  This is a pointless motion and for this reason I do

6  not intend to reconsider the merits.

7         The next item I have is improper

8  minimization.  With respect to this motion what I

9  have is a fully briefed motion and accompanying the

10 fully briefed motion I have the special report

11 submitted to the Chief Judge in connection with some

12 of the very issues that are raised; although,

13 ironically, not the most important one from the

14 point of view of the defense, and the hearing held

15 by Chief Judge Holderman with respect to those

16 issues.  Anybody want to say anything other than

17 what's already been briefed?

18         MR. SCHAR:  No, Judge.

19         MR. SOROSKY:  No, Your Honor.

20         THE COURT:  With respect to the minimization,

21 I believe there was adequate segregation between the

22 Assistant United State's Attorneys who are trying

23 this case and the Assistant United State's Attorneys

24 who monitored the level of minimization and the

25 execution of the minimization.  There was a computer

1  problem in the initial stages which may have
2  resulted in some passages, calls not being
3  minimized, or to put it in simple terms the
4  recording machine was not turned off, there is no
5  possible showing or attempt to show prejudice from
6  that to the defense in this particular case.  And in
7  fact, although I'm not called upon to decide this,
8  it is probably true that what the government
9  original thought should have been minimized because
10 it was potentially privileged probably wasn't
11 privileged at all and the minimization was
12 absolutely unnecessary.
13          But the real point of the defense motion is
14 addressed not to failure of minimization but to
15 excessive minimization, that the government
16 over-minimized it.  The problem with that argument
17 is is that when Congress allowed Title 3 intercepts,
18 as far as the government was concerned at the time,
19 the government would have been perfectly happy to
20 record every single word and write it down, and it
21 was not the government that decided particularly to
22 minimize, it was Congress that imposed minimization.
23 They thought it would be too intrusive without
24 minimization.  And the government accepted that, and
25 the main reason they accepted it was because if they

1    didn't accept it there would be no Title 3.  It is
2    inherent in the decision of Congress to require
3    minimization that some things that might have been
4    relevant, might be helpful to the prosecution, might
5    be helpful to the defense would not be recorded and
6    the decision was made that preservation of privilege
7    was more important than preservation of pieces of
8    evidence that somebody might want to have recorded.
9    This is congressional policy, not only is it
10   congressional policy it's quite clear from reading
11   the opinions of the Supreme Court that the point of
12   view of the justices over a period of time that had
13   there not been minimization, the court would have
14   required it in one form or another for
15   constitutional reasons.
16        So what is not on the tapes is not on the
17   tapes because Congress decided it shouldn't be on
18   the tapes as a matter of policy, and in my view had
19   they not done so the Supreme Court would have
20   decided as a matter of constitutional law these
21   things should not be recorded.
22        I have not found a case in which a defendant
23   has said to a court I've been prejudiced because
24   there's a really good piece of evidence that I think
25   would be recorded and they minimized it and so

therefore I lost my opportunity to use it.  I have
not found a case that says undue minimization or
minimization in general, even though it's perfectly
within the statute, gives a right to relief for
somebody who thinks that there's evidence that might
have been helpful that wasn't preserved.  This is
congressional policy, I don't think the argument has
been made much that the government should have
recorded something and didn't.

        And, indeed, in many cases, minimization
would allow the defense to make an assertion that
there would be evidence that would be useful to it
but unfortunately it wasn't recorded, defendants
have made this argument before, and they could make
this argument free from the contradiction by actual
tapes.  It allows anybody to say that if only they
recorded it, they would have seen X, Y or Z.  So I
don't think the over-minimization argument goes
anywhere in this case.  I think it is just plain
wrong.

        And moreover, virtually every conversation
that is played here, it was played in the first
trial and is going to be played in the second trial,
was participated in by witnesses who are alive and
well and available to testify, including, among

16

other people, the defendant himself and the people
he was conversing with, and if their memory differs
from what is on the recording, they can testify to
that, but more importantly, if they think there was
something that's important that wasn't recorded,
they can say, yes, this is what somebody said or
this is what I said.

