3190

1              N THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
2                       EASTERN DIVISION

3    UNITED STATES OF AMERICA,       )
                                     )  No. 08 CR 888
4            Government,             )
                                     )
5    vs.                             )  Chicago, Illinois
                                     )
6    ROD BLAGOJEVICH,                )  May 20, 2011
                                     )
7              Defendant.            )  10:50 o'clock a.m.

8
                             VOLUME 19
9                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE JAMES B. ZAGEL
10                       AND A JURY

11
     For the Government:
12
                 THE HONORABLE PATRICK J. FITZGERALD,
13               UNITED STATES ATTORNEY
                 BY:  Reid J. Schar
14                   Carrie E. Hamilton
                     Christopher Niewoehner
15                   Debra Bonamici
                  Assistant United States Attorneys
16               219 South Dearborn Street;
                 Suite 500
17               Chicago, Illinois 60604

18
     Court Reporter:
19
                     Blanca I. Lara, CSR, RPR
20                   219 South Dearborn Street
                          Room 2504
21                   Chicago, Illinois 60604
                        (312) 435-5895
22

23

24

25

:50AM

3191

APPEARANCES   (continued:)


For Defendant Rod Blagojevich:


        KAPLAN & SOROSKY
        BY:  Sheldon M. Sorosky
        158 West Erie
        Chicago, Illinois 60610
        (312) 640-1776


        LAW OFFICE OF Elliott Riebman
        BY:  Elliott Riebman
        158 East Erie
        Chicago, Illinois 60610
        (847) 814-2900


        OFFICES OF AARON B. GOLDSTEIN
        BY:  Aaron Benjamin Goldstein
        6133 South Ellis
        Chicago, Illinois 60637
        (773) 752-6950


        OFFICES OF LAUREN FAUST KAESEBERG
        BY:  Lauren Faust Kaeseberg
        2140 N. Lincoln Park West
        Suite 307
        Chicago, Illinois 60614
        (773) 517-0622

3192

1        (The following proceedings were had out of the
2         presence of the jury in open court:)
3            THE CLERK:  2008 CR 888, United States versus
4   Blagojevich.
5            MR. SCHAR:  Good morning, Judge.
6            Reid Schar, Chris Niewoehner on behalf of the
7   United States.  I expect Ms. Hamilton shortly and
8   Ms. Debra Bonamici is here to assist with the jury
9   instructions should that be necessary this morning.
10           THE COURT:  Do we have instructions?
11           MR. SCHAR:  Yes, Judge.  We filed shortly,
12  and I will hand up to Your Honor a binder that
13  delineates them by tab.
14        (Handing documents.)
15           THE COURT:  Right.
16           Just out of curiosity, has anyone done a word
17  count between these and the predecessors?
18           MR. SCHAR:  No.
19           THE COURT:  Because the machine can do it.
20           MR. SCHAR:  Yes, Judge.
21           THE COURT:  Question out of idle curiosity.
22           MS. KAESEBERG:  Our request is, we just got
23  them, they were filed earlier today, and I just
24  received that same binder that you have.  I haven't
25  had a chance to look at them compared to the last

3193

1 instructions, haven't had a chance to read them

2 through yet.  So I'd ask that we have some time to

3 look them over before we have to take a position on

4 any of them.

5          THE COURT:  What I would like you to do with

6 respect to this one is send me, by the end of the

7 day, a list of those to which you might have an

8 objection so that at least I have some idea what the

9 universe of objections is going to be.  That would

10 be very helpful.

11          MS. KAESEBERG:  Okay.

12          THE COURT:  The second issue I have has to do

13 with scheduling of the defense.  And what I would

14 like to do, but only with the consent of the

15 government, is to address this outside the presence

16 of the government's attorneys with the defense

17 attorneys so that whatever surprises they have in

18 their -- in their --

19          MR. SOROSKY:  Arsenal.

20          THE COURT:  Arsenal, that was good.  I was

21 thinking of arrows and quivers but arsenal is

22 better.

23          MR. SOROSKY:  Makes it sound a little

24 stronger.

