5623

1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
2                       EASTERN DIVISION

3    UNITED STATES OF AMERICA,        )
                                      )   No. 08 CR 888
4              Government,            )
                                      )
5    vs.                             )   Chicago, Illinois
                                      )
6    ROD BLAGOJEVICH,                )   June 16, 2011
                                      )
7              Defendant.            )   9:43 o'clock a.m.

8
                            VOLUME 33
9                TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE JAMES B. ZAGEL
10                      AND A JURY

11
     For the Government:
12
                THE HONORABLE PATRICK J. FITZGERALD,
13              UNITED STATES ATTORNEY
                BY:  Reid J. Schar
14                   Carrie E. Hamilton
                     Christopher Niewoehner
15                   Debra Bonamici
                 Assistant United States Attorneys
16              219 South Dearborn Street;
                Suite 500
17              Chicago, Illinois 60604

18
     Court Reporter:
19
                  Blanca I. Lara, CSR, RPR
20                219 South Dearborn Street
                        Room 2504
21                Chicago, Illinois 60604
                      (312) 435-5895
22

23

24

25

5624

APPEARANCES   (continued:)


For Defendant Rod Blagojevich:


        KAPLAN & SOROSKY
        BY:   Sheldon M. Sorosky
        158 West Erie
        Chicago, Illinois 60610
        (312) 640-1776


        LAW OFFICE OF Elliott Riebman
        BY:   Elliott Riebman
        158 East Erie
        Chicago, Illinois 60610
        (847) 814-2900


        OFFICES OF AARON B. GOLDSTEIN
        BY:   Aaron Benjamin Goldstein
        6133 South Ellis
        Chicago, Illinois 60637
        (773) 752-6950


        OFFICES OF LAUREN FAUST KAESEBERG
        BY:   Lauren Faust Kaeseberg
        2140 N. Lincoln Park West
        Suite 307
        Chicago, Illinois 60614
        (773) 517-0622

5625

1                          INDEX OF EXAMINATION

2    WITNESS                                              PAGE

3

4      Question By the Jury............................ 5626

5

6

7    EXHIBITS

8      ...............................................

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5626

18        (The following proceedings were had in

19   Chambers Room 2588 with Court and counsel:)

20

21                    QUESTION BY THE JURY

22

23        THE COURT:  We have two things to discuss,

24   one which we will do in open court.  There was a

25   note from the jury.

5627

1       What was the page?

2       COURT'S LAW CLERK:  28.

3       THE COURT:  Page 28, the third element, the
4  one that says "representations, promises,"
5  blah-blah-blah.  They want guidance.  It's not clear
6  what kind of guidance they want.  Maybe they're
7  concerned about the word other side "material,"
8  maybe they're concerned about the fact that we use a
9  lot of words for the same thing.  So we will discuss
10 that.  And I expect that shortly thereafter, you'll
11 want some time to look up a little law.  This is the
12 question, I'll read it out loud, I will do the same
13 thing outside:

14     "The jury would like clarification on the
15      third proposition page 28 of the jury
16      instructions ..."

17        that's all they said.

18        The second reason you are here is something
19 which we are doing in chambers and something that
20 will result in the entry of an order.

21        The government gave me notification about
22 something that was done on WTTW and then sent me a
23 disk, and someone else, my wife, saw something on
24 ABC.  I've looked at both of them.  I got them on
25 the web, I didn't see them when they were broadcast.

5628

1          I also noticed when I was watching the CBS

2   news this morning, the younger Sam Adam was

3   advertising appearing on CBS news at 4:30.

4          I'm going to enter an order barring

5   statements by any counsel for either party, and by

6   any counsel that means anybody who has appeared in

7   this case and has not been permitted to withdraw

8   their appearance, I'm going to enter an order

9   barring any public statement about the trial.

10         With respect to the thing in WTTW, what it

11  began with was an assertion by the two counsel,

12  Goldstein and Kaeseberg, saying that basically that

13  they can't comment, and then they did, asserting

14  that the defendant always spoke the truth and

15  there's evidence out there that will prove him

16  innocent.  There's actually not too much in the way

17  of single pieces of evidence that prove anybody

18  innocent, there is evidence that tends to show

19  innocence, and I think that that's what they meant.

