UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | No. 08 CR 888 |
| v. | ) | Hon. James. B. Zagel |
| | ) | |
| ROD BLAGOJEVICH | ) | |

**GOVERNMENT'S MEMORANDUM REGARDING RESENTENCING**

The United States of America, by and through JULIE BURNHAM PORTER, Attorney for the United States, Acting Under Authority Conferred by 28 U.S.C. § 515, respectfully submits this memorandum regarding resentencing in this matter.

**Background**

Defendant Rod Blagojevich was convicted after two jury trials of wire fraud, attempted extortion, conspiracy to commit extortion, solicitation of a bribe, conspiracy to solicit a bribe, and making false statements, in violation of 18 U.S.C. §§ 1343, 1346, 1951(a), 666(a), 371, and 1001, in connection with a scheme to use the powers of the Office of the Governor of the State of Illinois to exchange official governmental actions for financial benefits. *See United States v. Blagojevich*, 614 F.3d 287 (7th Cir. 2015). On December 7, 2011, at the conclusion of a two-day sentencing hearing, this Court sentenced defendant to serve a total term of imprisonment of 168 months, followed by a

1

two-year term of supervised release, a fine of $20,000, and special assessments totaling $1,800. *Id.*; R. 904. The sentence included the following terms of imprisonment: 168 months on each of Counts 3, 5,-13, 15, 17, 21, and 22; 60 months on each of Counts 16, 18, and 23; and 36 months on Count 24, all to run concurrently. *Id.*

Defendant appealed, challenging his conviction and sentence on multiple grounds. On July 21, 2015, the court of appeals issued a decision, affirming defendant's convictions on 13 of the 18 counts of conviction, vacating his convictions on Counts 5, 6, 21, 22, and 23, vacating his sentence, and remanding for retrial on the vacated counts and/or resentencing. *Id.*

The court of appeals ruled that the defendant could not be convicted of violations of the federal wire fraud, extortion, or bribery statutes for attempting or conspiring to exchange the appointment of Valerie Jarrett to the U.S. Senate seat vacated by President Obama for an appointment to a post in President Obama's cabinet. However, the court ruled, the defendant properly could be convicted under these statutes of attempting or conspiring to exchange the appointment of Jarret to the Senate for other financial benefits, specifically, including a highly paid leadership post in a private foundation or the labor organization "Change to Win" or millions of dollars in seed money for a new §501(c)(4) corporation from which the defendant

2

eventually would draw a salary. Because the jury instructions did not differentiate between the cabinet post and the other benefits sought by the defendant, the court of appeals vacated the five counts that included allegations concerning sought-after cabinet post among other allegations. The court remanded the five counts to the district court for retrial without reliance on the cabinet post allegations, expressly finding that the evidence presented at trial was sufficient to convict Blagojevich of all five counts based on the remaining allegations. *Blagojevich*, 794 F.3d at 738 ("The evidence that Blagojevich sought money in exchange for appointing Valerie Jarrett to the Senate is sufficient to convict, so there is no double-jeopardy obstacle to retrial.").

The court of appeals recognized that the government might prefer to forego a retrial of the vacated counts in light of the other convictions it was upholding and the concurrent sentences imposed by this Court on those counts. In the event that this Court "considered the sought-after Cabinet appointment in determining the length of the sentence," the appellate court remanded the case for resentencing "across the board."

With respect to sentencing, the court of appeals held that this Court did not err in calculating the guidelines by determining for purposes of Guideline § 2C1.1(b)(2) that defendant intended to cause a loss of $1.5 million, or by

applying a 4-level adjustment under Guideline § 3B1.1(a) based on defendant's leadership role. *Blagojevich*, 794 F.3d at 742-43. The court held that the fact that nothing came of defendant's overtures to Representative Jackson's supporters did not make the loss amount speculative because it was "an amount Blagojevich intended to receive from criminal conduct even though not a sum anyone else turned out to be willing (or able) to pay." *Id.* And the court held that defendant led an organization that was "otherwise extensive," "whether or not the defendant's subordinates and associates [were] criminally culpable. *Id.* (citing U.S.S.G. § 3B1.1 Application Note 3.) In sum, the court of appeals held that any error in calculating the defendant's advisory range was in the defendant's favor, and stated its view that the defendant was not entitled to any reduction for acceptance of responsibility, since his conduct represented the antithesis of that term as it is used in Guideline § 3E1.1. *Id.* at 743.