The minimization argument is too weak to
deserve more time for us to address.  It is a
consequence of minimization that some things that
should have been recorded weren't recorded, but the
real difficulty that can sometimes be presented by
these cases isn't presented here, and that is, for
example, when unavailable witness who is no longer
around can't testify as to what inculpatory or
exculpatory information was not on the recording.

So my finding is that minimization was
properly conducted, some of the original errors
which occurred only in the very earliest stages of
the Title 3 and were promptly corrected thereafter,
and I agree with Judge Holderman's assessment and
conclusions at his hearing are, in any event,
matters that do not prejudice the defendant in this
case, or, for that matter, any other potential
defendant in any way.  So the motion to suppress

1   based on improper minimization is denied.

2          I now have a motion having to deal with

3   proposed redactions and the government's

4   consolidated motions in limine, am I missing

5   anything?

6          MR. SCHAR:  Judge, there's a request for a

7   FBI report that was filed.

8          THE COURT:  Right.  I considered that

9   previously.  I have re-read the report.  There is

10  nothing in it -- and the proposed use of it by the

11  defense is the impeachment of the witness Balanoff,

12  there is nothing in that report that could be used

13  for impeachment.  There is in fact nothing in that

14  report that's impeaching, but leaving aside that

15  fact alone, there is nothing that can be used for

16  impeachment.  So that motion is denied again, or,

17  more precisely, I'm reconfirming my ruling, which in

18  this particular case is obviously on a more detailed

19  footing than it was the first time because I heard

20  Balanoff's testimony.

21         So I'm now down to redactions and motions in

22  limine, unless somebody tells me I forgot something.

23  I have a lot of motions here and I would not feel

24  insulted if somebody says to judge, you forgot X.

25         MR. SOROSKY:  No, no, no.

1    THE COURT:  Good.  I mean, this is the time
2  to speak.
3    Consolidated motions in limine --
4    MR. GOLDSTEIN:  Your Honor, sorry to
5  interrupt.  Just as to the consolidated motion in
6  limine, we would like an opportunity to respond.
7    THE COURT:  I would actually like to see the
8  response, and the reason I would like to see the
9  response is, there are certain general propositions
10  here which I accept and which I think you know I'm
11  going to accept, in fact I accepted it the first
12  time, and the reason I'd like to hear the response
13  is is because you may in this particular case have
14  specific instances in which you think perhaps the
15  general rule should not apply.
16    The motion to preclude questions and comments
17  that invite the jury to speculate on unplayed or
18  unrecorded conversations is largely going to be
19  granted.  I sustained objections to many of these in
20  the first trial and I will, as a general rule,
21  sustain them in this trial and may in fact issue
22  specific orders precluding their use so that I don't
23  have to sustain the objection.
24    And with respect to that which is unplayed, I
25  don't actually conceive of some permissible use of

1 that, but maybe there is something.

2          Motion to exclude evidence and argument

3 concerning unlawfulness and non-corrupt conduct,

4 this is an issue which I have raised before and used

:12PM    5 the tired old example of the fact that if somebody

6 robs ten banks on ten separate days of the year,

7 it's no defense to introduce the fact that on

8 355 days of the year he didn't rob a bank.

9          MR. SOROSKY:  Your Honor, if I can interrupt

:13PM   10 you --

11          THE COURT:  I think maybe you want to wait

12 until I'm done, because --

13          MR. SOROSKY:  Okay, I'll wait until you're

14 done.

:13PM   15          THE COURT:  Because I think you're going to

16 have some stuff that you may want to put in writing.

17          The motion to exclude opinion evidence

18 regarding legality and regarding the usual and

19 normal practices is granted to the extent that the

:13PM   20 defense intends to use lay witnesses, which is

21 actually the point the government is making.  I do

22 not believe the government is making the point that

23 you can never introduce evidence of this sort, you

24 can under certain circumstances, but to do so you

:14PM   25 have to have an expert witness, which of course

you're free to do.

With respect to evidence and arguments regarding custom and practice or you-can't-convict-me-because-everyone-does-it argument, which is the argument that's being made, is an argument that you cannot make the way it was made. The same is true of questions regarding the absence of objections by others. It became clear as time went on that the argument evolved into there were a lot of lawyers in the room with defendant and nobody said it was illegal and therefore he was entitled to rely on this silence, which is not the law, the law is very clear on that point.