25          THE COURT:  Right.  So I would like to do

1 that initially at the side and then we can talk
2 about, if I have your consent.
3      MR. SCHAR:  You certainly have our consent to
4 do that, Judge.  Obviously, there's a -- you have
5 our consent to do that, without question.
6      THE COURT:  And then I suspect that there
7 will be several things that maybe we can discuss.
8      MR. SCHAR:  Okay.  Obviously, one of the
9 things that the government, I'm sure you remember
10 this from last time, there were a number of proposed
11 witnesses last time.  And I think that it never got
12 to this point, but there were significant questions
13 about the relevancy of many of them, or at least
14 portions, if not significant portions of the
15 testimony absent the defendant testifying, and even
16 with the defendant testifying.
17      So, I, mean, obviously, the government would
18 like prior to dragging in a bunch of witnesses that
19 may ultimately have nothing pertinent or admissible
20 to testify about, but we'll abide by whatever Your
21 Honor wants to do.
22      THE COURT:  Okay.  We'll do this initially at
23 the side.  It will be on the record.
24      MR. SCHAR:  Judge, we should stay?
25      THE COURT:  Yeah.

3195

1      (Proceedings heard at sidebar on the record.)

2          THE COURT:  All right, why don't we all stand

3  over here so we all can hear.

4          MR. SOROSKY:  Let me tell you this first so

5  you know.

6          THE COURT:  Okay.

7          MR. SOROSKY:  Let's divide the government

8  allegation into say, six different allegations.

9  First let's take the racetrack.

10          THE COURT:  Okay.

11          MR. SOROSKY:  We don't have any witnesses on

12  the racetrack.

13          THE COURT:  Okay.

14          MR. SOROSKY:  Let's take Children's Memorial

15  Hospital, there aren't any witnesses on Children's

16  Memorial Hospital.

17          THE COURT:  Okay.

18          MR. SOROSKY:  Three, let's take the school.

19  We may call a witness by the name of John Filan,

20  they know who he is.

21          THE COURT:  I know who he is, too.

22          MR. SOROSKY:  Blagojevich's director of the

23  budget, they interviewed him.  So he and Terry would

24  say there were budget problems.

25          THE COURT:  That there were, in fact,

3196

1  legitimate budget problems.

2       MR. SOROSKY:  That there were problems.

3       THE COURT:  Okay.  All right.

4       MR. SOROSKY:  There may be one or two

5  lower-level employees within the Department of

6  Budget who said that there were e-mails back and

7  forth and telling them there were budget problems,

8  and this and the other type of thing.

9       THE COURT:  Okay.

10       MR. SOROSKY:  And on the school, we may call

11  then Congressman Emanuel's aide or Chief of Staff

12  and that she was told there were budget problems,

13  but with the exception of Filan, those would all be

14  extremely short witnesses.

15       THE COURT:  Right.

16       MR. SOROSKY:  Okay, the next thing is --

17       MS. KAESEBERG:  The tollway.

18       MR. SOROSKY:  The tollway -- no, no, no, we

19  have road builders.

20       MS. KAESEBERG:  No, that's the racetrack.

21       THE COURT:  Road builders; Krozel.

22       MR. SOROSKY:  We may call a man by the name

23  of Mitola.  Mitola was the Chief of the Tollway

24  Authority, the Illinois Tollway Authority.

25       THE COURT:  The Chairman or the Executive

3197

1 Director, those are the two positions they have.

2      MR. SOROSKY:  The chairman, I think he's

3 Chairman.  I don't know what he is.

4      THE COURT:  One guy has a full-time job and

:02AM

5 runs the tollway and then the other guy is a

6 Chairman.  But the Chairman, unlike some places, the

7 Chairman actually has something --

8      MR. SOROSKY:  Right, right.  I think he's the

9 Chairman.

:02AM

10      THE COURT:  So he's either the ED or the

11 Chairman.

12      MR. SOROSKY:  Right.  He's one of those two.

13 And what he would say, one of the things he would

14 say so you know, is on the second tollway -- you

:03AM

15 know how they talk about the 1.8 and 1.5 billion

16 dollar grant?  Well, the governor did not need the

17 legislature to approve the plan, the greater plan

18 could not have been done without purchase of land

19 which required legislative approval.  It was too

:03AM

20 much work that had to be done.

21      THE COURT:  Okay.

22      MR. SOROSKY:  And so that concerns that.

23      So then we'll get into the Senate seat.  We

24 will divide the Senate seat, the Senate seat can be

:03AM

25 divided into two, there's the Valerie Jarrett and

3198

1  and Jackson.

2       THE COURT:  Right.

3       MR. SOROSKY:  First on the Jackson theme, the

4  only witness we would call would be Congressman

5  Jackson.

6       THE COURT:  Okay.  This is what I assumed

7  when you were talking to me about powerful people.

8       MR. SOROSKY:  No, there's more.  There's

9  more.  Congressman Jackson, we're not calling any of

10 the other Indian businessmen.  Those are the only

11 two, those are the only two categories of people.