20  The only piece of evidence I have ever seen that

21  proves somebody innocent was a surveillance camera

22  of a homicide and the shooter was obviously not the

23  defendant on trial.

24         The comments of the younger Sam Adam were

25  less egregious, partly because it began with the

:51AM

:51AM

:52AM

:52AM

:53AM

5629

1  reporter saying "we want you to be objective" and he
2  said he really couldn't be, but those comments were
3  pretty temporary.  They were basically comments
4  about what he thought a jury might do.
5     It is true that I regard this jury as
6  exceptionally diligent and unlikely to watch
7  anything or read anything.  I thought their
8  diligence was clearly manifested in second line of
9  the note they sent yesterday in which they said that
10 there were differences between the two transcripts,
11 there were extra pages, and after pointing this out
12 to me there was a separate line saying we have not
13 read the extra pages, which means they instructed
14 themselves that they shouldn't read the extra pages.
15    The problem that concerns me with this,
16 particularly if one is talking about what the jury
17 might or might not do or comments about the jurors,
18 and the younger Sam Adam did make a comment about
19 his preference for women jurors, what jurors usually
20 see, if they see anything at all, is some kind of
21 tag line, something in the promotional thing,
22 so-and-so will be here and then they know to turn it
23 off.  It's like seeing the headline in the
24 newspaper, you don't read the story.
25    I think, in my view, it increases the

5630

temptation to the jurors because it's a promotion by
the media that this is going to be about the jurors
or the jury, and I think that's a temptation.  But
what is mainly wrong with it is not that it
necessarily will contaminate the jury, it just adds
an element of risk that after this expenditure of
time and effort should not be tolerated.

I believe one of the defense counsel made a
statement about the enormous cost of a retrial.  The
statement was inaccurate, but the truth is is
retrials do cost.  And if by some chance this rare,
slightly increased risk results in something which
requires further trial proceedings in this case,
that's a cost that the government, which is pretty
much bearing the entire cost here, the government
should not be forced to pay.

So I am barring all public statements by all
counsel until the verdict has been reached.

I have actually given some thought to the
proposition that no comment should be allowed until
a verdict has been returned on all counts, because
it's possible we might have a verdict and there
might be extra counts on which they couldn't reach a
verdict, but I decided not to do that because should
that occur again, the period of time which would

5631

1 elapse between that and any further proceedings is
2 likely to be long enough to dissipate concerns.
3      So I'm making as narrow a rule as I can, and
4 the order expires roughly one minute after the
5 verdict is read in court.
6      There are other grounds and other reasons for
7 such orders and such restrictions, but in this
8 particular high publicity case, I am mainly
9 concerned with the risk I've just identified.  There
10 may also be issues of appropriate conduct under the
11 various canons that govern lawyers' conduct, but it
12 will be premature for me to make a judgment on that.
13 So there is an absolute bar for whatever time it
14 takes to reach a verdict.
15      It is also extremely important that this
16 notice of this be given to all counsel who are still
17 of record.  My clerk has on several occasions
18 attempted to reach the elder Sam Adam and the
19 younger Sam Adam and has been unsuccessful in doing
20 so, but he has informed them of what the nature of
21 the order is.  I would appreciate the assistance of
22 defense counsel who are here in getting that message
23 to them, because my other alternative is to have a
24 written order and send a marshal out to find them.
25      MR. SOROSKY:  We'll reach out to them.

5632

1        THE COURT:  Yeah.

2        MR. SOROSKY:  I noticed -- or you said Sam

3   Adam, Jr., was announced to be on a show this

4   afternoon?

5        THE COURT:  At 4:30.

6        MR. SOROSKY:  Okay.  So we'll try to get to

7   him before 4:30.

8        THE COURT:  Now, for all I know, this was

9   taped, which creates a problem for me, but ....

10        MR. SOROSKY:  They usually want the lawyers

11   live, so it probably is not.