With respect to the overall reasonableness of the sentence, the court of appeals stated:

> The prosecutor has not filed a cross-appeal in quest of a higher sentence but is entitled to defend the actual sentence of 168 months (and to ask for its re-imposition on remand) without needing to file an appeal. Removing the convictions on the Cabinet counts does not affect the range calculated under the Guidelines. It is not possible to call 168 months unlawfully high

for Blagojevich's crimes, but the district judge should consider on remand whether it is the most appropriate sentence.

*Id.* at 743.

After the Seventh Circuit issued its decision, the defendant filed a petition for rehearing, which was denied. Appeal No. 11-3853 R. 124, 125.

The defendant then filed a petition for a writ of certiorari in the Supreme Court, which also was denied on March 28, 2016. Appeal No. 11-3853 R. 130. The defendant moved the Court to reconsider its order, and that motion was also denied.

On March 30, 2016, the government filed a motion stating it would not seek retrial on the vacated counts and requested that the Court proceed to resentencing. R. 1226. The resentencing hearing is now set for August 9, 2016.

The Probation Officer has prepared a Supplemental PSR which includes guidelines calculations that are identical to those included in the Revised Statement of Correction submitted to the Court after the defendant's original sentencing. Thus, dismissal of the five counts vacated by the court of appeals had no impact on the defendant's advisory sentencing range.

## Discussion

The Court must impose a sentence sufficient, but not greater than necessary, to:

(a) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

(b) afford adequate deterrence to criminal conduct;

(c) protect the public from further crimes of the defendant; and

(d) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.[1]

18 U.S.C. § 3553(a)(1) and (2). In determining the sentence, the Court must consider these purposes, in light of a variety of factors specific to the particular defendant and particular case, in particular: (1) the nature and circumstance of the offense; (2) the history and characteristics of the defendant; (3) the properly calculated Sentencing Guideline range along with pertinent policy statements provided by the Sentencing Commission; and (4) the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)-(7).

At the original sentencing, conducted over two days, this Court thoughtfully considered the above factors in light of the evidence and

---

[1] Here the government has not argued that there is a need for the sentence to protect the public from further similar crimes by the defendant or to provide the defendant with needed services.

arguments presented during two lengthy trials, the Presentence Investigation Report ("PSR") prepared by the Probation Officer, and extensive written submissions by both parties. During the hearing, the Court heard extensive argument by counsel for both parties, as well as allocution by the defendant. After careful deliberation, and considering all of the evidence and arguments presented at trial and sentencing, including the defendant's testimony during the second trial and his allocution during the sentencing hearing, the Court determined that a total sentence of 168 months' imprisonment was sufficient, but not greater than necessary to achieve the statutory purposes of sentencing. The Court is now called upon to determine the sentence a second time, taking into account whether changes that have taken place since the original sentencing warrant a change in the sentence. In the government's view, they do not.[2]

### I. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense (18 U.S.C. § 3553(a)(2)(A)).

As discussed above, the Seventh Circuit vacated five of the eighteen counts of conviction, and the government has elected to dismiss rather than retry those counts. Accordingly, at resentencing, the defendant will stand convicted of 13, rather than 18 counts.

---

[2] There is one exception: the special assessment should be reduced from $1,800 to $1,300.

As the court of appeals pointed out, the dismissal of Counts 5, 6, 21, 22, and 23, in no way lessens the seriousness of the defendant's criminal conduct. Absent those counts, the defendant remains convicted of the same three charged shakedowns of which he stood convicted at the original sentencing: the Senate seat shakedown, the racetrack shakedown, and the hospital shakedown. The evidence that overwhelmingly supported those convictions established that the defendant attempted to trade an appointment to the U.S. Senate in exchange for, among other things, $1.5 million in campaign contributions or millions of dollars in seed money for a new organization where defendant later would be employed; attempted to obtain $25,000 in campaign contributions from the CEO of a children's hospital in exchange for implementing an increase to pediatric reimbursement rates; and delayed the signing of a bill to benefit the Illinois horse industry in an attempt to obtain $100,000 in campaign contributions.[3] Further, the evidence showed that, well knowing that the government was investigating his activities, defendant purposefully lied to the FBI during an interview to conceal his criminal conduct in an attempt to obstruct the government's ongoing investigation into his criminal activity and the criminal activity of others affiliated with his administration.