I do not by so ruling exclude the possibility that the defendant testifies and says I am a lawyer, I looked at the law and I thought it was legal, I had a good faith belief, I'm not excluding this, I'm talking about the opinions that he might draw from the fact that somebody didn't say, "wait, stop," immediately.

A couple of issues that specifically ought to be addressed is the government's position that events occurring with respect to the defendant's conduct after he was arrested, or at any point in time after he knew that he was the subject of an

investigation and the subject of recordings, is an
issue that I think was not fully addressed the first
time and ought to be addressed now.  And the reason
I would be willing to see briefing on this is it is
new, we didn't deal with it the last time and it
presents a live issue.

MR. SOROSKY:  I also think another new issue
is the concept of not being able to mention what was
mentioned in the first trial concerning the fact
that Children's Memorial Hospital received the
allocation of money.

THE COURT:  Yeah, it's essentially all part
of a piece.  Because the government's position is is
that once he realizes that somebody might know about
all of this stuff, you can't give him any credit for
doing the right thing because he's doing it because
he's trying to get out from under the troubles that
he's in.

Now, the reason this has to be addressed is,
a lot of it depends, as a lot of the first trial
depended, on what kind of evidence the defense
offers.  One of the distinctive patterns of the
defense in this particular case and caused a lot of
sustaining of objections was the desire of the
defense, not uncommon for defense counsel in these

and other cases, is to convey information for the
question and not the answer, and usually the only
way you do that is violate a rule which says you
can't assume a fact that is not in evidence, and
many questions did, and I don't want a recurrence of
that.

This is a case in which much of what the
defense wants to introduce can pretty much only be
introduced by a defendant on the witness stand, not
all of it but some of it, and we're going to have to
face that issue.

In the first trial, it was simpler to deal
with because there had been an unequivocal
statement, defense counsel in opening statement that
the defendant was going to testify, and several of
my rulings gave leeway to the defense because okay,
ask the question because we've been told that the
defendant is going to get up on the witness stand,
and in the end you would up with assertions that the
prosecution wasn't able to confront.  And while I
don't think the prosecution's right to confront
witnesses has a constitutional basis, it is in fact
a prosecution's right as well, and in many cases
they were in fact, by the way the case was tried,
denied their own right to confront the defense.

1     So we have to deal with this in terms of

2 events which happened after revelation and the other

3 issues that are raised.  What I tried to do is tell

4 you that in at least in the abstract, almost all of

5 the positions taken, in fact all the positions taken

6 in these motions in limine are presumptively correct

7 in the abstract, but they might not be correct in

8 terms of specific offers.  And your responses,

9 instead of doing a general briefing, should say this

10 is what we intend to do, this is what we want, this

11 is what we want to try to prove, and this is how we

12 intend to prove it.  Because some of the things in

13 the classic example I gave was, a belief that what

14 was done was legally right, and it sort of came in

15 through the back door the first time, and if it

16 comes in this time it's going to come in through the

17 front door with the appropriate protections, but I

18 don't know what you intend to do and you're going to

19 have to tell me.  So that's my only commentary with

20 respect to that.

21     With respect to the redactions, the defendant

22 has objected to some proposed redactions.  The

23 government when they filed the proposed redactions

24 gave a justification for it, but I think the

25 government may want to respond to specific

24

1  objections.  So we can do deal with that as time
2  goes on.  I don't think we're going to have a lot to
3  do with these things.  There were a couple of
4  redactions here that the government made that the
5  defendant objected to and I was in a position of
6  wondering why, I was wondering why the government
7  redacted it and I was wondering why the defense
8  objected to the redaction; in other words, I read
9  the evidence a different way, I thought some of the
10 stuff they redacted was actually good for the
11 prosecution and what the defense wanted to put in
12 was not so good for the defense, but the judge never
13 knows as much about the evidence as the lawyers do,
14 so I could be wrong about that.
15        Basically, I think we're done with this stuff
16 I have.  So now we can deal with what the lawyers
17 have.
18        MR. SCHAR:  Judge, we filed a motion related
19 to additional redactions that falls into play, I
20 think what Your Honor has been referring to and we
21 will respond by Monday, if that's okay --
22        THE COURT:  Yeah.
23        MR. SCHAR:  -- if not earlier.
24        But I believe there's also additional
25 objection to redactions that were in the first trial

25

1 that.