12      Concerning the Valerie Jarrett and the Senate

13 seat, we would be calling Rahm Emanuel --

14      THE COURT:  Who?

15      MR. SOROSKY:  Rahm Emanuel.

16      THE COURT:  Okay.

17      MR. SOROSKY:  And perhaps Alexis Giannoulias.

18 Where Giannoulias comes in is, after you Balanoff is

19 rejected -- or after what occurred, just to refresh

20 your memory is, when Balanoff first puts in the

21 request for Valerie Jarrett, Blagojevich kind of

22 stalls it, Balanoff assumes that stall was a

23 rejection and reports back.  There truly was,

24 apparently, a stall by Blagojevich because about a

25 week later Blagojevich calls and they said, oh,

:03AM

:04AM

:04AM

:05AM

:05AM

1  she's already taken a job in the administration, so
2  Blagojevich says well, that's interesting, and
3  Balanoff says well, I'll talk to her again, but I
4  think the ship has run.
5          THE COURT:  Right.
6          MR. SOROSKY:  So when he gets a hold of
7  Jarrett, apparently she's with Giannoulias.  You
8  follow?
9          THE COURT:  Right.
10         MR. SOROSKY:  So, supposedly, when
11  Giannoulias was interviewed he said that Balanoff
12  said one wasn't for the other, you know, something
13  along those lines, just to refute that one for
14  another, that's a very narrow thing like that.
15         And are we missing anything?
16         MS. KAESEBERG:  I mean, there's people that
17  we're still trying to track down that we don't know.
18         MR. SOROSKY:  Now, just so you're clear, so
19  you know, with the defense of this Jesse Jackson
20  allegation, it would be the defense's position that
21  at this time there was this attempted last-minute
22  push to do the Madigan deal but he got arrested
23  before it would be consummated, and I suppose the
24  best we could get out of Emanuel -- we haven't met
25  with him yet, but to be realistic, the best we could

:05AM
:05AM
:06AM
:06AM
:06AM

1 get out of Emanuel was we knew about the deal and he
2 was ready, willing, and available to do what he
3 could to put it through because he felt it would be
4 just a good thing for everyone, I don't know how
5 else to put it, something along those lines, that's
6 about the best we could get.
7          THE COURT:  Yeah.  Okay.
8          MR. SOROSKY:  I'm just telling you.
9          THE COURT:  No, that's fine.
10          MR. SOROSKY:  Anyone I leave out?
11          MS. KAESEBERG:  Durbin?
12          MR. SOROSKY:  Durbin, he's a more marginal
13 witness.  Durbin would say that apparently there was
14 a meeting, there's no doubt that this meeting
15 occurred because this is in the 302's, between
16 Axelrod, Durbin and Emanuel in early December, and
17 the three of them apparently said Jesus, you know,
18 maybe we should do what we can to assist in this
19 Lisa Madigan thing.  It was almost nothing more than
20 over a cup of coffee or something like that.
21          THE COURT:  Yeah.
22          MR. SOROSKY:  But that meeting did occur.  I
23 think Emanuel says that he was there and the meeting
24 occurred and Axelrod and Durbin were there, I don't
25 think the government is going to question the

1 truthfulness of that meeting. I don't think there
2 is a question of that because all three said it
3 occurred.
4         THE COURT: Yeah. And some of this I
5 understand why you're putting in, but there's none
6 of it in which -- and the government can use it,
7 too. So I don't see this as --
8         MS. KAESEBERG: There is a couple of minor
9 witnesses too --
10         MR. SOROSKY: We left out?
11         MS. KAESEBERG: I'm just looking at my list.
12 With regard to road builders and the tollway, a man
13 named Ed Smith, he's a labor leader in Springfield,
14 he had a conversation with the governor in mid
15 November about the capital bill, the Lisa Madigan
16 deal, and he addresses both issues. So he would be
17 someone that's on the list as of now. And then
18 there's another person -- unfortunately, I know
19 Elliot added him to our list.
20         MR. SOROSKY: Dvorak.
21         MS. KAESEBERG: Dvorak on the Senate seat
22 issue, but I'm not exactly sure --
23         MR. SOROSKY: He's a Krozel type, apparently
24 he wasn't involved.
25         Now, the next question is, if Blagojevich

:08AM
:08AM
:08AM
:09AM
:09AM

3202

testifies and Mrs. Blagojevich testifies, do we need
the whole day for what tapes are admissible or not
admissible, that type of thing?