12        THE COURT:  Yeah, I think it's probably not

13   taped.

14        Now, another point I would like to make is,

15   in my experience, lawyers go on television for one

16   reason more than any other, and it's not to subvert

17   the jury.  They go on television because it's a form

18   of lawyer advertising for which they don't have to

19   pay.  There is nothing wrong with lawyer

20   advertising, it is a perfectly legal thing to do,

21   people can promote themselves all of the time.  But

22   the value of this lawyer advertising, which I don't

23   doubt, I have been given numerous examples and heard

24   a lot of informal shatter among lawyers, one in

25   particular is a major litigator of civil cases had a

5633

1 disastrous loss, lost many, many millions of dollars
2 for a very large client and he thought that it would
3 damage his career, and a year later he was making a
4 pitch to a large corporation and he was very
5 concerned, then somebody said weren't you in the
6 so-and-so case, and he once told me his heart sank,
7 and he said yes, I was, and the guy who questioned
8 him said, hey, that was a big case, just you were in
9 a big case, you must be a good lawyer.  So that's an
10 advantage for a lawyer in any high publicity case,
11 but that advantage will exist after the verdict, as
12 well as it does before the verdict.

13          And more importantly, in some cases, going on
14 the air presents risks to the defense even if a jury
15 does see it, because there remains the fact that
16 some juror might see this, take a took at the
17 lawyers for the defense and say I don't like them.
18 There is no guarantee and not necessarily a
19 probability that whatever influence the defense
20 counsel have on a jury, if they do manage to see it,
21 will favor their client.  A juror might take one
22 look at the younger Sam Adam and develop bad
23 feelings about him because he's overweight or they
24 don't like the way he talks or maybe they don't like
25 somebody's last name, and it's the kind of stuff you

:00AM

:01AM

:01AM

:02AM

:02AM

5634

never hear about.  The proposition that what a
defense lawyer does on the air proclaiming innocence
helps the client is one that ought to be critically
examined by the lawyers who do it, and pretty much
they never do.  They never say, well, would somebody
be offended by my saying this.

        Interestingly enough, I think pretty much all
lawyers do when they talk about talking in front of
a jury.  They think about, well, is what I'm going
to say going to upset a juror.  The same rule
applies to televised appearances.  And I don't know
that anybody who did appear on television took a
fairly rigorous analysis of whether this is going to
help or hurt the client.

        At the close of the WTTW thing that I saw,
the interviewer said to the lawyers who appeared at
that time, you know, why are you here, we asked the
government, the government said they would never
comment on a case before a verdict, and the response
was we came because we were invited.  Considering
the gravity of the consequences of this case, I
thought that was hard to flip into a response.  What
I'm saying here is not the order itself, it's my
advise to counsel even in situations where
television appearances are permitted, to exercise

5635

1  some caution in doing so.  My order eliminates the
2  need to consider that caution because I'm saying no.
3       I will embody this in a written order which I
4  will file under seal and you are free of course to
5  seek mandamus from the Court of Appeals of the
6  Seventh Circuit if anybody here does not like this
7  ruling.
8       I would like to get some verification from
9  Mr. Sorosky or one of the defense team that they
10  have in fact notified the other lawyers.
11       MR. SOROSKY:  We will do that and we will
12  call you when we complete that.
13       THE COURT:  That's fine.
14       MR. SOROSKY:  Now, let me ask you one
15  question because I'm sure it could come up when we
16  speak to Sam Adam, Jr. if he has to cancel a
17  previous arranged agreement, so to speak.
18       THE COURT:  Yes.  Right.
19       MR. SOROSKY:  Is he --
20       THE COURT:  He is free to say that there is a
21  court order against it.
22       MR. SOROSKY:  I just wanted to know.
23       THE COURT:  Yes.
24       MR. SOROSKY:  Do you want -- obviously the
25  media is going to hound the people on the defense

5636

side what went on back there.

  THE COURT:  Yes.

  MR. SOROSKY:  Can we tell them?

  THE COURT:  I order you not to tell them --

  MR. SOROSKY:  Okay.