The defendant acted corruptly, repeatedly, and in utter disregard of the trust Illinois voters had placed in him. The dismissal of five of the eighteen counts in no way detracts from that fact. Nor does it take away from the aggravating context in

---

[3] The evidence was summarized in detail in the Government's Version of the Offense, attached as an exhibit to the original PSR. The government will not reiterate the details of the defendant's criminal conduct in this submission.

which the defendant committed his crimes. Defendant ran for governor in 2002 on a platform of restoring integrity to elected office and reforming both the perception and reality that state government was corrupted by pay-to-play deals at the expense of the public trust and fisc. Defendant repeatedly referred to the crimes and convictions of his predecessor, George Ryan, in order to enhance his own image—making the restoration of integrity and trust in government one of the cornerstones of his gubernatorial campaign. When Ryan was convicted in 2006, defendant exploited the conviction, stating "that no one is above the law . . . [a]nd just as important [the guilty verdict] proves that government is supposed to exist for the good of the people, not the other way around, and certainly not for the personal enrichment of those who hold public office." Chicago Tribune, April 18, 2006. This statement proves not only that defendant was well aware that he could not legally exchange official acts for personal financial benefit, but also that he knew the consequences of such exchanges to the people.

This Court aptly described the seriousness of that criminal conduct at the original sentencing:

> You, as the Governor, are seen to control all of them, though I can see, in practice, you don't. You are seen to control what happens. The image of corruption in a Governor seeps into the fabric of nearly all of them. When it is the Governor who goes bad, the fabric of Illinois is torn and disfigured and not easily or quickly repaired. You did that damage.

S. Tr. 259-260. The dismissal of five of the eighteen counts takes nothing away from the Court's assessment.

9

## II. The Need to Afford Adequate Deterrence to Criminal Conduct (18 U.S.C. § 3553(a)(2)(B))

Likewise, nothing in the dismissal of the five counts undermines the need for a very significant sentence in this case to deter current and future public officials from engaging in similar criminal activity. As this Court recognized when it sentenced the defendant the first time, the cost of official corruption is great—and even greater when the corruption is of the office of Governor, because "[i]f confidence in the integrity of the highest ranking officer of the state, a sovereign officer, is lost or diminished, things will get worse and not better . . . ." S. Tr. 259. Corruption erodes the faith of the people in their government; without that faith—and engagement—of the people, our government cannot stand.

Corruption spreads unless it is deterred. Public officials who gain from corrupt deals are incentivized to do more, and successes inspire other public officials to see if they can do it too. As this Court put it at the original sentencing, "If you think you're not going to get caught, you do it. If you're a corrupt official and you're an optimist, there's a much better chance you're going to do it than if you're a pessimist." S. Tr. 244. It may be fair to say that people who run for elected office have some degree of optimism. That was

10

certainly true of the defendant—no matter what the signs, the defendant continued to believe that he could get away with it.

General deterrence is an important factor in this case. This Court concluded that the sentence needed to afford adequate deterrence was 168 months. Nothing that has happened since that time has changed the bases of this Court's determination.

### III. The Properly Calculated Sentencing Guideline Range and Pertinent Policy Statements Provided by the Sentencing Commission (18 U.S.C. § 3553(a)(4) & 3553(a)(5))

In the instant case, the properly-calculated Sentencing Guidelines recommend a sentencing range of 360 months to life. The government previously argued, and this Court agreed, that the advisory range was greater than necessary to achieve the statutory goals of sentencing. However, it is significant that the dismissal of the five counts vacated by the court of appeals had no impact on the defendant's advisory guidelines range. This provides yet another indication that the dismissal of the five counts provides no basis for a reduction in the sentence.