2            THE COURT:  Right.

3            MR. SCHAR:  I don't know if you wanted to

4 respond to that.

5            THE COURT:  No, I don't.  I've dealt with

6 that.  I regard that position as essentially we're

7 not waiving this.  And I don't blame them for doing

8 that because you have raised the issue of redactions

9 and if they remain silent in the face of this, were

10 I in their position I would be concerned about

11 waiving, but I have felt with the issues, I don't

12 see new arguments, and I'm not going to reconsider

13 those after having read what I've read.

14            MR. SCHAR:  Okay.  Thank you, Judge.

15            THE COURT:  Anything else from anybody?

16            MR. SOROSKY:  Just two comments that the

17 defense would like to make, one concerning the first

18 issue before the Court concerning filing of motions

19 under seal.  The defense has always been in the

20 position that we would like everything opened and

21 not under seal.  We only file motions under seal to

22 comply with the law and the court orders.

23            Secondly, focusing on the motion in limine

24 and this issue about asking questions of as to where

25 the defense asks the witness questions is it legal.

We certainly agree with Your Honor when Your Honor
says if someone is on trial for a specific offense
and the defense tries to show that he doesn't commit
other offenses therefore the defendant is sort of a
good guy.  We certainly agree that there's no basis
for a question like that, but let me just give one
example that everyone will remember and this
occurred many, many times during the trial:  The
prosecution brought out at great length how Governor
Blagojevich made have had a peccadillo in that he
spent large sums of money on suits.  I would assume,
to the best of my knowledge, I could say this,
that's not a crime to spend a lot of money on suits,
but as a lawyer I can see that perhaps the
prosecution may feel, oh, we'll gain a granule of
sugar with the jury by saying he spends excessive
amounts of money on suits.

So after the prosecution perhaps spends
literally ten to fifteen minutes with documents and
so forth as to how much money he spends on suits,
the defense just wants to ask one question, "well,
there's nothing illegal about that, is there," and
then the objections come.

So in many of those situations where the
defense asks the question "is it illegal," it's sort

1  of like the government throws a punch at us and we

2  can't punch back, because there is no better defense

3  to the whole issue for the suits, for example, by

4  the defense asking "well, what's illegal about that,

5  Ms. Schindler," she was the IRS agent who showed all

6  that money spent on suits, and she would say it's

7  not illegal.  And we're precluded from doing that,

8  but this is a question which was clearly invited by

9  the prosecution.  And this is just one example

10  that's fresh in my mind now and perhaps fresh in

11  everyone's mind once I mention it, but there were

12  many times when that went on.

13       So I think some rule has to be crafted if the

14  prosecution is going to continue along those tactics

15  and the defendant is to receive a fair trial.  And I

16  may not be wise enough to know how to do it, perhaps

17  an instruction by the Court every time a question

18  like that is asked that it's not illegal to spend a

19  lot of money on suits.  Or I don't know how else to

20  do it, or perhaps we've got to go over the

21  prosecution's case to see what they can or cannot

22  ask, but I think this is a problem in this trial.

23       THE COURT:  Mr. Schar.

24       MR. SCHAR:  Judge, of course it's not a

25  problem in this trial, because the question is a

1 non-sequitur to the issue. The issue is providing
2 motive evidence, things like that. If he thinks
3 that there is something improper about the mode of
4 evidence or the degree of it, the extent of it,
5 certainly they have a right to object, and in
6 response Your Honor will rule just as we object. It
7 doesn't mean that an agent whose actual job is not
8 to determine illegality in the context of suits
9 should be asked the question whether it's illegal.
10 Beyond that, obviously, the issue is in terms of
11 things like that if the evidence is part of a larger
12 scheme that explains why in fact there was
13 illegality, whether he buys the suit in and of
14 itself being illegal or not legal is not the issue,
15 because, frankly, the answer may be to the context
16 he was spending his money recklessly and ended up
17 needing more money and did the following, maybe it
18 is illegal, but that's why we don't allow lay
19 opinions on this issue, and I think Your Honor has
20 laid that out.
21         I'm happy to talk about the first issue about
22 them actually wanting everything in the public
23 domain, but I assume that was more of a statement
24 for others and not actually Your Honor.
25         THE COURT:  Well, I'm not going to address

that one either.