MS. KAESEBERG:  We would have additional -- I
know last time I believe you agreed that we could
admit 12 and there were 5 conditional calls.  We
have approximately 30 that we have looked at and
reviewed that we would want to put in addition to
those.

THE COURT:  That one is a little soon to deal
with.  First of all, we're going to deal with that
on the record, just on that's what you're offering,
we can do that in open court, and then you can send
it to the government.

So what I think you should do is cut this
down to what you think is the bear minimum.  The
truth is is that what he said on the tapes, even if
he's on the witness stand, arguably -- in fact, it
is hearsay, but I'm not going to exclude them if
he's standing there and saying this is my
explanation for this.  And he's going to have to do
a fair amount of explanation about what he said,
anyway, so there will be some limited use of it
permitted, which was my point in the first trial,
that yeah, it's still hearsay but you can cross

1  examine on what it was he said.

2        So as a matter of principle, I'm not ruling

3  it out, and if there's a more or less restrained use

4  of it, the jury doesn't have to sit there for four

5  hours listening to this stuff, this is fine.

6        And, you know, the government can do whatever

7  they can to beat you over the head with it, and

8  that's fine, and you can beat the government over

9  the head with it, and we can deal with it that way.

10 And because a core issue in this, if he gets on the

11 witness stand, is did they believe him, and it's not

12 the technicalities of who said what, when, and under

13 what circumstance, it's whether they believe his

14 defense.

15        MR. SOROSKY:  Now, the next thing is, these

16 witnesses say they can't be here Monday.

17        THE COURT:  Who says that?

18        MR. SOROSKY:  All these witnesses.

19        MS. KAESEBERG:  We are trying to get them.  I

20 mean, I can't even think of one who was

21 affirmatively said they could.

22        MR. SOROSKY:  Ironically, the witness who

23 seems the most likely to come in Monday is Rahm.

24 Jackson said Wednesday.

25        MS. KAESEBERG:  Durbin is a more of a minor

1  witness.  His lawyer indicated he is not so happy to
2  come.
3          THE COURT:  Now, the question is, since you
4  have at least to my mind alleviated the government's
5  concern about 30 witnesses, the question is is are
6  you willing to let me front any of these?
7          MR. SOROSKY:  Well, we don't mind telling
8  that to the government, but I don't want --
9          THE COURT:  I grant you that.
10         MR. SOROSKY:  Fine.  Sure.
11         MS. KAESEBERG:  You mean all of them?
12         THE COURT:  No, no, whichever ones you want.
13         MS. KAESEBERG:  Okay.
14         THE COURT:  If you tell them all, that's
15  fine, if you don't tell them all, you have to tell
16  them it's not all but these are the ones we know
17  now.
18         MS. KAESEBERG:  I don't mind giving them a
19  number and then some of the ones that are going to
20  be more of an issue, some of the minor ones we could
21  probably announce.  You know, we'll tell them
22  whenever you want us to give it to them, a day or
23  two ahead of time.  Whatever you think, Shelly.
24         MR. SOROSKY:  Being realistic, we agree only
25  if it goes the way the government does it, who are

3205

1   the only potential witnesses on Monday?  John Filan
2   and Rahm Emanuel, so let's just tell them that.
3        Do you see anyone else on Monday,
4   realistically?
5        MS. KAESEBERG:  No.
6        And a couple of the people we've been in
7   contact with, we're having difficulty with many of
8   them.  So my fear is if it's known, they'll make it
9   harder for us to actually get them here.
10       THE COURT:  You just advise the government,
11  because they advise you, sometimes they've done it
12  on the record at the end, but most of the time --
13       MR. SOROSKY:  I'll just tell them Rahm
14  Emanuel.
15       THE COURT:  That's fine.  And then I think
16  we'll go back on the record and we'll do scheduling
17  for the instruction conference, which because of
18  certain scheduling difficulties with some of the
19  witnesses, will be done on Monday, which we'll do in
20  open court.  And then that's it, unless anything
21  comes up.
22       MS. KAESEBERG:  My sense in talking to
23  Emanuel's lawyer, I don't mind telling the
24  government this, but could be Monday.  My sense is
25  he's really going to have a difficulty getting here