  THE COURT:  -- because what will happen if you did that --

  MR. SOROSKY:  We will not.

  THE COURT:  Yeah, but there's a reason for it, it's not an arbitrary prohibition.  The reason that is the case is, what is likely to happen is for those media who have already recorded this, they'll play it again, they'll play it again because they say, you know, we're prohibited by court order from doing this but we exclusively have young Sam Adam here on ABC and, you know, this must be significant because the court ordered it.

  MR. SOROSKY:  Well, if Sam Adam, Jr. relates to CBS that he can't be on because of the judge's order, then, I mean, that will go through the entire media like wild fire --

  THE COURT:  The truth of the matter is is what he should simply do is to decline and offer no explanation.  So that's my order now, because you have made a good point, Mr. Sorosky.

5637

1        MR. SOROSKY:  Yeah.  We'll go through that.

2        THE COURT:  The other thing is is by chance

3   the media will have something else to write about

4   today, which is the question on the instruction.

5        So we're going to resume in open court

6   shortly.

7        MS. KAESEBERG:  Can we see the note?  Because

8   I want to make sure we have it right.

9        MR. SCHAR:  Judge, is it possible for us to

10  get a copy of page 28 or we can go back downstairs?

11        THE COURT:  We'll copy it.

12      (The following proceedings were had out of

13       the presence of the jury in open court:)

14        THE COURT:  Counsel, approach the lectern.

15      (Brief pause).

16        THE COURT:  As I have informed counsel in

17  chambers, we received an inquiry from the jury, the

18  inquiry I will read it:

19

20

21      "... the jury would like clarification on

22       the third proposition page 28 of the jury

23       instructions."

24        To put this in context, I'll read the whole

25  instruction:

5638

".... Counts 1 through 10 of the indictment
charge the defendant with wire fraud.  To
sustain the charge of wire fraud as
charged in Counts 1 through 10 the
government must prove the following
propositions beyond a reasonable doubt:
First, that the defendant knowingly devised
or participated in a scheme to defraud the
public of its rights to the honest
services of Rod Blagojevich or John Harris
by demanding, soliciting, seeking, asking
for, or agreeing to accept a bribe in the
manner described in the particular count
you are considering;
Second, that the defendant did so with the
intent to defraud;
Third, that the scheme to defraud involved
a materially false and fraudulent
pretense, representation, promise, or
concealment;
And fourth, that for the purposes of
carrying out the scheme or attempting to
do so the defendant used or caused the use
of interstate wire communications to take
place in the manner charged in the

1    particular count you are considering."

2        This means that the jury has asked for

3    clarification of the following words:

4        ".... that the scheme to defraud involved a

5        materially false and fraudulent pretense,

6        representation, promise, or concealment."

7        This, in my initial reading of it, presents

8    two possible interpretations of what they want

9    clarification of.  Although, there are three basic

10   concepts here, three basic categories of this

11   instruction, the first one is "materially," the

12   second one is "false and fraudulent," and the third

13   group includes "presence, representation, promise,

14   or concealment."  I do not believe the jury could

15   possibly be asking for definition clarification of

16   false and fraudulent, what they might be asking for

17   is "materially" on one hand and/or "pretense

18   representation, promise, or concealment."

19       We have informed the jury, through the court

20   security officer, that some time will pass before

21   they receive a response to the inquiry, because you

22   don't like them to be sitting there just waiting for

23   this.

24       My belief is that this might require some

25   level of research or thought before the sides make a

5640

1 final decision as to what position they would take.

2 If my assumption is untrue, you could tell me now.

3       MR. SCHAR:  Judge, we discussed it and I

4 think the issue is difficult to know precisely what

5 it is that they want clarification on, which we have

6 several different options.  One is to provide

7 clarification on a variety of different things, and

8 the other is there is some clarification within the

9 instructions --

10       THE COURT:  There is.

11       MR. SCHAR:  -- generally, as they continue to

12 read on.  I'm assuming they have done that, but

13 maybe they have not.