### IV. The Defendant Has Continued to Demonstrate a Failure to Accept Responsibility.

Since the judgment was entered, defendant has continued to insist that he is innocent of the crimes of conviction, and has failed to take any responsibility for any

part of the criminal conduct proven by the evidence.[4] As the court of appeals noted, defendant frivolously contended on direct review that "the evidence is insufficient on every count and that he should have been acquitted across the board." *Blagojevich*, 794 F.3d at 743. More specifically, for example, the defendant contended on appeal that there was no evidence that he "attempted to sell Barack Obama's old Senate," and, more specifically, that

> dozens of tapes offered by the defense but excluded at trial . . . show that all of Blagojevich's alleged crimes were the result of lengthy discussions with lawyers, advisors and consultants [and] that Blagojevich's attempts to make a deal involving the Senate seat and his efforts to raise campaign funds were not designed to benefit himself, but to advance issues that he cared about, such as health care, and to keep himself viable as a politician so that he could continue to be an effective advocate for his causes.

11-3853 R. 106 at 33.

Defendant argued that "Nayak's illegal offer was never accepted, negotiated or even entertained" by him. 11-3853 R. 87 at 37. With respect to Children's' Hospital, defendant contended that "the record shows that Magoon's opinion was based on a misunderstanding." Br. 41. With respect to the racing bill, defendant argued that "there was no evidence that Blagojevich or his associates ever communicated to Johnston any threat or any suggestion that the signing of the recapture bill was contingent on his contribution to the campaign.by Blagojevich." Br. 44. Further,

---

[4] Defendant was and is entitled to assert his innocence, and the government does not seek that he be punished more severely for having done so. The government contends only that acceptance of responsibility or remorse are commonly and correctly considered prerequisites for leniency, and their absence here weighs against a reduction in defendant's sentence.

defendant maintained that he was not guilty of the false statement charge because his understanding of the word "track" conflicted with the government's. Defendant was and is entitled to assert his innocence, and the government does not seek that he be punished more severely for having done so, but acceptance of responsibility and remorse are commonly and correctly considered prerequisites for leniency, and their absence here weighs against a reduction in defendant's sentence.

The court of appeals rejected defendant's claims and the rest of defendant's challenges to the sufficiency of the evidence as "frivolous," finding "[t]he [trial] evidence, much of it from [petitioner's] own mouth," to be "overwhelming." *Blagojevich*, 794 F.3d at 734. Making frivolous claims of actual innocence on appeal demonstrates a lack of acceptance of responsibility.

Moreover, on appeal to the Seventh Circuit and the Supreme Court, the defendant continued to press this claim that he did not believe his proposals were an illegal quid pro quo and that he genuinely believed that he could lawfully exchange his official actions for money. See S. Tr. 250; 11-3853 R. 59-67. At the original sentencing this Court responded to these claims by saying, "The jury didn't believe him and neither do I." S. Tr. 250. Defendant's continued insistence that he lacked intent to commit the crimes of which he was convicted further demonstrates a complete lack of acceptance.

13

**Conclusion**

For these reasons, the government requests that the Court re-impose a total sentence of 168 months' imprisonment, as imposed at the original sentencing.

        Respectfully submitted,

        JULIE BURNHAM PORTER
        Attorney for the United States,
        Acting Under Authority Conferred By
        28 U.S.C. § 515

BY:   /s/ *Debra Riggs Bonamici*
        DEBRA RIGGS BONAMICI
        Assistant United States Attorney
        219 S. Dearborn St., 5th Floor
        Chicago, Illinois  60604
        (312) 353-3500

# CERTIFICATE OF SERVICE

      I hereby certify that on Monday, July 11, 2016, I electronically filed the foregoing GOVERNMENT'S MEMORANDUM REGARDING RESENTENCING with the Clerk of the Court for the United States Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

                                      /s/ *Debra Riggs Bonamici*
                                      DEBRA RIGGS BONAMICI
                                      Assistant United States Attorney
                                      219 S. Dearborn St., 5th Floor
                                      Chicago, Illinois 60604