The problem I have is that I still think, Mr. Sorosky, that you're dragging into the case an issue that isn't there, although I understand why you would do that. Because the government has never hinted at all that it's illegal to spend a lot of money on clothes. In fact, I don't think the government ever took the position that anything he was spending was illegal. It's illegal to buy dope, the government didn't say anything about the defendant doing that. It's illegal to buy a machine gun. There are lots of things that's illegal to buy. What the government was simply saying is is he spent himself into a hole and for this reason he needed money. And, in fact, the question that the defense lawyer asks when he says to the witness, like the IRS agent, there's nothing illegal about spending a lot of money on clothes, or in this I think was not particularly at issue so it's hypothetical, nothing illegal about spending a lot of money on caviar, nothing illegal about buying expensive things, buying fancy cars, but what the defense is doing is they are refocusing the government's case in an area where the government didn't focus in the first place, because the

1  government is never making a claim that it's
2  illegal.  And what the defense does when they say
3  well it's not illegal, you have planted in the
4  jury's mind or in a juror's mind the idea that what
5  the government is contending is that it was illegal
6  somehow for him to spend a lot of money on clothes,
7  and that's not what the government is doing.

8          So basically what we have here, and it's
9  fairly common, is what the government is doing is
10 showing that he's spending a lot of money on
11 clothes, spending himself into a hole on things like
12 clothes, hoping that the subtext to the message to
13 the jurors is this is really not a very admirable
14 thing that he's spending a lot of money on clothes,
15 and that's why the defense gets exercised about that
16 kind of examination by the prosecution, that this is
17 the undertone of no, no, it's not illegal but all of
18 us here, you, members of the jury, members of the
19 public, don't spend this much money on clothes and
20 this is a ground to disapprove of the defendant in
21 this particular case.  And to meet that, to meet
22 that, the defense says something about there's
23 nothing illegal about it.

24         This is people pushing emotional triggers in,
25 and I don't think it's a particularly good idea and

1 I am perfectly willing to ask the government to make

2 these points quite clear.  And there was another

3 point in the course of this trial where the

4 government was trying to convey a message with

5 respect to associations of the defendant with other

6 people, other disreputable people, which I stopped

7 them from doing.  I don't think that the list of

8 expenditures and the fact that he's basically

9 pushing himself into debt, in itself, conveys that.

10 If you think they overdid it with respect to

11 emphasizing the expensive stuff he spent money on,

12 and the price of the suits, and a variety of other

13 things, if you want me to require the government to

14 be less flamboyant with that issue, I'd be perfectly

15 willing to consider that, but I don't really want

16 this kind of thing where a claim not made by the

17 government is inserted into the case because pretty

18 much the defense feels the way to get themselves off

19 the hook.

20        So if you believe my little lengthy overlong

21 speech right now was designed to send a message to

22 both sides, you are right.

23        Anything else you want to raise?

24        MS. SPEARS:  Your Honor, actually defense --

25        THE COURT:  Wait.  Wait.  Let them finish.  I

1 won't shut you out.

2     MR. SOROSKY:  No, nothing else, nothing else

3 concerning all of the motions you've ruled on.

4     MR. GOLDSTEIN:  When would you like our

5 reply, Your Honor?

6     THE COURT:  As soon as possible.

7     MR. SCHAR:  Judge, just in terms of getting

8 ready for trial, Ms. Hamilton correctly points out,

9 we're obviously going to have to be doing transcript

10 binders again.  If we could have a date in the early

11 part of next week so we might be able to come back

12 to get a ruling about the redaction issues so we can

13 put that in motion.