1    Monday.  There's a possibility he can do it, but --
2        (The following proceedings were had out of the
3         presence of the jury in open court:)
4        (Brief pause).
5            THE COURT:  Counsel, are we ready?
6            I have conferred off the record with defense
7    counsel and I don't anticipate that we will have a
8    lot of delay dealing with pre-witness matters.  And
9    the defense is essentially following the same
10   practice you followed, which is to advise you
11   basically who the next day's witnesses are likely to
12   be with no guarantee.  And that's fine, too.  It's a
13   practice we followed throughout the trial.
14           There may be some scheduling issues, but my
15   belief is that since we are nearing the end, we
16   should do witnesses when we can do witnesses, and if
17   this means it's a short day for the jury, that's
18   fine.  I don't think the jury is going to mind it.
19   And particularly if we have some difficulty on
20   Monday, we probably have an hour, hour and a half on
21   the instructions, maybe more.  So we'll do that in
22   the spare spaces.  That is also the time where we
23   will deal with the defense's customary motion at the
24   close of the government's case.  So I think we'll be
25   okay on that.

1        Sometime on Tuesday or maybe toward the end
2   of Monday they will give you a list of their
3   remaining witnesses.  So I think, basically, as
4   proposed to me by the defense, it seems to me to be
5   a reasonable method of proceeding and that's the way
6   we'll proceed.
7        The written motion at the close of the
8   government's case, you can do that, if you wish,
9   simply by listing what it is that you want to raise
10  and then you can supplement it orally.
11        MS. KAESEBERG:  Okay.  Thank you.
12        THE COURT:  That will save you a little time
13  and effort.
14        MS. KAESEBERG:  Thank you.
15        THE COURT:  Issues that you want to raise?
16        MR. SCHAR:  I guess several, Judge.  And I'll
17  knock them out as quickly as I can.
18        The issue of the instructions, we had given
19  you a binder which lays it out by tab.  Actually
20  we're proposing that a juror get a binder similar to
21  that for ease of use.  Obviously, that not a
22  decision that needs to be made today, but,
23  organizationally, we think it's not controversial
24  and neutral and hopefully would help organize the
25  instructions for them.

:18AM
:18AM
:18AM
:18AM
:19AM

1          In terms of the defense case, Judge, at this
2     point we don't have any exhibits that have been
3     offered or tendered to us.  I don't know if they
4     plan on offering any, but that also includes phone
:19AM  5     calls that they might anticipate playing,
6     transcripts.  And as you might recall last time, we
7     spent quite a bit of time addressing the book of
8     relevance and admissibility of a number of different
9     calls.  Maybe they don't intend on playing any calls
:19AM 10     with any witness.
11          THE COURT:  What they have addressed to me
12     is, the volume of materials is likely to be
13     significantly less than it was last time.  I had
14     made conditional rulings with respect to some of
:19AM 15     them, which I'm likely to adhere to, and we'll see
16     what else is submitted.
17          There were in the last time some pages that I
18     think not even the defense intended to ask for, so I
19     don't think we're going to have to face that.  And
:20AM 20     there are conditions under which, as I said at the
21     first trial, I would be willing to permit the
22     playing, and I still might be willing, that view I
23     have not changed.
24          So I think they will proceed to give you a
:20AM 25     tentative list and we'll try to deal with that on

1  Monday if it's necessary for us to deal with.

2      MR. SCHAR:  That would be ideal, Judge.

3  Because, obviously, I don't anticipate their need to

4  call witnesses to put in transcripts, but that

5  would, obviously, require us to stipulate what

6  they're accurate and we're not in a position to do

7  that at this point.

8      THE COURT:  That's fine.  We'll have time to

9  deal with that.

10      Anything else you wanted to do raise?

11      MR. SCHAR:  No, Judge, I think most of the

12  other issues really depend whether the defendant is

13  going to testify.  I think if that ends up being the

14  decision, there are a variety of other different

15  issues related to some privilege and other things

16  that we flagged for you the first time that will

17  come back into play, but until the final decision is

18  made in that regard, I don't think we need to

19  address it now.

20      THE COURT:  I think you meant to say when an

21  initial decision is made, because what happens with

22  the issues you raise might possibly alter the

23  decision one way or the other.  So, basically,

24  accepting your meaning as that, I think we're fine.