14       I think it was our initial reaction, unless

15 Your Honor thinks we should be approaching it

16 differently, to indicate that they should re-read

17 the instructions and then if they continue to have

18 questions, provide a little more specific

19 information as to precisely what they want

20 clarification on so the issue can be narrowed and I

21 think a more precise can be provided, which I'm not

22 sure what we can possibly do at this point.

23       MR. GOLDSTEIN:  We agree, Your Honor.

24       THE COURT:  Which leads to the next question.

25 We have a form, a jury inquiry form, we also have a

5641

1  response to the jury form, both of these forms do
2  not have any little number authorizing it from the
3  general printing office, we make this up all by
4  ourselves, and this one says "response to jury."  I
5  have on occasion filled in "responses to jury" by
6  asking a question of them, which may actually be
7  helpful for me to present to them what it is that
8  they want clarification on.  In other words, the
9  court would like to know if you can, tell us, which,
10 if any, of the following terms do you want clarified
11 or whether you want all of them clarified.  I think
12 maybe that might advance us a little further.
13       The defense express a view?
14       MS. KAESEBERG:  Our preference would just be
15 that before asking that question, as Mr. Schar said,
16 send a statement saying something to the effect of
17 you can continue to read the instructions and if you
18 need further clarification then pose a question.  I
19 think as it stands we rather have them just read --
20 because there is clarification within the
21 instructions, but if they haven't gotten to that
22 happen point yet we'd like them to get there first.
23       MR. SCHAR:  Judge, I think it ought to be, at
24 a minimum, two-fold, I don't think it should just be
25 to continue to read the instructions.

5642

1          THE COURT:  I almost never give a
2    continue-to-read instructions alone because there's
3    a subtext there which would begin if you -- the one
4    with the subtext is the real text is "you idiots,
5    continue to read this."
6          MS. KAESEBERG:  I did mean twofold, if I
7    wasn't clear, I meant before you pose the question
8    tell them to do that first.
9          MR. SCHAR:  I think it could be done in a way
10   such as: If after reading all the instructions you
11   still need clarification, please provide some
12   indication, something like that.
13         More specificity as to which part of the
14   third line you need clarification on.
15      (Brief pause)
16         THE COURT:  When you refer to the fact that
17   there are definitions in there, the only one I see
18   that is--and it's here--that is traditionally a
19   specific definition is the definition of
20   materiality.  So my guess, and it's only a guess, I
21   could be wrong, is "presence, representation,
22   promise or concealment" that's at issue here.
23      (Brief pause)
24         THE COURT:  Okay, this is my first draft in
25   which I try to avoid the implied insult:

5643

1   "I ask you to take another look at the
2   relevant instructions and after you've
3   done so I ask you to specify --" "... I
4   ask you to state which specific words or
5   phrases in the third proposition that you
6   believe you need clarification."
7       I'll read it again:
8   ".... I ask you to take another look at the
9   relevant instructions and after you have
10  done so I ask you to state which specific
11  words or phrases in the third proposition
12  you believe need clarification."
13      MR. SOROSKY:  After the afraid "after you've
14  done so," could we put in the phrase "if you so
15  need"?  Because your instruction somewhat implies
16  they should ask for something, but, you know, maybe
17  perhaps they may feel after looking at the
18  instructions they may not need to come back to the
19  Court.
20      MR. SCHAR:  That's fine, Judge.  "If
21  necessary."
22      THE COURT:  Yeah.  Okay, now we are at this
23  one:
24  "I ask you to take another look at the
25  relevant instructions, if necessary, I ask

5644

1     you to state which specific words or

2     phrases in the third proposition you

3     believe need clarification on."

4        MR. GOLDSTEIN:  I think it was "take another

5  look at at the relevant instructions and if

6  necessary after you do so could you state what it

7  was."  I mean what --

8        THE COURT:  You want me to repeat this again?

9        MR. GOLDSTEIN:  Yeah, maybe I misheard it.

10       THE COURT:  Okay.  Actually, "maybe if

11  necessary" is ....

12    (Brief pause)

13       THE COURT:  It's now two sentences:

14   "... I ask you to take another look at the

15    relevant instructions if you believe this

16    would be helpful.  I ask you to state

17    which specific words or phrases in the

18    third proposition you believe need

19    clarification."