14     THE COURT:  I was thinking Monday.

15     MR. SOROSKY:  What time do you want us?

16     THE COURT:  Talk to Mr. Walker.  He has a

17 better idea of my schedule.

18     MR. SOROSKY:  Okay.

19     THE COURT:  Okay, anybody else except Ms.

20 Spears?

21     MR. SCHAR:  Nothing else.

22     MR. SOROSKY:  No.

23     THE COURT:  Now.

24     MS. SPEARS:  Thank you.  Defense counsel's

25 comment with regard to the Chicago Tribune motion

1  raises one more points for me, anyway.  With regard

2  to the sealed motions, most of it if not all of

3  which were initiated by the defense, a couple of

4  them, and it's really hard to follow them in

5  listening to the rulings and I'm sure the press has

6  probably the same questions, two of them at least

7  were just noted to be a sealed motion, number 646

8  and 6451, and it's hard to even know if that was one

9  the motions the Court ruled on or not.  So if it

10  would be possible to know what specific motions

11  those are.

12          THE COURT:  Ask the lawyers and they'll tell

13  you.

14          MS.  SPEARS:  For the record.

15          THE COURT:  They'll tell you, you can sit

16  with one lawyer from each side and they'll tell you

17  which motion is which.

18          MS. SPEARS:  Except it's not just me, Your

19  Honor, it's the public --

20          THE COURT:  Yes, but the thing is is somebody

21  can post something on a board, I don't want to do it

22  here, not now.

23          MS. SPEARS:  That would be corrected along

24  with the other filings?

25          THE COURT:  Yeah.

1        MS. SPEARS:  Because sitting here today, it's
2  hard to even know what the Court was ruling on.
3        THE COURT:  Well, you knew what the Court's
4  ruling was, but if you want to have it attached to
5  some particular motion ...  I think basically
6  because of the way I ruled, you'll understand what
7  the motion was, and I believe that the grounds will
8  be disclosed to you sooner rather than later in the
9  actual motions.
10        MS. SPEARS:  Perhaps even in the minute
11  order, if it's simply reflected what the motion was,
12  if it was one of the ones 646 or 651, the one that
13  was ruled on today, that would be helpful for
14  everybody involved.
15        THE COURT:  Sure.
16        MS. SPEARS:  Thank you.
17        THE COURT:  You have received an important
18  missive, Mr. Sorosky?
19        MR. SOROSKY:  Pardon me?
20        THE COURT:  You have received an important
21  missive?
22        MR. SOROSKY:  No, we're trying to -- perhaps
23  we can answer her question right now.
24        THE COURT:  That would be fine, but maybe you
25  can do it when I get off the bench.

35

1        MR. SCHAR:  Judge, I think we can resolve

2  this without --

3        MR. SOROSKY:  I think the Court did rule on

4  the numbered motions she referred to.

5        THE COURT:  Right.

6        MR. SOROSKY:  Right.

7        THE COURT:  There shouldn't be much left.

8        MR. SOROSKY:  Right.  I think the numbers

9  that Ms. Spears referred to were ruled on by the

10  Court today.

11        THE COURT:  Okay.

12        MS. SPEARS:  I hate to be a thorn here, but

13  it is, for the public at large, if it could just be

14  put in the minute order what's issued today what the

15  name of the motion was --

16        THE COURT:  I was actually trying to get this

17  to you quicker than the minute order --

18        MS. SPEARS:  Right.

19        THE COURT:  -- which is to have them tell you

20  and then you can tell everybody else and then we'll

21  put it in the minute order for the people who

22  weren't here.

23        MS. SPEARS:  All right.

24        THE COURT:  Okay?  Anything else?

25        MR. GOLDSTEIN:  Your Honor, just had one

:37PM

:37PM

:37PM

:38PM

:38PM

question as far as scheduling.  If you want us back
on Monday, we can address it then, but just as far
as when the jury is coming in to fill out the
questionnaire and when we'll start questioning them.

THE COURT:  What's going to happen so far as
I now understand it, the initial mailing that went
out, the same mailing that went around last time
which said your name is on a list for special panel
for trial that will last X number of weeks, are you
available.  I am told that we are getting a fairly
large number of yeses I will be available, and
that's basically the only question they're asked,
that and any other reason.