25      Anything else anybody else want to raise?

:20AM
:20AM
:21AM
:21AM
:21AM

3210

1    MR. SOROSKY:  Yes, based on your guidelines,
2 I think there are a few topics we have to meet with
3 you again at sidebar to go over.
4    THE COURT:  Sure.
5    (Proceedings heard at sidebar on the record.)
6    MR. SOROSKY:  There are two topics I want to go
7    over with you and then however you want to
8    handle it.
9    THE COURT:  Yeah.
10    MR. SOROSKY:  The first is, if we were to
11 call Robert Blagojevich as a witness to
12 fundamentally repeat substantially what he testified
13 to in the first trial, Mr. Ettinger has indicated he
14 would take the Fifth amendment.  So the issue then
15 is, one, is he unavailable, and if he is unavailable
16 how do we get this transcript in, that's issue
17 number one.  I'm not saying you have we address it
18 this second.
19    THE COURT:  Interesting point.
20    MR. SOROSKY:  Now, second, we spoke to
21 Ettinger, what do you want from them to indicate
22 that he's unavailable?
23    THE COURT:  We could do this in front of
24 them.
25    MR. SOROSKY:  What?

:21AM

:28AM

:28AM

:29AM

:29AM

3211

1        THE COURT:  We could do this one in front of
2   them now.
3        MR. SOROSKY:  No, no.
4        THE COURT:  Is this one we can't do in front
5   of them?
6        MR. SOROSKY:  No, we can.  We can do it in
7   front of them, I just wanted -- no, we can it in
8   front of them, I just wanted to tell you.
9        The next thing is, should Blagojevich
10  testify, would the government be able to impeach him
11  with his --
12        THE COURT:  Let's bring him here.
13        MR. SOROSKY:  What?
14        THE COURT:  Let's bring him here.
15        MR. SOROSKY:  Okay.  Bring the prosecution
16  over.
17        You want to do this in open court or we'll
18  mention it here first?
19        THE COURT:  We'll mention it here.
20     (Government counsel joins sidebar:)
21        THE COURT:  The two issues that were
22  raised --
23        MR. SOROSKY:  Recently just now.
24        THE COURT:  -- just now, they can be raised,
25  obviously, in your presence.

3212

1          MR. SOROSKY:  The first is --

2          THE COURT:  Robert Blagojevich.

3          MR. SOROSKY:  If we were to call Robert

4    Blagojevich as a witness, Michael Ettinger has

5    indicated he would take the Fifth Amendment because

6    of the dismissal with prejudice.

7          MR. SCHAR:  Without prejudice.

8          MR. SOROSKY:  So if he would take -- assuming

9    the government doesn't change its position as to the

10   status of the dismissal, we would want to call him

11   as a witness to say substantially, you know, what he

12   said in his first trial, and we would ask that the

13   judge declare him unavailable to present him and

14   then try to get his transcript in.

15          So the first thing I said to the judge is,

16   what material do you want form Ettinger and Robert

17   Blagojevich to firmly establish that he is taking

18   the Fifth Amendment and then, secondly, if it is,

19   what is your position on that whole topic.  You

20   don't have to answer today but Monday ...

21          THE COURT:  The issues you'll have to address

22   is whether his claim of privilege makes him

23   unavailable.  If the claim of privilege makes him

24   unavailable, does his transcript go in, read from

25   the witness stand.  If it goes in, does it go in in

3213

1  part or in whole, the passages that are objected to.

2  And then the issue which Mr. Sorosky has not brought

3  out is whether the jury knows the disposition of his

4  case.

5      And the reason this is tricky is, there is

6  somebody who, theoretically, is off the hook and yet

7  is claiming privilege, which is a funny

8  circumstance.

9      MR. SOROSKY:  Well --

10      THE COURT:  Then there's one last thing, and

11  that would be, I think, to the defense that you give

12  him use immunity against his testimony here, which,

13  interestingly enough, many years ago in state court

14  I did as a prosecutor, but I had a unique

15  circumstance, and that is every witness I called

16  also had use immunity, so I gave one to the defense,

17  it blunted the defense argument for no good use to

18  me, I lost anyway, so I remembered that.  I don't

19  remember the cases I won, I remember the ones I

20  lost.

21      MR. SOROSKY:  Assuming, assuming, just

22  responding to the issues about whether he is off the

23  hook or that type of thing, the Fifth Amendment, if

24  someone read his testimony, his testimony is he

25  lives in Nashville and if they're saying he is

:32AM

:32AM

:32AM

:33AM

:33AM

3214

1  unavailable, it's very conceivable that the jurors

2  just may presume he lives in Nashville and that's

3  why he is unavailable and that whole topic could --

4        THE COURT:  We'll see.

5        MR. SOROSKY:  That is a potential.

6        THE COURT:  We'll see.

7        MR. SOROSKY:  Next issue is, should the

8  defendant testify, would he be subject to

9  impeachment by the conviction in the first trial,

10  that issue.  And, obviously, I don't want to say

11  unique, but a little peculiar because --

12        MR. SCHAR:  Judge, we actually have a motion

13  on this.  The case law is pretty clear that he is

14  subject to impeachment, and we're happy to file a

15  motion in limine.  We haven't filed it yet, it's

16  ready to go.