20     Let me say it again just so everybody's got

21  it --

22       MR. SCHAR:  I think the issue is slightly

23  flipped --

24       THE COURT:  Yeah, it is flipped.

25       MR. SCHAR:  -- in the sense that I assume you

5645

1 are going to ask them to go back and look at the
2 instructions and if after looking at the
3 instructions it's still necessary that they need
4 clarification, that I think is the issue.
5       THE COURT:  Is that okay with you?
6       MR. GOLDSTEIN: Sure.
7       MR. SOROSKY:  Sure.  Sure.  Absolutely.
8 Because -- right.
9       THE COURT:  Say that again, Mr. Schar.
10       MR. SCHAR:  Judge, I think it would be your
11 first sentence ending with a period after
12 instructions, I ask you to go back and look at the
13 relevant instructions, period, and then -- I can't
14 remember exactly -- --
15       MS. KAESEBERG:  "After you've done --"
16     (Court reporter reading:)
17       MR. SCHAR:  "If after doing so ...."
18       MS. KAESEBERG:  I think it's "after you've
19 done so, if necessary, I ask you to state the
20 specific words."
21       THE COURT:  Okay, so we are abandoning
22 Mr. Sorosky's thing which tells them you can decide
23 whether or not you want to take a another look at
24 the instruction.
25       MR. SOROSKY:  I think it's in accord.

:33AM
:33AM
:34AM
:34AM
:34AM

5646

1        MS. KAESEBERG:  It's the same thing.

2        THE COURT:  It's fine.  I mean --

3        MR. SCHAR:  If you would just read the second

4 sentence.

5        THE COURT:  Okay, try it with me again:

6    ".... after you have done so, if you think

7     it is necessary, I ask you to state which

8     specific words or phrases in the third

9     proposition you believe you need

10     clarification."

11    I'll say it again --

12        MR. SOROSKY:  Before you state it, let me

13 throw out one other suggestion.

14        THE COURT:  Sure.

15        MR. SOROSKY:  Instead of relevance, instead

16 of "relevant instructions" you might want to use the

17 phrase "instructions you have already received,"

18 because I think by "relevance" we mean the

19 instructions they have already received but may not

20 hit home to the jury.

21        MR. SCHAR:  Okay, I'm assuming what you want

22 to do, you're trying to guide them to the

23 instruction that deal with wire fraud as opposed to

24 all of the instructions.

25        THE COURT:  Right.

5647

1      MR. SCHAR:  So I think "relevant" makes sense
2  to me.
3      THE COURT:  I think so, too.  If this weren't
4  an element of one specific offense and not elements
5  of others.
6      So the final version thus far unless somebody
7  has another suggestion:
8     "... I ask you to take another look at the
9      relevant instructions.  After you have
10      done so, if you think it is unnecessary, I
11      ask you to state which specific words or
12      phrases in the third proposition you
13      believe need clarification."
14      MR. SCHAR:  That's fine, Judge.
15      MR. SOROSKY:  Yes.
16      THE COURT:  Okay, that's what we'll send
17  them.  Don't go far.
18      Actually, my suggestion is is that you go to
19  some nearby library or computer and start
20  researching on what you believe might be the
21  possible request.
22      MR. SOROSKY:  Is the jury going to go to
23  lunch now?
24      THE COURT:  I don't know.  No, the thing is
25  that, and I've told the jury this, that once they

5648

1  get the case, they no longer do what I tell them to
2  do at the time I tell them to do it.  These are
3  decisions that are theirs.  And they vary from day
4  to day.  So I don't know.  They could very well be
:37AM  5  at lunch now.  They're in charge.
6         MR. SCHAR:  Thank you, Judge.
7         MR. SOROSKY:  Thank you.
8
9      (Adjournment taken 11:37 o'clock a.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22         *    *    *    *    *    *    *    *
23
24
25  I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

5649

FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED
MATTER


/s/Blanca I. Lara                        date




_____          _____
        Blanca I. Lara                              Date