What happens is they come in and they fill
out the questionnaire.  My guess, and it's only a
guess, would be that the earliest we could begin
jury selection, that is to say put people in the
box, will be on April 21st.  I will not sit on the
22nd basically because, with one exception, I'm
going to advise the jury that we don't sit on
Fridays, and I'd like to be consistent with that.

It's possible because of the mechanics of
what we're dealing with here, we might not actually
start with putting jurors in the box on the 21st,
which means that we will start the Monday of the

next week, but that I've left flexible.

So that's basically where we are. And then the lawyers obviously are going to have to look at the questionnaires and we'll move along. We have a fairly good idea of how many jurors we need to get to a jury based on what happened last time, and also based on what happened in Family Secrets. But there could be a possibility that we get more than enough jurors who are willing to serve, but because of the luck of the draw we have too many of them are disqualified for other reasons and we don't know, so that's the unknown part.

So it's possible that there won't be opening statements until the middle of the week after we begin, it's possible they might come more quickly. And then that's the one thing that I think makes a re-trial a little easier, that everybody understands the mechanics and what kind of equipment they have to have.

The one last thing I have on my list here has to do with Ms. Spears and her request, which is I understand that you are going to make efforts to give to distribute promptly motions in papers that are no longer entirely sealed but for which there have been redactions, it's important that you give

38

1  me copies of those as soon as they're available and
2  I would like to see them soon.
3        MR. SCHAR:  Would you like to see them before
4  they are publicly docketed?
5        THE COURT:  No, I'm satisfied.  I just want
6  to make sure it's done.
7        Anything else?
8        MR. GOLDSTEIN:  Your Honor, one more thing.
9  You had mentioned --
10        THE COURT:  You said one more thing before.
11        MR. GOLDSTEIN:  Well, it's a response to Your
12  Honor's discussion as far as scheduling.  It would
13  be our preference, if Your Honor is willing to
14  consider, that we start questioning jurors on that
15  Monday, because I know that the questionnaires only
16  stays in court that will give us the time on
17  Wednesday evening Thursday and possibly Friday to
18  review those questionnaires.  So if your Honor takes
19  into consideration, if we could possibly start
20  questioning jurors on Monday.
21        THE COURT:  I might but I probably wouldn't,
22  the reason I probably wouldn't is, you're not going
23  to be asked to exercise your peremptory challenges
24  right away, you know, that comes at the end of the
25  process by which time you will have had plenty of

 1  time to look at the questionnaires to make those
 2  kinds of judgments.  And with respect to challenges
 3  for cause, those, too, come later, and I do that
 4  deliberately so that you will have a chance to think
 5  about what's in the questionnaire.  Given the nature
 6  of the questionnaires and how they're answered, it
 7  may turn out that I'm wrong and you're right, in
 8  which case we'll do it differently.
 9        Okay?
10        MR. SOROSKY:  One other thing, so --
11        THE COURT:  Do you, like, agree that each one
12  of you will take one other --
13        MR. SOROSKY:  Actually two things.  One, so
14  the defendant may not have to be here on the 20th?
15        THE COURT:  The defendant should be here.
16        MR. SOROSKY:  Should be here on 20th?
17        THE COURT:  Just in case.
18        MR. SOROSKY:  Okay.  Secondly, is it possible
19  to get the titles of all the redacted motions in the
20  order?  Apparently that will help the media.
21        THE COURT:  Why don't you just make a list
22  and we'll take care of the minute order part of it.
23        MR. SOROSKY:  Okay.  Thank you.
24        MS. SPEARS:  Thank you, Your Honor.
25        MR. SCHAR:  I think there may be one related

1  medical records that we may want redactions to part
2  of the title, but otherwise this won't be an issue.
3          THE COURT:  That's fine.
4          Thank you.
5
6      (Which concluded the proceedings had on this
7       date in the above entitled cause.)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

41

\*     \*     \*     \*     \*     \*     \*     \*

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED
MATTER


 /s/Blanca I. Lara                          date



_____         _____

      Blanca I. Lara                          Date