17        THE COURT:  It's interesting.  I wondered

18  about that because, of course, he is not convicted,

19  technically, until he is sentenced, and I didn't

20  bother to look up the law.

21        MR. SCHAR:  We have the law.  Do you want us

22  to file the motion?

23        THE COURT:  Give me a list of cases.

24        MR. SCHAR:  I tell you what --

25        THE COURT:  I occasionally like to read them

3215

1  myself.

2       MR. SOROSKY:  How about if you do it the old

3  fashioned way and just give the judge and the

4  defense a copy of your motion, how's that?

5       MR. SCHAR:  I'll do it however you want.

6       THE COURT:  Just send me an e-mail with the

7  cases.

8       MR. SCHAR:  I'll hand you both a copy.

9       MR. SOROSKY:  Let's do it the old fashioned

10  way.

11       MR. SCHAR:  And we'll call it a draft copy.

12    (Brief pause).

13       THE COURT:  Okay.

14       Did you have something else?

15       MR. SOROSKY:  Anything else that you can

16  think of?  Touchy little peccadillos?

17       MR. SCHAR:  I don't think so, Judge.

18  Obviously, if the defendant ultimately makes an

19  initial decision to testify, I think there are going

20  to be a number of kind of sensitive issues related

21  to -- particularly if he is going to testify about

22  his understanding or what he thought the words were

23  telling, but we can cross that bridge when we come

24  to it.

25       MR. SOROSKY:  Can we do this now?  Since

:35AM

:35AM

:35AM

:36AM

:36AM

3216

1 everyone on this side is anticipating what the other
2 side is going to do and since it's retrial, maybe it
3 would be provident now for the government to recite
4 some of the things that they feel that defendant
5 cannot say if he testifies so we know where they're
6 at.
7         THE COURT:  Well, one thing --
8         MR. SOROSKY:  Or the Court can.
9         THE COURT:  One thing I've actually ruled
10 upon, and that is he, obviously, cannot claim that
11 he relied upon somebody's advise, because he never
12 got advise.  What he can say is what John Cheek
13 said, which is I honestly believed that what I was
14 doing was legal.
15         MR. SOROSKY:  Now, let me just interrupt you
16 right now.  Can one of the reasons --
17         THE COURT:  I'm getting to that.  Believe me,
18 I'm getting to that.
19         MR. SOROSKY:  Okay.
20         THE COURT:  I believed it, I realized today
21 after all this stuff, probably wrong about that, I
22 believed it.  Cheek in his income tax case, of
23 course, believed it forever.  He had one moment at
24 trial where he said that the only way he would
25 concede that he was wrong is if the nine justices of

:36AM
:36AM
:37AM
:37AM
:38AM

1 the Supreme Court told him he was wrong, and then I
2 sent the jury out, and I gave him a copy of the
3 opinion, because he apparently had not read a
4 portion of the opinion which says all of the other
5 arguments against the income tax laws made by Cheek
6 are frivolous and not supposed to address them.  And
7 I told him, this is your case, they were telling
8 you, the nine justices, personally, that.  And there
9 was this very long silence, it was one of those rare
10 moments in the courtroom.  So he says I believed
11 this stuff, then he can use even the ammunition that
12 the prosecutor wants to use, I'm a lawyer, I went to
13 law school.  Could I have been wrong, yeah, but I
14 really believed this stuff at the time, this is what
15 I thought.  Then the issue arises is, does the
16 government get to cross-examine him.  So you're a
17 lawyer, you know, did you consult a lawyer, did you
18 consult some expert, did you do this, did you do
19 that.
20        And in this particular case, I think that
21 that's fair impeachment, and it's a good reason why
22 I don't think he wants to testify that there were a
23 lot of lawyers in the room and that nobody
24 protested.  It might seem like an attractive thing
25 to say if you're sitting where you're sitting, but

3218

1  it isn't, in fact, attractive, because the counter

2  is sitting in a room full of lawyers, did you ever

3  say to them.  Now, maybe he did something that is

4  unrecorded where he's going to say yeah, as a matter

5  of fact.  But, basically, we're going to deal with

6  that issue when it comes up, because he is entitled

7  to say, I think, it is honest belief.

8        Now, if you want to research Cheek and see if

9  it actually applies here, you're welcome to do that.

10  Because the truth is is I am basing this essentially

11  on my understanding of the Cheek case, which I

12  remembered quite well because I tried it the second

13  time, and then maybe there's an issue where I don't

14  see it.

15        But that's basically where we wind up.  And

16  then there's one of two paths he can go down.  One

17  path is is that I thought it was legal and

18  everything they say I did I did, but I thought it

19  was legal.  And the other path he goes down is the

20  path that was suggested in opening statement, which

21  is yeah, I did all of this stuff but I really didn't

22  take any affirmative step and I just decided at the

23  end not to go through with it, at which case your

24  argument has been done, he didn't go through with

25  it.  It's a fair question for the jury to deal with,

1  and a question that if he testifies he is going to
2  have to answer.
3        But, basically, this is my thinking about it
4  and I'm telling you this thinking about it not to
5  dictate the results, but to give you a chance to
6  tell me I'm wrong or, yeah, you're right but this is
7  where we think the line should be drawn and somebody
8  else has a different version of the line.  So I want
9  you to know where I start, may not be where I finish
10 at but this is where I start.
11       MR. SOROSKY:  Can he say, I'm just asking,
12 that one of the reasons why he believed no one said
13 he couldn't do it, but all the people he talked to
14 are top of the game in their field or whatever?
15       THE COURT:  He can say that no one said I
16 couldn't do it.
17       MR. SOROSKY:  Or no one said it was --
18       THE COURT:  But, you know, he's got some --
19 the tenor of what he is doing on the tape is
20 difficult to prepare him for cross on that one.
21 But, you know, if that's what he wants to rely on,
22 which is not dissimilar from what Cheek said, you
23 know, "I would accept this only if the nine justices
24 of the Supreme Court court told me," well, in this
25 case he picked an unfortunate example, but with a

3220

1   lot of tax protesters, they haven't read the opinion

2   and it doesn't involve him personally, and if that's

3   his standard, I think he can try that, he can try

4   that.

5          And the other thing he can try, although --

6   well, something you need an expert for and you

7   haven't designated one, so I'm not going raise it.

8          MR. SCHAR:  Obviously, Judge, the complicated

9   factor in all of this is, I understand what he wants

10  to say.  Of course, from our perspective, there are

11  all types of doors that can be opened in

12  relationship that he had outside counsel, including

13  an attorney that really complicates things if he is

14  here today, who if he really cared he could have

15  called up in a heartbeat and said --

16         THE COURT:  Yes, I think they fully

17  understand.  The problem he has with not asking by

18  the guy who spends an enormous amount of time on

19  tape asking.  Because that's basically where this

20  goes, is this a good idea and never asks is it

21  illegal.  And, you know, to be effective on the

22  witness stand he is going to have to present himself

23  as a flawed person, and he's going to have to

24  concede a lot of flaws, and maybe suggest another

25  one, which is why if he goes on the stand he has a

3221

1    chance, you know.  It's a deeply flawed person,
2    maybe even a jerk, but not a criminal.
3          Okay?
4          MR. SCHAR:  Yes.
5          THE COURT:  Anything else?
6          Let's go back out there on the record.
7       (The following proceedings were had out of the
8         presence of the jury in open court:)
9          THE COURT:  What we've done at sidebar, and
10   we did it at sidebar because counsel wanted to raise
11   issues, possibilities of issues that have not yet
12   arisen, and may never arise and for which no
13   decision is called for, but we now have a list of
14   possible issues that might arise so that the
15   attorneys can do whatever research they need to do,
16   we won't have to wait for briefing, and some of them
17   can make decisions based on what that research
18   reveals.  And we probably will deal with these
19   issues, if they are raised, either at the end of the
20   day Monday or probably at the beginning of the day
21   on Wednesday.  So that's the scheduling for that.
22          Everybody has the possible list.  Obviously,
23   I don't want to deal with any of that list until I
24   know that it's moved from the possible to the actual
25   in which case I can read some law, too.

:45AM
:39AM
:39AM
:39AM
:40AM

3222

1        Anything further?

2        MR. SCHAR:  No.

3        MR. SOROSKY:  Nothing further.

4        THE COURT:  Okay.  I will see you Monday at

5  9:30.

6        Thanks.

7        THE MARSHAL:  All rise.

8

9

10     (Adjournment taken from 11:40 o'clock p.m. to

11      9:30 o'clock a.m. on May 23, 2011.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

:40AM

3223

*       *       *       *       *       *       *       *

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED
MATTER

/s/Blanca I. Lara                         date


_____        _____
        Blanca I. Lara                         Date